## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SAINT ANTHONY'S MEDICAL CENTER**<br>**1 Saint Anthony's Way**<br>**Alton, Illinois  62002**<br><br>  **Plaintiff,**<br>  **v.**<br><br>**MICHAEL O. LEAVITT, Secretary,**<br>**U.S. DEPARTMENT OF HEALTH AND**<br>**HUMAN SERVICES**<br>**200 Independence Avenue, S.W.**<br>**Washington, DC 20201**<br><br>  **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. _____

## COMPLAINT FOR
## JUDICIAL REVIEW OF AGENCY ACTION

Submitted by

Dennis M. Barry
D.C. Bar #00375152
VINSON & ELKINS LLP
1455 Pennsylvania Avenue, NW
Suite 600
Washington, D.C.  20004-1008
(202) 639-6791
Nancy C. LeGros
Texas Bar # 00787892
VINSON & ELKINS LLP
2500 First City Tower
1001 Fannin
Houston, TX  77002-6760
(713) 758-3239

Attorneys for Plaintiff

February 2, 2007

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SAINT ANTHONY'S HEALTH CENTER** ) | |
| **One Saint Anthony's Way** ) | |
| **Alton, Illinois  62002** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.** _____ |
| ) | |
| **MICHAEL O. LEAVITT, Secretary,** ) | |
| **U.S. DEPARTMENT OF HEALTH AND** ) | |
| **HUMAN SERVICES** ) | |
| **200 Independence Avenue, S.W.** ) | |
| **Washington, DC 20201** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**COMPLAINT FOR JUDICIAL REVIEW OF AGENCY ACTION**

Plaintiff states:

1.     Plaintiff, Saint Anthony's Health Center ("the Plaintiff"), seeks judicial review of
the final administrative decision of the Secretary of the United States Department of Health and
Human Services ("Secretary") as to the amount of Medicare payment due the Plaintiff for
services furnished during the Plaintiff's cost reporting periods ending on December 31, 1991,
and December 31, 1992.

**I. JURISDICTION AND VENUE**

2.     This action arises under the Title XVIII of the Social Security Act, 42 U.S.C.
§§ 1395-1395hh, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500-576, 701-706.

3.    The Court has jurisdiction pursuant to 42 U.S.C. § 1395oo(f)(1), which allows a provider of services under the Medicare program to obtain judicial review of a decision by the Secretary reversing or modifying a decision by the Provider Reimbursement Review Board ("PRRB").

4.    Venue is proper in this judicial district pursuant to 42 U.S.C. § 1395oo(f)(1).

5.    This action is timely filed in accordance with 42 U.S.C. § 1395oo(f), in that it has been brought within 60 days of Plaintiff's receipt of the Secretary's decision.

## II. THE PARTIES

6.    Saint Anthony's Health Center is a two campus hospital in Alton, Illinois that is owned and operated by the Sisters of St. Francis of the Martyr St. George.  The Plaintiff is organized as a domestic not-for-profit corporation under the laws of Illinois.  The Plaintiff is and was at all times relevant hereto a "provider of services" participating in the Medicare Program established under Title XVIII of the Social Security Act. Among many other services, during the Plaintiff's cost reporting periods ending December 31, 1991, and December 31, 1992, the Plaintiff operated a hospital-based skilled nursing facility ("SNF") known as the Extended Care Facility at Saint Clare's Hospital in Alton, Illinois.

7.    Defendant, Michael O. Leavitt, Secretary of the United States Department of Health and Human Services, is sued in his official capacity.  Defendant is the federal officer to whom Congress has delegated administration of the Medicare program.  Defendant exercises the administrative responsibility of the Medicare program primarily through the Centers for Medicare and Medicaid Services (sometimes referred to herein as "CMS," also formerly known as the Health Care Financing Administration), an agency of HHS.  Defendant also contracts with

private organizations to act as fiscal intermediaries for the Medicare Program. 42 U.S.C. § 1395h(a). The fiscal intermediary responsible for making determinations on the amount of Medicare payment to be made to the Plaintiff was the Blue Cross/Blue Shield Association and AdminaStar Federal Illinois ("Fiscal Intermediary").

## III. GENERAL BACKGROUND

### A.    Background on the Medicare Program and the Routine Cost Limitation

8.    The Medicare program is a federal health insurance program that furnishes benefits to qualifying patients who have attained the age of 65 or who are disabled. *See* 42 U.S.C. § 1395i-2(a); 42 C.F.R. § 407.10. The benefits include payment for post-hospital extended care services furnished in a skilled nursing facility. 42 U.S.C. § 1395d(a)(2). The statutory provisions governing the Medicare program are set forth at 42 U.S.C. § 1395 *et seq.*

9.    The Medicare program is administered by CMS,[1] an agency within the United States Department of Health and Human Services.

10.    The Secretary contracts with private organizations known as "fiscal intermediaries" or "intermediaries" to make determinations of the amounts payable to providers for services furnished to Medicare beneficiaries. *See* 42 U.S.C. §1395h(a).

11.    A skilled nursing facility owned by a hospital could qualify for "hospital-based" (also called provider-based) status.

---

[1] The Centers for Medicare and Medicaid Services ("CMS") was known as the Health Care Financing Administration ("HCFA") during the years under appeal. For simplicity's sake, this complaint refers to the agency as CMS.

12.     During the time period relevant to this matter, the Medicare program reimbursed eligible hospital-based skilled nursing facilities and freestanding skilled nursing facilities for the "reasonable cost" of covered services provided to Medicare beneficiaries.    42 U.S.C. § 1395x(v)(1)(A).   "Reasonable cost" is defined as those costs "actually incurred, excluding therefrom any part of incurred cost[s] found to be unnecessary in the efficient delivery of needed health services." *Id.*

13.     Congress delegated the responsibility for establishing methods for determining reasonable cost to the Defendant Secretary.  The reasonable cost "shall be determined *in accordance with regulations* establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services." 42 U.S.C. § 1395x(v)(1)(A) (emphasis added).

14.     The statute prohibits Medicare and other payers from "cross-subsidizing" each other. 42 U.S.C. § 1395x(v)(1)(A) (emphasis added).  The statute states that

> [s]uch regulations *shall* (i) take into account both direct and indirect costs of providers of services . . . in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs.

42 U.S.C. § 1395x(v)(1)(A) (emphasis added); 42 C.F.R. §§ 413.5(a), 413.50(b).

15.     The Secretary is authorized to establish appropriate cost limits as part of the method of determining reasonable costs. 42 U.S.C. § 1395x(v)(1)(A).

16.     Prior to 1984, the Defendant Secretary had established routine cost limitations for SNFs.  The routine cost limitation for freestanding SNFs was set at 112 percent of the peer group

mean for freestanding SNFs, and the routine cost limitation for hospital-based SNFs was likewise set at 112 percent of the peer group mean for hospital-based SNFs. The routine cost limitation for hospital-based SNFs was higher than that of freestanding SNFs.

17.    Routine cost limitations for SNFs are based upon reported costs, but are adjusted for actual or projected cost increases by applying the SNF market basket index. This index is used to adjust the limits to reflect cost increases occurring between the time of the cost reporting periods represented in the data collection to the time when the limits are applied. However, the market basket index itself cannot be determined until the cost reporting period to which the limits apply has already passed. When CMS calculates cost limits, it uses an estimated market basket index which is based upon forecasts of economic trends. If the market basket index for a fiscal year differs from the estimated rate of change by at least 0.3 of one percentage point, CMS will retroactively adjust cost limits to reflect the actual index.. 56 Fed. Reg. 13317, 13320, col. 1 (April 1, 1991).

18.    Approximately two or three years after a provider's fiscal year, the intermediary analyzes a cost report prepared by the provider and issues a Notice of Program Reimbursement, or "NPR," that informs the provider of the intermediary's final determination of the provider's Medicare reimbursement for the cost reporting period at issue. 42 C.F.R. § 405.1803. If the retroactive cost limits adjustments based on the final SNF market basket index occur after a provider's NPR has been issued, the intermediary may "reopen" the provider's NPR to implement the adjusted cost limits pursuant to 42 C.F.R. § 405.1885(a). The reopened determination is known as a "revised NPR."

