## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SAINT ANTHONY'S HEALTH CENTER | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07CV00260 (RMU) |
| | ) | |
| MICHAEL O. LEAVITT, Secretary | ) | |
| of Health and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Plaintiff respectfully moves for summary judgment in their favor on the grounds that there are no material facts in dispute and that Plaintiff is entitled to judgment as a matter of law. In support of this motion, the Court is respectfully referred to the accompanying Plaintiff's Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment, and Plaintiff's Statement of Material Facts As To Which There Is No Genuine Dispute. A proposed order setting the relief requested by this motion is also attached.

Respectfully Submitted,

_____/s/_____
Dennis M. Barry
D.C. Bar No. 375152
Vinson & Elkins L.L.P.
1455 Pennsylvania Avenue, N.W.
Suite 600
Washington, D.C. 20004-1008
202.639.6791/202.879.8891 (fax)

Counsel for Plaintiff

September 14, 2007

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SAINT ANTHONY'S HEALTH CENTER | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07CV00260 (RMU) |
| | ) | |
| MICHAEL O. LEAVITT, Secretary of Health and Human Services, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Dennis M. Barry
D.C. Bar No. 375152
Vinson & Elkins L.L.P.
1455 Pennsylvania Avenue, N.W.
Suite 600
Washington, D.C. 20004-1008
202.639.6791
202.879.8891 (fax)

Counsel for the Plaintiff

September 14, 2007

## TABLE OF CONTENTS

I.    INTRODUCTION..................................................................................................... 1

II.    THE PARTIES ........................................................................................................ 2

III.    BACKGROUND ON THE MEDICARE PROGRAM
AND THE ROUTINE COST LIMITATION ...................................................... 3

    A.    Medicare Claims and Appeals Process ..................................................... 3

    B.    Reimbursement for Services Furnished by Skilled Nursing Facilities ................... 4

    C.    SNF Routine Cost Limits ........................................................................... 5

    D.    Exception Requests .................................................................................... 6

IV.    STATEMENT OF FACTS AND PROCEDURAL HISTORY ........................... 9

    A.    Notices of Program Reimbursement ......................................................... 9

    B.    Plaintiff's RCL Exception Requests ........................................................ 10

    C.    Secretary's Denial of Plaintiff's Exception Requests ............................ 12

    D.    Plaintiff's Appeal .................................................................................... 13

V.    SUMMARY OF ARGUMENT ............................................................................. 14

VI.    ARGUMENT .......................................................................................................... 15

    A.    Standard of Review .................................................................................. 15

    B.    This Court Has Already Rejected the Secretary's Refusal to Grant Full
Exception Relief........................................................................................ 16

    C.    The Hospital Is Otherwise Entitled to Full Relief from the Revised RCLs
Reflected in the Revised NPRs ................................................................ 17

        1.    The Secretary's Determination is Inconsistent with
the Plain Language of the Regulation ......................................... 18

        2.    The Regulation Governing Appeals from Revised NPRs
Does Not Bar Full Relief to the Hospital .................................... 19

        3.    The Secretary Cannot Reasonably Apply A Policy
For Which It Gave No Advance Notice........................................ 22

VII.    CONCLUSION ....................................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Alaska Professional Hunters Ass'n, Inc. v. Federal Aviation Admin.,*
   177 F.3d 1030 (D.C. Cir. 1999) .................................................................. 16

*Anaheim Memorial Hospital v. Shalala,* 130 F.3d 845 (9th Cir. 1997) ....................... 21

*Batterton v. Francis,* 432 U.S. 416 (1977) .................................................................. 15

*Bethesda Hosp. Ass'n v. Bowen,* 485 U.S. 399 (1988) ................................................ 4

*Biloxi Reg'l Med. Ctr. v. Bowen,* 835 F.2d 345 (D.C. Cir. 1987) ................................ 16

*Burlington Truck Lines, Inc. v. United States,*
   371 U.S. 156 (1962) .................................................................................. 16

*French Hosp. Med. Ctr. v. Shalala,*
   89 F.3d 1411 (8th Cir. 1996) ..................................................................... 21

*Greyhound Corp. v. ICC,* 551 F.2d 414 (D.C. Cir. 1977) ............................................ 16

*HCA Health Servs. of Okla., Inc. v. Shalala,* 27 F.3d 614 (D.C. Cir. 1994) ................ 20

*Hooper v. Nat'l Transp. Safety Bd.,* 841 F.2d 1150 (D.C. Cir. 1988) .......................... 22

*Mercy Med. Skilled Nursing Facility v. Thompson,*
   2004 WL 3541332 (D.D.C. 2004) ..................................................... 2, 14, 17

*Morton v. Ruiz,* 415 U.S. 199 (1974) ......................................................................... 15

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm*
   *Mut. Auto. Ins. Co.,* 463 U.S. 29 (1983) ..................................................... 16

*Munsell v. U.S. Dept. of Agriculture,* 435 F. Supp. 2d 149 (D.D.C. 2006) .................. 19

*Nashville Milk Co. v. Carnation Co.,* 355 U.S. 373 (1958) ......................................... 19

*Shalala v. St. Paul Ramsey Med. Ctr.,* 50 F.3d 522 (8th Cir. 1995). ...................... 16, 19

*Skidmore v. Swift & Co.,* 323 U.S. 134 (1944) ........................................................... 15

*St. Luke's Meth. Hosp. v. Thompson,* 315 F.3d 984 (8th Cir. 2003) ........................ 2, 22

*Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504 (1994) ............................................ 15

*Transactive Corp. v. United States,* 91 F.3d 232 (D.C. Cir. 1996) ................................................ 16

*United Transportation Union v. Lewis,* 711 F.2d 233 (D.C. Cir. 1983) ........................................ 15

*WLOS TV, Inc. v. FCC,* 932 F.2d 993 (D.C. Cir. 1991) ................................................................. 16

## Statutes

5 U.S.C. § 706(2) ....................................................................................................................... 15
42 U.S.C. § 1395d(a)(2) ............................................................................................................... 3
42 U.S.C. § 1395h ................................................................................................................... 3, 4
42 U.S.C. § 1395i-2(a) ................................................................................................................. 3
42 U.S.C. § 1395x(v)(1)(A) ..................................................................................................... 4, 5
42 U.S.C. § 1395oo(f) ........................................................................................................... 14, 15
42 U.S.C. § 1395ww(b) .............................................................................................................. 18
42 U.S.C. § 1395ww(b)(1)(A) .................................................................................................... 18
42 U.S.C. § 1395ww(b)(1)(B) .................................................................................................... 18
42 U.S.C. § 1395ww(b)(3)(A) .................................................................................................... 18
42 U.S.C. § 1395ww(b)(3)(B) .................................................................................................... 18
42 U.S.C. § 1395ww(b)(4)(A) .................................................................................................... 18
42 U.S.C. § 1395yy(a) .................................................................................................................. 5
42 U.S.C. § 1395yy(a)(3)-(4) ....................................................................................................... 5

Administrative Procedure Act, 5 U.S.C. §§ 551 et seq. .............................................................. 15
Balanced Budget Act of 1997 § 1888, 42 U.S.C. § 1395yy (1997) ............................................. 4
Deficit Reduction Act of 1984 § 1888, 42 U.S.C. § 1395yy (1984) ......................................... 5, 7
Social Security Amendments of 1972 § 223,
    42 U.S.C. § 1395x(v)(1)(A) (1972) ........................................................................................ 5
Tax Equity and Fiscal Responsibility Act of 1982 § 101,
    42 U.S.C. § 1395ww(b) (1982) ............................................................................................. 18

## Regulations

20 C.F.R. § 405.460(e)(1974) ....................................................................................................... 7
20 C.F.R. § 405.460(f) ................................................................................................................... 7
20 C.F.R. § 405.460(f)(2)(1974) ................................................................................................... 7
42 C.F.R. § 405.1803(a) ................................................................................................................ 4
42 C.F.R. § 405.1811 ................................................................................................................... 20
42 C.F.R. § 405.1835 ................................................................................................................... 20
42 C.F.R. § 405.1875 ................................................................................................................... 20
42 C.F.R. § 405.1877 ................................................................................................................... 20
42 C.F.R. § 405.1885 ..................................................................................................................... 6
42 C.F.R. § 405.1889 ............................................................................................................. 19, 20
42 C.F.R. § 406.5 ........................................................................................................................... 3
42 C.F.R. § 413.20(b) .................................................................................................................... 4
42 C.F.R. § 413.30 ........................................................................................................................ 8
42 C.F.R. § 413.30(c) .................................................................................................... 7, 10, 18, 22

