# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAINT ANTHONY'S MEDICAL CENTER,   ) | |
|               ) | |
|      Plaintiff ,       ) | |
|               ) | |
|      v.             ) | Case No. 1:07-cv-00260 (RMU) |
|               ) | |
| MICHAEL O. LEAVITT, Secretary,   ) | |
|     U.S. Department of Health   ) | |
|     and Human Services,     ) | |
|               ) | |
|      Defendant.      ) | |
| _____ ) | |

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
## OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN
## OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Plaintiff Saint Anthony's Medical Center ("Plaintiff" or "St. Anthony's") is a

Medicare-certified operator of a hospital-based skilled nursing facility. Its Complaint For

Judicial Review Of Agency Action ("Complaint" or "Compl.") challenges the validity of

a final decision of Defendant Michael O. Leavitt, the Secretary of Health and Human

Services ("Defendant" or "Secretary"), partially denying St. Anthony's request for an

exception to the Medicare routine cost limits for its 1991 and 1992 fiscal years. Plaintiff

also asks this Court to invalidate a policy that has not even been applied to Plaintiff's

1991 and 1992 cost years, and thus is not addressed in the Secretary's final decision. As

detailed below, this Court lacks jurisdiction to consider an issue not addressed in the final

agency decision.  Moreover, the Secretary's final agency decision is reasonable and supported by substantial evidence in the record, and should be sustained.

## STATUTORY AND REGULATORY BACKGROUND

I.    THE MEDICARE PROGRAM'S PROCEDURES FOR PROVIDER
      REIMBURSEMENT AND APPEALS

1.  This action arises under Title XVIII of the Social Security Act, 42 U.S.C., § 1395 et seq., commonly referred to as the Medicare statute, which establishes a federally funded health insurance program for the elderly and disabled.  See 42 U.S.C. §§ 1395c, 1395j, 1395k.  Part A of the program, which is at issue in this case, authorizes payment for covered institutional care, including payment to hospitals and skilled nursing facilities ("SNFs").

Part A services are furnished by "providers of services" that have entered into a "provider agreement" with the Secretary.  42 U.S.C. §§ 1395x(u), 1395cc.  Private insurance companies, known as "fiscal intermediaries," acting as agents of the Secretary, process reimbursement to providers.  42 U.S.C. § 1395h.  At the close of each fiscal year, a provider is required to file a Medicare cost report with its intermediary.  42 C.F.R. §§ 405.1801(b); 413.24(f).  The intermediary then audits the cost report and makes a final determination of the total amount of reimbursement owed by Medicare.  That final determination is set forth in a "notice of program reimbursement" or "NPR."  42 C.F.R. § 405.1803.

2.  If a provider is dissatisfied with a final determination of the Secretary, the provider may request a hearing before the Provider Reimbursement Review Board ("PRRB" or "Board").  42 U.S.C. § 1395oo(a); 42 C.F.R. §§ 405.1807, 405.1835.  In order to qualify for Board review, the amount in controversy must be at least $10,000, and the hearing request must be submitted within 180 days of the initial NPR, among other jurisdictional requirements.  42 U.S.C. § 1395oo(a).  When appealing to the PRRB, the provider must "identify the aspects of the determination with which the provider is dissatisfied, and explain why the provider believes the determination is incorrect in such particulars . . . ."  42 C.F.R. § 405.1841(a)(1).

If the jurisdictional prerequisites are satisfied and the Board has authority to decide the matter at issue, see 42 C.F.R. § 405.1867, then the Board may hold a hearing and issue a decision that is potentially subject to further review by the Secretary's delegate, the Administrator of the Centers for Medicare & Medicaid Services ("CMS").[1]  42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1875.  The statute authorizes the provider to request judicial review within 60 days of the final agency decision, in a federal district court with venue.  42 U.S.C. § 1395oo(f)(1).   The statute further provides that 42 U.S.C.

---

[1]CMS was formerly named the Health Care Financing Administration ("HCFA").  On June 29, 2001, the Secretary changed HCFA's name to the Centers for Medicare & Medicaid Services ("CMS"), 66 Fed. Reg. 35,437 (July 5, 2001).  The Secretary in this brief refers to the agency by its current name.

§ 1395(f)(1) is the exclusive jurisdictional basis for judicial review of all aspects of provider reimbursement disputes.  42 U.S.C. §§ 405(h), 1395ii.

3.  Separate from the statutory appeals process are the Secretary's regulations governing administrative finality and reopening of final reimbursement determinations.  If a provider does not timely appeal the specific determinations included in the initial NPR, then its cost report is considered closed or finalized.  However, the regulations permit reopening in order to make limited corrections on otherwise final cost report determinations.  42 C.F.R. § 405.1885.  An intermediary determination "may be reopened with respect to findings on matters at issue" either on motion of the intermediary or the provider, provided that the reopening request is made within three years of the initial NPR.  42 C.F.R. § 405.1885(a).

The reopening regulations provide that once specific cost report determinations are reopened, a provider has the right to appeal the "separate and distinct" result of the reopening, including adjustments made in the revised NPR.  42 C.F.R. § 405.1889.  Thus, the provider's PRRB appeal rights are "issue-specific," for it may appeal only the particular matter that was reopened and revised, and not other matters that were finalized in the initial NPR but not subsequently reopened and revised.  Id.

II.    ROUTINE COST LIMITS

1.  Confronted with rising Medicare costs, Congress in 1972 recognized that the original Medicare payment structure provided little incentive for providers to operate efficiently.  Congress accordingly amended the Medicare statute to provide that "reasonable costs" reimbursable under Medicare should exclude "any part of incurred cost[s] found to be unnecessary in the efficient delivery of needed health services[.]"  42 U.S.C. § 1395x(v)(1)(A).  Congress further provided that the Secretary could "provide for the establishment of limits on the direct or indirect overall incurred costs . . . to be recognized as reasonable based on estimates of the costs necessary in the efficient delivery of needed health services[.]"  Id.  Such cost limits would establish the maximum expense expected to be incurred by an efficient provider and hence the maximum reimbursement that would normally be awarded.  Congress also authorized the Secretary to grant exceptions to the cost limits, but did not prescribe a precise method for doing so. See  S. Rep. No. 92-1230, 92nd Cong., 2d Sess. 187 (1972) (stating that the Secretary had discretion to grant "relief from the effect of the cost limits on the basis of evidence of the need for such an exception"); see also H.R. Rep. No. 231, 92nd Cong., 2nd Sess. (1971) (same).

2.  The Secretary duly promulgated a cost limit regulation, later codified as 42 C.F.R.§ 413.30, which includes provisions for exceptions from the cost limits.  See 39 Fed. Reg. 10,260 (March 19, 1974); 39 Fed. Reg. 20,164 (June 6, 1974).  These limits are

known as "routine cost limits" or "RCLs."  Routine cost limits are derived from a number of factors, including the type of services furnished; the geographic area where the services are furnished; the size of the institution; the nature and mix of services furnished; and the type and mix of patients treated.  39 Fed. Reg. at 20,165.  Moreover, cost limits may be adjusted upward to reflect added costs flowing from the delivery of atypical items or services.  Id.; 42 C.F.R. § 413.30 (f)(1) (1991).

In 1979 the Secretary revised the regulation to place a time limit on exception requests.  As amended, the regulation requires a provider to submit any exception request "to its fiscal intermediary within 180 days of the date on the intermediary's notice of program reimbursement."  See 44 Fed. Reg. 31,802, 31,804 (June 1, 1979).  This language has remained unchanged, and is included in the version of the regulation that existed during the fiscal periods at issue in this case.  See 42 C.F.R. § 413.30(c) (1991).

3.  The Secretary first promulgated "schedules" of RCLs for skilled nursing facilities, such as the Plaintiff here, effective as of October 1, 1979.  See 44 Fed. Reg. 29,362 (May 18, 1979); 44 Fed. Reg. 51,542 (Aug. 31, 1979).  The applicable cost limit schedule for SNFs during the fiscal periods at issue in this case was published in 56 Fed. Reg. 13,317 (Apr. 1, 1991).

In promulgating RCLs for SNFs, the Secretary recognized four distinct classifications or peer groups of SNFs: (1) Hospital-based/Urban SNFs; (2) Hospital-based/Rural SNFs; (3) Freestanding/Urban SNFs and (4) Freestanding/Rural SNFs.  See

44 Fed. Reg. at 51,542-43.  The Secretary also provided for a market basket index to account for the impact of changing wage and price levels on SNF costs.  Id. at 51,543. The index was used to adjust SNF cost data (taken from the cost reporting period represented in the data collection) to more closely reflect wages and prices during the cost reporting period to which the limits applied.  Id. at 51,542.  Because the market basket index cannot be finally determined until after the cost reporting period to which the limits apply, CMS provided that it would calculate the limits using an estimated market basket index.  See id. at 51,542-43.  During the fiscal periods at issue, if the final rate of change in the market basket index for a year differed from the estimated rate of change by at least 0.3 of one percentage point, CMS instructed the Medicare intermediaries to use the final market basket index to adjust each SNF's limit.  56 Fed. Reg. at 13,320.

