# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAINT ANTHONY'S MEDICAL CENTER )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL O. LEAVITT, Secretary, )<br>U.S. Department of Health and Human Services, )<br>)<br>Defendant. )<br>_____ ) | Case No. 1:07-CV-00260 (RMU) |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
## REPLY IN FURTHER SUPPORT
## OF ITS MOTION FOR SUMMARY JUDGMENT

Dennis M. Barry
D.C. Bar No. 375152
J. Harold Richards
D.C. Bar No. 469524
VINSON & ELKINS L.L.P.
1455 Pennsylvania Avenue, N.W.
Suite 600
Washington, D.C. 20004-1008
202.639.6791
202.879.8891 (fax)

Nancy C. LeGros
Texas Bar No. 00787892
Vinson & Elkins L.L.P.
2500 First City Tower
1001 Fannin
Houston, TX 77002-6760
713.758.3239

Counsel for the Plaintiff

December 12, 2007

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SAINT ANTHONY'S MEDICAL CENTER | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-CV-00260 (RMU) |
| | ) | |
| MICHAEL O. LEAVITT, Secretary, | ) | |
| U.S. Department of Health and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND**
**REPLY IN FURTHER SUPPORT**
**OF ITS MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

The Secretary continues to assert that the 112 percent rule is not an issue in this case, and incredibly, the Secretary goes so far as to state that the application of the 112 percent rule, which the Secretary has mechanically applied in at least two other cases currently pending before this Court, is—to use the Secretary's language—"entirely speculative." Def. Mem. at 16.  Further, the Secretary continues to maintain—contrary to his own regulations—that the Hospital is not entitled to any portion of its reasonable costs in excess of the routine cost limits other than the limited amount previously allowed by the Secretary.  See Def. Mem. at 25-33.  The Secretary's case must fail.

The Secretary's refusal to reimburse the Hospital for its reasonable costs of rendering atypical services is contrary to 1) this Court's decision in Mercy Medical Skilled Nursing Facility v. Thompson, 2004 WL 3541332 (D.D.C. May 14, 2004), where this Court rejected the Secretary's refusal to grant full exception relief; 2) the plain language of the Secretary's own

regulation, 42 C.F.R. § 413.30, which does not limit full exception relief for requests timely filed from revised NPRs; 3) the D.C. Circuit's decision in HCA Health Services of Oklahoma v. Shalala, 27 F.3d 614 (D.C. Cir. 1994), which sets forth the rules governing appeals from revised NPRs; and 4) the requirement that the Secretary provide notice of his policies to affected parties.

The Secretary contends that this Court should not apply the Mercy decision to this case, since it is only "speculative" whether the Secretary's policy embodied in Provider Reimbursement Manual ("PRM") § 2534.5 would be applied to the Hospital. The Secretary's assertion is ridiculous, and it is directly contradicted by the Secretary's own brief and Manual, as well as the Secretary's position before multiple Courts of appeals and this court. See Hi-Desert Med. Ctr. v. Leavitt, No. 1:07-cv-01000-RBW (D.D.C. filed June 1, 2007); Montefiore Med. Ctr. v. Leavitt, No. 1:06-cv-01636-RMU (D.D.C. filed Sep. 21, 2006). The Secretary's own brief and his manual show that in order for the Secretary to grant *any exception relief*—even the limited amount already granted by the Secretary in this case—he necessarily restricted exception relief to costs that exceeded 112 percent of the mean costs for hospital-based SNFs in accordance with the Manual. Further, even if the Secretary had not already applied that policy to the Hospital, his consistent record in other cases of applying the 112 percent limitation shows that he would certainly apply it in this case as well. There is simply no reason for the Court to prolong this litigation even further by not applying its decision in Mercy and not granting the Hospital the full amount of its reasonable costs in excess of the cost limit.

The Secretary argues that his regulations governing the scope of an appeal from a revised NPR, see 42 C.F.R. § 405.1889, should also govern the scope of an exception request for atypical services under 42 C.F.R. § 413.30. In doing so, the Secretary disregards the plain language of his own regulation, 42 C.F.R. § 413.30, which provides no basis for distinguishing

between exception requests made within 180 days of an *original* NPR and exception requests made within 180 days of a *revised* NPR, and the Secretary has not offered a valid explanation in the context of this appeal. Under the plain language of the regulation, exception requests may be made within 180 days of *any* NPR.

But, even assuming that the Secretary's policy with respect to appeals from revised NPRs could be applied here, the Secretary has fundamentally misapplied that policy, in violation of the D.C. Circuit's decision in HCA Health Services of Oklahoma, 27 F.3d 614 (D.C. Cir. 1994). Here, there can be no doubt that the matter at issue in the revised NPR and the subject of the exception request were one and the same. On the one hand, the Secretary says that his approach harmonizes the rules regarding appeals from revised NPRs with the exception request process, Def. Mem. at 26; but on the other hand, the Secretary discounts HCA Health Services of Oklahoma, the single D.C. Circuit case interpreting those regulations. Def. Mem. at 36 (stating that HCA "involved the issue-specific scope of PRRB jurisdiction over post-reopening appeals" while "[t]his case does not involve PRRB jurisdiction over a postreopening appeal...but the Secretary's issue-specific approach to post-reopening requests for cost limit relief"). The Secretary cannot have it both ways.

Finally, the Secretary cannot apply his post-reopening regulations to deny relief in this case, because the Secretary never provided adequate notice to either the Hospital or even the Secretary's own fiscal intermediary that he intended to apply those regulations to requests for exception relief. See S.A. Storer & Sons, Co. v. Sec'y of Labor, 360 F.3d 1363, 1371 (D.C. Cir. 2004) ("The Secretary's interpretation of her regulations must 'reflect clear, rational decisionmaking that gives regulated members of the public adequate notice of their

obligations.'") (internal citation omitted); <u>Hooper v. Nat'l Transp. Safety Bd.</u>, 841 F.2d 1150, 1151 (D.C. Cir. 1988).