19.    Medicare regulations allow exceptions to the routine cost limitation to be granted for certain SNFs. 42 C.F.R. § 413.30(c). A provider's exception request must be made to the intermediary within 180 days of the date of the NPR. *Id.* No distinction is made in the regulation between an original or a revised NPR. The intermediary reviews the provider's request and makes a recommendation to CMS, which makes a determination regarding the request within 180 days. The provider has the right to appeal the determination by CMS in accordance with the rules governing appeals to the PRRB.

20.    There are multiple circumstances that may form the basis for a provider's exception request, which circumstances include a provider's furnishing of "atypical services" to its patients. 42 C.F.R. § 413.30(f) reads as follows:

> (f)    Exceptions. Limits established under this section may be adjusted … for a provider under the circumstances specified…. An adjustment is made only to the extent the costs are reasonable, attributable to the circumstances specified, separately identified by the provider, and verified by the intermediary.
>
>> (1) Atypical services. The provider can show that the --
>>
>>> (i) Actual cost of items or services furnished by a provider exceeds the applicable limit because such items or services are atypical in nature and scope, compared to the items or services generally furnished by providers similarly classified; and
>>>
>>> (ii) Atypical items or services are furnished because of the special needs of the patients treated and are necessary in the efficient delivery of needed health care.

21.    The atypical services exception was first issued as a regulation effective July 1, 1974. Federal Health Insurance for the Aged and Disabled; Limitations on Coverage of Costs; Interim Schedule, 39 Fed. Reg. 20163, 20164 (June 6, 1974) (codified at 42 C.F.R.

§ 405.460(f)(2)). The language of the regulation was revised effective July 1, 1979. Medicare Program; Limiting Reimbursement for Provider Costs and for Services by Hospital-Based Physicians, 44 Fed. Reg. 31802, 31804 (June 1, 1979) (codified at 42 C.F.R. § 405.460(f)). The regulation was redesignated as 42 C.F.R. § 413.30(f) in 1986, with no changes to its text. Medicare Program; Redesignation of Reasonable Cost Regulations, 51 Fed. Reg. 34790 (Sep. 30, 1986). This designation was in use during the time period relevant to this dispute, and is the designation used throughout the complaint.[2]

22.    Following the revision of the regulation in 1979, the Secretary interpreted the regulation to allow full reimbursement for costs above the routine cost limitation that were the result of atypical services. Regulations Adopted Concerning Limitations on Reimbursable Costs, 44 Fed. Reg. 31802, 31804 (June 1, 1979).

23.    The routine cost limitation for hospital-based SNFs changed as part of the Deficit Reduction Act of 1984 ("DEFRA"). Pub. L. No. 98-369, § 2319(b), 1984 U.S.C.C.A.N. (98 Stat.) 494, 1083 (codified at 42 U.S.C. § 1395yy). While the routine cost limitation for freestanding SNFs remained the same, the limitation for hospital-based SNFs was lowered to "the limit for freestanding skilled nursing facilities . . . , plus 50% of the amount by which 112 percent of the mean per diem routine service costs for hospital-based skilled nursing facilities . . . exceeds the limit for freestanding skilled nursing facilities." 42 U.S.C. § 1395yy(a)(3)-(4).

24.    The 1984 statutory amendments did not alter the Secretary's rules permitting SNFs qualifying for an atypical services exception from receiving full reimbursement of

---

[2]   The regulation has since been amended and redesignated as 42 C.F.R. § 413.30(e). Medicare Program; Revisions of the Procedures for Requesting Exceptions to Cost Limits for Skilled Nursing Facilities and Elimination of Reclassifications, 64 Fed. Reg. 42610, 42612 (Aug. 5, 1999).

reasonable costs, and the legislative history states that providers meeting the criteria for

exception relief should receive "up to all of their reasonable costs" through the exception

process:

> Under this provision, *both hospital-based and freestanding facilities* could continue to apply for and receive exceptions from the cost limits in circumstances where high costs result from more severe than average case mix or circumstances beyond the control of the facility. Indicators of more severe case mix include a comparatively high proportion of Medicare days to total patient days, comparatively high ancillary costs, or relatively low average length of stay for all patients (an indicator of the rehabilitative orientation of the facility). *Facilities eligible for exceptions could receive, where justified, up to all of their reasonable costs.*

Deficit Reduction Act of 1984, Explanation of Provisions Approved by the Committee on

March 21, 1984, Committee on Finance, United States Senate, Senate Print 98-169, v.1, *as*

*reprinted in* Medicare and Medicaid Spending Reductions in the Deficit Reduction Act of 1984,

Explanation by the Senate Finance Committee and Text of Title IX of the Bill, MEDICARE AND

MEDICAID GUIDE (CCH), Pt. II, No. 423 (Apr. 13, 1984) (emphasis added). After the 1984

codification of 42 U.S.C. § 1395yy(a), and consistent with this legislative history and with his

interpretation of 42 C.F.R. § 413.30(f)(1) prior to the codification of 42 U.S.C. § 1395yy, the

Secretary continued to measure the exceptions he awarded to hospital-based SNFs from the

routine cost limitation, and not from some point above the routine cost limitation.

     25.     In July 1994, ten years after the codification of 42 U.S.C. § 1395yy, the Secretary,

through the Health Care Financing Administration (HCFA, now CMS) issued Transmittal

No. 378 which published new provisions of the Provider Reimbursement Manual relating to SNF

exception requests. This transmittal added PRM § 2534.5, which required that the atypical

services exception amount for a hospital-based SNF be measured not from its routine cost

limitation, as had been the Secretary's interpretation up through July 1994, but that it now be measured from 112 percent of the SNF's peer group mean, a point significantly higher than the routine cost limitation for a hospital-based SNF.  The Secretary thereby created a reimbursement "gap" by which all hospital-based SNFs that provide atypical services to their patients could never receive reimbursement for their per diem costs between the routine cost limitation and 112 percent of the peer group mean.  There was no notice or opportunity for public comment prior to the promulgation of the new manual provision, and the change in reimbursement occurred despite the fact that such hospital-based SNFs met the regulatory requirements of 42 C.F.R. § 413.30(f) for the atypical services exception.

### B.   Factual and Procedural Background

26.    The Extended Care Facility, Plaintiff's hospital-based SNF, furnished the requisite atypical services, entitling the Plaintiff to the routine cost limit exception available under 42 C.F.R. § 413.30(f).

27.    Pursuant to 42 C.F.R. § 413.30(f)(1), the Plaintiff requested that its hospital-based SNF be granted an exception to the routine cost limitation for its fiscal years ending December 31, 1991 and December 31, 1992, because it furnished atypical services during these cost reporting periods.   The Plaintiff requested exception requests in the amount of $45.84 per day for 1991 and $44.83 per day for 1992.  Its exception requests were made pursuant to the revised NPRs issued by the Intermediary October 31, 1996, to adjust the Plaintiff's routine cost limits based on the final SNF market basket index applicable to each fiscal year.

28.    The Fiscal Intermediary determined that the Plaintiff had filed its exception requests timely, had provided atypical services during the time periods at issue and thus was

entitled to an award of additional reimbursement in the form of an exception amount. However, the Fiscal Intermediary recommended to the Secretary that the Plaintiff be reimbursed only for its costs in excess of 112 percent of the peer group mean, rather than for all its costs in excess of the routine cost limitation, as had been the Secretary's interpretation of its governing regulation for a period of twenty years.

29.     The Secretary instructed the Intermediary to deny the Plaintiff's exception request altogether. For exception requests made from a revised NPR to implement the SNF market basket adjustment, the Secretary asserted that it was the Secretary's policy to limit the exception from the routine cost limits to the incremental difference between the original cost limit and the revised cost limit resulting from the SNF market basket correction. The Intermediary subsequently instructed the Plaintiff that it could resubmit exception requests that were limited to the incremental difference between the original cost limit and the revised cost limit resulting from the SNF market basket correction. The Provider did so, and the Secretary approved cost limit exceptions in the amount of $3.41 per day for 1991 and $6.26 per day for 1992. This resulted in a reimbursement gap between the reasonable cost limitation and the exception for atypical services payment of approximately $235,000 in 1991 and $207,000 in 1992, for a total amount in controversy of approximately $442,000, which represents the amount of reasonable costs for which the Plaintiff was not reimbursed due to the Secretary's alleged policy of limiting cost exception requests from revised NPRs and to the application of PRM § 2534.5. (Plaintiff does not seek a money judgment, but instead prays for a reversal of the Secretary's decision and a remand to the Secretary to compute amounts owing to Plaintiff pursuant to the Court's order.)