42 C.F.R. § 413.30(f) ............................................................................................ 7, 9, 10

42 C.F.R. § 413.30(f)(1) ............................................................................................ 7, 8

42 C.F.R. § 413.40(d) .................................................................................................... 18

42 C.F.R. § 413.40(e) ............................................................................................... 18, 19

42 C.F.R. § 413.40(e)(1) ............................................................................................... 19

42 C.F.R. § 413.5(a) ........................................................................................................ 5

42 C.F.R. § 413.50(b) ...................................................................................................... 5

39 Fed. Reg. 20164 (June 6, 1974) ................................................................................ 5, 7

44 Fed. Reg. 31804 (June 1, 1979) .................................................................................. 7

44 Fed. Reg. 51542 (Aug. 31, 1979) ............................................................................... 6

51 Fed. Reg. 34792 (Sept. 30, 1986) ............................................................................... 7

56 Fed. Reg. 13319 (Apr. 1, 1991) ................................................................................ 10

63 Fed. Reg. 26289 (May 12, 1998) ................................................................................. 6

64 Fed. Reg. 42612 (Aug. 5, 1999) ................................................................................. 7

66 Fed. Reg. 39581 (July 31, 2001) ................................................................................ 6

## <u>Other Authorities</u>

Deficit Reduction Act of 1984, Explanation of Provisions Approved by the Comm.
on March 21, 1984, S. Comm. on Finance, Senate Print 98-169, v.1, *reprinted in*
MEDICARE AND MEDICAID GUIDE (CCH), Pt. II, No. 423 (Apr. 13, 1984) ................................ 8

H.R. Rep. No. 92-231, 92nd Cong., 2nd Sess. (1972),
*reprinted in* 1972 U.S.C.C.A.N. 5701 ........................................................................ 6

Provider Reimbursement Manual (HCFA Pub. 15-1) (1994) .................................. 8, 9, 11, 17, 18

Norman J. Singer, *Sutherland on Statutes and Statutory Construction* § 42.23
(6th ed. 2000) ..................................................................................................... 19

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SAINT ANTHONY'S HEALTH CENTER | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07CV00260 (RMU) |
| | ) | |
| MICHAEL O. LEAVITT, Secretary | ) | |
| of Health and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### I.    INTRODUCTION

This is an action for judicial review of a final decision rendered by the Administrator of the Centers for Medicare & Medicaid Services (CMS), on behalf of the Defendant Secretary, improperly limiting the amount of Medicare reimbursement received by the Plaintiff, St. Anthony's Health Center, a Medicare-participating nonprofit hospital ("Plaintiff Hospital" or "St. Anthony's") for its 1991 and 1992 cost reporting years.

Plaintiff Hospital operates a skilled nursing facility ("SNF") that treats Medicare patients. By statute, Defendant Secretary pays Plaintiff Hospital directly for SNF services furnished to Medicare patients. The amount of payment for the years in dispute was based on Plaintiff Hospital's "actual" "reasonable cost," subject to certain overall limitations on routine cost. Exception relief to the cost limitations was available, and Plaintiff Hospital filed requests for full exception relief for both years. Plaintiff Hospital's requests for exception payments were reviewed in detail by the Medicare contractor, which recommended approval to Defendant Secretary subject to a new limitation described in agency policy guidance purportedly

interpreting the governing regulation. The contractor did not identify any costs that were unreasonable. Defendant Secretary ultimately approved exception requests, but further limited the amount of exception payments in a manner inconsistent with controlling law and regulations because the revised cost limitations from which St. Anthony's sought relief were adopted through revised Medicare payment determinations, and Plaintiff Hospital had not sought relief from the initial cost limitations.

Thus, even though Defendant Secretary concluded that Plaintiff Hospital was entitled to exception relief because of the atypical acuity of its patients and other circumstances, and no unreasonable costs were identified, the total amount of payment even with the exception relief was substantially less than Plaintiff Hospital's actual, reasonable costs – approximately $500,000 for the two years together. It had been the Secretary's longstanding policy to pay the full amount of reasonable costs in excess of the applicable cost limitation when a provider qualified for exception relief. Nothing in Defendant Secretary's regulations suggests that the full amount of costs will not be paid when an exception request is granted. This Court has decided that the Secretary could not change this full relief policy without undertaking notice and comment rulemaking. *Mercy Med. Skilled Nursing Facility v. Thompson*, 2004 WL 3541332, at *2–*3 (D.D.C. 2004). The same issue was decided in favor of the appealing hospital in *St. Luke's Meth. Hosp. v. Thompson*, 315 F.3d 984 (8th Cir. 2003). There is no basis for distinguishing this case from these two prior decisions.

## II.    THE PARTIES

Plaintiff Hospital is a two campus hospital in Alton, Illinois that is organized as a domestic not-for-profit corporation under the laws of the State of Illinois. It is owned and operated by the Sisters of St. Francis of the Martyr St. George. Saint Clare's Hospital, one of St. Anthony's facilities, operates a hospital-based SNF known as the "Extended Care Facility at

Saint Clare's Hospital."  The exception requests that are the subject of this appeal relate to services that were furnished at the Extended Care Facility at St. Clare's Hospital.  Plaintiff Hospital is and was at all times relevant hereto a "provider of services" participating in the Medicare Program established under Title XVIII of the Social Security Act.

Defendant, Michael O. Leavitt, Secretary of the United States Department of Health and Human Services ("Defendant Secretary"), is sued in his official capacity.  Defendant Secretary is the federal officer to whom Congress has delegated administration of the Medicare program.  Defendant Secretary exercises the administrative responsibility of the Medicare program primarily through CMS (formerly known as the Health Care Financing Administration), an agency of the Department of Health and Human Services.  Defendant Secretary contracts with private organizations (usually an insurance company) to perform certain audit, administrative and payment functions with respect to the Medicare program.  42 U.S.C. § 1395h.  These contractors are usually called "fiscal intermediaries" or "intermediaries".  The fiscal intermediary assigned to Plaintiff Hospital was Health Care Services Corporation.  Over the course of the events that led to this appeal, Administar Federal was substituted as Plaintiff Hospital's fiscal intermediary (both Health Care Services Corporation and Administar Federal are hereinafter referred to as the "Intermediary.")

## III.    BACKGROUND ON THE MEDICARE PROGRAM AND THE ROUTINE COST LIMITATION

### A.      Medicare Claims and Appeals Process

The Medicare program  is a federal health insurance program that covers patients who are at least 65 years of age or who are disabled.  *See* 42 U.S.C. § 1395i-2(a); 42 C.F.R. § 406.5.  Medicare benefits include payment to the provider for post-hospital extended care services furnished in a SNF.  42 U.S.C. § 1395d(a)(2).

After the close of each fiscal year, a Medicare provider, such as the Hospital, must file a cost report with its Medicare fiscal intermediary. 42 C.F.R. § 413.20(b). The intermediary audits the cost report and issues a determination of the amount of reimbursement due the provider in an NPR. *See* 42 U.S.C. § 1395h; 42 C.F.R. § 405.1803(a); *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 400-01 (1988).

## B.     Reimbursement for Services Furnished by Skilled Nursing Facilities

For the years in dispute, the Medicare program was required by statute to reimburse each SNF its "actual" "reasonable cost" of furnishing care to Medicare beneficiaries. 42 U.S.C. § 1395x(v)(1)(A).[1] "Reasonable cost" is include those costs "actually incurred, excluding any part...unnecessary in the efficient delivery of needed health services." *Id*. The statute mandates that "reasonable cost" shall be determined "in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services." *Id.* However, in enacting regulations pursuant to Congress' grant of authority, the Secretary may not shift the costs of Medicare patients to non-Medicare patients. The Medicare statute prohibits Medicare and other payers from "cross-subsidizing" each other. 42 U.S.C. § 1395x(v)(1)(A). The statute provides that the regulations establishing "reasonable cost":

> *shall* (i) take into account both direct and indirect costs of providers of services . . . in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this title will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs.

---

[1] Congress amended the law to provide for Medicare payment to skilled nursing facilities to be based on prospectively determined rates. Balanced Budget Act of 1997 (Pub. L. 105-33), amending Social Security Act § 1888 (42 U.S.C. § 1395yy). Under the prospective payment system, SNFs are paid according to nationally applicable rates (subject to adjustment for wage levels in each area).