4.  In 1984, Congress enacted the Deficit Reduction Act of 1984 ("DEFRA"). DEFRA added a new provision to the Medicare statute, 42 U.S.C. § 1395yy, that dealt specifically with cost limits to SNFs. Under DEFRA the Secretary maintains his broad discretion to authorize adjustments to the cost limits for skilled nursing facilities.  See 42 U.S.C. § 1395yy(c).

5.  In July 1994 CMS issued HCFA Transmittal No. 378, which added sections 2530-2541.1 to the Provider Reimbursement Manual ("PRM").  Section 2534 addressed requests for exceptions to SNF cost limits.  It required a comparison of the provider's per diem costs to 112 percent of the mean per diem cost of its peer group.  For hospital-based

SNFs, an exception would be granted only if the provider's costs exceeded the 112

percent of the mean per diem costs and the provider satisfied all other requirements in the

regulations for granting an exception.  The amount of the exception that could be granted

in turn would be measured from 112 percent of the mean per diem costs.  Id.  For ease of

reference, we refer to this provision of PRM § 2534.5 as "the 112 percent policy."

## STATEMENT OF FACTS

I.      PLAINTIFF'S COST LIMIT EXCEPTION REQUESTS

1.  Plaintiff is a Medicare-certified provider of hospital services located in Alton,

Illinois.  (Compl. ¶ 6; Answer ¶ 6.)  During the fiscal periods at issue, Plaintiff operated a

hospital-based skilled nursing facility.  (Compl. ¶ 6; Answer ¶ 6.)

On September 2, 1993, Plaintiff's fiscal intermediary issued the initial NPR for St.

Anthony's fiscal year ending December 31, 1991 ("FY 1991" or "1991 fiscal year").  (See

A.R. at 43-51.)  Plaintiff did not request an exception to the routine cost limit within 180

days of the initial NPR, even though the SNF's routine service costs exceeded the

applicable routine cost limit by $59.05 per diem.  (A.R. at 95.)  Similarly, on April 1,

1994,  Plaintiff's fiscal intermediary issued the initial NPR for St. Anthony's fiscal year

ending December 31, 1992 ("FY 1992" or "1992 fiscal year"), (see A.R. at 193-201);

again, St. Anthony's did not seek an exception within 180 days of the initial NPR, even

though the SNF's routine service costs exceeded the applicable cost limit by $67.02 per

diem.  (A.R. at 177.)

2.  In a memorandum dated May 30, 1996, CMS advised the fiscal intermediaries that the projected rates of increase in the SNF market basket for the fiscal periods at issue differed from the final rates of increase by more than the threshold of 0.3 of one percentage point, and thus the RCLs had been revised.  (A.R. at 205-06.)  The memorandum instructed the fiscal intermediaries to reopen and apply the revised RCLs to cost reports that were still within the three-year reopening period.

Subsequently, on August 29, 1996, the fiscal intermediary issued a notice of reopening for Plaintiff's 1991 and 1992 fiscal years.  (A.R. at 64.)  The reopening was for the limited purpose of "updat[ing] the SNF cost limit based on [CMS's] memorandum dated May 1996."  (Id.)

Then, on October 31, 1996, the fiscal intermediary issued revised NPRs for Plaintiff's FY 1991 and 1992 cost reports.  (A.R. at 54-88 (FY 1991 revised NPR), 136-70 (FY 1992 revised NPR).)  The revised market basket index resulted in a decrease in the routine cost limits for both periods.  Specifically, St. Anthony's per diem RCL decreased by $3.41 for FY 1991 (from $138.16 to $134.75), which reduced its Medicare reimbursement by $18,867.  (A.R. at 70, 88.)  Similarly, Plaintiff's FY 1992 RCL decreased by $6.26 (from $146.06 to $139.80), which reduced its reimbursement by $33,685.  (A.R. at 152, 170.)  Taken together, the FY 1991 and 1992 revised NPRs reduced Plaintiff's Medicare reimbursement by $52,552.  (Id. at 152.)

3.  On April 23, 1997, Plaintiff filed a request for an RCL exception for its FY

1992 based on its purported provision of "atypical services." (A.R. at 172-76.)  Similarly,

on April 25, 1997, Plaintiff requested an RCL exception for its FY 1991, which was also

based on its alleged provision of "atypical services." (A.R. at 90-95.)  For both periods,

St. Anthony's requested an exception for the total difference between the per diem routine

cost limit (as adjusted for the revised market basket index) and the provider's actual per

diem costs.[2] (A.R. at 91, 173.)  The requested exception amounts were $45.84 per diem

for FY 1991 and $44.83 per diem for FY 1992.  (A.R. at 95, 177.)

The fiscal intermediary recommended to CMS that the exception be granted, but in

lesser amounts based on application of the 112 percent policy. (A.R. at 222-23

(recommending an exception of $18.51 per diem for FY 1991 and $21.06 per diem for

FY 1992).)  Initially, CMS apparently denied the SNF's exception requests on the basis

that the requests were not submitted within 180 days of the initial NPRs.  (A.R. at 225

(fiscal intermediary's informational letter to Plaintiff).)  The fiscal intermediary informed

Plaintiff, however, that exceptions might be granted for the incremental increases in the

amounts that the provider's costs exceeded its revised cost limits, as determined by the

incremental increases in the RCLs as a result of the final market basket index.  (Id.)  CMS

subsequently approved cost limit exceptions of $3.41 per diem for Plaintiff's FY 1991

---

[2]Plaintiff specifically urged the fiscal intermediary not to apply the 112 percent policy
articulated in PRM § 2534.5.  (A.R. at 91, 173.)

and $6.26 per diem for the SNF's FY 1992. (A.R. at 181.) The approved exception

amounts equaled the incremental per diem decreases in the RCLs as a result of the final

market basket index. (A.R. at 88, 170.)

B.    PLAINTIFF'S APPEAL

On December 15, 1997, Plaintiff appealed to the PRRB, contending that it was

entitled to full exception relief for both FY 1991 and FY 1992.[3]  On September 26, 2006,

the Board issued a decision finding that St. Anthony "may request an exception to the

RCL from any NPR in which the Intermediary adjusts its RCL, and there is no basis to

limit a provider's exception request made from a revised NPR." (A.R. at 24.)

On November 29, 2006, the Secretary's delegate, the Administrator of CMS,

reversed the Board's decision. (A.R. at 2-8.) The Administrator interpreted the cost limit

exception regulation, 42 C.F.R. § 413.30(c), and the reopening regulation, 42 C.F.R.

§ 405.1889, together as providing that requests for exceptions made pursuant to revised

NPRs are limited to items and costs adjusted on the revised NPRs. (A.R. at 7.)  The

Administrator found that Plaintiff's exception requests were not filed within 180 days of

the initial NPRs, as required by 42 C.F.R. § 413.30(c), and that the reopening and revised

NPRs were limited to adjusting the RCLs to account for the final market basket index.  In

---

[3]Nowhere in its appeal request, or in any briefs filed before the PRRB, did Plaintiff
argue that full exception relief should not be limited by the 112 percent policy articulated
in PRM § 2534.5, or that the applicability of PRM § 2534.5 was even an issue.  (See A.R.
at 26-40, 101-15, 247-57; see also Compl. ¶ 36.)

limiting exception relief to the incremental effects of the revised RCLs, the Secretary

determined that Plaintiff had no right to relief that exceeded the limited scope of the

reopening and revised NPRs.[4]

## ARGUMENT

Plaintiff maintains that it is entitled to full exception relief on two grounds.  First,

Plaintiff challenges the Secretary's final decision concluding that CMS reasonably limited

the SNF's exception relief in accordance with the circumscribed reopenings and revised

NPRs.  (Pl.'s Mem. at 17-23.)  As shown in Argument III, infra., the Secretary's final

decision is not arbitrary and capricious, and is supported by substantial record evidence.

The Secretary has reasonably interpreted his own cost limit regulation, 42 C.F.R.

§ 413.30(c), to require health care providers such as St. Anthony's to submit an exception

request within 180 days of the initial notice of program reimbursement ("NPR"), or

within 180 days of a revised NPR, provided that the basis for the exception request was

addressed in the revised NPR.  The administrative record fully supports the Secretary's

finding that Plaintiff's cost limit exception requests were not submitted within 180 days

of the initial NPRs, and that the disputed part of Plaintiff's requests were not addressed

on reopening or in the revised NPRs.

---

[4]Neither the PRRB nor the Administrator addressed the applicability of the 112
percent policy, presumably because Plaintiff did not raise that issue.