## II. THE HOSPITAL IS ENTITLED TO CHALLENGE THE SECRETARY'S DENIAL OF ITS FULL EXCEPTION REQUEST

The Secretary's failure to grant the full amount of the Hospital's exception request violates this Court's decision in <u>Mercy,</u> 2004 WL 3541332. Relying upon <u>Alaska Professional Hunters Ass'n v. FAA</u>, 177 F.3d 1030 (D.C. Cir. 1999), this Court in <u>Mercy</u> held that the Secretary's issuance of Provider Reimbursement Manual ("PRM") § 2534.5 represented an abrupt shift in his established, longstanding interpretation of the governing regulation, and violated the notice and comment rulemaking provisions of the Administrative Procedure Act. <u>See</u> <u>Mercy</u>, 2004 WL 3541332, at *2 - *3.[1]

The Secretary argues that the Hospital lacks standing to challenge the Secretary's 112 percent policy contained in PRM § 2534.5, because it is "speculative" whether the Secretary would ever apply PRM § 2534.5 to the Hospital's costs. Def. Mem. at 13, 15-16. It is well-established that "[t]he irreducible constitutional minimum of standing requires three elements: (1) injury-in-fact, (2) causation, and (3) redressability." <u>Miami Bldg. and Const. Trades Council, AFL-CIO v. Sec'y of Defense</u>, 493 F.3d 201, 205 (D.C. Cir. 2007). The Secretary does not contest causation or redressability, but instead merely alleges that the Hospital has not suffered an injury-in-fact.

The Secretary states that the Hospital has suffered only the "<u>possible</u> limitation of exception relief to the difference between Plaintiff's actual costs and 112 percent of the mean cost limits," Def. Mem. at 13 (emphasis in original); that the Hospital has suffered only

---

[1]  The Secretary does not appear to be challenging this Court's decision in <u>Mercy.</u> <u>See</u> Def. Mem. at 13, fn.5. Nevertheless, for a full exposition of why <u>Mercy</u> was correct, <u>see</u> Plaintiffs Memorandum, <u>Montefiore Med. Ctr. v. Leavitt</u>, No. 1:06-CV-01636-RMU (D.D.C. Oct. 19, 2007); Plaintiff's Memorandum and Reply, <u>Montefiore Med. Ctr. v. Leavitt</u>, No 1:06-CV-01636-RMU (D.D.C. Nov. 27, 2007).

"'possible' future injury," Def. Mem. at 15; that it is entirely speculative whether the Secretary would apply this policy, Def. Mem. at 16; and that the policy "has not been applied to Plaintiff here, and it may never be applied to the SNF," Def. Mem. at 16. The Secretary's argument is directly contradicted by 1) the record in this case 2) his own brief; 3) his own Manual; 4) his own record in other cases at the administrative level; 5) the position he has taken in at least two Circuit Courts; and 6) the position that the he has taken and is currently taking in this Court in at least two other cases.

The record in this case makes clear that the 112 percent policy that was invalidated by Mercy was at play in this case. This is the *only* material fact about which there is any dispute.[2] The Secretary argues that the Court should not grant relief from the application of the 112 percent policy because the issue was not appealed through the "administrative appeals process." Def. Mem. at 17. The Secretary is wrong. When the Hospital submitted its exception requests to the Secretary's fiscal intermediary, it specifically asked for the full amount of its costs above the RCL, including that portion that fell between the cost limit and 112 percent of the mean costs. A.R. at 91-95, 173-77. Indeed, the Secretary concedes that "Plaintiff specifically urged the fiscal intermediary not to apply the 112 percent policy articulated in PRM § 2534.5." See Def. Mem. at 10, fn 2.

---

[2] The Secretary did not respond individually to any paragraph of Plaintiff's Statement of Material of Facts. Instead, Defendant filed a "Concise Statement of Genuine Issues" that states that "any disagreements are not material." See Defendant's Concise Statement of Genuine Issues. Defendant does not "set forth specific facts showing that there is a genuine issue," id., or fails to refer to affirmative record evidence giving rise to something more than "metaphysical doubt" as to the facts set forth in Plaintiff's Statement. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 260-61 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Frito-Lay, Inc. v. Willoughby, 863 F.2d 1029, 1033-34 (D.C. Cir. 1988); see also Williams v. United States, 932 F. Supp. 354, 355 (D.D.C. 1996); Rubin v. Estate of Warner, 881 F. Supp. 23, 25 (D.D.C. 1995); Campbell-El v. District of Columbia, 874 F. Supp. 403, 405-06 (D.D.C. 1994). Defendant's response merely disputes Plaintiff's "characterization" of the record, without referring to any record evidence raising a genuine issue as to the facts set forth in Plaintiff's Statement. Defendant's Concise Statement of Genuine Issues at 2. As a result, the Court may take all of Plaintiff's Statement of Material Facts as true.

Further, the issue appealed to the Secretary's PRRB very broadly encompassed "[w]hether [CMS'] denial of the Provider's request for an exception to the SNF routine [] cost limits under 42 C.F.R. § 413.40(f) was proper." See A.R. at 300. The Hospital said in its position paper before the PRRB that it believed it was entitled to "the full amount of its exception request." A.R. at 30. The first sentence of the Board's findings of fact and conclusions of law states:

> The Board...finds and concludes that that [sic] the Provider is entitled to consideration of the <u>full amount of the exception request</u> based on the appeal of its revised NPR.

A.R. at 24 (emphasis added). Further, even the Secretary concedes that his fiscal intermediary recommended approval of the exception request with application of the 112 percent rule. A.R. at 222-23; Def. Mem. at 10. There can be no doubt that the broad issue appealed by the Hospital included the Secretary's application of the 112 percent rule.