30.     Plaintiff filed timely appeals of the denial of its full costs in excess of the routine cost limitation with the Provider Reimbursement Review Board ("PRRB") for both cost

reporting periods at issue. The PRRB is a board established by the Secretary to hear appeals by a provider of health care services when a provider is not satisfied with the amount of Medicare payment. A decision of the PRRB becomes a final decision unless the Secretary reverses, affirms, or modifies the decision.

31.    On June 5, 2006, the PRRB issued its decision in this case, finding Plaintiff entitled to consideration of the full amount of its exception request based on its appeal of its revised NPRs. *Saint Anthony's Health Center –SNF (Alton, Ill.) v. BlueCross BlueShield Ass'n/AdminaStar Federal Ill.,* PRRB Dec. No. 2006-D55 (2006), MEDICARE AND MEDICAID GUIDE (CCH) ¶ 81,612. A true and correct copy of this decision is attached hereto as Exhibit A.

32.    On October 18, 2006 the Secretary informed the parties that he would review the PRRB decision pursuant to his authority under 42 U.S.C. § 1395oo(f) (2002).

33.    The Secretary issued a decision reversing the PRRB's decision that was transmitted to the Plaintiff on November 29, 2006 and received by the Plaintiff on December 4, 2006. *Saint Anthony's Health Center - SNF v. CMS,* Adm'r Dec. (July 21, 2006). The Secretary found that the regulations at 42 C.F.R. § 405.1885 and § 405.1889 limit a provider's appeal rights under a revised NPR true to the particular substantive matter that was revised, which in this case was limited to the original cost limits and the revised cost limits resulting from the SNF market basket. A true and correct copy of the Secretary's decision is attached hereto as Exhibit B.

34.    Pursuant to 42 U.S.C. § 1395oo(f), Plaintiff is seeking judicial review of the Secretary's decision.

## IV. CLAIM FOR RELIEF

35.    Plaintiff seeks a reversal of the Secretary's decision failing to grant full reimbursement of costs attributable to atypical services and a remand of this matter for a new reimbursement decision for the following reasons.

36.    The decisions of the PRRB and the Administrator did not address the Intermediary's proposal to limit the exception amount to the difference between the Plaintiff's actual costs and 112% of the Peer Group mean. However, the limitation clearly would have been applied had the Plaintiff's full exception request been granted.    In the interest of judicial economy, the Plaintiff's seeks a declaration that the exception relief must be granted without regard to the Secretary's policy set forth at Provider Reimbursement Manual § 2534.5.

37.    The Secretary's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), because:

    a.    It is inconsistent with the regulations governing appeals from revised NPRs, 42 C.F.R. § 1885 and § 1889, neither of which limit appeals from revised NPRs in the manner asserted by the Secretary in this case.

    b.    It is inconsistent with the regulation governing exception requests to routine SNF cost limits at 42 C.F.R. § 413.30(c), which makes no distinction between original and revised NPRs.

    c.    It is inconsistent with the regulation governing atypical cost exceptions, 42 C.F.R.§ 413.30(f)(1), as well as the legislative history of the governing statute, 42 U.S.C.§ 1395yy(a).

    d.   It violates the statutory prohibition against cross-subsidization between beneficiaries of the Medicare program and other insurance programs. 42 U.S.C. § 1395(x)(v)(1)(A).

    e.   It is an arbitrary and capricious departure from the Secretary's long-standing practice of measuring atypical service exceptions from the point of the routine cost limitation, and as such is an abuse of discretion. *See St. Luke's Methodist Hospital v. Thompson*, 315 F.3d 984, 988 (8th Cir. 2002); *Mercy Medical Skilled Nursing Facility v. Thompson*, 2004 U.S.Dist. LEXIS 27365 at 10-11 (May 14, 2004) (unreported); *see also Motor Vehicle Ass'n of U.S., Inc., v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

    f.   It arbitrarily and capriciously discriminates in favor of freestanding SNFs and against hospital-based SNFs, in that freestanding SNFs qualifying for the atypical services exception can receive full reimbursement of all costs in excess of the routine cost limitation, but qualifying hospital-based SNFs cannot receive full reimbursement.

38.    The Secretary's decision is "in excess of statutory jurisdiction, authority, or limitations," 5 U.S.C. § 706(2)(C), because it is a retroactive application of PRM § 2534.5. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 215 (1988) ("Our interpretation of the Medicare Act compels the conclusion that the Secretary has no authority to promulgate retroactive cost-limit rules.").

39.    The Secretary's decision was contrary to law and in excess of statutory authority in that it relies upon an application of PRM § 2534.5, which was not promulgated in accordance

to the rulemaking procedures of the APA or the Social Security Act. The APA requires notice and comment rulemaking procedures be followed when an agency enacts a new substantive rule, *Air Transp. Ass'n of Am. v. Fed. Aviation Admin.,* 291 F.3d 49, 56 (D.C.Cir. 2002), or when an agency changes a definitive interpretation of a substantive rule, *Alaska Prof'l Hunters Ass'n, Inc., v. Fed. Aviation Admin.,* 177 F.3d 1030, 1033-34 (D.C.Cir. 1999). The Social Security Act similarly requires notice and comment procedures be followed before altering an existing substantive legal standard. 42 U.S.C. § 1395hh(a)(2). Because PRM §2534.5 was not adopted pursuant to notice and comment rulemaking procedures, the Secretary's decision applying the manual provision was contrary to law and in excess of statutory authority. 5 U.S.C. § 706(2)(A), (C).

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

40.    That the Court set aside the Secretary's final decision and remand this matter to the Secretary and order that the Secretary compute the amount payable under the previously granted exception to the routine cost limitation for its fiscal years ending December 31, 1991 and December 31, 1992, so as to include reimbursement for the provider's costs between the routine cost limitation and 112 percent of the peer group mean.

41.    That the Court award Plaintiff the interest that it is entitled to as a matter of right under 42 U.S.C. § 1395oo(f)(2);

42.    That the Court award Plaintiff costs; and

43.    That the Court grant to Plaintiff such other relief that the Court deems proper.

Respectfully submitted,

Dennis M. Barry
D.C. Bar #00375152
VINSON & ELKINS LLP
1455 Pennsylvania Avenue, NW
Suite 600
Washington, D.C.  20004-1008
(202) 639-6791
Nancy C. LeGros
Bar #00787892
VINSON & ELKINS LLP
2500 First City Tower
1001 Fannin
Houston, TX  77002-6760
(713) 758-3239

Attorneys for Plaintiff

February 2, 2007

Houston 3117570v1

# PROVIDER REIMBURSEMENT REVIEW BOARD
# DECISION
ON THE RECORD
2006-D55

| | |
|---|---|
| **PROVIDER -**<br>Saint Anthony's Health Center – SNF<br>Alton, Illinois<br><br>Provider No.:  14-5314 | **DATE OF HEARING -**<br>June 6, 2006<br><br><br>Cost Reporting Periods Ended -<br>December 31, 1991 and December 31, 1992 |
| **vs.** | |
| **INTERMEDIARY -**<br>BlueCross BlueShield Association/<br>AdminaStar Federal Illinois | **CASE NOs.**   98-0580 and 98-0463 |

## INDEX

| | Page No. |
|---|---|
| Issue............................................................................................................ | 2 |
| Medicare Statutory and Regulatory Background…………………………………….. | 2 |
| Statement of the Case and Procedural History................................................... | 3 |
| Parties' Contentions.................………................................................………… | 4 |
| Findings of Fact, Conclusions of Law and Discussion...………………………………… | 6 |
| Decision and Order................................................................................................ | 7 |

ISSUE:

Whether the Provider's exception requests to the skilled nursing facility (SNF) routine service cost limits under 42 C.F.R. §413.30(f) was properly denied because the Provider did not request the exceptions within 180 days of the original notices of program reimbursement.