42 U.S.C. § l395x(v)(1)(A) (emphasis added); *see also* 42 C.F.R. §§ 413.5(a), 413.50(b). Accordingly, although Congress delegated the responsibility for establishing methods for determining "reasonable cost" to Defendant Secretary, such methods may not result in non-Medicare patients bearing the cost of furnishing services to Medicare patients.

### C.     SNF Routine Cost Limits

The Secretary is authorized to establish appropriate cost limits as part of the method of determining reasonable costs. 42 U.S.C. § 1395x(v)(1)(A). Section 223 of the Social Security Amendments of 1972, Pub. L. No. 92-603 (Oct. 30, 1972), authorized Defendant Secretary to establish limits on the direct or indirect overall costs of services to be recognized as reasonable. 42 U.S.C. § 1395x(v)(1)(A). For purposes of the cost limits, SNFs are grouped based on whether they are free-standing or hospital-based and whether they are urban or rural. *See* 42 U.S.C. § 1395yy(a).[2]

In 1974, Defendant Secretary promulgated a regulation establishing the routine cost limitations ("RCLs or cost limits") for SNFs pursuant to this statutory authority. 39 Fed. Reg. 20164 (June 6, 1974). Under the regulation, the cost limits are published annually in the Federal Register. *Id.* at 20165.

In implementing the cost limits, Defendant Secretary provided for periodic adjustments to the RCLs to reflect cost increases occurring between the time of the cost reporting periods

---

[2] In 1984, Congress enacted the Deficit Reduction Act of 1984 ("DEFRA"), Pub. L. No. 98-369 (July 18, 1984), which added Section 1888 to the Social Security Act. *See* 42 U.S.C. § 1395yy. This provision changed the RCL for hospital-based SNFs. This new provision directed the Secretary, effective for cost reporting periods beginning on or after July 1, 1984, to set the RCLs for urban hospitals as follows:
1) For freestanding SNFs in urban areas, 112% of the mean per diem routine service costs for freestanding SNFs in urban areas; and
2) For hospital-based SNFs in urban areas, the sum of the limit for freestanding SNFs in urban areas plus 50% of the amount by which 112% of the mean per diem routine service costs for hospital-based SNFs in urban areas exceeds the limit for freestanding SNFs in urban areas.
42 U.S.C. § 1395yy(a). Thus, while the routine cost limitation for freestanding urban SNFs remained the same, the limitation for hospital-based urban SNFs was lowered. 42 U.S.C. § 1395yy(a)(3)-(4).

represented in the data collection to the time when the limits are applied. 44 Fed. Reg. 51542 (August 31, 1979). The "market basket index"[3] is the benchmark used to make the adjustments. *Id.* at 51543. CMS developed and adopted a SNF market basket index as the benchmark for adjusting RCLs in 1979 using data from 1976 as the base year. *Id.* As originally adopted, the SNF market basket index was based upon "the most commonly used categories of SNF routine service expenses." *Id.* However, in accordance with Section 1888(e)(5)(A) of the Social Security Act, CMS adopted a total expenses (routine, ancillary, and capital-related) index formula in 1998 to replace the routine costs input price formula for purposes of calculating the market basket. 63 Fed. Reg. 26289 (May 12, 1998).

As the market basket index itself cannot be determined until after the cost reporting period to which the limits apply, CMS calculates RCLs using an estimated market basket index which is based upon forecasts of economic trends. *See* 44 Fed. Reg. 51542-43 (August 31, 1979). If the market basket index for a fiscal year differs from the estimated rate of change by at least 0.3 of one percentage point, CMS will instruct the fiscal intermediary to reopen a provider's cost report pursuant to 42 C.F.R. § 405.1885 and retroactively adjust cost limits to reflect the actual index. *See* A.R. 205-08 (HCFA letter to intermediaries describing processes for updating RCLs to reflect actual market basket indices).

### D.    Exception Requests

In the legislative history to the 1972 amendments authorizing the cost limits, Congress made clear that it contemplated an exception process.[4] As an exercise of his statutory authority to establish exceptions to limits on the allowable costs of Medicare SNF services, in 1974

---

[3] "[T]he SNF market basket is a fixed-weight (Laspeyres type) price index. A Laspeyres type index compares the cost of purchasing a specified group of commodities in a selected based period to the cost of purchasing that same group at current prices." 66 Fed. Reg. 39581 (July 31, 2001).
[4] H.R. Rep. 92-231, 92nd Cong., 2nd Sess. (1972), *reprinted* in 1972 U.S.C.C.A.N. 5701.

Defendant Secretary promulgated various exceptions to the cost limits.[5]    One exception was based on the provision of services by a provider that were "atypical in nature and scope as compared to the services generally provided by institutions similarly classified."  20 C.F.R. § 405.460(f)(2)(1974).[6]  A provider could request an exception to the cost limits by submitting a request to the fiscal intermediary within 180 days of the NPR.  20 C.F.R. § 405.460(e)(1974).  The regulation did not distinguish between an initial or a revised NPR.

The language of the regulation was revised effective July 1, 1979, and remained unchanged from 1979 until after the years at issue.[7]  The regulation was re-designated as 42 C.F.R. § 413.30 in 1986, with no changes to its text.[8]

The atypical services exception is found at 42 C.F.R. § 413.30(f):[9]

(f)    Exceptions.  Limits established under this section may be adjusted . . . for a provider under the circumstances specified. . . .  An adjustment is made only to the extent the costs are reasonable, attributable to the circumstances, specified, separately identified by the provider, and verified by the intermediary.

(1)    Atypical services.  The provider can show that the –

(i)    Actual cost of items or services furnished by a provider exceeds the applicable limit because such items or services are atypical in nature or scope, compared to the items or services generally furnished by providers similarly classified; and
(ii)    Atypical items or services are furnished because of the special needs of the patients treated and are necessary in the efficient delivery of needed health care.

See 42 C.F.R. § 413.30(f)(1).  Although the Social Security Act provisions governing SNF cost limits were amended in 1984,[10] the amendments did not alter the Secretary's rules permitting a

---

[5] 39 Fed. Reg. 20165 (June 6, 1974) (codified at 20 C.F.R. § 405.460(f)(2)).
[6] Id.
[7] 44 Fed. Reg. , 31804  (June 1, 1979) (codified at 20 C.F.R. § 405.460(f)).
[8] 51 Fed. Reg. 34792 (Sep. 30, 1986).
[9] The atypical services exception was codified at 42 C.F.R. § 413.30(f) during the time period relevant to this dispute.  It has since been amended and redesignated as 42 C.F.R. § 413.30 (c).  See 64 Fed. Reg. 42612-13 (August 5, 1999).
[10] DEFRA § 2319.

SNF that qualifies for an atypical services exception from receiving *full* reimbursement of reasonable costs. The legislative history of the amendments clearly acknowledges that providers meeting the criteria for exception relief should receive "up to all of their reasonable costs" through the exception process:

> Under this provision, *both hospital-based and freestanding facilities* could continue to apply for and receive exceptions from the cost limits in circumstances where high costs result from more severe than average case mix or circumstances beyond the control of the facility. Indicators of more severe case mix include a comparatively high proportion of Medicare days to total patient days, comparatively high ancillary costs, or relatively low average length of stay for all patients (an indicator of the rehabilitative orientation of the facility). *Facilities eligible for exceptions could receive, where justified, up to all of their reasonable costs.*[11]

Consistent with this legislative history and with his interpretation of 42 C.F.R. § 413.30(f)(1), the Secretary continued to measure the exceptions he awarded to hospital-based SNFs from the cost limit, and not from some point above the cost limit.