Second, Plaintiff further contends that the 112 percent policy set forth in PRM § 2534.5 unlawfully deprived the SNF of full exception relief.  (Pl.'s Mem. at 16-17.) However, Plaintiff lacks standing to challenge the 112 percent policy, and there is no subject matter jurisdiction over that issue in any event.[5]

I.    THE COURT'S JURISDICTION IS LIMITED TO REVIEW OF THE SECRETARY'S FINAL DECISION, AND DOES NOT EXTEND TO PLAINTIFF'S CHALLENGE TO PRM § 2534.5's 112 PERCENT POLICY.

Plaintiff expends some effort trying to convince this Court that it should strike down a policy that has not even been applied to Plaintiff, let alone addressed in the final agency decision - - the possible limitation of exception relief to the difference between Plaintiff's actual costs and 112 percent of the mean cost limits for its peer group, referenced herein as the "112 percent policy."  (See Plaintiff's Memorandum Of Points and Authorities In Support Of Its Motion For Summary Judgment ("Pl.'s Mem.") at 8-9, 16-17.)  Plaintiff's challenge flies in the face of well-established principles of jurisdiction under the Medicare statute and principles of administrative law.

A.    Plaintiff Lacks Standing To Challenge PRM § 2534.5 Because The SNF Has Failed To Demonstrate That It Has Suffered An Injury In Fact.

PRM § 2534.5 provides that an exception will be granted for hospital-based SNFs only if the provider's costs exceed 112 percent of the mean per diem costs for the peer group of hospital-based SNFs and the provider satisfies all other requirements in the

---

[5]Because Plaintiff's challenge to the 112 percent policy is not properly before this Court,  the Secretary does not address the merits of that issue.

regulations for granting an exception. The amount of the exception that can be granted, in turn, is measured from 112 percent of the mean per diem costs. Id. According to Plaintiff, the 112 percent policy unlawfully deprived the SNF of full exception relief. However, neither CMS nor the Secretary applied the 112 percent policy to Plaintiff's exception request, and thus Plaintiff has no standing to seek judicial review of that issue.

As an element of the fundamental "case or controversy" requirement of Article III, plaintiffs "must establish that they have standing to sue." McConnell v. FEC, 540 U.S. 93, 225 (2003). There are three core requirements that must be demonstrated to establish standing: (1) "injury in fact, which is concrete, distinct and palpable, and actual or imminent;" (2) "a causal connection between the injury and the conduct complained of - - the injury has to be fairly trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] some third party not before the court"; and (3) "a substantial likelihood that the requested relief will remedy the alleged injury in fact." Id. at 225-26 (internal quotations and citations omitted). The burden is on Plaintiff to establish standing. Warth v. Seldin, 422 U.S. 490, 501 (1975).

In order to demonstrate the requisite concrete injury in fact, Plaintiff must prove that it has suffered an injury that is actual and imminent, as opposed to hypothetical or conjectural. Wernsing v. Thompson, 423 F.3d 732, 743 (7th Cir. 2005). This requirement prevents the standing inquiry from devolving into "'an ingenious academic exercise in the conceivable.'" Warth, 422 U.S. at 509 (quoting United States v. SCRAP,

412 U.S. 669, 688 (1973)).  Accordingly, an allegation of "possible" future injury does not demonstrate injury in fact; the injury must be "certainly impending" to satisfy the requirements of Article III.  Whitmore v. Arkansas, 495 U.S. 149, 158 (1990).

The policy about which Plaintiff complains here, the calculation of exception amounts under the PRM's 112 percent policy, has not been applied to Plaintiff.  Rather, the Secretary's final decision denied Plaintiff full exception relief on grounds completely independent of the 112 percent policy.  The Secretary concluded that Plaintiff's exception requests were not submitted within 180 days of the initial NPRs, whereas the reopening and revised NPRs were limited to adjusting the RCLs for the final market basket index and in no way pertained to the atypical services exception requested by Plaintiff.  Thus, since the 112 percent policy was not applied to Plaintiff's exception requests, Plaintiff cannot establish the concrete injury in fact necessary for standing.

Plaintiff asserts that "the Intermediary initially recommended limiting [Plaintiff's exception] relief" based on the PRM's 112 percent policy.  (Pl.'s Mem. At 17 n. 19.)  But the intermediary's initial recommendation was not accepted in CMS's final exception determination or in the Secretary's final decision.  (Compare A.R. at 222-23 (fiscal intermediary's initial recommendation of $18.51  and $21.06  exceptions) with A.R. at 181 (CMS's final approval of exceptions of $ 3.41 and $6.26 per diem) and A.R. at 7 (Secretary's final decision sustaining CMS's determination).)  It is well-established that

interim agency decisions carry no force.  As the Fifth Circuit has stated in addressing the

weight of a PRRB decision subsequently reversed by the final agency decision:

> Under 42 U.S.C. § 1395oo(f) and 42 C.F.R. § 405.1875, the
> Secretary . . . on review has all the powers she would have if making the
> initial determination.  5 U.S.C. § 557(b).  Thus the decision of the PRRB
> carries no more weight on review by the Secretary than any other interim
> decision made along the way in an agency where the ultimate decision of
> the agency is controlling.

Homen & Crimen, Inc. v. Harris, 626 F.2d 1201, 1205 (5th Cir. 1980).  See also St.

Francis Hosp. Center, Inc. v. Heckler, 714 F.2d 872, 874 (7th Cir. 1983).  It thus is of no

moment what the fiscal intermediary recommended initially.  The only decision relevant

here is the final agency decision made by the Secretary.

Plaintiff might respond that, if the Secretary's decision were finally reversed and

the matter were remanded, CMS would limit Plaintiff's exception relief under the PRM's

112 percent policy.  (See Pl.'s Mem. at 23.)  But, it remains entirely speculative whether

the Secretary would apply this policy in the event the Court were reverse the final agency

decision and remand for further proceedings.  It is of no moment that the fiscal

intermediary recommended application of the 112 percent policy; the fact of the matter is

that it has not been applied to Plaintiff here, and it may never be applied to the SNF.  See

Smith v. Wis. Dep't of Agr., 23 F.3d 1134, 1142 (7th Cir. 1994) (holding that no

justiciable case or controversy exists when plaintiff has yet to suffer loss); see also

Impress Communications v. Unumprovident Corp., 335 F. Supp.2d 1053, 1059, 1060

(C.D. Cal. 2003) (holding that "anticipated denial of future benefits" due to improper

-16-

health plan administration is "purely speculative").  Accordingly, because Plaintiff has

failed to demonstrate any injury in fact from application of the 112 percent policy,

Plaintiff's claim on that issue must be dismissed for failure to demonstrate standing

before this Court.

> B.    Plaintiff's Failure To Channel Its Claim Through The Medicare
>        Statute's Exclusive Administrative Appeals Process Precludes
>        Subject Matter Jurisdiction.

Alternatively, even if this Court were to conclude that Plaintiff has standing to

challenge the PRM's 112 percent policy, Plaintiff's failure to appeal this issue through the

administrative appeals process and receive a final agency decision on the issue deprives

this Court of subject matter jurisdiction over the issue.  A provider can secure judicial

review of a particular matter under the Medicare statute, 42 U.S.C. § 1395oo(f)(1), only if

there is a final agency decision on the matter in question.  The "final decision"

requirement is a "statutorily specified jurisdictional prerequisite," not "simply a

codification of the judicially developed doctrine of exhaustion."  Weinberger v. Salfi, 422

U.S. 749, 766 (1975).[6]  Providers must "'channel' . . . virtually all legal attacks through

---

[6]The applicable jurisdictional analysis here begins with Section 205(h) of the Social
Security Act, 42 U.S.C. § 405(h), which provides in relevant part:

> No findings of fact or decision of the Commissioner of Social
> Security shall be reviewed by any person, tribunal, or
> governmental agency except as herein provided.  No action
> against the United States . . . or any officer or employee
> thereof shall be brought under section 1331 or 1346 of Title
> 28 to recover on any claim arising under this subchapter.

the agency," thus affording the agency "greater opportunity to apply, interpret, or revise policies, or statutes without possibly premature interference by different courts applying 'ripeness' and 'exhaustion' exceptions case by case." Shalala v. Illinois Council on Long Term Care, 529 U.S. 1, 13 (2000).