Further, the Secretary's own brief and his Manual make clear that the 112 percent policy invalidated in <u>Mercy</u> *actually was applied* to the Hospital's costs in this case. The Secretary's brief says that PRM § 2534.5

> <u>required</u> a comparison of a provider's per diem costs to 112 percent of the mean per diem cost of its peer group. For hospital-based SNFs, an exception would be granted <u>only if</u> the provider's costs exceeded the 112 percent of the mean per diem costs and the provider satisfied all other requirements in the regulations for granting an exception. The amount of the exception that could be granted in turn would be measured from 112 percent of the mean per diem costs.

Def. Mem. at 7-8 (emphasis added).

The Secretary's brief clearly states, therefore, that in order for a hospital to receive *any* exception relief at all, it must first show that its costs exceed 112 percent of the peer group mean, as required by the Manual. The Hospital did receive partial exception relief (although only incremental relief, as described below). Therefore, the Secretary, according to his own brief,

must have applied the Manual provision to the Hospital's request for exception relief. It is well-settled that an agency is bound by its own rules. See <u>United States ex. rel. Accardi v. Shaughnessy</u>, 347 U.S. 260, 267-68 (1954); <u>Community for Creative Non-Violence v. Watt</u>, 670 F.2d 1213, 1216 (D.C. Cir. 1982) ("It is axiomatic that an agency is bound by its own rules and policies.").

Further, the Secretary's own Manual makes clear that the 112 percent policy is applied mechanically and *actually was applied* in this case. As PRM § 2534.5 operated, the Hospital's SNF would have been entitled to no exception relief at all unless its costs exceeded 112% of the mean costs for hospital-based SNFs. See Plaintiffs Memorandum, <u>Montefiore Med. Ctr. v. Leavitt</u>, No. 1:06-CV-01636-RMU (D.D.C. Oct. 19, 2007); Plaintiff's Memorandum and Reply, <u>Montefiore Med. Ctr. v. Leavitt</u>, No 1:06-CV-01636-RMU (D.D.C. Nov. 27, 2007).

The mechanical operation of this policy was slightly more complicated because the cost limit was disaggregated into thirteen separate cost categories with a comparison of the requesting hospital-based SNF's costs to *112 percent of the mean costs* for each of the thirteen categories. See PRM, Ch. 21, App. B, attached as Exhibit 1, for an illustration of the mechanics of how the Secretary computed exception relief for a hospital-based SNF.

Further, the Secretary's own record makes clear that the application of the 112 percent policy was a certainty, and there is nothing speculative about it. Hospitals have repeatedly challenged the Secretary's policy, the Secretary's PRRB has repeatedly reversed that policy, but without fail, the Secretary has reversed the PRRB and applied the 112 percent policy. The Secretary has issued at least five decisions mechanically applying PRM § 2534.5 to hospital-based SNFs. See, e.g., <u>Hi-Desert Med. Ctr. v. Blue Cross Blue Shield Ass'n/United Government Services</u>, CMS Adm'r Dec., Medicare & Medicaid Guide (CCH) ¶ 81,729 (Apr. 2, 2007);

Montefiore Med. Ctr. v. Blue Cross Blue Shield Ass'n/Empire Medicare Servs., CMS Adm'r Dec., Medicare & Medicaid Guide (CCH) ¶ 81,548 (July 21, 2006).[3]

In addition, the Secretary has argued in at least two Courts of Appeals that PRM § 2534.5 should be mechanically applied to the Hospital's costs.   St. Luke's Methodist Hosp. v. Thompson, 315 F.3d 984 (8th Cir. 2003); St. Francis Health Care Centre v. Shalala, 205 F.3d 937 (6th Cir. 2000).

Further, the Secretary argued in this Court in the Mercy case that PRM § 2534.5 should be applied to disallow the hospital's reasonable costs in that case. Mercy, 2004 WL 3541332 at *1.  It is disingenuous for the Secretary now to say that the application of the 112 percent policy is speculative when he is arguing for the application of that same policy in at least two other cases currently before this Court.   Hi-Desert Med. Ctr. v. Leavitt, No. 1:07-CV-01000-RBW (D.D.C. filed June 1, 2007); Montefiore Med. Ctr. v. Leavitt, No. 1:06-CV-01636-RMU (D.D.C. filed Sep. 21, 2006).  Indeed, the Secretary submitted his brief in the Montefiore case *arguing for* the application of the 112 percent policy *after* his brief was filed in this case arguing that the application of that policy is purely speculative.  Defendant's Memorandum, Montefiore Med. Ctr. v. Leavitt, No. 1:06-CV-01636-RMU (D.D.C. Nov. 9, 2007).

In summary, then, all the information before this Court shows that the Secretary's application of the Manual provision is not speculative.  He applied it to the Hospital.  He has consistently and mechanically applied it to other hospitals, consistently overruling his own Board to do so.  He has consistently argued before this Court and other Courts that the Manual should

---

[3] See also Mercy Med. Ctr. v. Mutual of Omaha, CMS Adm'r Dec., Medicare & Medicaid Guide (CCH) ¶ 80,417 (Oct. 25, 1999); St. Francis Health Care Ctr. v. Community Mutual Ins. Co., HCFA Adm'r Dec., Medicare & Medicaid Guide (CCH) ¶ 45,545 (May 30, 1997).  Indeed, most recently, the Secretary issued a decision on October 12, 2007 in the case of Montefiore Medical Center v. Blue Cross Blue Shield Ass'n/National Government Services - NY, CMS Adm'r Dec. (October 12, 2007) (on file with CMS), mechanically applying the Secretary's Manual and disallowing all of that hospital's costs between the cost limit and 112 percent of the peer group's mean per diem costs.

be applied to all SNF exception requests.  To argue now that the application of the Manual is "speculative" is, quite simply, ridiculous.