MEDICARE STATUTORY AND REGULATORY BACKGROUND:

This is a dispute over the amount of Medicare reimbursement due a provider of medical services.

The Medicare program was established to provide health insurance to the aged and disabled. 42 U.S.C. §§1395-1395cc. The Centers for Medicare and Medicaid Services (CMS), formerly the Health Care Financing Administration (HCFA),[1] is the operating component of the Department of Health and Human Services charged with administering the Medicare program. HCFA's payment and audit functions under the Medicare program are contracted out to insurance companies known as fiscal intermediaries. Fiscal intermediaries determine payment amounts due the providers under Medicare law and under interpretive guidelines published by CMS. See, 42 U.S.C. §1395h, 42 C.F.R. §§413.20(b) and 413.24(b).

At the close of its fiscal year, a provider must submit a cost report to the fiscal intermediary showing the costs it incurred during the fiscal year and the proportion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. The fiscal intermediary reviews the cost report, determines the total amount of Medicare reimbursement due the provider and issues the provider a Notice of Program Reimbursement (NPR). 42 C.F.R. §405.1803. A provider dissatisfied with the intermediary's final determination of total reimbursement may file an appeal with the Provider Reimbursement Review Board (Board) within 180 days of the issuance of the NPR. 42 U.S.C. §1395oo(a); 42 C.F.R. §405.1835.

At its inception, the Medicare Program reimbursed providers the "reasonable cost" of furnishing covered services to program beneficiaries pursuant to Section 1861 (v)(1)(A) of the Act. In response to rising costs, and realizing that the original structure provided little incentive for providers to operate efficiently in delivering services, Congress authorized the Secretary (under Section 223 of the Act of 1972) to:

> [p]rovide for the establishment of limits on the direct or indirect overall incurred costs . . . based on estimates of the costs necessary in the efficient delivery of needed health services . . .

---

[1] For events that took place before CMS changed its name, and to maintain consistency with the evidence, HCFA will be used.

Recognizing that providers under some circumstances would incur costs in excess of the routine cost limit, exceptions to the routine cost limit (RCL) were established in 42 C.F.R. §413.30(f), which states:

> (f) Exceptions.  Limits established under this section may be adjusted upward for a provider under the circumstances specified in paragraphs (f)(1) through (f)(8) of this section . . . An adjustment is made only to the extent the costs are reasonable,  attributable to the circumstances specified, separately identified by the provider, and verified by the intermediary.

SNF cost limits are established based upon reported costs; however, those limits can later be adjusted for actual or projected cost changes by applying the SNF market basket index.  The market basket index is used to adjust the limits to reflect cost changes occurring between the time of the cost reporting periods represented in the data collection to the time when the limits are applied.  However, the market basket index itself cannot be determined until the cost reporting period to which the limits apply has already passed.  Therefore, when the cost limits are calculated, the limits are based on an _estimated_ market basket index which is based upon forecasts of economic trends.  If these economic forecasts prove erroneous, the limits may be retroactively adjused to reflect the actual index.  Medicare's policy is to adjust the limit if the market basket index for a fiscal year differs from the estimated rate of change by at least 0.3 of one percentage point.

STATEMENT OF THE CASE AND PROCEDURAL HISTORY:

St. Anthony's Health Center (the Provider) is a hospital-based skilled nursing facility located in Alton, Illinois.  In 1992, the Provider's fiscal intermediary changed from Health Care Services Corporation to Administar Federal (both hereinafter referred to as the Intermediary).  The Intermediary issued the Provider's original Notices of Program Reimbursement (NPRs) on September 2, 1993 for its fiscal year ended (FYE) December 31, 1991 cost report and on April 1, 1994 for its FYE December 31, 1992 cost report.  In the original NPRs, the Provider exceeded the RCL for both FYEs 1991 and 1992.  The Provider did not file exception requests with the Intermediary within 180 days of the original NPRs for either fiscal year.

In 1996, HCFA determined that the estimated market basket index for fiscal years 1991 and 1992 exceeded actual market basket figures by more than 0.3 of one percentage point.  Pursuant to its rules,[2] HCFA instructed intermediaries to retroactively adjust cost limits to include the actual market basket index figures.[3]

On August 29, 1996, the Intermediary issued Notices of Reopening for the Provider's FYE 12/31/91 and 12/31/92 cost reports to update the Provider's SNF cost limits based

---

[2]  See 56 Fed. Reg. 13317, 13319 (April 1, 1991).
[3]  HCFA Memorandum, May 1996.

on the change in the market basket index.  For FYE 12/31/91, the RCL was decreased by $3.41, and for FYE 12/31/92 the RCL was decreased by $6.26.  The Provider filed exception requests with the Intermediary within 180 days of the revised NPRs, both dated 10/31/1996.  The Intermediary notified the Provider that HCFA had denied its exception requests and stated "[i]t is HCFA's policy that is [sic] an exception is submitted after 180 days of the original NPR but within 180 days of /a revised NPR, an exception may only be granted for the incremental increase in the amount that the provider's costs exceeds its revised cost limit."[4]  The Intermediary's exception recommendations were revised and subsequently approved by HCFA on October 14, 1997 for the incremental increase in the amount of the routine cost limits between the original NPRs and the revised NPRs.[5]  The Provider filed timely appeals with the Board and met the jurisdictional requirements of 42 C.F.R. §§405.1835-405.1841.  The total amount of relief sought under the exception requests was $253,545 for FYE 1991 and $241,212 for FYE 1992.

The Provider was represented by Cindy H. Burnett, Esquire, of Vinson & Elkins L.L.P. The Intermediary was represented by Bernard M. Talbert, Esquire, of the Blue Cross Blue Shield Association.

PARTIES' CONTENTIONS:

Exception requests are governed by 42 C.F.R. § 413.30(c) which provides that a request for an exception to the SNF cost limits must be made to the intermediary within 180 days of the NPR.  The Provider argues that because the regulation does not distinguish between an initial and revised NPR, its request was timely as to the full amount of its exception request.

The Provider acknowledges  that the regulation at 42 C.F.R. § 413.30(c)has been interpreted as incorporating the restrictions of 42 C.F.R. §405.1889[6] which limits review of a revised NPR to only those issues specifically affected by the revised NPR.  The Provider argues that these two sections should be viewed as separate because NPR appeals are filed with the Board but RCL exception requests are filed with the intermediary.  This distinction was noted in Hurley Medical Center v. Blue Cross Blue Shield Association/Health Care Service Corporation, HCFA Adm. Dec. August 7, 1998, Medicare & Medicaid Guide (CCH) ¶80,058.  In Hurley, the provider failed to make its TEFRA exception request to the intermediary in accordance with the regulations but mistakenly made the request to the Board and sent a copy to the intermediary.  The Board concluded that the intermediary had adequate notice of an exception request, but the HCFA Administrator overturned the Board's decision because the request was not made to the intermediary as the regulation explicitly provided.   The Provider asserts that application of the same literal interpretation in this case would allow a full exception request from any NPR since the regulation does not specify otherwise.

---

[4]  Intermediary Exhibit 1-6.
[5]  Exhibit I-7.
[6] See St. Joseph Medical Center v. Blue Cross Blue Shield Association/Blue Cross of California, PRRB Case No. 98-D27, January 29, 1998, Medicare & Medicaid Guide (CCH) ¶46,070.

The Provider also contends that, even if 42 C.F.R. §405.1889 applies, the instant cases are distinguishable because the revised NPRs specifically adjusted the SNF's RCLs and because the RCLs in the original NPRs were provisional. As a result, the RCLs were not finalized until the revised NPRs were issued. In support, the Provider refers us to <u>French Hospital Medical Center v. Shalala</u>, 89 F.3d 1411 (9th Cir. 1996). There, the court upheld the refusal to grant the exception request on the grounds that it was untimely filed because:

> [T]he intermediary reopened the hospital's cost report for the sole purpose of applying the RCL to malpractice insurance costs. Neither the RCL nor components of the RCL were at issue in the revised NPR. Furthermore, the revised NPR did not alter the RCL or any of its components. Only the RCL's application to malpractice insurance costs was at issue in the revised NPR.