In July 1994 the Secretary, through HCFA, issued Transmittal No. 378. The transmittal included instructions purporting to "interpret" and provide implementing details for 42 C.F.R. § 413.30 through the addition of § 2534.5 to the Provider Reimbursement Manual (HCFA Pub. 15-1) ("PRM"). Section 2534.5 instructed that the atypical services exception amount for a hospital-based SNF should be measured not from its RCL, as had been the Secretary's interpretation up through July 1994, but from 112 percent of the SNF's peer group mean, a point significantly higher than the RCL for a hospital-based SNF. Thus costs, no matter how reasonable and necessary in fact, were not paid through an exception to the extent that those

---

[11] Deficit Reduction Act of 1984, Explanation of Provisions Approved by the Committee on March 21, 1984, Committee on Finance, United States Senate, Senate Print 98-169, v.1, *as reprinted in* Medicare and Medicaid Spending Reductions in the Deficit Reduction Act of 1984, Explanation by the Senate Finance Committee and Text of Title IX of the Bill, MEDICARE AND MEDICAID GUIDE (CCH), Pt. II, No. 423 at p. 948 (Apr. 13, 1984) (emphasis added). A copy is attached as Plaintiff's Exhibit A.

costs fell between the cost limit and 112 percent of the cost limit.[12]  Defendant Secretary thereby created a reimbursement "gap" by which all hospital-based SNFs that provide atypical services to their patients could never receive payment for their per diem costs between the cost limit and 112 percent of the peer group mean.  There was no notice or opportunity for public comment prior to the promulgation of the new manual provision, and the change in reimbursement occurred despite the fact that such hospital-based SNFs met the regulatory requirements of 42 C.F.R. § 413.30(f) for the atypical services exception.

Transmittal No. 378, did, for the first time, offer providers guidance on how to make exception requests and initiated a flurry of provider requests.  Nothing in Transmittal No. 378, however, addressed whether exception requests should be made from the initial NPR or the one issued to open a provider's cost report to implement adjustments to the RCLs based on changes in the market basket index.

## IV.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.    Notices of Program Reimbursement

---

[12] In applying this new policy, CMS disaggregated the cost limit into individual cost centers, and for each cost center, measured the exception requestor's actual costs determined to be reasonable by the intermediary against the portion of the cost limit deemed to relate to that cost center.  PRM § 2534.5, as revised in 1994, states:

> In determining reasonable cost [to be paid through the exception process], the provider's per diem costs in excess of the cost limit are subject to a test for low occupancy and are compared to per diem costs of a peer group of similarly classified providers. . . .  With cost reporting periods beginning prior to July 1, 1984 for each free-standing group and each hospital-based group, each cost center's ratio is applied to the cost limit [i.e., the RCL] applicable to the cost reporting period for which the exception is requested.  For each hospital-based group with cost reporting periods beginning on or after July 1, 1984, the ratio is applied to 112% of the group's mean per diem cost (not the cost limit), adjusted by the wage index and cost reporting year adjustment factor applicable to the cost reporting period for which the exception is requested. . . .

> The SNF's actual per diem cost . . . is compared to the appropriate component of the disaggregated cost limit or 112 percent of the hospital-based mean per diem cost.  If the SNF's per diem cost exceeds the peer group per diem cost for any cost center, the higher cost must be explained.  Excess per diem costs which are not attributable to the circumstances upon which the exception is requested and cannot be justified may result in either a reduction in the amount of the exception or a denial of the exception.

PRM § 2534.5.

On September 2, 1993 the Fiscal Intermediary issued an NPR for St. Anthony's fiscal year ending December 31, 1991 ("FY 1991").[13]  A.R. at 43.  On April 1, 1994 the Intermediary similarly issued an NPR for St. Anthony's fiscal year ending December 31, 1992 ("FY 1992").  A.R. at 122.  At this time, Medicare providers had virtually no guidance on when or how to request an adjustment to their routine RCLs based on the atypical services exception set forth in 42 C.F.R. § 413.30(f), other than the directive at Section 413.30(c) to file an exception within 180 days of the NPR.  Because the SNF RCLs were subject to future adjustment by the relevant "market basket index," it was unclear whether exception requests should be filed within 180 days of the initial or the revised NPR.  St. Anthony's cost reports had been subject to retroactive adjustments based on the "market basket index" each year since 1988.

In 1996, when HCFA[14] determined that the estimated market basket index for fiscal years 1991 and 1992 exceeded actual market basket figures by more than the established ceiling, it instructed intermediaries to retroactively adjust cost limits to reflect the *actual* market basket index figures.[15]  Consequently, on August 29, 1996, the Intermediary notified St. Anthony's of the reopening of its cost reports, A.R. 210, and on October 31, 1996, issued revised NPRs which actually decreased St. Anthony's RCLs by $3.41 for FY 1991 and by $6.26 for FY 1992.  A.R. at 54-58, 136-39.

### B.    Plaintiff's RCL Exception Requests

On April 23, 1997, fewer than 180 days from the date on its revised NPR for FY 1992, St. Anthony's filed a request for an RCL exception based on its provision of "atypical services." A.R. at 173-76.  On April 25, 1997, again fewer than 180 days from the date on the revised NPR

---

[13] References to the Administrative Record will be designated as "A.R. at page number."
[14] For events that took place before HCFA changed its name to CMS, and to maintain consistency with the evidence, HCFA will be used.
[15] *See* 56 Fed. Reg. 13319-20  (April 1, 1991).

for FY 1991, St. Anthony's similarly submitted exception requests seeking adjustments to its RCLs for 1991. A.R. at 90-95.

As noted above, Transmittal No. 378 did not differentiate between an exception request to an initial NPR and an exception request to a revised NPR. There was no notice to providers that HCFA intended to limit a Provider's reimbursement if it made an atypical services exception request to a revised NPR as opposed to an initial NPR. St. Anthony's in good faith believed that it could make exception requests to these revised NPRs as long as it did so within 180 days of the date on the revised NPR.

St. Anthony's exception requests included the documentation required by PRM § 2534.10 to demonstrate that it provided "atypical services." A.R. at 174. The specific cost centers for which St. Anthony's sought exceptions to the RCLs included: nursing salary cost, employee health and welfare, administrative and general, laundry, housekeeping, cafeteria, nursing administration, medical records and social service. A.R. at 174-176. For the years in question, St. Anthony's demonstrated that it exceeded all of the benchmarks established by HCFA for atypical services. Specifically, in 1991, St. Anthony's had an average length of stay of 18.23 days compared to 132.34 days for the Peer Group, Medicare utilization of 87.97 percent compared to 52.39 percent for the Peer Group, and Medicare SNF ancillary per diem costs of $137.74 compared to $62.73 for the Peer Group. A.R. at 93-94. In 1992, St. Anthony's had an average length of stay of 19.67 days compared to 132.34 days for the Peer Group, Medicare utilization of 92.09 percent compared to 52.39 percent for the Peer Group, and Medicare SNF ancillary per diem costs of $132.90 compared to $62.73 for the Peer Group. A.R. at 174-176. A lower than average length of stay, higher than average Medicare Utilization, and higher than

average Medicare SNF ancillary costs amply demonstrated that St. Anthony's provided atypical services to higher acuity patients.

In FY 1991, St. Anthony's requested a per diem exception of $45.84 for 5,533 Medicare days, for a total exception amount of $253,645. A.R. at 95. Its actual costs per diem exceeded the routine cost limit by $59.05. A.R. at 95. For FY 1992, St. Anthony's actual costs per diem exceeded the routine cost limit by $67.02. A.R. at 177. St. Anthony's requested a per diem exception of $44.83 for 5,381 Medicare days, for a total exception amount of $241,212. A.R. at 177.

### C.    SNF Exception Requests

Prior to responding to St. Anthony's exception requests, the Intermediary sent HCFA a letter (dated May 21, 1997) specifically acknowledging that St. Anthony's exception requests were *timely filed.* A.R. at 222. The Intermediary, likewise, acknowledged that St. Anthony's had submitted data which demonstrated that its Medicare patients had "a shorter length-of-stay, higher acuity of illness, higher nursing hours per patient day, greater Medicare utilization and higher ancillary cost per day when compared to other urban SNFs" (consistent with "atypical services"). A.R. at 222-23. The Intermediary recommended to HCFA that St. Anthony's be granted an adjustment in the amount of $18.51 per day for fiscal year 1991 and in the amount of $21.06 per day for fiscal year 1992. A.R. at 223. This reimbursement calculation was based on the new methodology set forth in Transmittal No. 378, which was inconsistent with the Secretary's longstanding interpretation of its governing regulation and which would not appropriately reimburse St. Anthony's for all of its costs in excess of the routine cost limitation.