While the channeling requirement might result in "occasional individual, delay-related hardship," the Supreme Court has understood Congress to deem such hardship "justified" in the particular context of the Medicare Act, "a massive, complex health and safety program . . . embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations, any of which may become the subject of a legal challenge in any of several different courts." Illinois Council, 529 U.S. at 13 (citing Ringer, 466 U.S. 602, 627 (1984); Salfi, 422 U.S. at 762). It makes no difference if the only remedies sought are injunctive and declaratory relief, rather than the payment of money for services. Ringer, 466 U.S. at 623. Nor is the expense and uncertainty associated with delaying judicial review until after completion of the administrative process a basis for circumventing the jurisdictional prerequisites of the Medicare statute. See id. at 627. See

---

42 U.S.C. § 405(h) (emphasis supplied). Section 405(h) is made applicable to the Medicare statute by operation of 42 U.S.C. § 1395ii, substituting the Secretary for the Commissioner of Social Security. See, e.g., Shalala v. Illinois Council on Long Term Care, 529 U.S. 1, 9 (2000). The Supreme Court has construed the final sentence of Section 405(h) broadly to bar federal question jurisdiction over a "claim arising under" the Medicare Act. See, e.g., id. at 9-15; Heckler v. Ringer, 466 U.S. 602, 621-22 (1984). A claim arises under the Medicare statute if both the standing and substantive basis for the claim arises from the Medicare statute. Id.

also National Athletic Trainers' Ass'n v. U. S. Dept. of Health and Human Services, 455 F.3d 500, 503 (5th Cir. 2006); American Chiropractic Ass'n v. Leavitt. 431 F. 3d 812, 816 (D.C.Cir. 2005); Three Lower Counties Comty. Health Servs. Inc. v. U.S. Dep't of Health and Human Servs., - -  F.Supp.2d  - -, 2007 WL 2932767 (D.D.C. Oct. 9, 2007).[7]

Anaheim Memorial Hospital v. Shalala, 130 F.3d 845 (9th Cir. 1997), is especially instructive here.  In Anaheim, the Ninth Circuit affirmed the Secretary's decision that a challenge to one of the methodological factors underlying the RCLs was outside the scope of the agency's reopening, and therefore the unrelated revised NPR did not support PRRB jurisdiction over the methodological factor.  Id. at 853.  The provider also had argued before the PRRB that it was entitled to equitable tolling of the deadline for its appeal, but the equitable tolling issue was not addressed in the PRRB's interim decision

---

[7]The Supreme Court has recognized one narrow exception to the requirement that challenges under the Medicare statute must be channeled through the administrative appeals process - - "where its application to a particular category of cases . . . would not lead to a channeling of review through the agency, but would mean no review at all." Illinois Council, 529 U.S. at 17, 19.  The Court noted that the set of cases in which Section 405(h) would lead to "no review" is very limited:

> [W]e do not hold that an individual party could circumvent § 1395ii's channeling requirement simply because that party shows that postponement would mean added inconvenience or cost in an isolated, particular case. Rather, the question is whether, as applied generally to those covered by a particular statutory provision, hardship likely found in many cases turns what appears to be simply a channeling requirement into complete preclusion of judicial review.

Id. at 22-23.

or in the Secretary's final decision. Id. at 853. Because there was no final agency

decision on the equitable tolling issue, the Ninth Circuit held that there was no federal

court jurisdiction to review that claim, and thus the appropriate course was a remand to

the Secretary for further proceedings. Id. See also Saline Cmty. Hosp. v. Secretary of

HHS, 744 F.2d 517, 520 (6th Cir. 1984) (holding that the district court had jurisdiction to

review the agency's final decision that the Board lacked jurisdiction, but did not have

jurisdiction to review the underlying merits of the case).

In this case, Plaintiff nowhere during the administrative process challenged the

possible application of PRM § 2534.5's 112 percent policy to its exception request, (see

A.R. at 26-40, 101-15, 247-57), presumably because neither CMS's final exception

determination nor the PRRB's interim decision nor the Secretary's final decision relied

upon the 112 percent policy. (See A.R. at 181 (CMS's final exception determination),

16-25 (PRRB's interim decision), 2-8 (Secretary's final agency decision).) Not

surprisingly, then, as Plaintiff itself concedes, there is no final agency decision addressing

the 112 percent policy. (See Compl. ¶ 36.) This fact is fatal to this Court's jurisdiction

over Plaintiff's challenge to the 112 percent policy.

In its Complaint, Plaintiff asserts that, "[i]n the interest of judicial economy," it

"seeks a declaration that the exception relief must be granted without regard to the

Secretary's policy set forth at Provider Reimbursement Manual § 2534.5 " (Compl. ¶ 36.)

But, as detailed above, the Medicare Act's channeling requirement precludes such

declaratory relief in the absence of a final agency decision regarding the 112 percent

policy.  If this Court were to reverse the Secretary's final decision in this matter, the

matter should be remanded to the Secretary for further proceedings.  If the 112 percent

policy were applied on remand, Plaintiff could seek administrative and judicial review

under the Medicare statute, 42 U.S.C. § 1395oo(a).  But Plaintiff cannot now obtain

review from this Court.

Moreover, general principles of administrative law also preclude this Court from

reviewing the PRM's 112 percent policy at this time.  As recently explained by the D.C.

Circuit in a Medicare case:

> Unlike a district court managing a garden variety civil suit, a district court
> reviewing a final agency action does not perform its normal role, but instead
> sits as an appellate tribunal.  Thus, under settled principles of administrative
> law, when a court reviewing agency action determines that an agency made
> an error of law, the court's inquiry is at an end: the case must be remanded
> to the agency for further action consistent with the correct legal standards.

Palisades Gen. Hosp. v. Leavitt, 426 F.3d 400, 403 (D.C. Cir. 2005) (citations and

quotation marks omitted).  See also Federal Power Comm'n v. Idaho Power Co., 344 U.S.

17, 20 (1952) ("the function of the reviewing court ends when an error of law is laid bare.

At that point the matter once more goes to the [agency] for reconsideration.").  Plaintiff's

efforts to immerse this Court in a complex area of provider reimbursement, without the

benefit of the Secretary's analysis and final decision and a corresponding administrative

record on the 112 percent policy, thus should not be countenanced.

II.   A NARROW STANDARD OF REVIEW GOVERNS HERE, AND THE
      SECRETARY'S INTERPRETATIONS AND FINDINGS ARE OWED
      SUBSTANTIAL DEFERENCE.

      1.  Jurisdiction over Plaintiff's challenge to the Secretary's November 29, 2006

final decision is based exclusively on 42 U.S.C. § 1395oo(f)(1), which provides for

judicial review of final agency decisions on Medicare provider reimbursement disputes

under the terms of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.

Memorial Hosp./Adair County Health Ctr., Inc. v. Bowen, 829 F.2d 111, 116-17 (D.C.

Cir. 1987) ("Adair County"); Mercy Hosp. of Laredo v. Heckler, 777 F.2d 1028, 1031 (5th

Cir. 1985).  The APA standard of review, 5 U.S.C. § 706(2)(A) and (E), provides that

agency action can be set aside only if it is "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law" or "unsupported by substantial evidence in a

case . . . reviewed on the record of an agency hearing provided by statute."  Citizens to

Preserve Overton Park v. Volpe, 401 U.S. 402, 413-15 (1971); Adair County, 829 F.2d at

116-17.

      The courts have consistently held that the APA establishes "a narrow standard of

review."  Southern Co. Services, Inc. v. FCC, 313 F.3d 574, 580 (D.C. Cir. 2002); Austin

Texas, Brackenridge Hosp. v. Heckler, 753 F.2d 1307, 1313 (5th Cir. 1985); McHenry v.

Bond, 668 F.2d 1185, 1190 (11th Cir. 1982).  Moreover, while the Secretary's compliance

with the Medicare statute and regulations is reviewable under the arbitrary and capricious

standard, and the adequacy of record support for the final decision is reviewable under the

-22-

substantial evidence standard, "the two standards involve the same level of scrutiny."
Adair County, 829 F.2d at 117.

      While the two APA criteria discussed in this Circuit's Adair County decision may
"require equivalent levels of scrutiny," 829 F.2d at 117 (citation omitted), they
nonetheless involve different inquiries by the reviewing court.  Under the arbitrary and
capricious standard, agency action may be invalidated only if it is based on an unlawful
interpretation of the statute or regulations, see HCA Health Services of Oklahoma v.
Shalala, 27 F.3d 614, 616-17 (D.C. Cir. 1994), or is "not rational and based on
consideration of the relevant factors."  FCC v. National Citizens Comm. for
Broadcasting, 436 U.S. 775, 803 (1978).  "The scope of review under the 'arbitrary and
capricious' standard is narrow and a court is not to substitute its judgment for that of the
agency" so long as the "decision was based on a consideration of the relevant factors" and
there was no "clear error of judgment."  Motor Vehicle Ass'n v. State Farm Mut. Auto.
Ins. Co., 463 U.S. 29, 43 (1983).  See also  Sentara-Hampton General Hosp. v. Sullivan,
980 F.2d 749, 755 (D.C. Cir. 1992) (same).  Thus, even if this Court were to agree with
Plaintiff "that other policies might better further the Secretary's stated objectives, [it is]
compelled to accept the policies and rules adopted by the Secretary so long as they have a
rational basis, are reasonably interpreted, and are consistent with the underlying statute."
Sentara-Hampton, 980 F.2d at 755.

The substantial evidence standard is satisfied if the final agency decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 619-20 (1966) (quotation marks and citation omitted). Substantial evidence is "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Id. at 620 (citations omitted).