There can be no doubt that the Hospital has clearly suffered an injury in fact resulting from application of the 112 percent rule.  In order to make the threshold showing of injury-in-fact, a plaintiff "must allege an injury to himself that is distinct and palpable, as opposed to merely abstract, and the alleged harm must be actual _or_ imminent, not conjectural or hypothetical."  Whitmore v. Arkansas, 495 U.S. 149, 155 (1990) (emphasis added, internal citations omitted).[4]  Here, the Hospital has shown both actual and imminent harm, by demonstrating that the Secretary did in fact apply the 112 percent rule to limit the Hospital's exception relief and that the Secretary would be required to apply the 112 percent rule because he is bound to follow his own rules and procedures.

The Hospital requested "the difference between the Provider's actual per diems [sic] costs and the actual routine cost limit…rather than the difference between actual cost and 112% of the Peer Group mean cost per diems [sic]," A.R. at 91, 173, and the Hospital did not receive it.  The Secretary denied virtually all of the exception amount requested by the Hospital—_including_ the portion between the cost limit and 112 percent of the mean per diem costs.  Even if the Secretary did not explicitly say he was doing so, the Secretary's own brief and his Manual make clear that he applied the 112 percent policy to the Hospital.  See PRM, Ch. 21, App. B, attached as Exhibit 1; Def. Mem. at 10.  There is nothing hypothetical about the Hospital's injury.  The Hospital requested all of its costs in excess of the RCL and the Secretary denied them.

---

[4] An actual past harm is not required to demonstrate injury-in-fact.  Imminent harm, i.e., evidence showing the imminent nature of a specific harm to a specific party, will suffice.  See American Chemistry Council v. Dep't of Transportation, 468 F.3d 810, 820-21 (D.C. Cir. 2006); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 564 fn.2 (1992).

Indeed, it appears that the Secretary is attempting to prolong this protracted litigation even further, so this small, non-profit hospital will never receive the Medicare payment to which it is entitled.   The Secretary argues that the application of the 112 percent policy should be remanded if the Court determines that the Provider properly filed its exception requests within 180 days of the revised NPR.  Def. Mem. at 21.  But here, it is clear that the Secretary actually has applied the very policy that he says is "entirely speculative," Def. Mem. at 16.

Further, even if the Secretary had not applied that policy, the outcome of any remand is predetermined—the Secretary would apply the 112 percent policy just as he has done without exception in other cases, because the Secretary is bound by his own rules, see Community for Creative Non-Violence v. Watt, 670 F.2d 1213, 1216 (D.C. Cir. 1982) ("It is axiomatic that an agency is bound by its own rules and policies").   See also United States ex rel. Accardi v. Shaugnessy, 347 U.S. 260 (1954).  Indeed, the result of any remand of the 112 percent issue is already preordained—the Secretary would be bound to apply his 112 percent rule to the Hospital's costs—and any attempt by the Hospital to oppose that policy would be futile.  This Court need not remand the 112 percent issue back to the agency because the Hospital's attempt to obtain redress from the agency would be futile.   See In Re: Medicare Reimbursement Litigation, 414 F.3d 7, 11 (D.C. Cir. 2005) (holding that hospitals were not required to exhaust remedies that are futile or foreclosed to them before seeking mandamus relief from the court).

This litigation concerns costs incurred by the Hospital, a small, non-profit provider, *more than 15 years ago*.  It is time for this litigation to be put to rest.  This Court should apply its decision in Mercy, find the Secretary's Manual provision to be invalid, and grant the Hospital its full exception relief.

III.   **THE PLAIN LANGUAGE OF THE REGULATION GOVERNING SNF EXCEPTION REQUESTS REQUIRES THAT THE HOSPITAL'S CHALLENGE BE HEARD**

The Secretary's refusal to grant full relief from the revised cost limits is inconsistent with the plain language of the Secretary's own regulation. Under the plain language of the regulation in effect for the periods at issue, an exception request had to be filed "within 180 days of the date on the intermediary's [NPR]." 42 C.F.R. § 413.30(c). The Secretary's regulation draws no distinction between exception requests made from an original as opposed to a revised NPR, and the language of the regulation provides no basis for distinguishing between an exception request made within 180 days of an original NPR and one made within 180 days of a revised NPR.

The Secretary contends that "since the regulation does not address specifically the scope of available cost limit exception relief based on a reopening and revised NPR, there cannot be a conflict between the Secretary's interpretation and the regulation's plain language." Def. Mem. at 27. Contrary to what the Secretary may now say, his exception request regulation, 42 C.F.R. § 413.30, very broadly provides that exception requests may be made pursuant to *any* NPR and provides no reasonable basis for limiting the scope of exception requests made pursuant to a revised NPR.

The Secretary argues that his decision is entitled to "substantial deference," Def. Mem. at 24-25, but where, as here, the Secretary's interpretation conflicts with the plain language of the Secretary's own regulation, the Secretary's decision is entitled to *no deference.* See C.F. Communications Corp. v. FCC, 128 F.3d 735, 738 (D.C. Cir. 1997) (finding that an agency's interpretation of its regulation is entitled to deference unless it is "plainly erroneous or inconsistent with the regulation"); Guard v. U.S. Nuclear Regulatory Comm'n, 753 F.2d 1144, 1148-49 (D.C. Cir. 1985) (finding that deference is "appropriate only so long as the agency's interpretation does no violence to the plain meaning" of the regulation).

The Secretary argues that this Court should interpret the RCL exception request regulation, 42 C.F.R. § 413.30, in the same way that the Ninth Circuit interpreted the TEFRA exception request regulation, 42 C.F.R. § 413.40. See Foothill Presbyterian Hospital v. Shalala, 152 F.3d 1132 (9th Cir. 1998). At the time Foothill was decided, the Secretary's TEFRA regulation provided that a hospital's TEFRA exception request "must be made to its fiscal intermediary no later than 180 days after the date on the intermediary's [NPR]."[5] See 42 C.F.R. § 413.40(e) (1991); Foothill, 152 F.3d at 1135. In Foothill, the Ninth Circuit restricted the scope of a TEFRA exception request made within 180 days of a revised NPR "to matters at issue" in the revised NPR. Id. at 1135-36.