<u>Id</u>. at 1420. The Provider asserts that the <u>French</u> Court decision clearly implies that a revision to the RCL itself or any of its components would reopen the RCL issue and allow the provider to request and receive an exception to its RCLs. The Provider also points out that the revised NPR was issued to effect the changes in the SNF market basket indices, which are components of the SNF RCLs.

In addition, the Provider asserts that the strictures on 42 C.F.R. §405.1889 should not apply because the policy considerations for exception requests are different than policy considerations applicable to appeals of cost adjustments. Exception requests involve limits that are applied to all costs incurred by a provider. Thus, an adjustment of allowable costs affects whether a provider wishes to seek an exception. In contrast, appeals of cost adjustments involve discrete categories of claimed costs. When an intermediary reopens the cost report to adjust discrete costs centers, there is no effect on the costs included in other discrete cost centers. As cost limits are dependent upon all reimbursement, any change in allowable costs does influence how the cost limit applies.

Finally, the Provider points out that during this time period, there were no guidelines issued on how to apply for an atypical cost exception, and RCLs were pending subject to finalization of the market basket index; therefore, providers could not be sure whether to make exception requests from the initial or revised NPRs. The method for contesting the RCL was not fully explained until the issuance of Transmittal No. 378 in July 1994.

The Intermediary responds that the Provider did not file requests for an exception to the SNF RCLs upon its original NPRs even though its costs exceeded the cost limits. Correcting the cost limits therefore did not convert the Provider from a position of being within the cost limits to a position of exceeding the cost limits. Consequently, the reopenings did not create any new rights to file exception requests. The reopenings merely corrected the amount of the cost limits and HCFA granted a partial exception for the additional amount applicable to that correction. As no requests were filed from the original NPRs, no relief is available as to the excess cost calculated under the original RCL limits.

Page 6                                                    CNs: 98-0580 and 98-0463

FINDINGS OF FACT, CONCLUSIONS OF LAW AND DISCUSSION:

The Board, after consideration of the Medicare law and guidelines, the parties'
contentions, and evidence presented, finds and concludes that that the Provider is entitled
to consideration of the full amount of the exception request based on the appeal of its
revised NPR.

The first evidence in our record of HCFA's position to limit any relief from a revised
NPR adjustment to the incremental increase in the amount that the provider's costs
exceeds its revised cost limit is in the Intermediary's letter to the Provider dated July 18,
1977.[7]  Apparently, the Intermediary was previously unaware of HCFA's position
because the Intermediary had recommended to HCFA acceptance of more than the
incremental increase in the adjustments on the revised NPRs.[8]  HCFA's notice to all
intermediaries concerning the adjustments to the RCLs authorizes adjustments to
exceptions already granted and it addresses how new exception requests will be handled.[9]
That communication demonstrates that HCFA anticipated that exception requests would
be filed from revised NPRs yet there is no mention of a limit on any relief from a revised
NPR adjustment to the incremental increase only.

The Board has also carefully considered both 42 C.F.R. §§405.413.30(c) and 405.1889,
and we do not find any basis for HCFA's limitation in either regulation.  42 C.F.R.
§413.30(c) states that the "provider's request for an exception must be made to its fiscal
intermediary within 180 days of the date on the intermediary's notice of program
reimbursement."  The regulation does not make a distinction between types of NPRs;
therefore, a provider should be allowed to make an exception request for the full amount
from any NPR in which the RCL is at issue.

Even when §405.1889 is applied, we find the appeal from the revised NPR proper.  This
case is distinguishable from French, supra, in which a provider was not allowed to contest
its cost limits from a revised NPR where the provider sought an exception from an
adjustment for malpractice insurance costs.  The court held the denial of the exception
request was proper because "[n]either the RCL, nor components of the RCL, were at
issue in the revised NPR."  Id. at 1420.  Here, the Intermediary did adjust the RCLs in the
revised NPRs; therefore, the Provider is entitled to make its exception requests from the
revised NPRs.

In summary, the Board finds the Provider may request an exception to the RCL from any
NPR in which the Intermediary adjusts its RCL, and there is no basis to limit a provider's
exception request made from a revised NPR.

---

[7] Provider Exhibit D.
[8] Intermediary Exhibit 5.
[9] Intermediary Exhibit 3 at p. 2.

DECISION AND ORDER:

HCFA's partial denial of the Provider's SNF exception requests was improper.  The matter is remanded to the fiscal intermediary to consider the Provider's full request for relief from the RCLs.

Board Members Participating:

Suzanne Cochran, Esquire
Gary Blodgett, D.D.S.
Elaine Crews Powell, C.P.A.
Anjali Mulchandani-West
Yvette C. Hayes

FOR THE BOARD:

DATE:  September 26, 2006

                    Suzanne Cochran, Esquire
                    Chairperson

Received 10/18/2006 02:18PM in 01:40 on line [8] for JE1042 * Pg 1/5
10/18/2006  14:56    4107860043               CMS                    PAGE  01

# DEPARTMENT OF HEALTH AND HUMAN SERVICES
## CENTERS FOR MEDICARE & MEDICAID SERVICES
### OFFICE OF THE ATTORNEY ADVISOR

---

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: J.D. Epstein, Esq. | FROM: Jacqueline Vaughn<br>Office of the Attorney Advisor |
| COMPANY: Vinson & Elkins, LLP | DATE: 10/18/06 |
| FAX NUMBER: 713-615-5042 | TOTAL NO. OF PAGES INCLUDING COVER: 5 |
| PHONE NUMBER: 713-758-3468 | SENDER'S PHONE NUMBER: 410-786-3176 |

RE: **SAINT ANTHONY'S HEALTH CENTER, PRRB DEC. NO. 06-D55**

---

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

---

NOTES/COMMENTS:

The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your system. Thank you.

7500 SECURITY BLVD. C3-01-20
BALTIMORE, MD. 21244
410-786-3176 VOICE
410-786-0043 FAX

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C3-01-20
Baltimore, Maryland 21244-1850
Phone 410-786-3176 Facsimiles 410-786-0043



**Office of the Attorney Advisor**
**VIA FACSIMILE**

Bernard M. Talbert                              OCT 1 8 2006
Blue Cross and Blue Shield Association
225 N. Michigan Avenue
Chicago, Il 60601-7680

Re:   <u>Saint Anthony's Health Center</u>, PRRB Decision No. 2006-D55 (09/26/06) (FYE
      12/31/91 and 12/31/92)

Dear Mr. Talbert:

This is to notify you that our office has received comments from the Centers for
Medicare & Medicaid Services' (CMS's) Center for Medicare Management requesting
that the Administrator reverse the Provider Reimbursement Review Board's (Board's)
decision in the above reference case. Accordingly, the Administrator of CMS will review
the Board's decision concerning whether the Intermediary properly denied the Provider's
exception requests to the skilled nursing facility routine service cost limits. Involved will
be whether the Board's decision is in keeping with the pertinent laws, regulations, and
other criteria cited by the Board and by the parties in their comments.   The Board's
decision will be reviewed in light of prior decisions of the Administrator and relevant
court decisions. Accordingly, this case will be before the Administrator within the next
few weeks to determine whether to reverse, affirm, modify or remand the Board's
decision.

The governing regulations published at 42 C.F.R. § 405.1875 explains the procedures in
conducting final agency review of decisions made by the Board.  You have a right to
submit comments within 15 days of your receipt of this letter.  **If y ou d o s ubmit
comments, we would appreciate your faxing them to this office at (410) 786-0043, in
order to ensure receipt of the comments by this office.**

An Administrator's decision must be rendered within 60 days after the Provider received the Board's decision.   I will promptly send you a copy of the decision after it is rendered.