In response to the Intermediary's recommendation, HCFA instructed the Intermediary to deny St. Anthony's exception requests altogether. A.R. at 225. On July 18, 1997, the Intermediary sent St. Anthony's a letter for the first time advising St. Anthony's that it was

HCFA's *policy* that "i[f] an exception is submitted after 180 days of the *original* NPR but within 180 days of a *revised* NPR, an exception may only be granted for the *incremental increase* in the amount that the provider's cost exceeds its revised cost limit." A.R. at 225. (Emphasis added). Not only was St. Anthony's unaware of this unwritten and previously uncommunicated policy, the Intermediary – the Secretary's own agent – was similarly unaware.

The Intermediary notified St. Anthony's that it could resubmit its exception requests with corrected documentation within 45 days. A.R. at 225. HCFA subsequently approved cost limit exceptions in the amount of $3.41 per day for 1991 and $6.26 per day for 1992. These adjustments in effect simply reversed the decrease to St. Anthony's RCLs that would have resulted from retroactive application of the actual market basket index. A.R. at 227, 229. The adjustments resulted in a reduction to the exception payment for atypical services by approximately $235,000 in 1991[16] and $207,000 in 1992,[17] for a total amount in controversy of approximately $442,000 (representing the amount of reasonable costs for which Saint Anthony's was *not* reimbursed due to the Secretary's *alleged policy* of limiting RCL exception requests to original NPRs). A.R. at 22.

### D.    Plaintiff's Appeal

St. Anthony's timely filed an appeal with the Provider Reimbursement Review Board ("Board") disputing HCFA's denial of St. Anthony's *full* request for relief (costs in excess of the SNF RCLs) for both cost reporting periods at issue. A.R. at 332-34. On September 26, 2006, the Board issued its decision finding that St. Anthony's was entitled to consideration of the *full amount* of its exception requests based on appeal of its *revised* NPRs. A.R. at 19-25. The Board

---

[16] St. Anthony's requested an atypical services exception for 1991 in the amount of $253,645 based on 5,533 Medicare Days. HCFA's $3.41 per diem exception for these 5,533 days amounted to a reimbursement total of $18,867.53 for FY 1991 and a "reimbursement gap" of $234,777.47.

[17] St. Anthony's requested an atypical services exception for 1992 in the amount of $241,212, based on 5,381 Medicare Days. HCFA's $6.26 per diem exception for these 5,381 days amounted to a reimbursement total of $33,685.06 for FY 1992 and a "reimbursement gap" of $207,536.94.

found that a provider may request an exception to the RCL from *any* NPR in which the Intermediary adjusted its RCL and that there was no basis to limit a provider's exception request made from a revised NPR. A.R at 24. The Board concluded that HCFA's partial denial of St. Anthony's SNF exception requests was *improper* and remanded the matter to the Intermediary for consideration of St. Anthony's full request for relief. A.R. at 25.

On October 18, 2006, the Administrator informed the parties that she would review the Board decision pursuant to her authority under 42 U.S.C. § 1395oo(f) (2002). A.R. at 9-10. The Administrator issued a decision reversing the Board's decision on November 29, 2006. A.R. at 2-8.

## V.    SUMMARY OF ARGUMENT

The Secretary's decision is arbitrary, capricious, an abuse of discretion, not in accordance with the law and should be set aside because:

(1) The Secretary's decision not to grant Plaintiff Hospital full exception relief contravenes this Court's prior holding that the Secretary cannot change his longstanding policy of granting full exception relief without engaging in notice and comment rulemaking. *Mercy Med. Skilled Nursing Facility*, 2004 WL 3541332, at *2 - *3.

2) The Secretary has conveniently read into the SNF exception request regulation words and limitations that simply are not there. In the Secretary's regulation governing a similar type of cost limit exception relief, the Secretary did set the limits he wishes he had for SNF RCL exceptions. The omission in the regulation at issue here dooms the Secretary's case.

3) Even assuming that were not true, another set of regulations governing administrative appeals from revised Medicare payment determinations lends no greater support to the Secretary's position. First, they do not have any bearing on the permissible scope of a

payment redetermination.  Second, they do not bar relief because the RCLs at issue were in fact revisited and therefore properly the subject of an exception request; and

> 4)     The Secretary's failure to give fair notice that full RCL exception relief could be granted only from initial payment determinations is arbitrary and capricious.

## VI.    ARGUMENT

### A.    Standard of Review

Jurisdiction over this action lies under 42 U.S.C. § 1395oo(f), which provides that the case "shall be tried pursuant to the applicable provisions under" the Administrative Procedure Act, 5 U.S.C. § 551 et seq. ("APA").  The applicable provisions of the APA require a reviewing court to set aside the Secretary's decision if it is contrary to the statute, arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law.  5 U.S.C. § 706(2).

An agency's interpretation of a regulation may be overturned when the agency's interpretation is plainly erroneous, inconsistent with the plain language of the regulation, or when an alternative interpretation of a regulation is indicated by the agency's intent when it adopted the regulation. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994).  Although ordinarily the agency's interpretation of its own regulations is entitled to deference, "[v]arying degrees of deference are accorded to administrative interpretations, based on such factors as the timing and consistency of the agency's position, and the nature of its expertise." *Batterton v. Francis*, 432 U.S. 416, 425 n. 9 (1977). *Cf. Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (weight of agency's interpretation of statute "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements"); *Morton v. Ruiz*, 415 U.S. 199, 237 (1974); *United Transportation Union v. Lewis*, 711 F.2d 233, 242 (D.C. Cir. 1983) ("A statutory construction to which an agency has not

consistently adhered is owed no deference."). No deference is due to an agency's interpretation that "reads unwritten and additional terms into the rule in question." *Shalala v. St. Paul Ramsey Med. Ctr.*, 50 F.3d 522, 529 (8th Cir. 1995).

The scope of review under the arbitrary and capricious standard entails a careful, searching inquiry as to whether:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Further, an agency decision that constitutes an unexplained departure from agency precedent must be overturned as arbitrary and capricious. *Transactive Corp. v. United States*, 91 F.3d 232, 237-38 (D.C. Cir. 1996); *WLOS TV, Inc. v. FCC*, 932 F.2d 993, 996-98 (D.C. Cir. 1991); *Greyhound Corp. v. ICC*, 551 F.2d 414, 416 (D.C. Cir. 1977).

Finally, a reviewing court may uphold agency action only on the basis articulated by the agency in its decision, not on post-hoc rationalizations offered by the agency or its counsel in litigation. *See, e.g., Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-169 (1962); *Biloxi Reg'l Med. Ctr. v. Bowen*, 835 F.2d 345, 348 n.12, 351 n.18 (D.C. Cir. 1987) .

### B.    This Court Has Already Rejected the Secretary's Refusal to Grant Full Exception Relief

Relying upon the *Alaska Professional Hunters*[18] line of cases, this Court has previously determined that CMS cannot abruptly change its prior policy of granting full relief from the RCLs without engaging in notice and comment rulemaking:

> [W]hether it is written down or not, a consistent ten-year practice
> of granting atypical cost exceptions in the same manner year after

---

[18] *Alaska Professional Hunters Ass'n, Inc. v. FAA*, 177 F.3d 1030 (D.C. Cir. 1999).

year reflects a "definitive" interpretation of the relevant authoritative text. [Citation omitted]. Any significant alteration of that established practice requires notice and an opportunity for those affected to comment. To hold otherwise would grant agencies the power to reinterpret regulations at will so long as their prior interpretations, no matter how established, had not been written down.

The Court finds that the Secretary had a long established practice of granting atypical cost exceptions from the RCL limit. The Secretary carried out that practice without fail for, at least, the years between 1984 and July 1994. The length and consistency of that practice is sufficient to establish a definitive agency interpretation of § 413.30(f)'s language concerning the granting of "reasonable" exceptions to the RCL for atypical costs. The plaintiffs relied on this interpretation for 10 years and shaped their practices on the basis of it. The Secretary's abrupt shift in policy brought about through PRM § 2534.5 constitutes a substantial departure from that interpretation and the Secretary's failure to follow the APA's notice and comment procedures in making the change constitutes a violation of the APA.

*Mercy Med. Skilled Nursing Facility*, 2004 WL 3541332, at *2 - *3.

While *Mercy* did not involve a request for an exception from RCLs adopted through revised NPRs, that factual distinction is irrelevant. Here, as there, the Secretary is attempting to do an about-face in policy and effect a denial of full relief to the hospital.[19] The Secretary cannot accomplish through the back door what it cannot lawfully accomplish through the front door under *Mercy*.