2.  Given the narrowness of the APA standard of review, the final agency decision is owed substantial deference by the reviewing court.  "[T]to the extent HHS has based its decision on the language of the Medicare Act itself, [a court owes] deference under Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837, 843-45, 104 S. Ct.  2778, 2781-83, 81 L.E.2d 694 (1984)."  Marymount Hosp., Inc. v. Shalala, 19 F.3d 658, 661 (D.C. Cir. 1994).  The reviewing court must "defer to the agency's interpretation whenever it is a permissible construction of the statute."  HCA Health Servs., 27 F.3d at 617 (citation omitted).

Similarly, the Secretary's interpretation of his own regulations is entitled to "substantial deference," and "must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'"  Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) (citations omitted).  Accord HCA Health Servs., 27 F.3d at 616-17; Sta-Home Health Agency, Inc. v. Shalala, 34 F.3d 305, 308-309 (5th Cir. 1994); Mercy

Hosp., 777 F.2d at 1032.  Thus, a court must "uphold HHS's interpretation of its own regulations so long as the interpretation is within the range of reasonable meanings that the words of the regulation admit."  Marymount Hosp., 19 F.3d at 661 (quotation marks and citation omitted).

Finally, the Secretary's interpretation of a statute reached in a formal case adjudication also is subject to Chevron deference.  See  HCA Health Servs., 27 F.3d at 616-17 (deferring to interpretation of Board's construction of reopening regulation developed through adjudication); Alaska Dep't of Health and Social Servs. v. Centers for Medicare & Medicaid Servs., 424 F.3d 931, 938-939 (9th Cir. 2005) (extending Chevron deference to the Secretary's interpretation of the Medicaid statute, which was reached in a formal case adjudication); West Virginia v. Thompson, 475 F.3d 204, 212 (4th Cir. 2007); Minnesota v. Centers for Medicare & Medicaid Service, 475 F.3d 991, 998 (8th Cir. 2008).  Moreover, as the Ninth Circuit concluded in a similar Medicare reopening case, involving a post-reopening appeal of a revised NPR, "determining the scope of the reopened issue is a difficult question, requiring judgment, discretion, and some expertise in hospital finance - - which is all the more reason why this court should defer to the Secretary."  Anaheim, 130 F.3d at 852.

III.    THE SECRETARY'S DECISION IS NOT ARBITRARY OR CAPRICIOUS,
        AND IS SUPPORTED BY SUBSTANTIAL RECORD EVIDENCE.

Applying the foregoing principles of review under the APA, the Secretary's final decision sustaining CMS's denial of complete RCL exception relief for Plaintiff's FY

1991 and FY 1992 should be upheld.  First, the Secretary's interpretation of 42 C.F.R

§ 413.30(c) - - as requiring submission of exception requests within 180 days of the initial

NPR or within 180 days of any revised NPR if the basis for the exception request is a

specific issue that was addressed in the reopening and revised NPR - - does not conflict

with the plain language of the regulation, and thus is entitled to controlling weight.

Further, the Secretary's "issue-specific" interpretation of post-reopening exception

requests under § 413.30(c) harmonizes the regulatory provision for relief from cost

limitations with the Secretary's reopening regulations.  Third, the Secretary's issue-

specific interpretation of § 413.30 (c) is supported by settled principles of finality.  Lastly,

the Secretary's decision is supported by substantial evidence in the administrative record.

A.    The Secretary's Interpretation of 42 C.F.R. § 413.30(c) (1991)
      Is Reasonable and Owed Substantial Deference.

1.  St. Anthony's was required, by regulation, to make any RCL exception requests

to its fiscal intermediary "no later than 180 days after the date on the intermediary's notice

of amount of program reimbursement."  42 C.F.R. § 413.30(c) (1991).  Plaintiff has not

disputed that it did not submit exception requests within 180 days of the initial NPRs for

its FY 1991 and FY 1992, but rather states that it submitted the requests within 180 days

of the revised NPRs.  (See Pl.'s Mem. at 10-11.)  Although Plaintiff's exception requests

were submitted within 180 days of the two revised NPRs, the issue is whether the SNF's

atypical services exception requests qualified for full relief based on reopening and

revised NPRs that were limited to cost limit adjustments to account for the final market

basket index.  On its face, § 413.30(c) does not address RCL exception requests that follow a reopening and a revised NPR.  Accordingly, the Secretary was required to interpret that regulation in order to determine whether St. Anthony's RCL exception request qualified for full relief.

The Secretary has interpreted § 413.30(c) to mean that RCL exception requests must be filed within 180 days of the initial NPR, or within 180 days of a revised NPR provided that the basis for the exception relief is addressed in the reopening and revised NPR.  Since the regulation does not address specifically the scope of available cost limit exception relief based on a reopening and revised NPR, there cannot be a conflict between the Secretary's interpretation and the regulation's plain language, and thus the Secretary's construction is to be accorded "controlling weight."  See Thomas Jefferson Univ. v. Shalala, 512 U.S. at 512.

2.  Besides comporting fully with the plain text of 42 C.F.R. § 413.30(c), the Secretary's interpretation harmonizes his approach to post-reopening RCL exception relief with the general Medicare rules regarding administrative finality and reopening.  It is well-settled that when interpreting a statute or regulation, all parts should be construed together to produce a harmonious whole.  See Norman J. Singer, Sutherland Statutory Construction, § 46.05 (5th ed. 1992); King v. St. Vincent Hosp., 502 U.S. 215, 221 (1991); Am. Fed'n of Govt. Employees v. Fed'l Labor Relations Auth., 803 F.2d 737, 740 (D.C. Cir. 1986).  The Secretary reasonably relied on this constructional rule in interpreting 42

C.F.R. § 413.30(c) to provide that Plaintiff's requests for RCL exceptions made pursuant

to the revised NPRs were limited to items and costs adjusted by those revised NPRs.

(A.R. at 7.)

     With respect to finality, the initial NPR is, by statutory and regulatory definition,

the Secretary's "final determination" of the total amount of program reimbursement owing

for a provider's fiscal period. 42 U.S.C. § 1395oo(a)(1)(A)(i); 42 C.F.R. §§ 405.1801(a),[8]

405.1803. See also Your Home Visiting Nurse Servs. v. Shalala, 525 U.S. 449, 451-53

(1999) (an intermediary's NPR is a final reimbursement determination by definition).

Thus, if a provider does not appeal the initial NPR to the PRRB within 180 days, the

reimbursement determinations in the initial NPR are final and binding, unless a specific

matter is timely reopened and changed in a revised NPR. 42 C.F.R. § 405.1807.

     The Secretary's reopening regulations provide that if the provider does not appeal

the initial NPR within 180 days, a final reimbursement determination may be reopened on

specific "findings on matters at issue in such determination." 42 C.F.R. § 405.1885(a).

But where a revision is made in a reimbursement determination after reopening, a

provider's appeal rights are limited to the "separate and distinct determination" included

in the revised NPR; the provider may not appeal other matters that were finalized in the

---

   [8] Section 405.1801(a) specifically states that "the term [intermediary
determination] . . . is synonymous with the phrases 'intermediary's final determination'
and 'final determination of the Secretary,' as those phrases are used in [42 U.S.C. §
1395oo(a)]." (Emphasis added).

initial NPR and not reopened and revised.  42 C.F.R. § 405.1889.  As this Circuit has

concluded, "[i]n light of the explicit language in 42 C.F.R. § 405.1885 limiting

reopenings to 'findings on matters at issue in [the original NPR]' and in 42 C.F.R.

§ 405.1889 characterizing revisions as 'separate and distinct determination[s]' . . . [it is

not] impermissible for the Secretary to interpret the 'intermediary redetermination' on

reopening as limited to the particular matters revisited."  HCA Health Servs., 27 F.3d at

620.  Indeed, other federal courts of appeals have similarly sustained the Secretary's long-

standing "issue-specific" interpretation of the scope of appeal rights after reopening and

issuance of revised NPRs.  French Hosp. Med. Ctr. v. Shalala, 89 F.3d 1411, 1417-21 (9th

Cir. 1996); Anaheim Mem'l Hosp. v. Shalala, 130 F.3d 845, 851-53 (9th Cir. 1997); Albert

Einstein Med. Ctr. v. Sullivan, 830 F. Supp. 846, 848-52 (E.D. Pa. 1992), aff'd, 6 F.3d

778 (3d Cir. 1993).

　　　In this case, the Secretary has reasonably interpreted § 413.30(c) to limit a

provider's post-reopening right to RCL exception relief in the same issue-specific manner

as appeals of revised NPRs after reopening are limited; providers may submit exception

requests following a reopening and revised NPR only to the extent that the reopening and

revised NPR specifically address the issues underlying the RCL exception request.  This

interpretation reasonably harmonizes the Secretary's issue-specific interpretation of the

scope of provider appeal rights following a reopening and revised NPR, 42 C.F.R.

§ 405.1889, with the scope of post-reopening cost limit exception relief.