The Hospital believes that the Foothill court disregarded the plain language of the controlling regulation and improperly applied the Secretary's reopening regulation, 42 C.F.R. § 405.1889 (which deals with the scope of an *appeal* made within 180 days of a revised NPR), to determine the scope of a *TEFRA exception request* made within 180 days of a revised NPR, see 42 C.F.R. § 413.40(e) (1991).

But even if that case were correctly decided, the Hospital points out several important distinctions between the TEFRA and RCL exception processes that militate against the application of the Foothill decision in this case. First, the Hospital notes that unlike the TEFRA exception regulation, there has been no subsequent clarification of the RCL exception regulation. While the TEFRA regulation has been amended to state that exception requests must be made with 180 days of an "initial" NPR, 42 C.F.R. § 413.40(e), the RCL exception regulation, 42 C.F.R. § 413.30(c), still says what it has always said—that exception requests must be made within 180 days of "the date on the intermediary's notice of program reimbursement." The fact

---

[5] That regulation was subsequently amended to provide that the TEFRA exception request must be made with 180 days of the date on the "initial" NPR. See 42 C.F.R. § 413.40(e). The cost limit regulation, 42 C.F.R. § 413.30, was not similarly revised.

that CMS amended the TEFRA regulation while leaving the RCL exception regulation unchanged indicates a clear distinction between the TEFRA and RCL exception processes.

Further, the Provider notes that *accuracy* has always been the paramount consideration with respect to the cost limits, while *finality* was a more potent consideration with respect to the TEFRA rate of increase and appeals from revised NPRs. As the Secretary notes in his brief, CMS provided for a process to retroactively correct the cost limits to account for the "actual rate of the increase" in SNFs' costs. See 44 Fed. Reg. 51542, 51543 (Aug. 31, 1979); 56 Fed. Reg. 13317, 13320 (Apr. 1, 1991); Def. Mem. at 7.

Contrary to the approach he took with RCL exceptions, the Secretary made it clear that he was "not providing for retroactive adjustment of the market basket rates used for establishing rate of increase target amounts" under TEFRA. See 48 Fed. Reg. 39412, 39419 (Aug. 30, 1983). Thus, at least with respect to the TEFRA rate of increase, the Secretary determined that finality, rather than accuracy, was the more important consideration.

## IV.    THE RULES GOVERNING APPEALS FROM REVISED NPRS DO NOT BAR RELIEF

### A.    The Rules Governing Appeals from Revised NPR Do Not Apply in this Context

Notwithstanding that the exception request regulation cannot plausibly be read to permit it, the Secretary argues that 42 C.F.R. § 405.1889, which deals with the scope of an *appeal* from a redetermination, should be applied to determine the scope of an *exception request*, which is not an appeal at all. This regulation simply has no bearing whatsoever on an exception request. An exception request is an initial request that a hospital makes to the fiscal intermediary for determination of the right to, and the amount of reimbursement for, atypical services. An appeal to the PRRB from a revised NPR, as governed by 42 C.F.R. § 405.1889, seeks to have an earlier

determination by the intermediary reversed.  An exception request and an appeal to the Board are not the same, and are not governed by the same rules and procedures.

The Secretary asserts that his method "harmonizes his approach to post-reopening RCL exception relief with the general Medicare rules regarding administrative finality and reopening," Def. Mem. at 27, but the Secretary has asserted no legitimate basis for his determination that administrative finality is paramount and that exception requests should be treated like appeals from revised NPRs.  The reopening regulations relied upon by the Secretary deal with the scope of *appeals* of redeterminations, and there is no question that the Hospital properly *appealed* the final determination of the fiscal intermediary, *i.e.*, the denial of the Hospital's exception request. Jurisdiction Over Appeals to Reopen Cost Reports, Medicare & Medicaid Guide (CCH) ¶ 150,740, Transmittal No. 410 (Aug. 1, 1999); 42 C.F.R. § 413.30(c).  This case deals with the timing of filing the *exception request*, which isn't an appeal at all.

While "administrative finality" may be the primary concern when it comes to appeals from a revised NPR, the very procedures applied by the Secretary in this case belie the Secretary's argument that administrative finality is paramount with respect to the routine cost limits.  Those procedures clearly show that *accuracy*, not finality, is the Secretary's principal concern with respect to the routine cost limits.  See 44 Fed. Reg. 51542, 51543 (Aug. 31, 1979); 56 Fed. Reg. 13317, 13320 (Apr. 1, 1991).

In contrast, with respect to the TEFRA rate of increase, the Secretary determined that finality rather than accuracy was a more important consideration.  Therefore, even if it were appropriate for the Ninth Circuit to apply the reopening rules to the context of a TEFRA exception request (since finality is an important factor for both), it would be altogether

inappropriate to apply <u>Foothill</u> to the context of an RCL exception request, where accuracy is a more fundamental goal.

The Secretary cannot have it both ways. On the one hand, the Secretary's published policy shows that accuracy is the most important consideration in setting the cost limits, while the Secretary now argues—for purposes of this litigation—that "administrative finality" is key. Def Mem. at 27.

### B.  Even if the Rules Governing Appeals from Revised NPRs Did Apply, Those Rules Do Not Bar Relief in this Case

Even assuming that the issue-specific reopening policy did apply to determine the scope of an exception request (which it does not), the Secretary has misapplied it and improperly restricted the ability of the Hospital to obtain exception relief. The Secretary repeatedly states that because the hospital's atypical services were not at issue in the revised NPR, the hospital cannot appeal the impact of the cost limit on the hospital's reimbursement. <u>See</u> Def. Mem. at 12, 15, 26, 30. For example, the Secretary states that

> the character of the SNF's services was finalized solely in the initial NPRs, and was simply not addressed in the reopening and revised NPRs. Section 413.30(c)'s 180-day deadline for RCL exception requests would be eviscerated if providers could secure exception relief based on matters finalized in the initial NPR, which were not reopened or revised.