Sincerely,

Jacqueline R. Vaughn
Attorney Advisor

cc:     J.D. Epstein, Esq., Provider's Representative
        Center for Medicare Management, CMS

Received 1u, .d/2006 02:18PM in 01:40 on line [8] for JE1uu_ * Pg 4/5
10/18/2006  14:56      4107860043                    CMS                            PAGE  04

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C3-01-20
Baltimore, Maryland 21244-1850
Phone 410-786-3176 Facsimiles 410-786-0043



**Office of the Attorney Advisor**

**VIA FACSIMILE**

OCT 1 8 2006

J.D. Epstein
Vinson & Elkins, LLP
First City Tower, 1001 Fannin Street, Suite 2300
Houston, TX 77002-6760

Re:    <u>Saint Anthony's Health Center</u>, PRRB Decision No. 2006-D55 (09/26/06) (FYE
       12/31/91 and 12/31/92)

Dear Mr. Epstein:

This is to notify you that our office has received comments from the Centers for
Medicare & Medicaid Services' (CMS's) Center for Medicare Management requesting
that the Administrator reverse the Provider Reimbursement Review Board's (Board's)
decision in the above reference case. Accordingly, the Administrator of CMS will review
the Board's decision concerning whether the Intermediary properly denied the Provider's
exception requests to the skilled nursing facility routine service cost limits. Involved will
be whether the Board's decision is in keeping with the pertinent laws, regulations, and
other criteria cited by the Board and by the parties in their comments.    The Board's
decision will be reviewed in light of prior decisions of the Administrator and relevant
court decisions.    Accordingly, this case will be before the Administrator within the next
few weeks to determine whether to reverse, affirm, modify or remand the Board's
decision.

The governing regulations published at 42 C.F.R. § 405.1875 explains the procedures in
conducting final agency review of decisions made by the Board.    You have a right to
submit comments within 15 days of your receipt of this letter.    **If y ou d o s ubmit**
**comments, we would appreciate your faxing them to this office at (410) 786-0043, in**
**order to ensure receipt of the comments by this office.**

An Administrator's decision must be rendered within 60 days after the Provider received the Board's decision.  I will promptly send you a copy of the decision after it is rendered.

Sincerely,

Jacqueline R. Vaughn
Attorney Advisor

cc:    Bernard M. Talbert, Esq., Intermediary's Representative
       Center for Medicare Management, CMS



DEPARTMENT OF HEALTH & HUMAN SERVICES                    Centers for Medicare & Medicaid Services

**OCT 0 6 2006**                                                          7500 Security Boulevard
                                                                        Baltimore, MD 21244-1850

From:        Director
             Chronic Care Policy Group, Center for Medicare Management

Subject:     Provider Reimbursement Review Board (PRRB) Decision No. 2006-D55,
             Saint Anthony's Health Center – Skilled Nursing Facility (SNF),
             Provider No. 14-5314

To:          Director
             Office of the Attorney Advisor

In the subject decision, the Board reversed CMS' denial of the Provider's request for an
exception to the routine cost limits. For the reasons stated below, the Chronic Care Policy Group
(CCPG), CMM does not concur with the Board's decision.

Section 42 CFR 413.30, sets forth the regulations regarding the establishment of SNF routine
service cost limits and provides for an SNF to request an exception to the limits. Specifically, in
accordance with §413.30(c), the SNF must make its request for an exception to its fiscal
intermediary within 180 days of the date on the intermediary's notice of program reimbursement
(NPR). In this case, the intermediary issued the provider's original NPRs on September 2, 1993
for its fiscal year ended (FYE) December 31, 1991 cost report and on April 1, 1994 for its FYE
December 31, 1992 cost report. The provider's routine costs exceeded the routine cost limits for
both FYEs 1991 and 1992 and the provider did not file exception requests with the intermediary
within 180 days of the original NPRs for either fiscal year.

Notices of Reopenings were issued for FYEs 1991 and 1992 to update the SNF cost limits based
on the change in the market basket index. For both FYE 1991 and 1992 the change in the market
basket index decreased the provider's cost limit amount. As a total, the provider's costs
exceeded the cost limit under the original NPR plus the additional, incremental amount as a
result of the decreasing the cost limit under the revised NPR.

The provider filed exception requests for both FYE 1991 and 1992 within 180 days of the
revised NPRs. The exceptions were approved for the incremental increase in the amount of costs
that exceeded the routine cost limits between the original NPRs and the revised NPRs. The
provider filed timely appeals with the PRRB requesting exceptions for the full amount in which
its costs exceeded its cost limit for both FYEs 1991and 1992 under both the original NPR and
the revised NPR. The PRRB ruled that the provider can request an exception to the RCL from
any NPR in which the intermediary adjusts its RCL, and there is no basis to limit a provider's
exception request made from a revised NPR.

CMM disagrees with the decision of the PRRB. A revised NPR does not give a provider new
appeal rights for an issue that could have been appealed under the original NPR - where the

**RECEIVED**

**OCT 1 6 2006**

**JDE**

provider did not exercise its appeal rights timely. In accordance with §413.30(c)(2), the intermediary's determination under the exception process is subject to review under subpart R of part 405. Section 405.1889 of subpart R of part 405 states that where a revision is made on the amount of program reimbursement after such determination has been reopened, such revision is a separate and distinct determination. The cases below indicate that in the case of a reopening, only matters contained in the revised NPR can be appealed. In other words, the revised NPR does not revive appeal rights flowing from the original NPR if the provider failed to exercise those original appeal rights timely.

The cases are:

French Hosp. Medical Center v Shalala 89 F. 3d 1411 (9th Cir. 1996)

Albert Einstein Medical Center v Sullivan, 830 F Supp. 846 (E.D. Pa. 1992), affirmed, 6 F. 3d 778 (3rd Cir. 1993)

HCA Health Services of Oklahoma, Inc v. Shalala, 27 F.3[rd] 614 (D.C. Cir. 1994)

Edgewater Hosp., Inc. v Bowen. 857 F.2d 1123 (7th Cir. 1988)

CMM believes that when viewed together, the regulations at §413.30(c)(2) and §405.1889 (as upheld the cases cited above) prohibits the SNF from appealing the amount of an exception that was not requested under the original NPR. Accordingly, CMM believes that the exception amount approved for the incremental increase in the amount of costs that exceeded the routine cost limits between the original NPRs and the revised NPRs is correct. For this reason, CMM recommends reversal of the PRRB's decision.


Laurence D. Wilson

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C3-01-20
Baltimore, Maryland 21244-1850
Telephone 410-786-3176 Facsimile 410-786-0043



**Office of the Attorney Advisor**

NOV 2 9 2006

**VIA CERTIFIED MAIL**

Mr. J. D. Epstein
Vinson & Elkins, LLP
2300 First City Tower
1001 Fannin Street
Houston, TX 77002-6760

Re: <u>Saint Anthony's Health Center - SNF</u>, PRRB Decision No. 2006-D55

Dear Mr. Epstein:

Enclosed is a copy of the Administrator's decision in the above case reversing the decision of the

Provider Reimbursement Review Board.  This constitutes the final administrative decision of the

Secretary of the Health and Human Services.  Pursuant to Section 1878(f) of the Social Security

Act and 42 CFR 405.1877, the Provider may obtain judicial review by filing a civil action within

60 days of receipt of this decision.

Sincerely yours,

Jacqueline R. Vaughn
Attorney Advisor

Enclosure

cc:  Bernard M. Talbert, Esquire, Intermediary's Representative

RECEIVED

DEC 0 4 2006

JDE

# CENTERS FOR MEDICARE AND MEDICAID SERVICES

## *Decision of the Administrator*

| | |
|---|---|
| **In the case of:** | **Claim for:** |
| Saint Anthony's Health Center | Provider Cost Reimbursement Determination for Cost Reporting P eriod Ending: 12/31/91, 12/31/92 |
| **Provider** | |
| **vs.** | |
| Blue Cross Blue Shield Association/ AdminaStar Federal Illinois | Review of: PRRB Dec. No. 2006-D55 Dated: September 26, 2006 |
| **Intermediary** | |

This case is before the Administrator, Centers for Medicare & Medicaid Services (CMS), for review of the decision of the Provider Reimbursement Review Board (Board). The review is during the 60-day period in § 1878(f) (1) of the Social Security Act (Act), as amended (42 USC 1395oo (f)). The parties were notified of the Administrator's intention to review the Board's decision. Comments were received from the CMS' Center for Medicare Management (CMM) requesting reversal of the Board's decision. All comments were timely received. Accordingly, this case is now before the Administrator for final agency review.