### C.    The Hospital Is Otherwise Entitled to Full Relief from the Revised RCLs Reflected in the Revised NPRs

Even assuming that the factual distinction between this case and *Mercy* makes a difference (which it does not), the Secretary's decision to grant only partial relief from the RCLs should be overturned.

---

[19] Indeed, the Intermediary initially recommended limiting relief to the hospital pursuant to the same manual provision, PRM § 2534.5, that *Mercy* invalidated. To the extent that the hospital is entitled to full relief from the RCLs, then the Intermediary and CMS may not apply the so-called '112 percent rule" reflected in PRM § 2534.5.

1.    The Secretary's Determination is Inconsistent with the Plain Language of the Regulation

First, the timing of the request for full exception relief is not a reasonable basis for denying it. According to 42 C.F.R. § 413.30(c), a provider's exception request must be made to the intermediary "within 180 days of the date on the intermediary's [NPR]." Likewise, PRM § 2531.1A provides that an exception request "must be filed with the Intermediary no later than 180 days after the date on the notice of program reimbursement (NPR)." St. Anthony's submitted its requests for full relief from the revised RCLs within 180 days of the date of its NPRs dated October 31, 1996. A.R. at 91, 172. Consistent with the regulation and the manual guidance, the Intermediary recognized the requests for full relief as "timely." A.R. at 222.

Nonetheless, the Secretary denied St. Anthony's request for full relief because St. Anthony's "did not exercise its rights to request an exception within the required 180-day period of the *original* NPRs as set forth at 42 C.F.R. § 413.30(c) for costs that exceeded the limits." A.R. at 7. Contrary to the implication in the Secretary's decision, the term "original" does not modify the term "notice of program reimbursement" in either Section 413.30(c) or the instructions in PRM § 2531.1A.

In contrast, the regulation governing a different kind of exception request, a TEFRA exception request,[20] explicitly requires that a provider's requests be received by the intermediary

---

[20] In Section 101 of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. 97-248, Congress limited the rate of increase of hospital reimbursement for the operating costs of inpatient hospital services. 42 U.S.C. § 1395ww(b). The TEFRA rate of increase limit for a hospital is based on a target amount defined as the provider's reasonable costs of inpatient hospital service for the base year. 42 U.S.C. § 1395ww(b)(3)(A). The target amount is increased by a specific percentage in each succeeding cost reporting period. 42 U.S.C. § 1395ww(b)(3)(A), (B). The hospital absorbs some of the cost increases in excess of its target amount and receives a bonus if cost increases are less than or equal to the target amount. 42 U.S.C. § 1395ww(b)(1)(A), (B); 42 C.F.R. § 413.40(d). A provider may request an exemption from or an exception to the TEFRA rate of increase limit "where events beyond the hospital's control or extraordinary circumstances ... create a distortion in the increase in costs for a cost reporting period" or where the Secretary otherwise "deems appropriate." 42 U.S.C. § 1395ww(b)(4)(A); 42 C.F.R. § 413.40(e).

within 180 days from the date on the intermediary's <u>initial</u> NPR.  42 C.F.R. § 413.40(e)(1).[21]

Had the Secretary intended to limit SNF exception requests to the initial NPR, he could have

opted to impose this requirement in the SNF regulation.  Indeed, the fact that CMS expressly

established a regulatory requirement that TEFRA exception requests be submitted within 180

days of an initial NPR, while including no such requirement for SNF exception requests, clearly

implies that there is no requirement that SNF exception requests be filed within 180 days of an

original (or initial) NPR.  This comports with the recognized maxim *expressio unius est exclusio*

*alterius.  See* Norman J. Singer, *Sutherland on Statutes and Statutory Construction* § 42.23 (6th

ed. 2000).  *See also Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 375-76 (1958); *Munsell*

*v. U.S. Dept. of Agriculture*, 435 F. Supp. 2d 149, 156 (D.D.C. 2006).  The Secretary's attempt to

read language into the regulation is not entitled to deference.  *St. Paul Ramsey*, 50 F.3d at 529.

      2.     <u>The Regulation Governing Appeals from Revised NPRs Does Not Bar</u>
               <u>Full Relief to the Hospital</u>

The Secretary found that the Hospital's requests for RCL exceptions are subject to 42

C.F.R. § 405.1889, and therefore should be limited, because "an exception request made

pursuant to a revised NPR is intricately related to those items and costs adjusted in the revised

NPR."  A.R. at 7.  This reasoning does not withstand scrutiny.  Section 405.1889 governs the

scope of *appeal* from a redetermination (such as the revised NPRs at issue here),[22] but cannot

---

[21] Section 413.40(e) addresses "Hospital requests regarding adjustments to the payment allowed under the rate-of-increase ceiling."  Under this section, "[a] hospital may request an adjustment to the rate-of-increase ceiling imposed under this section.  The hospital's request must be received by the hospital's fiscal intermediary no later than 180 days after the date on the intermediary's *initial* notice of program reimbursement (NPR) for the cost reporting period for which the hospital requests an adjustment." (emphasis added).

[22] Section 405.1889 is found in the Subpart of the Medicare regulations, Subpart R, relating to "Provider Reimbursement Determinations and Appeals."  It states:

    Where a revision is made in a determination or decision on the amount of program reimbursement after such determination or decision has been reopened as provided in §405.1885, such revision shall be considered a separate and distinct determination or decision to which the provisions of §§405.1811, 405.1835, 405.1875 and 405.1877 are applicable. (See §405.1801(c) for applicable effective dates.)

plausibly be read to govern the scope of the actual *redetermination* that is the subject of appeal. Section 405.1889 and the regulations it cross-references[23] have no bearing on RCL exception requests.

Assuming *arguendo* that Section 405.1889 applies, it does not bar relief. *See* Board decision at 6-7, A.R. at 24-25. Here, the intermediary reopened St. Anthony's cost reports to modify the RCLs based on a revised market basket update factor. A.R. at 88, 170. The Hospital requested relief from the revised RCLs.

The Secretary, applying the rules governing appeals from revised determinations to the situation here, determined that "only those incremental costs denied as a result of the application of the revised market basket pursuant to the revised NPRs could be subject to relief." A.R. at 7. This is an incorrect application of the appeals rules.

In *HCA Health Services*, the D.C. Circuit held:

> [W]hen a fiscal intermediary reopens its original determination regarding the amount of reimbursement that a Medicare provider is to receive from the federal government under the Medicare program, 42 U.S.C. §§ 1395-1395ccc (1988), a provider's appeal of that reopening to the Provider Reimbursement Review Board is limited to the specific issues revisited on reopening. . .

*HCA Health Serv. of Okla., Inc. v. Shalala*, 27 F.3d 614, 615 (D.C. Cir. 1994). In this case, the RCLs were indisputably revisited on reopening, and the Secretary's application of Section 405.1889 therefore does not limit exception relief.

Because the RCLs were "revisited" in the revised NPRs, this case is distinguishable from cases specifically addressing the scope of PRRB review in appeals of RCL exception requests.

---

[23] The cross-referenced sections grant the provider a right to an intermediary hearing from a revised NPR (Section 405.1811), set forth the conditions under which a provider has a right to a PRRB appeal from a revised NPR (Section 405.1835), a right to review from the CMS Administrator of a PRRB decision in that appeal from a revised NPR (Section 405.1875), and a right to judicial review of an adverse final agency decision with respect to that appeal from a revised NPR (Section 405.1877).

In *French Hosp. Med. Ctr. v. Shalala*, 89 F.3d 1411 (9th Cir. 1996), for example, the hospital sought an exception to its cost limit on the basis of a revised NPR adjusting a certain category of costs, malpractice insurance costs. The Ninth Circuit refused to grant the exception request because:

> the intermediary reopened the hospital's cost report for the sole purpose of applying the RCL to malpractice insurance costs. Neither the RCL, nor components of the RCL, were at issue in the revised NPR. Furthermore, the revised NPR did not alter the RCL or any of its components. Only the RCL's application to malpractice insurance costs was at issue in the revised NPR.

*Id*. at 1420 (emphasis added).

In this case the RCLs and the components of the RCLs are at issue, the revised NPRs alter the RCLs, and the RCLs in the original NPRs are different from the RCLs in the revised NPRs. Unlike in *French Hospital*, the revisions here involved the RCLs that were applied to all of the cost centers and not just a particular cost center or a discrete category of claimed costs (such as malpractice costs, in the case of *French Hospital*).