3.  The Secretary's issue-specific interpretation of § 413.30 (c) is also supported by settled principles of finality.  In <u>HCA Health Services of Oklahoma v. Shalala</u>, 27 F.3d at 620, this Circuit concluded that "[p]erhaps the most convincing argument in favor of choosing the Secretary's [issue-specific] reading . . . is the preservation of the Medicare Statute's 180-day limitation on reviewing an intermediary's determination of total program reimbursement."  <u>Accord</u> <u>French Hosp. Med. Ctr.</u>, 89 F.3d at 1420 (citation omitted); <u>Anaheim Mem'l Hosp.</u>, 130 F.3d at 852.  <u>See also</u> <u>Your Home Visiting Nursing Servs</u>, 525 U.S. at 452-56 (rejecting PRRB and federal court jurisdiction over intermediary refusals to reopen, in order to safeguard statutory 180-day period to appeal initial NPR).  The interests of finality would be undermined similarly here if St. Anthony's were allowed full RCL exception relief under the atypical services exception, based on a reopening and revised NPRs that were limited to cost limit adjustments to account for the final market basket index.  The only stated basis for the requested exceptions was atypical services, but the character of the SNF's services was finalized solely in the initial NPRs, and was simply not addressed in the reopening and revised NPRs.  Section 413.30(c)'s 180-day deadline for RCL exception requests would be eviscerated if providers could secure exception relief based on matters finalized in the initial NPR, which were not reopened or revised.   What St. Anthony's is attempting to do here is to "reviv[e] a claim on which the statute of limitations has run."  <u>Albert Einstein Med. Ctr.</u>, 830 F. Supp. at 850.  The NPRs were reopened by the fiscal intermediary for

one specific purpose - - to revise the cost limits to account for the final market basket

index.  There is no indication that the fiscal intermediary reviewed any other items.

4. Any remaining question about the lawfulness of the Secretary's issue-specific

interpretation of § 413.30(c) is dispelled by the Ninth Circuit's decision in <u>Foothill</u>

<u>Presbyterian Hospital v. Shalala</u>, 152 F.3d 1132 (9th Cir. 1998) ("<u>Foothill</u>").  The factual

and procedural posture of <u>Foothill</u> is very similar to this case.  In <u>Foothill</u>, the plaintiff

hospital's initial NPR disallowed $408,294 of its inpatient operating costs based on a

different cost limit (<u>i.e.</u>, a limit on the annual rate of increase of a hospital's inpatient

operating costs) than the cost limits at issue here.  <u>Id.</u> at 1133.  <u>See also</u> 42 U.S.C.

§ 1395ww(b)(the cost limit at issue in <u>Foothill</u>); 42 C.F.R. § 413.40 (same).  Besides its

right to appeal the initial NPR to the PRRB, the hospital also could have requested an

adjustment to the rate of increase limit by "no later than 180 days after the date on the

intermediary's notice of amount of program reimbursement."  152 F.3d at 1135 (quoting

42 C.F.R. § 413.40(e) (1991)).[9]  However, the hospital did not request an adjustment to

the cost limit, or file any appeal to the PRRB, within 180 days of the initial NPR.  <u>Id.</u> at

1133.  Indeed, the intermediary reopened and issued a revised NPR in 1989, and, again,

---

[9]Virtually identical language is used in 42 C.F.R. § 413.30 (c) (1991) - - the regulation
at issue in this case - - which states that the request must be made "within 180 days of the
date on the intermediary's notice of program reimbursement."  As discussed below, the
regulation at issue in <u>Foothill</u> was later revised, but the Ninth Circuit concluded that the
revision was not material.

the hospital did not request an adjustment to the rate of increase limit or appeal to the

PRRB.  Id.

The Foothill plaintiff's cost report was reopened a second time in 1991, and a

second revised NPR was issued solely on the malpractice insurance cost issue.  152 F.3d

at 1134.  The hospital then requested, just like Plaintiff here, an exception to the cost limit

based on alleged "atypical services," even though that matter was not reconsidered or

revised through the reopening.  Id. at 1134.  CMS denied the request as untimely, and the

CMS Administrator affirmed that denial.  Id.  In sustaining the district court's grant of

summary judgment for the Secretary, the Ninth Circuit held that:

> Because [42 C.F.R. § 413.40(e) (1991)] is silent on the scope
> of TEFRA adjustment requests, we defer to the Secretary's
> interpretation of the regulation.  See French Hosp. Med. Ctr.,
> 89 F.3d at 1416.  The Secretary's interpretation is not
> inconsistent with the language of 42 C.F.R. § 413.40(e).  Nor
> is there any evidence in this case that the Secretary's
> interpretation would frustrate clear congressional intent.
> In addition, the Secretary's interpretation reasonably
> harmonizes the TEFRA adjustment regulations with the issue-
> specific re-opening regulations set forth in 42 C.F.R. §§
> 405.1885(a) and 405.1889 . . .
> As we determined in French Hospital and Anaheim Memorial
> Hospital, these regulations clearly limited a hospital's right to
> appeal a reopening decision to the specific issues reopened
> and addressed in a second revised NPR.  French Hosp. Med.
> Ctr., 89 F.3d at 1414-15; Anaheim Mem'l Hosp., 130 F.3d at
> 851.  The Secretary's interpretation of § 413.40(e) to limit
> exception requests to the issues considered in the revised NPR
> is consistent with the issue-specific requirements in these
> regulations and promotes finality.  If providers were allowed
> to raise any exception request, whether or not it was relevant
> to the TEFRA adjustment, no decision would ever be final.

Id. at 1135-36.

The Secretary respectfully submits that there is no reason for this Court to deviate here from the Ninth Circuit's Foothill decision. The cost limit adjustment provision at issue in Foothill, 42 C.F.R. § 413.40(e) (1991), is virtually identical to the RCL exception provision at issue in this case, 42 C.F.R. § 413.30(c) (1991). Both sections require providers to request an exception to certain cost limits within 180 days after the date on the intermediary's notice of program reimbursement. The Secretary has interpreted the two exception regulations consistently to mean that exception requests must be filed within 180 days of the initial NPR. If a cost limit exception request is submitted within 180 days of a revised NPR, exception relief is available only if the basis for the exception request is addressed in the reopening and revised NPR.

As the Ninth Circuit concluded in Foothill, the Secretary's issue-specific approach to cost limit exception relief harmonizes the cost limits exception regulation with the issue-specific reopening regulations. 152 F.3d at 1135. Furthermore, the Secretary's interpretation promotes finality. Id. at 1136. Upholding the Secretary's interpretation in this case prevents St. Anthony's or any other provider from resurrecting stale issues solely as the result of a fortuitous (for the provider) circumstance wherein unrelated reimbursement issues are revised through reopening. The limited reopening and circumscribed revision of one Medicare reimbursement issue should not open the "Pandora's box," and enable a provider to request an exception from a cost limit based on

-33-

matters that were finalized in the initial NPR, but which were not timely appealed or reopened and revised.

    B.    <u>Plaintiff's Criticisms Of The Final Agency Decision Are Unavailing</u>.

    1.  Plaintiff asserts that the Secretary is improperly reading additional terms into 42 C.F.R. § 413.30(c) (1991).  According to Plaintiff, the Secretary's final decision turns on the Secretary's reading the term "original" or "initial" before § 413.30(c)'s reference to "notice of program reimbursement."  (Pl.'s Mem. at 18.)  But, Plaintiff concludes, while a different cost limit regulation, 42 C.F.R. § 413.40(e)(1), is hinged on the "initial notice of program reimbursement," the term "initial" is not part of § 413.30(c).  (<u>Id.</u> at 18-19.)

    Plaintiff's argument fails for two reasons.  First, the Secretary's final decision does not reject full RCL exception relief simply because Plaintiff's exception requests were not submitted within 180 days of the "initial" NPR.  Rather, the Secretary further concluded that, while Plaintiff's exception requests came within 180 days of the revised NPRs, full exception relief was not available because the stated basis of the exception requests (<u>i.e.</u>, atypical services) was not the same as the limited, issue-specific scope of the reopening and revised NPRs (<u>i.e.</u>, cost limit adjustments to account for the final market basket index).  (A.R. at 7.)  Contrary to Plaintiff's supposition, then, the Secretary's final decision does not rest on a per se rejection of post-reopening exception relief.  Instead, the final decision requires that the basis for exception relief must have been addressed in the reopening and revised NPR.

Second, Plaintiff's reliance on a different cost limit regulation, 42 C.F.R.