Def. Mem. at 30. The Secretary's position is absurd. The character of the SNF's services wasn't addressed or finalized in *any* NPR, whether original or revised. The hospital's atypical costs were established well before the issuance of either of the NPRs at issue here, and the *nature* of those costs simply was not addressed in any respect in either the original or revised NPR. Indeed, the point of filing an exception request, separate from the NPR process, is for a hospital to identify its atypical costs.

On the one hand, the Secretary argues that the issue-specific reopening regulation should apply to exception requests, Def. Mem. at 30, but on the other hand, he distances himself from the very cases that apply that regulation. Def. Mem. at 30. For example, in HCA Health Services of Oklahoma, Inc. v. Shalala, the D.C. Circuit held that:

> [W]hen a fiscal intermediary reopens its original determination regarding the amount of reimbursement that a Medicare provider is to receive from the federal government under the Medicare program, 42 U.S.C. §§ 1395-1395ccc (1988), a provider's appeal of that reopening to the Provider Reimbursement Review Board is *limited to the specific issues revisited on reopening.*

27 F.3d 614, 615 (D.C. Cir. 1994) (emphasis added).

In HCA, the fiscal intermediary had issued a revised NPR that 1) added in ownership costs for hospital occupied areas of a specified building; 2) reduced bad debts by bad debt recoveries; 3) adjusted the diagnosis related group (DRG) amount; 4) adjusted graduate medical education costs and 5) disallowed bad debts. Id. at 616. In addition to the matters that were at issue in the revised NPR, the plaintiff attempted to appeal the fiscal intermediary's calculation of depreciation and bond defeasance costs, "which had been decided in the original NPR but never revisited since." Id. Because the calculation of depreciation and bond defeasance costs was not a "matter[] adjusted by the revised NPR," the Court found that there was no jurisdiction over those issues. Id.

Similarly, in French Hospital Medical Center v. Shalala, 89 F.3d 1411 (9th Cir. 1996), a hospital sought to appeal from a revised NPR two components of the RCL—the wage index and covered days of care. Id. at 1414. The revised NPR had adjusted only malpractice insurance costs. In finding that there was no jurisdiction over the appeal, the Ninth Circuit stated:

> The intermediary reopened the hospital's cost report for the sole purpose of applying the RCL to malpractice insurance costs. Neither the RCL, nor components of the RCL, were at issue in the revised NPR. Furthermore, the revised NPR did not alter the RCL or any of its components. Only the RCL's application to malpractice insurance costs was at issue in the revised NPR.

Id. at 1420. See also Anaheim Memorial Hosp. v. Shalala, 130 F.3d 845, 853 (9th Cir. 1997) ("[T]his case is extraordinarily similar to French Hospital in that there was no alteration of any component of the RCL, but merely a new decision about how to apply (or not to apply) the RCL to certain reclassified malpractice costs.").

In contrast, in this case, the issue under appeal (and the subject of the Hospital's exception request) is the Hospital's entitlement to relief from the routine cost limits. The specific issue revisited in the reopening was the amount of the routine cost limits. Indeed, the Intermediary specifically adjusted those cost limits downward, and the Hospital sought relief from those same cost limits. The subject of the Hospital's exception request is precisely what was revisited and adjusted in the revised NPR—the routine cost limits. Consequently, even if 42 C.F.R. § 405.1889 did apply (which it does not), it did not limit Hospital's exception requests in the manner argued by the Secretary.

In Foothill, the Ninth Circuit applied its decisions in French Hospital and Anaheim Memorial Hospital (which dealt only with appeals of revised NPRs) to restrict the scope of a TEFRA exception request made within 180 days of a revised NPR "to the matters at issue" in the revised NPR. Id. at 1135-36. The Secretary issued a revised NPR in Foothill that reclassified malpractice costs as administrative and general costs on the cost report, indirectly resulting in a small adjustment to the TEFRA limit. Id. at 1133. Here, the routine cost limits—the subject of this appeal—were directly adjusted by the revised NPR. A.R. at 53-88. Here, the Secretary directly adjusted the routine cost limit, and the Hospital sought relief from those same cost limits. The Foothill court, applying French Hospital and Anaheim Memorial Hospital, stated:

> The Secretary interprets the...regulation to allow an adjustment request if filed within 180 days of an initial NPR or a revised NPR, provided that the basis for the adjustment request to the revised NPR is *related to the issue in the revised NPR.*

Id. at 1135 (emphasis added).  Here, there can be no doubt that the subject of the exception requests—the impact of the routine cost limits on the Hospital's costs—is "related to the issue in the revised NPR"—the calculation of those same routine cost limits.  Id.

Finally, in this case the routine cost limits applied by the Secretary for purposes of the original NPR historically had *not* been the final cost limits that ultimately would be applied.  It is undisputed that the Secretary had historically revised the cost limits applied to the Hospital each year to reflect changes in the market basket.  Pl. Mem. at 10.  Given the Secretary's past practice, it was reasonable for the Hospital to believe that the routine cost limits applied in the original NPRs were not the final cost limits (as indeed they were not).  Indeed, the Secretary lowered the routine cost limits as a result of the reopening, which resulted in additional costs being subject to the cost limits.  Thus, it was reasonable for the Hospital to conclude that it was more cost effective to request an exception from the lower cost limits applied in the revised NPR as opposed to the higher cost limits applied in the initial NPR.