## <u>ISSUE AND BOARD'S DECISION</u>

The issue is whether the full amount of Provider's exception requests to the skilled nursing facility (SNF) routine service cost limits under 42 C.F.R. §413.30(f) was properly denied because the Provider did not request the exceptions within 180 days of the original notices of program reimbursement (NPR).

The Board held that the Provider is entitled to consideration of the full amount of the exception request based on the appeal of its revised NPR. First, the Board stated that the Intermediary was unaware of CMS' position of limiting any relief from a revised NPR adjustment to the incremental increase in the amount the provider's costs

exceeded its revised cost limit. The Intermediary had recommended to CMS, the acceptance of more than the incremental increase in the adjustments on the revised NPRs.[1] CMS' notice to all intermediaries concerning the adjustments to the RCLs authorizes adjustments to exceptions already granted and it addresses how new exception requests will be handled.[2] That communication demonstrates that CMS anticipated that exception requests would be filed from revised NPRs yet there is no mention of a limit on any relief from a revised NPR adjustment to the incremental increase only.

The Board found no basis for CMS' limitation in the regulations at 42 C.F.R. §§405.413.30(c) and 405.1889. 42 C.F.R. §§405.413.30(c) states that the "provider's request for an exception must be made to its fiscal intermediary within 180 days of the date on the intermediary's notice of program reimbursement." The Board noted that the regulation does not make a distinction between types of NPRs; therefore, a provider should be allowed to make an exception request for the full amount from any NPR in which the RCL is at issue.

The Board further stated that even when §405.1889 is applied, the appeal from the revised NPR was proper. The Board found that this case is distinguishable from French Hospital Medical Center v. Shalala, 89 F.3d 1411 (9th Cir. 1996), in which a provider was not allowed to contest its cost limits from a revised NPR where the provider sought an exception from an adjustment for malpractice insurance costs. The court held the denial of the exception request was proper because "[n]either the RCL, nor components of the RCL, were at issue in the revised NPRs." In this instance, the Intermediary did adjust the RCLs in the revised NPRs; thus, the Provider is entitled to make its exception requests from the revised NPRs.

## SUMMARY OF COMMENTS

CMM commented requesting that the Administrator reverse the Board's decision. CMM argued that a revised NPR does not give a provider new appeal rights for an issue that could have been appealed under the original NPR – where the provider did not exercise its appeal rights timely. In accordance with existing regulations, where a revision is made on the amount of program reimbursement after such determination has been reopened, such revision is a separate and distinct determination. CMM argued that the courts in several federal decisions hold that in the case of a reopening, only matters contained in the revised NPR can be appealed. These cases state that

---

[1] Intermediary Exhibit 5.
[2] Intermediary Exhibit 3 at p.2.

the revised NPR does not revive appeal rights flowing from the original NPR if the provider failed to exercise those original appeal rights timely.

## **DISCUSSION**

The entire record, which was furnished by the Board, has been examined, including all correspondence, position papers, and exhibits.   The Administrator has reviewed the Board's decision. All comments received timely are included in the record and have been considered.

Section 1861(v)(1)(A) of the Social Security Act establishes that Medicare pays for the reasonable cost of furnishing covered services to program beneficiaries, subject to certain limitations. This section of the Act also defines reasonable cost as "the cost actually incurred, excluding there from any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." The Act further authorizes the Secretary to promulgate regulations establishing the methods to be used and the items to be included in determining such costs. Consistent with the statute, the regulation at 42 C.F.R. §413.9 states that all payments to providers of services must be based on the reasonable cost of services covered under Medicare and related to the care of beneficiaries.

In response to rising costs, and realizing that the original structure of reasonable costs provided little incentive for providers to operate efficiently in delivering services, Congress authorized the Secretary to establish cost limits. Specifically, the Secretary has the authority to:

> [p]rovide for the establishment of limits on the direct or indirect overall incurred costs... based on estimates of the costs necessary in the efficient delivery of needed health services...

SNF cost limits are established based upon reported costs that are adjusted for actual or projected cost changes by applying the SNF market basket index. When the cost limits are calculated, the limits are based on an estimated market basket index  that in turn are  based upon forecasts of economic trends that may be retroactively adjusted to reflect the actual index.   The market basket index is determined after the cost reporting period to which the limits apply is closed.   The market basket index is used than to adjust the limits to reflect cost changes occurring between the time of the cost reporting periods represented in the cost limits data and the time when the limits are applied.

Recognizing that providers under some circumstances would incur costs in excess of the routine cost limit, the regulation at 42 C.F.R. §413.30 establishes the SNF routine service cost limits and provides for a SNF exception to the limits. The regulation at 42 C.F.R. § 413.30(f) states:

> Exceptions. Limits established under this section may be adjusted upward for a provider under the circumstances specified in paragraphs (f)(1) through (f)(8) of this section … An adjustment is made only to the extent the costs are reasonable, attributable to the circumstances specified, separately identified by the provider, and verified by the intermediary.

In accordance with §413.30(c), the SNF must make its request for an exception to its fiscal intermediary within 180 days of the date on the intermediary's notice of program reimbursement or NPR.[3]  In pertinent part, the regulation states:

> [t]he provider's request must be made to its fiscal intermediary within 180 days of the date on the intermediary's notice of program reimbursement. The intermediary makes a recommendation on the provider's request to CMS [formerly HCFA], which makes the decision. CMS responses within 180 days from the date CMS received the request from the intermediary.  The intermediary notifies the provider of CMS' decision.  The time required for CMS to review the request is considered good cause for the granting of an extension of time to apply for Board review as specified in 405.1841 of this chapter. CMS' decision is subject to review under subpart R of part 405 of this chapter.

Regarding the appeal of an exception request under subpart R, the regulation at 42 CFR 405.1801, et seq,, provides procedures for appealing final determinations consistent with section 1878 of the Act.  Generally, Section 1878(a) of the Social Security Act provides that any provider of services which has filed a required cost report within the time specified in regulation, may obtain a hearing with respect to such cost report by Board if, "such provider is dissatisfied with a final determination of its  fiscal intermediary as to the amount of total program reimbursement  due the provider";  the amount in controversy is $10,000 or more;  and the provider files a

---

[3] At the close of its fiscal year, a provider must submit a cost report to its intermediary showing the costs it incurred during the fiscal year and the proportion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. The fiscal intermediary reviews the cost report, determines the total amount of Medicare reimbursement due the provider and issues the provider an NPR.

request for a hearing within 180 days after notice of the intermediary's final determination under paragraph (1)(a)(i)." The regulation at 42 CFR 405.1835 and 42 CFR §405.1841(a)(1) implements these statutory provisions.

However, the regulation at 42 C.F.R. §405.1885 also allows for a cost report to be reopened under certain limited circumstances on specific "matters at issue in such determination." The effects of reopening and revising an NPR are addressed at section 405.1889, which explains that, where a revision is made in a reimbursement determination after reopening, a provider's appeal rights are limited to the "separate and distinct determination" that results from the reopening to which the provisions of sections 405.1811, 405.1835, 405.1875 and 405.1877 are applicable. Thus, in the event that a specific reimbursement matter is reopened and revised, a provider's appeal rights are limited to the particular substantive matter that was revised, and do not extend to other substantive matter that were finalized in the initial NPR, but not subsequently reopened or revised. Thus, the appeal rights for such a revised determination is limited by regulation and does not flow from Section 1878 of the Act.

The regulation at 42 CFR 413.30 shows that an exception request and the appeal of such a request is intricately related to the NPR. While a provider may request an exception of the RCL within 180 days of its NPR, any appeal to the Board of the CMS determination on that request Board is through the appeal of the NPR. Therefore, a request for an exception made pursuant to a revised NPR will also be limited to the provisions of 42 CFR 405.1889 on appeal to the Board. To the extent that CMS allows an exception request to be made pursuant to a revised NPR, any relief will be limited to those costs affected by such a revision.