In *Anaheim Memorial Hospital v. Shalala*, 130 F.3d 845 (9th Cir. 1997), a case similar to *French*, the intermediary reopened the provider's cost report to adjust malpractice costs. The provider attempted to appeal from the revised NPR the method the intermediary used to calculate one of the components of the RCLs. Summarizing *French*, the Court stated that a reopening was issue-specific, and the RCL was not the issue that was reopened. Accordingly, the Ninth Circuit held that the provider could not appeal the RCL issue from the revised NPR. *Anaheim*, 130 F.3d at 852-53.

Unlike those cases, the subject of St. Anthony's exception request is precisely what was adjusted in the revised NPR – the RCL. Consequently, even if Section 405.1889 were to apply, it did not limit St. Anthony's exception requests in the manner asserted by Defendant Secretary. Section 405.1889 does not justify denial of reimbursement for the Hospital's full costs.

3.    The Secretary Cannot Reasonably Apply A Policy For Which It Gave No Advance Notice

Even if it is otherwise legitimate for the Secretary to limit full relief from the RCLs adopted through a revised NPR (which it is not), the Secretary certainly did not give providers or fiscal intermediaries fair notice of his interpretation of § 413.30(c).  As the Board astutely pointed out:

> HCFA's notice to all intermediaries concerning the adjustments to the RCLs authorizes adjustments to exceptions already granted and it addresses how new exception requests will be handled.  That communication demonstrates that HCFA anticipated that exception requests would be filed from revised NPRs yet there is no mention of a limit on any relief from a revised NPR adjustment to the incremental increase only.

A.R. at 24.

When St. Anthony's received its initial NPRs, there was no regulation or manual instruction establishing limits on exception requests to a revised NPR (and, in fact, none were ever adopted).  Given the intermediary's statement that "the provider's request was *timely* filed," the Intermediary was clearly unaware of HCFA's alleged "policy."  A.R. at 222.

Adequate notice and an opportunity to comply is the hallmark to administrative fairness. *See, e.g., Hooper v. Nat'l Transp. Safety Bd.,* 841 F.2d 1150, 1151 (D.C. Cir. 1988) (noting that the failure to publish waivers is arbitrary and capricious because it suggests that only the *cognoscenti* may benefit from the exceptions.

**VII.  CONCLUSION**

As noted by the 8th Circuit, upward adjustments to the cost limits for skilled nursing facilities "are intended to give SNFs a kind of 'safety net' that prevents them from being penalized for providing necessary atypical services to Medicare patients." *St. Luke's Methodist Hosp.,* 35 F.3d at 989.  The methodology used by the Defendant Secretary penalized St. Anthony's for providing necessary atypical services to its Medicare patients and was a clear

departure from his longstanding policy permitting SNFs qualifying for an atypical services exception to receive full reimbursement of their reasonable costs.

The Secretary improperly denied St. Anthony's an opportunity to obtain the full upward adjustment to its exception payments to which it was entitled under the SNF regulations, and the Secretary should be compelled to pay the hospital the full difference between its actual costs and the RCLs (irrespective of the 112 percent rule).

/s/ Dennis M. Barry
Dennis M. Barry
D.C. Bar No. 375152
Vinson & Elkins L.L.P.
1455 Pennsylvania Avenue, N.W.
Suite 600
Washington, D.C.  20004-1008
202.639.6791
202.879.8891 (fax)

Counsel for the Plaintiff

September 14, 2007

- 23 -

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SAINT ANTHONY'S HEALTH CENTER | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07CV00260 (RMU) |
| | ) | |
| MICHAEL O. LEAVITT, Secretary | ) | |
| of Health and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————————————— | ) | |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE DISPUTE

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 7(h) and in support of its motion for summary judgment, Plaintiff Saint Anthony's Health Center ("St. Anthony's") submits the following statement of material facts as to which St. Anthony's contends there is no genuine issue:

1.      St. Anthony's is a hospital-based skilled nursing facility ("SNF") located in Alton, Illinois (Provider No. 14-5314).  A.R. at 248.

2.      Health Care Services Corporation is the Fiscal Intermediary.  A.R. at 248.

3.      On September 2, 1993 the Intermediary issued a Notice of Program Reimbursement ("NPR") for St. Anthony's fiscal year ending ("FYE") December 31, 1991. A.R. at 43.

4.      On April 1, 1994 the Intermediary issued an NPR for St. Anthony's FYE December 31, 1992.  A. R. at 122.

5.      On August, 29, 1996 the Intermediary gave St. Anthony's a Notice of Reopening of Cost Reports for FYE December 31, 1991 and December 31, 1992. A.R. at 210.

6.      The Intermediary issued revised NPRs for FYE December 31, 1991 and December 31, 1992 on October 31, 1996. A.R. at 54-58; 136-39.

7.      On April 23 and April 24, 1997, less than 180 days from the date of the revised NPRs, St. Anthony's requested atypical services exceptions for the cost reporting periods ending December 31, 1992 and December 31, 1991 respectively. A.R. at 173-76; 90-95.

8.      In 1991, St. Anthony's had an average length of stay of 18.23 days compared to 132.34 days for the Peer Group, Medicare utilization of 87.97 percent compared to 52.39 percent for the Peer Group, and Medicare SNF ancillary per diem costs of $137.74 compared to $62.73 for the Peer Group. A.R. at 93-94.  In 1992, St. Anthony's had an average length of stay of 19.67 days compared to 132.34 days for the Peer Group, Medicare utilization of 92.09 percent compared to 52.39 percent for the Peer Group, and Medicare SNF ancillary per diem costs of $132.90 compared to $62.73 for the Peer Group. A.R. at 174-176.

9.      The acuity level of St. Anthony's patient population for the cost report periods ending December 31, 1991 and December 31, 1992 was significantly higher than the applicable Peer Group. A.R. at 92, 174.

10.     A lower than average length of stay, higher than average Medicare Utilization, and higher than average Medicare SNF ancillary costs each indicate that St. Anthony's provided atypical services to higher acuity patients. A.R. at 92-94; 174-76.

11.     For FYE 1991, St. Anthony's actual costs per diem in excess of the routine cost limit were $59.05.  A.R. at 95.

12.     St. Anthony's requested a per diem exception of $45.84 for 5,533 Medicare days, for a total exception amount of $253,645.  A.R. at 22, 95.

13.      For FYE 1992, St. Anthony's actual costs per diem in excess of the routine cost limit were $67.02.  A.R. at 177.

14.     St. Anthony's requested a per diem exception of $44.83 for 5,381 Medicare days, for a total exception amount of $241,212 for FYE 1992.  A.R. at 22, 177.

15.     According to 42 C.F.R. § 413.30(c), a provider's exception request must be made to the intermediary "within 180 days of the date on the intermediary's [NPR]."  St. Anthony's submitted its exception requests within 180 days of the date of its Intermediary's revised NPRs. A.R. at 22.

16.     The Intermediary acknowledged that St. Anthony's exception requests were *timely filed.*  A.R. at 222.

17.     The Intermediary recommended to HCFA that St. Anthony's be granted an exception amount of $18.51 per day for fiscal year 1991 and $21.06 per day for fiscal year 1992. A.R. at 223.

18.     The Intermediary's calculation was not based upon the difference between St. Anthony's actual per diem costs and the actual routine cost limit for the cost report periods in

question but was based on the difference between actual cost and 112% of the Peer Group mean cost per diem as set forth in PRM § 2534.5.  A.R. at 223.

19.     The Intermediary notified St. Anthony's by letter dated July 18, 1997, that the Health Care Financing Administration ("HCFA") denied St. Anthony's exception requests.  A.R. at 225.

20.     The Intermediary advised St. Anthony's that it was HCFA's *policy* that "i[f] an exception is submitted after 180 days of the *original* NPR but within 180 days of a *revised* NPR, an exception may only be granted for the *incremental increase* in the amount that the provider's cost exceeds its revised cost limit." A.R. at 225.

21.     The Intermediary notified Saint Anthony's that it could resubmit its exception requests with corrected documentation within 45 days of the Intermediary's July 18, 1997 letter. A.R. at 225.

22.     St. Anthony's resubmitted its exception requests within the specified 45 days. A.R. at 227.

23.     Both the Intermediary and the Secretary recognized that St. Anthony's had provided atypical services. A.R. at 227.