§ 413.40(e)(1), that specifically refers to the "initial" NPR, overlooks that § 413.40 has

not always included the word "initial," and indeed did not include that term during the

fiscal periods at issue in this case.  Moreover, the Ninth Circuit's <u>Foothill</u> decision

involved the prior version of § 413.30.  Indeed, the Ninth Circuit rejected essentially the

same argument as Plaintiff raises here.  The <u>Foothill</u> provider argued that, because the

prior version of § 413.40 did not distinguish between original and revised NPRs, whereas

the regulation was later amended to add "initial" before "notice of program

reimbursement," the Secretary's "issue-specific" interpretation of § 413.40 was

insupportable.  <u>Foothill</u>, 152 F.3d at 1135.  The Ninth Circuit, however, agreed with the

Secretary that the subsequent addition of the word "initial" to the regulation was only a

clarification.  <u>Id.</u> at 1135.  Thus, the Ninth Circuit held that, because § 413.40 was silent

on the scope of post-reopening requests for cost limit adjustments, the court would defer

to the Secretary's issue-specific interpretation.  <u>Id.</u>

Similarly here, the Secretary's interpretation must be upheld because it is

reasonable and not inconsistent with the language of the regulation.  The fact that

§ 413.30(c) does not include a term ("initial") that § 413.40(e)(1) <u>now</u> includes is of no

moment.  It simply means that the Secretary has not clarified § 413.30(c) in the same

manner as § 413.40(e)(1) was clarified.  Moreover, the fact that neither of these cost limit

exception regulations included the word "initial" during the fiscal periods at issue here

forecloses St. Anthony's reliance on the constructional principle <u>expressio unius est exclusio alterius</u>. (<u>Cf.</u> Pl.'s Mem. at 19.) On the contrary, because the text of the two cost limit regulations was virtually identical during the relevant period, § 413.30(c) should be interpreted consistently with how § 413.40 was interpreted in <u>Foothill</u>.

2. Plaintiff also tries to distinguish this case from <u>HCA Health Care Services of Oklahoma</u>, <u>French Hospital</u>, and <u>Anaheim Memorial Hospital</u>, (<u>see</u> Pl.'s Mem. at 20-21), but Plaintiff's account of the case law is both incomplete and inaccurate. The three decisions that Plaintiff addresses (<u>HCA</u>, <u>French</u>, <u>Anaheim</u>) each involved the issue-specific scope of PRRB jurisdiction over post-reopening appeals. This case does not involve PRRB jurisdiction over a post-reopening appeal, however, but the Secretary's issue-specific approach to post-reopening requests for cost limit relief. Plaintiff's summary judgment brief does not even mention <u>Foothill</u>, which is the one circuit court decision that addresses post-reopening requests for cost limit relief, and which is based specifically on the Ninth Circuit's prior <u>French</u> and <u>Anaheim</u> decisions.

As for the three decisions Plaintiff cites, the Secretary agrees with Plaintiff's representation that the reopenings in those cases did not involve a change to the methodology for calculating RCLs, whereas the reopening of Plaintiff's FY 1991 and FY 1992 cost reports was to revise the RCLs to account for the final market basket index. But that is a distinction without a difference, because Plaintiff here is <u>not</u> seeking exception relief that is related to the RCL methodology.

-36-

Indeed, the Anaheim situation is really the converse of this case. The Ninth Circuit sustained the Secretary's decision that the provider could not appeal one of the many methodological components of the RCLs based on a reopening and revised NPR that was limited to malpractice insurance costs. Anaheim, 130 F.3d at 851. In this case, the fiscal intermediary reopened Plaintiff's cost reports to revise a component of the RCL, the market basket index. (A.R. at 64, 205-08.) Plaintiff here, however, does not challenge any aspect of the RCL methodology, or the revised RCL per diem amount. Rather, Plaintiff has simply requested exceptions from the application of the RCLs as revised for the final market basket index. But the revision of the market basket index has absolutely nothing to do with whether Plaintiff provided atypical services, an issue that was finalized 180 days after issuance of the original NPR. Whether Plaintiff should obtain exception relief from the RCLs because of Plaintiff's alleged provision of atypical services has as little to do with the adjustment of the SNF market basket, as the malpractice insurance cost reopening and revised NPR in Anaheim had to do with the RCL methodology in that case.

3. Plaintiff further maintains that it lacked fair notice of the Secretary's issue-specific interpretation, that the Secretary cannot reasonably apply a policy for which it gave no advance notice, and that such advance notice is "the hallmark to administrative fairness." (Pl.'s Mem. at 22.) St. Anthony's implies that it relied on its cost reports being reopened to adjust RCLs since they had been reopened every year since 1988. (Pl.'s

Mem. at 10.)  But CMS authorized reopening to reflect market basket adjustments only if the final rate of change in market basket index exceeded the estimated change by a particular threshold, and then only if less than three years had passed since issuance of the original NPRs.  There certainly was no guarantee that St. Anthony's would get a second bite at the apple by being able to seek an exception to revised NPRs when it sat on its rights after the original NPRs were issued, as there was no guarantee that the cost reports would in fact be reopened.

Moreover, as the Supreme Court has recognized, "the APA does not require that all the specific applications of a rule evolve by further, more precise rules rather than by adjudication."  Shalala v. Guernsey Mem'l Hosp., 514 U.S. 87, 96 (1995) (citations omitted).  Instead, "[w]here a statute or legislative rule has created a legal basis for enforcement, an agency can simply let its interpretation evolve ad hoc in the process of enforcement or other applications."  American Mining Congress v. Mine Safety & Health Admin., 995 F.2d 1106, 1111-12 (D.C. Cir. 1993). See also West Virginia v. Thompson, 475 F.3d 204, 210 (4th Cir. 2007) (Secretary may develop standards through adjudication in Medicaid context); Minnesota v. Centers for Medicare & Medicaid Service, 475 F.3d 991, 998 (8th Cir. 2008) (same).

Moreover, as the Ninth Circuit recognized in Alaska Department of Health and Social Services v. Centers for Medicare & Medicaid Services, 424 F.3d 931, 939 (9th Cir. 2005), the Secretary's statutory interpretations reached by adjudication deserve Chevron

deference.    See also  HCA Health Servs., 27 F.3d at  616-17 (deferring to interpretation

of Board's construction of reopening regulation developed through adjudication).  The

Ninth Circuit noted that interpretations reached by adjudication contain "hallmarks of

'fairness and deliberation,'" such as "opportunities to . . . petition for reconsideration,

brief . . . arguments, be heard at a formal hearing, receive reasoned decisions at multiple

levels of review, and submit exceptions to those decisions."

The longstanding character of the Secretary's issue-specific approach to reopening

is evidenced by the very judicial decisions cited in Plaintiff's own brief:  HCA Health

Services (1994); French Hospital (1996); and Anaheim (1997).  Moreover, the most

relevant decision, Foothill, was issued in 1998.  Since Plaintiff's exception requests were

submitted in April 1997 (A.R. at 172-76, 90-95); partial exception relief was granted in

October 1997 (A.R. at 181); and the Secretary's final decision came in November 2006

(A.R. at 2-8), the foregoing judicial decisions, standing alone, provided Plaintiff with

ample advance notice of the Secretary's issue-specific approach to reopening.

### B.    THE FINAL AGENCY DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE IN THE RECORD.

It is clear from St. Anthony's concessions and from the undisputed facts in the

Administrative Record that the Secretary's final decision is supported by substantial

evidence in the record.  First, St. Anthony's does not allege that it requested an RCL

exception within 180 days of the date of the initial NPR for either cost year, and the fact it

did not do so is undisputed.  (See Compl. ¶ 27 (noting that exception requests were made

pursuant to revised NPRs); Pl.'s Mem. at 10-11.)  In fact, Plaintiff's April 23 and 25, 1997, requests were made more than two years after the expiration of the 180-day period following the September 1993 and April 1994 initial NPRs for Plaintiff's FY 1991 and FY 1992, respectively.  (A.R. at 43-51, 193-201, 172-76, 90-95.)

Second, the record establishes that St. Anthony's 1991 and 1992 fiscal year cost reports were reopened for the sole purpose of recalculating the routine cost limits based on the revised market basket index.  (A.R. at 64, 205-08.)  There also is no dispute that, as a result of this reopening, revised NPRs were issued that were limited to changes in the RCLs to account for the final market basket index.  (See A.R. at 54-88, 136-70; see also Pl.'s Mem. at 13 (noting that the exception relief granted by CMS "simply reversed the decrease to St. Anthony's RCLs that would have resulted from retroactive application of the actual market basket index.").)

It is also undisputed that St. Anthony's requested an exception based on its provision of atypical services.  (A.R. at 90-95, 172-76.)  The record establishes, however, that the only matter addressed in the reopening and revised NPRs was the revisions to the cost limits to account for the final SNF market basket index.  Plaintiff's alleged atypical services were not at issue on reopening.  Nevertheless, the RCL limits were revised downwards as a result of the reopening, resulting in additional costs being subject to the RCLs.  (A.R. at 88, 170.)  CMS granted, and the Secretary sustained on review, exception relief equal to the incremental costs in excess of the revised cost limits.  (A.R. at 7, 181.)

Thus, the administrative record unequivocally establishes that the Secretary properly applied his issue-specific interpretation of § 413.30(c) to the facts of this case.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendant's Motion for Summary Judgment, and deny Plaintiff's Motion for Summary Judgment.