**V.    THE SECRETARY CANNOT REASONABLY APPLY HIS POLICY TO THE HOSPITAL BECAUSE HE GAVE NO ADVANCE NOTICE OF THAT POLICY TO EITHER THE HOSPITAL OR HIS OWN FISCAL INTERMEDIARY**

Even if the Secretary could reasonably apply his policy regarding appeals from revised NPRs to limit the scope of RCL exception requests under 42 C.F.R. § 413.30 (which he cannot), he certainly cannot apply that policy in this case because the Secretary did not give fair notice of his interpretation to the affected parties.  At the time that St. Anthony's received its initial NPRs, there was no regulation or manual instruction establishing any limits on the scope of exception requests to a revised NPR, and none have since been adopted.

Adequate notice and the opportunity to comply are the hallmark to administrative fairness.  See, e.g., S.A. Storer & Sons, Co. v. Sec'y of Labor, 360 F.3d 1363, 1371 (D.C. Cir. 2004) ("The Secretary's interpretation of her regulations must 'reflect clear, rational

- 18 -

decisionmakiing that gives regulated members of the public adequate notice of their obligations.'"); Hooper v. Nat'l Transp. Safety Bd., 841 F.2d 1150, 1151 (D.C. Cir. 1988). Here the first—and indeed *only*—indication that the Secretary gave the Hospital that the issue-specific reopening regulations would be applied to limit the scope of exception requests was in the Ninth Circuit's decision in Foothill, which was decided long after the issuance of the Hospital's original NPRs in this case. Further, at the time that the Hospital received its original NPR, there was no indication at all that the Secretary would attempt to apply the issue-specific reopening rule applied in the HCA, French Hospital, and Anaheim cases, all of which were decided after the issuance of the Hospital's NPRs and all of which governed the scope of an *appeal* from a redetermination, to the context of *exception requests*, which are governed by 42 C.F.R. § 413.30. Indeed, *even the Secretary's own fiscal intermediary* was unaware of the Secretary's alleged policy, finding that the Hospital's exception request "was filed timely," and recommending that the Hospital be granted relief in excess of the incremental amount based on the market basket adjustment. A.R. at 222 (emphasis added). Here, the Secretary utterly failed to Provide notice to either the Hospital or his own fiscal intermediary of his alleged policy, and the application of that policy here cannot stand.

## VI.    CONCLUSION

The Secretary has improperly denied the Hospital the opportunity to obtain exception relief for the full amount of its reasonable atypical costs in excess of the routine cost limits. The Hospital requests that the Court compel the Secretary to pay the hospital the full difference between its actual costs and the routine cost limits.

_____/s/ Dennis M. Barry_____
Dennis M. Barry
D.C. Bar No. 375152
J. Harold Richards
D.C. Bar No. 469524
VINSON & ELKINS L.L.P.
1455 Pennsylvania Avenue, N.W.
Suite 600
Washington, D.C.  20004-1008
202.639.6791
202.879.8891 (fax)

Nancy C. LeGros
Texas Bar No. 00787892
Vinson & Elkins L.L.P.
2500 First City Tower
1001 Fannin
Houston, TX  77002-6760
713.758.3239

Counsel for the Plaintiff

December 12, 2007

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SAINT ANTHONY'S MEDICAL CENTER          )
                                        )
                                        )
                    Plaintiff,          )
                                        )
            v.                          )          Case No. 1:07-CV-00260 (RMU)
                                        )
MICHAEL O. LEAVITT, Secretary,          )
U.S. Department of Health and Human Services,  )
                                        )
                    Defendant.          )
_____ )

**Plaintiff's Exhibit 1**

Appendix B (Cont.)    LIMITATIONS ON COVERAGE OF COSTS    07-94

PROVIDER NAME:        ABC HOSPITAL SNF
PROVIDER NUMBER:      05-5999
FISCAL YEAR ENDED:    09/30/93
PEER GROUP MEAN COST:     $241.14  (FROM BELOW)


APPLY THESE RATIOS TO THE FOLLOWING CALCULATION OF
112% OF MEAN COST FOR URBAN FACILITIES ADJUSTED FOR
PROVIDER'S WAGE INDEX AND YEAR END FACTOR

|  | LABOR | NONLABOR |
|---|---|---|
| 112% OF MEAN COST * | $144.88 | $30.50 |

CALCULATION OF PROVIDER'S ADJUSTED MEAN LIMIT

| LABOR PORTION |  | $144.88 |  |
|---|---|---|---|
| WAGE INDEX | x | 1.4539 | (COMPLETED BY PROVIDER USING APPLICABLE FEDERAL REGISTER NOTICE) |
|  |  |  |  |
| ADJUSTED LABOR |  | $210.64 | (COMPLETED BY PROVIDER USING APPLICABLE FEDERAL REGISTER NOTICE) |
| NONLABOR PORTION | + | $30.50 |  |
|  |  |  |  |
| ADJUSTED MEAN |  | $241.14 | (COMPLETED BY PROVIDER) |
| YEAR END |  |  |  |
| FACTOR | x | 1.00000 | (COMPLETED BY PROVIDER USING APPLICABLE FEDERAL REGISTER NOTICE) |
|  |  |  |  |
| PEER GROUP MEAN COST: |  | $241.14 | (COMPLETED BY PROVIDER THEN USED IN COL. (C) PEER GROUP COMPUTAT.) |


THE APPLICATION OF THE RATIOS TO THE PROVIDER'S MEAN
COST RESULTS IN THE PROVIDER'S PEER GROUP COST FOR EACH
CONSTITUENT COST CENTER OF ROUTINE COST. THE PEER GROUP
COST IS COMPARED TO THE PROVIDER'S ACTUAL COST LESS
CAPITAL-RELATED COST FOR EACH COST CENTER. THE PROVIDER
MUST FULLY EXPLAIN REASONS FOR ITS COST THAT EXCEED THE
PEER GROUP EVEN IF THAT COST IS NOT PART OF THE EXCEPTION
REQUEST.