In this case, the Intermediary issued the Provider's original NPRs on September 2, 1993 for its fiscal year ended December 31, 1991 cost report and on April 1, 1994 for its FYE December 31, 1992 cost report. The Provider's routine costs exceeded the RCLs for both FYEs 1991 and 1992 and the Provider did not file exception requests with the Intermediary within 180 days of the original NPRs for either fiscal year as provided for under 42 C.F.R. 413.30(c).

The Intermediary issued notices of reopenings for FYEs 1991 and 1992 to update the SNF cost limits based on the market basket index. For both FYE 1991 and 1992 the change in the market basket index decreased the Provider's routine cost limit amount. As a total, the Provider's costs exceeded the cost limit under the original NPR plus the additional, incremental amount as a result of decreasing the cost limit, per the revised market basket, under the revised NPR.

The Provider filed exception requests for both FYE 1991 and 1992 within the 180 days of the revised NPRs as provided for under 42 C.F.R. 413.30(c). The Intermediary approved the exceptions for the incremental increase in the amount of costs that exceeded the RCL between the original NPRs and the revised NPRs. The Provider subsequently filed timely appeals requesting relief for the full amount in which its costs exceeded its cost limit for both FYEs 1991 and 1992 under both the original NPR and the revised NPR.

The Administrator finds that CMS properly determined that the Provider's requests for RCL exceptions made pursuant to the revised NPRs are limited by the provisions of 42 CFR 405.1889 to items and costs adjusted on those revised NPRs. Moreover, CMS properly determined that an adjustment for purposes of the application of the market basket pursuant to the revised NPRs did not open to challenge all costs originally denied under the RCL. Rather, CMS properly found that only those incremental costs denied as a result of the application of the revised market basket pursuant to the revised NPRs could be subject to relief. This policy is consistent with distinctive rights, only prescribed by regulation and not from the statute, which flow from a revised NPR.

As the regulation shows, an exception request is intricately related to the NPR. Likewise, an exception request made pursuant to a revised NPR is intricately related to those items and costs adjusted in the revised NPR. A revised NPR does not give a provider new appeal rights for costs that could have been appealed under the original NPR. Likewise, a provider's request for an exception made pursuant to a revised NPR is limited to those items and costs at issue in the revised NPR. Finally, the Board's review of any appeal of a determination on that exception request is also limited to those items and costs adjusted on the revised NPR as it is the revised NPR that forms the basis for Board jurisdiction.

In sum, the record shows that the Provider did not exercise its rights to request an exception within the required 180-day period of the original NPRs as set forth at 42 C.F.R. §413.30(c) for costs that exceeded the limits, but rather requested an exception from the revised NPRs issued as a result of the revised market basket. The Administrator finds that CMS' policy is consistent with the regulations at 42 C.F.R. §413.30(c) and 42 C.F.R. §405.1889 in prohibiting a SNF from receiving relief from costs that exceeded the RCL which were not affected by the revision of the NPR.

## **DECISION**

The decision of the Board is reversed in accordance with the foregoing opinion.

THIS CONSTITUTES THE FINAL ADMINISTRATIVE DECISION OF THE
SECRETARY OF HEALTH AND HUMAN SERVICES.

Date: _____      _____

Leslie V. Norwalk, Esq.
Acting Administrator
Centers for Medicare & Medicaid Services

C7-260
RMU

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

| I (a) PLAINTIFFS  Saint Anthony's Medical Center | DEFENDANTS  Michael O. Leavitt, Secretary |
|---|---|

I (a) PLAINTIFFS  Saint Anthony's Medical Center
1 Saint Anthony's Way
Alton, Illinois  62002
(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  80660
(EXCEPT IN U.S. PLAINTIFF CASES)

Madison County, IL

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

DEFENDANTS  Michael O. Leavitt, Secretary
US Department of Health & Human Services
200 Independence Ave, SW, Wash, DC  20201
COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  DC
(IN U.S. PLAINTIFF CASES ONLY)

CASE NUMBER  1:07CV00260

JUDGE: Ricardo M. Urbina

DECK TYPE: Administrative Agency Rev

DATE STAMP: 02/02/2007

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

□ 1 U.S. Government Plaintiff

□ 3 Federal Question
(U.S. Government Not a Party)

☒ 2 U.S. Government Defendant

□ 4 Diversity
(Indicate Citizenship of Parties in item III)

### III CITIZEN FOR PLAINTIFF

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | □ 1 | □ 1 | Incorporated or Principal Place of Business in This State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| □ A. *Antitrust* | □ B. *Personal Injury/ Malpractice* | ☒ C. *Administrative Agency Review* | □ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| □ 410 Antitrust | □ 310 Airplane<br>□ 315 Airplane Product Liability<br>□ 320 Assault, Libel & Slander<br>□ 330 Federal Employers Liability<br>□ 340 Marine<br>□ 345 Marine Product Liability<br>□ 350 Motor Vehicle<br>□ 355 Motor Vehicle Product Liability<br>□ 360 Other Personal Injury<br>□ 362 Medical Malpractice<br>□ 365 Product Liability<br>□ 368 Asbestos Product Liability | ☒ 151 Medicare Act<br><br>**Social Security:**<br>□ 861 HIA ((1395ff)<br>□ 862 Black Lung (923)<br>□ 863 DIWC/DIWW (405(g)<br>□ 864 SSID Title XVI<br>□ 865 RSI (405(g)<br><br>**Other Statutes**<br>□ 891 Agricultural Acts<br>□ 892 Economic Stabilization Act<br>□ 893 Environmental Matters<br>□ 894 Energy Allocation Act<br>□ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

## □ E. *General Civil (Other)* OR □ F. *Pro Se General Civil*

**Real Property**
□ 210 Land Condemnation
□ 220 Foreclosure
□ 230 Rent, Lease & Ejectment
□ 240 Torts to Land
□ 245 Tort Product Liability
□ 290 All Other Real Property

**Personal Property**
□ 370 Other Fraud
□ 371 Truth in Lending
□ 380 Other Personal Property Damage
□ 385 Property Damage Product Liability

**Bankruptcy**
□ 422 Appeal 28 USC 158
□ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
□ 535 Death Penalty
□ 540 Mandamus & Other
□ 550 Civil Rights
□ 555 Prison Condition

**Property Rights**
□ 820 Copyrights
□ 830 Patent
□ 840 Trademark

**Federal Tax Suits**
□ 870 Taxes (US plaintiff or defendant
□ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
□ 610 Agriculture
□ 620 Other Food &Drug
□ 625 Drug Related Seizure of Property 21 USC 881
□ 630 Liquor Laws
□ 640 RR & Truck
□ 650 Airline Regs
□ 660 Occupational Safety/Health
□ 690 Other

**Other Statutes**
□ 400 State Reapportionment
□ 430 Banks & Banking
□ 450 Commerce/ICC Rates/etc.
□ 460 Deportation

□ 470 Racketeer Influenced & Corrupt Organizations
□ 480 Consumer Credit
□ 490 Cable/Satellite TV
□ 810 Selective Service
□ 850 Securities/Commodities/ Exchange
□ 875 Customer Challenge 12 USC 3410
□ 900 Appeal of fee determination under equal access to Justice
□ 950 Constitutionality of State Statutes
□ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

③

| ☐ G. *Habeas Corpus/ 2255* | ☐ H. *Employment Discrimination* | ☐ I. *FOIA/PRIVACY ACT* | ☐ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ K. *Labor/ERISA (non-employment)* | ☐ L. *Other Civil Rights (non-employment)* | ☐ M. *Contract* | ☐ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

---

**V. ORIGIN**

☒1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7Appeal to District Judge from Mag. Judge

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Arises under 42 USC 1395oo(f)(1) for judicial review of final decision of Secretary HHS.

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   **DEMAND $**   Check YES only if demanded in complaint
**JURY DEMAND:** ☐ YES  ☒NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)  ☐ YES  ☒NO   If yes, please complete related case form.

DATE _Feb 2, 2007_   SIGNATURE OF ATTORNEY OF RECORD _____

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.