24.     The Intermediary notified St. Anthony's by letter dated October 23, 1997 that HCFA had approved its exception requests under 42 CFR 413.30(f)(1) for atypical services in accordance with HCFA Pub. 15-1, Section 2530 and that the exception amounts were $3.41 per day for FYE December 31, 1991 and $6.26 per day for FYE December 31, 1992. A.R. at 229.

25.    St. Anthony's filed timely appeals with the Provider Reimbursement Review Board ("Board") and met the jurisdictional requirements of 42 C.F.R. §§ 405.1835-1841. A.R. at 22.

26.    The Board found that HCFA's partial denial of St. Anthony's SNF exception requests was *improper* and remanded the matter to the Intermediary for consideration of St. Anthony's full request for relief. A.R. at 25.

27.    On October 18, 2006 the Administrator informed the parties that he would review the Board decision pursuant to his authority under 42 U.S.C. § 1395oo(f) (2002).  A.R. at 9-10.

28.    The Administrator issued its decision on November 29, 2006, reversing the decision of the Board.  A.R. at 1-8.

Respectfully submitted this 14th day of September, 2007.


_____/ s /_____
Dennis M. Barry
D.C. Bar No. 375152
Vinson & Elkins L.L.P.
1455 Pennsylvania Avenue, N.W.
Suite 600
Washington, D.C.  20004-1008
202.639.6791
202.879.8891 (fax)

Counsel for the Plaintiff

September 14, 2007

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SAINT ANTHONY'S HEALTH CENTER | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07CV00260 (RMU) |
| | ) | |
| MICHAEL O. LEAVITT, Secretary | ) | |
| of Health and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Exhibit A**

VINSON & ELKINS
LIBRARY



# MEDICARE and MEDICAID

Part II     N U M B E R  423  APRIL 13, 1984

*Printed in U. S. A. All rights reserved.*

## Medicare and Medicaid Spending Reductions

in the

## Deficit Reduction Act of 1984

Explanation by the Senate Finance Committee
and Text of Title IX of the Bill

April 2, 1984



*CCH Special 1*

Extra copies of Part II are available from Commerce Clearing
House, Inc., 4025 W. Peterson Ave., Chicago, Illinois 60646. Price:
1-4 copies, $2.50 each; 5-9 copies, $2.40 each; 10-24 copies, $2.30
each; 25-49 copies, $2.20 each.

COMMERCE CLEARING HOUSE, INC.
PUBLISHERS of TOPICAL LAW REPORTS
4025 W. PETERSON AVE., CHICAGO, ILLINOIS 60646

changes in the Social Security Amendments of 1983. (The regula-
tion covering physician's offices has not been developed.)

### Explanation of Provision

The provision would repeal the provision providing for 100 per-
cent reimbursement and simply pay for these services on the same
basis as all other services under part B (80 percent).

The Committee believes that given the incentives created by the
new prospective payment system, hospitals already have every
reason to do their testing on an outpatient basis.

### Effective Date

Enactment.

### 9. Skilled Nursing Facility Reimbursement (sec. 909 of the bill)

### Present Law

The Tax Equity and Fiscal Responsibility Act of 1982 (P.L. 97–
248) required the Secretary to establish a single payment limit for
both freestanding and hospital-based skilled nursing facilities
(SNFs), effective October 1, 1982. Prior to that time, separate limits
were established for these two types of facilities in recognition of
the fact that the operating costs of hospital-based facilities were
typically much higher than those of the freestanding facilities.

In the Social Security Amendments of 1983 (P.L. 98–21), the ef-
fective date of the single-limit requirement was postponed for one
year. In addition, the Congress required the Secretary to report by
December 31, 1983 on the effect of the implementation of the
TEFRA single-rate provision on hospital-based SNFs, given the dif-
ference (if any) in the patient populations served by such facilities
and by freestanding SNFs. Further, the Secretary was required to
report by the end of 1983 on the impact of hospital prospective pay-
ment on SNFs.

### S. 2062

The bill postponed implementation of the single rate for SNFs
until April 1, 1984. The Committee believed it prudent to wait until
the Secretary completed the report on hospital-based SNFs before
implementing the single-rate provision.

### Modified Provision

(1) For fiscal year 1983 and until July 1, 1984, hospital based
facilities and freestanding facilities would be paid on the basis of
the policy for calculating reimbursement limits that had been in
effect prior to the passage of TEFRA. Under this system, the limits
for freestanding facilities would be set at 112 percent of the aver-
age per diem operating costs for urban and rural facilities, respec-
tively. The limits for hospital-based facilities would similarly be set
at 112 percent of the average per diem operating cost for urban
and rural hospital based facilities, respectively.

(2) Effective July 1, 1984 and thereafter, the Secretary would es-
tablish dual limits for hospital-based and freestanding SNFs on a

948

somewhat different basis. Separate limits would continue to be established for freestanding facilities in urban and rural areas at 112 percent of the mean operating costs of urban and rural freestanding facilities, respectively. However, limits for urban or rural hospital-based facilities would be set at the appropriate freestanding facility limit plus 50 percent of the difference between the freestanding facility limit and 112 percent of mean operating costs for hospital-based facilities. Cost differences between hospital-based and free-standing facilities attributable to excess overhead allocations resulting from medicare reimbursement principles shall be recognized as an add-on to the limit. Adjustments would be made to take account of differences in wage levels prevailing in a facilities area.

Under this provision, both hospital-based and freestanding facilities could continue to apply for and receive exceptions from the cost limits in circumstances where high costs result from more severe than average case mix or circumstances beyond the control of the facility. Indicators of more severe casemix include a comparatively high proportion of Medicare days to total patient days, comparatively high ancillary costs, or relatively low average length of stay for all patients (an indicator of the rehabilitative orientation of the facility). Facilities eligible for exceptions could receive, where justified, up to all of their reasonable costs.

(3) The Secretary shall forward to the Congress, no later than April 15, 1984, the final report on skilled nursing facilities as required by TEFRA.

(4) The Secretary shall submit, no later than December 1, 1984, a proposal for implementation of a prospective payment system for skilled nursing care under Part A. Such payment system shall take into account case mix differences between providers. Such a system should also be designed so as to permit the inclusion of payments into the payments currently made to hospitals under the DRG system. The proposal shall be drafted so as to be implementable as of October 1, 1985.

### Effective Date

October 1, 1983.

### Estimated Cost

| Fiscal year: | Millions |
|---|---|
| 1984 | $20 |
| 1985 | 30 |
| 1986 | 35 |
| 1987 | 40 |
| 4-year total | $125 |

## 10. Rounding of Part B Payments (sec. 910 of the bill)

### Present Law

The Omnibus Budget Reconciliation Act of 1981 authorized the Social Security Administration (SSA) to round to the next lower whole dollar payments made after July 31, 1981 to beneficiaries of Title II of the Social Security Act (Federal Old Age, Survivors and Disability Insurance).

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SAINT ANTHONY'S HEALTH CENTER    )
    )
    )
             Plaintiff,    )
    )
        v.    )    Case No. 1:07CV00260 (RMU)
    )
MICHAEL O. LEAVITT, Secretary    )
of Health and Human Services,    )
    )
             Defendant.    )
_____)

## PROPOSED ORDER ON PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

Upon consideration of the parties' cross-motions for summary judgment, the memoranda in support of the motions, the decisions below, and evidence in the record, it is hereby:

ORDERED that plaintiff's motion be, and hereby is, GRANTED; and it is

FURTHER ORDERED that defendant Leavitt's motion be, and hereby is, DENIED; and it is

FURTHER ORDERED that the decision of the Administrator of the Centers for Medicare and Medicaid Services ("CMS") dated November 29, 2006, is hereby reversed; and it is

FURTHER ORDERED that this matter is remanded to defendant Leavitt, who shall, within 180 days of the date of this Order compute and pay to Plaintiff:

1.    The amount payable based on Plaintiff's requests for exception to the routine cost limitation ("RCL") for its fiscal years ending December 31, 1991 and December 31, 1992, so as

to include all costs in excess of the RCL, including those costs between the RCL and 112 percent of the peer group mean, less the amount Plaintiff has already been reimbursed for these cost periods;

      2.     The interest that it is entitled to as a matter of right under 42 U.S.C. § 1395oo(f)(2); and

      3.     The costs of this action, as computed and submitted by Plaintiff.

SO ORDERED, this the _____ day of _____, 2007.

_____
The Honorable Ricardo M. Urbina
United States District Judge

DC 706369v.1