October 29, 2007                         Respectfully submitted,


                                   _____/s/_____
                                   JEFFREY A. TAYLOR
                                   United States Attorney
                                   D.C. Bar No. 498610


                                   _____/s/_____
                                   CHARLOTTE A. ABEL
                                   D.C. Bar No. 388582
                                   Assistant United States Attorney
                                   Judiciary Center Building
                                   555 4th St., N.W., Room 10-106
                                   Washington, D.C.  20530
                                   (202) 307-2332
                                   Facsimile: (202) 514-8780


_____/s/_____
                                   SUSAN MAXSON LYONS
                                   D.C. Bar No. 434249
                                   Attorney
                                   U.S. Department of Health and
                                        Human Services
                                   Office of the General Counsel
                                   Room 5309 Cohen Building
                                   330 Independence Ave., S.W.

Washington, D.C. 20201
(202) 619-3802
Facsimile: (202) 401-1405

_____Counsel for Defendant

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SAINT ANTHONY'S MEDICAL CENTER,    )
                                   )
              Plaintiff ,          )
                                   )
       v.                          )    Case No. 1:07-cv-00260 (RMU)
                                   )
MICHAEL O. LEAVITT, Secretary,     )
       U.S. Department of Health   )
       and Human Services,         )
                                   )
              Defendant.           )
_____    )

**DEFENDANT'S STATEMENT OF MATERIAL**
**FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**

Defendant Michael O. Leavitt, the Secretary of Health and Human Services ("the

Secretary"), submits the following Statement of Material Facts As To Which There Is No

Genuine Issue in accordance with Rule 56 of the Federal Rules of Civil Procedure and

Local Civil Rules 7(h) and 56.1.

1.  Plaintiff is a Medicare-certified provider of hospital services located in Alton,

Illinois.  (Complaint For Judicial Review Of Agency Action ("Complaint" or "Compl.")

¶ 6; Answer ¶ 6.)

2.  During the fiscal periods at issue, Plaintiff operated a hospital-based skilled

nursing facility.  (Compl. ¶ 6; Answer ¶ 6.)

3.  On September 2, 1993, Plaintiff's fiscal intermediary issued the initial NPR for

St. Anthony's fiscal year ending December 31, 1991 ("FY 1991" or "1991 fiscal year").

(See A.R. at 43-51.)

4.  Plaintiff did not request an exception to the routine cost limit within 180 days of the initial NPR, even though the SNF's routine service costs exceeded the applicable routine cost limit by $59.05 per diem.  (A.R. at 95.)

5.  Similarly, on April 1, 1994,  Plaintiff's fiscal intermediary issued the initial NPR for St. Anthony's fiscal year ending December 31, 1992 ("FY 1992" or "1992 fiscal year"), (see A.R. at 193-201); again, St. Anthony's did not seek an exception within 180 days of the initial NPR, even though the SNF's routine service costs exceeded the applicable cost limit by $67.02 per diem.  (A.R. at 177.)

6.  In a memorandum dated May 30, 1996, CMS advised the fiscal intermediaries that the projected rates of increase in the SNF market basket for the fiscal periods at issue differed from the final rates of increase by more than the threshold of 0.3 of one percentage point, and thus the RCLs had been revised.  (A.R. at 205-06.)  The memorandum instructed the fiscal intermediaries to reopen and apply the revised RCLs to cost reports that were still within the three-year reopening period.

7.  Subsequently, on August 29, 1996, the fiscal intermediary issued a notice of reopening for Plaintiff's 1991 and 1992 fiscal years.  (A.R. at 64.)  The reopening was for the limited purpose of "updat[ing] the SNF cost limit based on [CMS's] memorandum dated May 1996."  (Id.)

8.  Then, on October 31, 1996, the fiscal intermediary issued revised NPRs for Plaintiff's FY 1991 and 1992 cost reports.  (A.R. at 54-88 (FY 1991 revised NPR), 136-70 (FY 1992 revised NPR).)

9.  The revised market basket index resulted in a decrease in the routine cost limits for both periods.  Specifically, St. Anthony's per diem RCL decreased by $3.41 for FY 1991 (from $138.16 to $134.75), which reduced its Medicare reimbursement by $18,867.  (A.R. at 70, 88.)  Similarly, Plaintiff's FY 1992 RCL decreased by $6.26 (from $146.06 to $139.80), which reduced its reimbursement by $33,685.  (A.R. at 152, 170.)  Taken together, the FY 1991 and 1992 revised NPRs reduced Plaintiff's Medicare reimbursement by $52,552.  (Id. at 152.)

10.  On April 23, 1997, Plaintiff filed a request for an RCL exception for its FY 1992 based on its purported provision of "atypical services."  (A.R. at 172-76.)

11.  Similarly, on April 25, 1997, Plaintiff requested an RCL exception for its FY 1991, which was also  based on its alleged provision of "atypical services."  (A.R. at 90-95.)

12.  For both periods, St. Anthony's requested an exception for the total difference between the per diem routine cost limit (as adjusted for the revised market basket index) and the provider's actual per diem costs.  (A.R. at 91, 173.)  The requested exception amounts were $45.84 per diem for FY 1991 and $44.83 per diem for FY 1992.  (A.R. at 95, 177.)

-3-

13.  The fiscal intermediary recommended to CMS that the exception be granted, but in lesser amounts based on application of a policy set forth in the Provider Reimbursement Manual § 2534.5.  (A.R. at 222-23 (recommending an exception of $18.51 per diem for FY 1991 and $21.06 per diem for FY 1992).)

14.  Initially, CMS apparently denied the SNF's exception requests on the basis that the requests were not submitted within 180 days of the initial NPRs.  (A.R. at 225 (fiscal intermediary's informational letter to Plaintiff).)

15.  The fiscal intermediary informed Plaintiff that exceptions might be granted for the incremental increases in the amounts that the provider's costs exceeded its revised cost limits, as determined by the incremental increases in the RCLs as a result of the final market basket index.  (Id.)

16.  CMS subsequently approved cost limit exceptions of $3.41 per diem for Plaintiff's FY 1991 and $6.26 per diem for the SNF's FY 1992.  (A.R. at 181.)  The approved exception amounts equaled the incremental per diem decreases in the RCLs as a result of the final market basket index.  (A.R. at 88, 170.)

17.  On December 15, 1997, Plaintiff appealed to the PRRB, contending that it was entitled to full exception relief for both FY 1991 and FY 1992.

18.  On September 26, 2006, the Board issued a decision finding that St. Anthony "may request an exception to the RCL from any NPR in which the Intermediary adjusts

its RCL, and there is no basis to limit a provider's exception request made from a revised

NPR." (A.R. at 24.)

19. On November 29, 2006, the Secretary's delegate, the Administrator of CMS,

reversed the Board's decision. (A.R. at 2-8.) The Administrator interpreted the cost limit

exception regulation, 42 C.F.R. § 413.30(c), and the reopening regulation, 42 C.F.R.

§ 405.1889, together as providing that requests for exceptions made pursuant to revised

NPRs are limited to items and costs adjusted on the revised NPRs. (A.R. at 7.) The

Administrator found that Plaintiff's exception requests were not filed within 180 days of

the initial NPRs, as required by 42 C.F.R. § 413.30(c), and that the reopening and revised

NPRs were limited to adjusting the RCLs to account for the final market basket index. In

limiting exception relief to the incremental effects of the revised RCLs, the Secretary

determined that Plaintiff had no right to relief that exceeded the limited scope of the

reopening and revised NPRs.

October 29, 2007                                Respectfully submitted,


                                        _____/s/_____
                                        JEFFREY A. TAYLOR
                                        United States Attorney
                                        D.C. Bar No. 498610


                                        _____/s/_____
                                        CHARLOTTE A. ABEL
                                        D.C. Bar No. 388582
                                        Assistant United States Attorney
                                        Judiciary Center Building

                                        -5-

555 4th St., N.W., Room 10-106
Washington, D.C.  20530
(202) 307-2332
Facsimile: (202) 514-8780


               /s/

SUSAN MAXSON LYONS
D.C. Bar No. 434249
Attorney
U.S. Department of Health and
    Human Services
Office of the General Counsel
Room 5309 Cohen Building
330 Independence Ave., S.W.
Washington, D.C. 20201
(202) 619-3802
Facsimile: (202) 401-1405

Counsel for Defendant

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SAINT ANTHONY'S MEDICAL CENTER, | ) | |
| | ) | |
| Plaintiff , | ) | |
| | ) | |
| v. | ) | Case No. 1:07-cv-00260 (RMU) |
| | ) | |
| MICHAEL O. LEAVITT, Secretary, | ) | |
| U.S. Department of Health | ) | |
| and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## <u>ORDER</u>

UPON CONSIDERATION OF Defendant's Motion for Summary Judgment, Plaintiff's opposition thereto, Defendant's reply, and the entire record herein, it is this _____ day of _____, 2008,

ORDERED that the Defendant's Motion for Summary Judgment be, and the same hereby is, GRANTED, and that summary judgment be entered in favor of the Secretary.

FURTHER ORDERED that Plaintiff's Motion for Summary Judgment be, and the same hereby is, DENIED; and it is

FURTHER ORDERED that this matter is hereby DISMISSED WITH PREJUDICE.


_____
United States District Judge