*    FROM APPLICABLE FEDERAL REGISTER NOTICE


25-12.1V

07-94                 LIMITATIONS ON COVERAGE OF COSTS      Appendix B (Cont.)

COMPUTATION OF PEER GROUP PER DIEM AMOUNTS USING THE CONSTITUENTS OF THE
ROUTINE COST CENTER FROM THE DATA BASE USED TO DEVELOP THE OCTOBER 1, 1992 COST LIMITS.

PROVIDER NUMBER:        05-5999
COST REPORT FYE:        09/30/93

**Skilled Nursing Facility Peer Group Comparative Data**

Average Length of Stay:          132.34 days

Average Ancillary Cost Per Diem: $62.73

Average Medicare Utilization:    52.39%

NOTE:  PEER GROUP MEAN COST IS DISAGGREGATED INTO THE SAME CONSTITUENT COST CENTERS AS
REPORTED ON THE PROVIDER'S COST REPORT

| HOSPITAL–BASED URBAN | (A) BASE PER DIEM AVERAGES* | (B) PER DIEM ADJUSTMENT RATIO** | (C) PEER GROUP MEAN COST TIMES RATIO (B) | (D) PROVIDER'S ACTUAL PER DIEM COSTS*** | (E) AMOUNT OF ACTUAL COST OVER PEER | (F) AMOUNT OF ACTUAL COST UNDER PEER |
|---|---|---|---|---|---|---|
| DIRECT EXPENSE | $67.96 | 0.453218 | $109.29 | $136.96 | $27.67 | |
| EMPLOYEE HEALTH & WELFARE | $7.97 | 0.053151 | $12.82 | $45.65 | $32.83 | |
| ADMIN. & GENERAL | $13.86 | 0.092431 | $22.29 | $31.96 | $9.67 | |
| MAINT/OPERATION OF PLANT | $11.76 | 0.078426 | $18.91 | $10.96 | | ($7.95) |
| LAUNDRY | $5.05 | 0.033678 | $8.12 | $11.87 | $3.75 | |
| HOUSEKEEPING | $7.05 | 0.047016 | $11.34 | $7.30 | | ($4.04) |
| DIETARY | $19.75 | 0.131711 | $31.76 | $22.83 | | ($8.93) |
| CAFETERIA | $2.31 | 0.015405 | $3.71 | $6.39 | $2.68 | |
| NURSING ADMIN. | $7.13 | 0.047549 | $11.47 | $18.26 | $6.79 | |
| CENTRAL SERV./SUPPLIES | $1.31 | 0.008736 | $2.11 | $1.83 | | ($0.28) |
| PHARMACY | $0.68 | 0.004535 | $1.09 | $0.91 | | ($0.18) |
| MEDICAL RECORDS | $2.44 | 0.016272 | $3.92 | $10.96 | $7.04 | |
| SOCIAL SERV & ACTIVITIES | $2.68 | 0.017873 | $4.31 | $13.70 | $9.39 | |
| TOTAL | $149.95 | 100.00% | $241.14 | $319.58 | $99.82 | ($21.38) |

| | |
|---|---|
| DIRECT COST OVER OR (UNDER) | $27.67 |
| INDIRECT COST OVER OR (UNDER) | $50.77 |
| TOTAL COST OVER OR (UNDER) | $78.44 |

NOTE:  EXCEPTION AMOUNT FOR ANY OF THE INDIRECT EXPENSES IS LIMITED TO THE AMOUNT THAT THE PROVIDER'S
TOTAL ACTUAL COST PER DIEM EXCEEDS THE TOTAL OF THE PROVIDER'S PEER GROUP MEAN COST (COLUMN C).

   *  SIMPLE COST (LESS CAPITAL RELATED COST) DEFLATED FOR WAGE LEVEL VARIATIONS
  **  RATIO OF BASE PER DIEM TO TOTAL PER DIEM
     e.g. DIRECT EXPENSE – 67.96/149.95 = .453218
 ***  PROVIDER'S COSTS FROM WORKSHEET B PART I, LINE 34; LESS CAPITAL–RELATED COSTS
     FROM WORKSHEET B, PART II AND III, LINE 34, HCFA FORM 2552-92

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ST. ANTHONY'S MEDICAL CENTER | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:07-CV-00260 (RMU) |
| | ) | |
| MICHAEL O. LEAVITT, Secretary, | ) | |
| U.S. Department of Health and | ) | |
| Human Services | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to Local Civil Rule 7(h), Plaintiff submits the following response to Defendant's Statement of Material Facts As to Which There Is No Genuine Issue ("Def. Stmt."):

4-5.    These paragraphs suggest that Plaintiff was required to request exceptions to the SNF routine cost limits within 180 days of the Plaintiff's initial NPRs for fiscal years 1991 and 1992.  Plaintiff notes that the Defendant's regulation did not distinguish between initial and revised NPRs, requiring only that an exception request be submitted "within 180 days of the date on the intermediary's notice of program reimbursement," 42 C.F.R. § 413.30(c).

10-11.    These paragraphs appear to question whether the Plaintiff's SNF provided atypical services.  The undisputed record evidence cited by the Defendant shows that the Plaintiff did provide atypical services during its fiscal years 1991 and 1992.  See A.R. at 90-95 and 172-77.  Indeed, the Secretary's own fiscal intermediary recommended that the Plaintiff's atypical services exception request be granted subject to the Secretary's 112 percent limitation.  See A.R. at 222-23.

_____/s/_____
Dennis M. Barry
   DC Bar No. 375152
J. Harold Richards
   DC Bar No. 469524
Vinson & Elkins, L.L.P.
1455 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-1008
202.639.6791
202.879.8891 (fax)

Nancy C. LeGros
Texas Bar No. 00787892
Vinson & Elkins L.L.P.
2500 First City Tower
1001 Fannin
Houston, TX 77002-6760
713.758.3239

Counsel for the Plaintiff