**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SAINT ANTHONY'S MEDICAL CENTER,   )
                                          )
            Plaintiff,        )
                                          )
            v.           )     Case No. 1:07-cv-00260 (RMU)
                                          )
MICHAEL O. LEAVITT, Secretary,   )
      U.S. Department of Health     )
      and Human Services,         )
                                          )
            Defendant.     )
_____ )

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Under the Medicare statute, 42 U.S.C. § 1395oo(f)(1), the Court's subject matter jurisdiction is limited to review of the final agency decision in this case. The Defendant Secretary of Health and Human Services ("Secretary") issued a final decision sustaining the agency's grant of partial "exception relief" from the Medicare "routine cost limits" ("RCLs") for the 1991 and 1992 fiscal years to Plaintiff Saint Anthony's Medical Center ("Plaintiff" or "St. Anthony's"). The Secretary concluded that, since Plaintiff's requests for RCL exception relief were based on cost report "reopenings" and revised "notices of program reimbursement" ("NPRs"), the Secretary's longstanding "issue-specific" interpretation of the reopening regulations required that Plaintiff's RCL exception relief be limited in accordance with the specific matter reopened and adjusted in the revised NPRs.

The Secretary has demonstrated that the final agency decision is based on a permissible interpretation of the Medicare regulations and is supported by substantial record evidence, and thus the final decision should be sustained. If this Court upholds the Secretary's final decision, it will not be necessary to reach Plaintiff's additional challenge to the "112 percent policy" articulated in Provider Reimbursement Manual ("PRM") § 2534.5.[1] In any event, the Secretary has established, and Plaintiff has effectively conceded, that this Court lacks subject matter jurisdiction over the 112 percent policy because there is no final agency decision on that issue. Moreover, Plaintiff lacks standing to challenge the 112 percent policy because that policy was not applied to the two fiscal years at issue and Plaintiff did not even challenge the policy during the administrative proceedings.

In Plaintiff's Memorandum In Opposition To Defendant's Motion For Summary Judgment And Reply In Further Support Of Its Motion For Summary Judgment

---

[1]As detailed in the Memorandum Of Points And Authorities In Support Of Defendant's Motion For Summary Judgment And In Opposition To Plaintiff's Motion For Summary Judgment ("Defendant's Memorandum" or "Def.'s Mem."), PRM § 2534.5 instructs the Medicare fiscal intermediaries to limit the RCL exception relief available to a hospital-based skilled nursing facility ("SNF") to the difference between a SNF provider's actual costs and 112 percent of the mean RCL for the provider's peer group. (Def.'s Mem. at 7-8.) The Administrative Record shows that the partial exception relief granted pursuant to the final agency decision, $3.41 for fiscal year ("FY") 1991 and $6.26 for FY 1992 (A.R. at 88, 170), is less than the amount of exception relief that the fiscal intermediary recommended after application of the 112 percent policy. (A.R. at 222-23 (recommending an exception of $18.51 per diem for FY 1991 and $21.06 per diem for FY 1992).) Thus, if this Court affirms the final agency decision, Plaintiff's challenge to the 112 percent policy could not benefit the provider.

("Plaintiff's Opposition" or "Pl.'s Opp."), Plaintiff attempts to recast the governing law and record evidence so as to surmount the Secretary's final agency decision, and to obtain judicial review of the 112 percent policy even though that policy was neither applied nor raised nor finally ruled on during the administrative proceedings. As shown below, however, Plaintiff's Opposition is singularly unavailing, and the Secretary's final decision must be sustained.

## **ARGUMENT**

I.    THE SECRETARY'S FINAL AGENCY DECISION IS REASONABLE AND OWED SUBSTANTIAL DEFERENCE.

     A    The Secretary's Interpretation of 42 C.F.R. § 413.30(c) Is Consistent With the Regulatory Text.

The Secretary has established that his interpretation of 42 C.F.R. § 413.30(c) (1991) is reasonable and is owed substantial deference. (See Def.'s Mem. at 26-36.) Under the Secretary's interpretation of § 413.30(c), if a provider requests an RCL exception based on a reopening and revised NPR, then exception relief is available only to the extent that the reopening and revised NPR specifically address the same issue as the matter underlying the RCL exception request. Thus, a provider's post-reopening right to RCL exception relief is "issue-specific" under § 413.30(c), just as the regulations governing cost report reopenings, 42 C.F.R. § 405.1885(a), and post-reopening appeals of revised NPRs, 42 C.F.R. § 405.1889, are issue-specific.

St. Anthony's primary argument to the contrary - - that "[t]he Secretary's regulation draws no distinction between exception requests made from an original as

opposed to a revised NPR" - - actually proves the Secretary's point. (See Pl.'s Opp. at

11.) Because the regulation draws no such distinction, the Secretary's interpretation does

not conflict with the regulation and thus must be accorded "controlling weight." See

Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994). (See also Def.'s Mem. at

27.)

     St. Anthony's argues that the lack of distinction in the regulation between whether

an NPR is original or revised means that the "regulation . . . very broadly provides that

exception requests may be made pursuant to *any* NPR." (See Pl.'s Opp. at 11 (emphasis

in original).) The Ninth Circuit explicitly addressed and rejected this argument in

Foothill Presbyterian Hospital v. Shalala, 152 F.3d 1132 (9th Cir. 1998) ("Foothill"). As

detailed in Defendant's Memorandum at 35-36, the plaintiff in Foothill argued that the

virtually identical text of another cost limit regulation should be interpreted as not being

limited to  "initial" NPRs because the word "initial" was added to that regulation

following its enactment. The Ninth Circuit, however, concluded that the revision was

merely a clarification of the regulation, and thus the revision did not undermine the

reasonableness of the Secretary's issue-specific interpretation of the cost limit regulation

at issue there. Id. at 1135.

     Moreover, St. Anthony's is effectively asking this Court to read into the RCL

exception regulation another word that does not appear in the text - - the word "any."

Plaintiff is thus alleging that the Secretary erroneously read the term "initial" into the

regulation, on the one hand, yet is itself asking the Court to add the word "any" to the

4

same regulation, on the other hand.  But since the Secretary's construction is consistent with the regulatory text, his interpretation must be accorded "controlling weight."

St. Anthony's also tries to discount the Secretary's interpretation by arguing that 42 C.F.R. § 405.1889 has nothing to do with the regulation governing exception requests. (See Pl.'s Opp. at 13-14.)  But Plaintiff ignores the fact that the Secretary's issue-specific approach to reopening flows primarily from 42 C.F.R. § 405.1885(a), which provides that "[a] determination . . . may be reopened with respect to findings on matters at issue in such determination or decision."  (Emphasis added.)   (See Def.'s Mem. at 28-29.) Section 405.1885(a) applies to cost report reopening generally, and so the issue-specific scope of reopening applies equally to post-reopening RCL exception requests (under § 413.30(c)) and to post-reopening appeals (under 42 C.F.R. § 405.1889).  Moreover, 42 C.F.R. § 405.1889's provision that a determination reopened under § 405.1885 "shall be considered a separate and distinct determination," while referring to the regulatory provisions for provider appeals, certainly does not preclude the Secretary's interpretation that a post-reopening determination should be considered "separate and distinct" in other contexts as well merely because it does not list separately all the potentially applicable contexts.  Given the Secretary's longstanding, plainly reasonable interpretation that cost reopening is issue-specific under § 405.1885(a), as are post-reopening appeals of a "separate and distinct determination" (i.e., a revised NPR) under § 405.1889, it was clearly reasonable for the Secretary to apply a similar issue-specific interpretation to post-reopening RCL exception requests under § 413.30(c).

5

Moreover, Plaintiff again ignores the fact that 42 C.F.R. § 413.30(c) does not specifically address the scope of available cost limit exception relief based on a reopening and revised NPR.  Under § 405.1889, if an appeal is filed within 180 days of a revised NPR, then the scope of the provider's appeal rights is limited to the specific issue that was reopened and adjusted in the revised NPR.  Similarly, if a provider requests RCL exception relief within 180 days of a revised NPR, the Secretary reasonably interprets § 413.30(c) to limit available exception relief in accordance with the specific issue reopened and adjusted in the revised NPR.  In this way, the Secretary's interpretation harmonizes his approach to post-reopening RCL exception relief with the corresponding procedures in the reopening context.  (See Def.'s Mem. at 26-34.)

B.     There Is No Basis For Distinguishing Foothill From This Case.

The factual and procedural posture in Foothill is practically identical to this case, and thus Plaintiff's request for a departure here from the Foothill holding must be rejected.  (See Def.'s Mem. at 31-34.)  The regulatory language at issue in both cases is practically identical.  In both cases, the disputed regulation provided for adjustments or exceptions to cost limits rather than appeals.  In both contexts, providers were required to request an exception to certain cost limits within 180 days of the fiscal intermediary's notice of program reimbursement.  Both cost limit regulations were silent regarding the scope of post-reopening cost limit exception relief.  And, in both cases, the Secretary interpreted the cost limit exception regulations to mean that exception requests must be filed within 180 days of the initial NPR, or, if an exception request is submitted within

6

180 days of a revised NPR, exception relief is available only to the extent that the basis for the exception request was addressed in the reopening and revised NPR.

As the Ninth Circuit concluded in <u>Foothill</u>, the Secretary's issue-specific approach to cost limit exception relief harmonizes the cost limits exception regulation with the issue-specific reopening regulations. 152 F.3d at 1135. Furthermore, the Secretary's interpretation promotes finality. <u>Id.</u> at 1136. Upholding the Secretary's interpretation in this case prevents St. Anthony's or any other provider from resurrecting stale issues solely as a result of a fortuitous (for the provider) circumstance wherein unrelated reimbursement issues are revised through reopening. Indeed, <u>Foothill</u> is a logical extension of prior Ninth Circuit precedent sustaining the Secretary's issue-specific interpretation of the regulatory provisions for appeals of revised NPRs, 42 C.F.R. § 405.1889. <u>See Foothill</u>, 152 F.3d at 1136 (following <u>French Hosp. Med. Ctr. v. Shalala</u>, 89 F.3d 1411, 1414-15 (9th Cir. 1996), and <u>Anaheim Mem'l Hosp. v. Shalala</u>, 130 F.3d 845, 851 (9th Cir. 1997)). In turn, the Ninth Circuit's precedent comports with this Circuit's earlier holding on the issue-specific scope of post-reopening appeals. <u>HCA Health Services of Oklahoma v. Shalala</u>, 27 F.3d 614, 620 (D.C. Cir. 1994) ("In light of the explicit language in 42 C.F.R. § 405.1885 limiting reopenings to 'findings on matters at issue in [the original NPR]' and in 42 C.F.R. § 405.1889 characterizing revisions as 'separate and distinct determination[s]' . . . , [it is not] impermissible for the Secretary to interpret the 'intermediary redetermination' on reopening as limited to the particular matters revisited.").

Plaintiff's unsubstantiated - - and incorrect - - assertion that the <u>Foothill</u> case was wrongly decided, (Pl.'s Opp. at 12), evidences its acknowledgment that <u>Foothill</u> speaks directly to the issue here. Nevertheless, Plaintiff would have this Court reject outright the <u>Foothill</u> decision's relevance to this case based on alleged "distinctions" between <u>Foothill</u> and this case. The only real distinction is that <u>Foothill</u> involved the "TEFRA rate of increase limits" under 42 C.F.R. § 413.40, whereas this case involves routine cost limits under § 413.30. But, for purposes of determining the lawfulness of the Secretary's final decision, this is a distinction without relevance. (Def.'s Mem. at 33.)

The <u>Foothill</u> court was interpreting regulatory language substantively identical to the language at issue here. The Ninth Circuit upheld the "Secretary's interpretation of § 413.40(e) to limit exception requests to the issues considered in the revised NPR," finding it "consistent with the issue-specific requirements in these regulations." <u>Foothill</u>, 152 F.3d at 1136. It is irrelevant that the TEFRA rate of increase limit regulation was subsequently clarified by adding the word "initial" whereas the RCL regulation at issue here was not. (<u>Cf.</u> Pl.'s Opp. at 12-13.) Indeed, the <u>Foothill</u> court specifically found that the subsequent addition of "initial" to modify "NPR" was merely a clarification, and the revision did not detract from the reasonableness of the Secretary's issue-specific interpretation. If the subsequent modification of the regulation at issue in <u>Foothill</u> had no bearing on the lawfulness of the Secretary's construction, certainly the *lack* of a comparable modification of the RCL exception regulation has no bearing here. St. Anthony's assertion, that the amendment of one regulation and not the other somehow

makes for a dispositive difference, (Pl.'s Opp. at 12-13), is completely unexplained and indeed plainly insupportable.

St. Anthony's further notion, that accuracy has allegedly been the paramount consideration with respect to the routine cost limits whereas finality is supposedly more important as to the TEFRA rate of increase limits (Pl.'s Opp. at 13-15), is also groundless. Accuracy and finality both have always been essential features of all aspects of the Medicare reimbursement process, and there is no basis for suggesting that one is more relevant or important in one context than in another.

The finality of an NPR can be upset potentially only by a timely appeal, a timely reopening, or a timely request for an exception to or exemption from a cost limit. Significantly, both the TEFRA and the RCL regulations require that a provider seek cost limit exception relief within 180 days of its NPR, the same limitations period as applies to appeals of both original and reopened and revised NPRs. Clearly, then, finality is as important a feature in the context of seeking exceptions from the RCLs as it is in the context of seeking exception relief from the TEFRA cost limits or appealing both original and reopened NPRs. Otherwise, the fortuitous reopening of a completely unrelated issue would enable providers to file post-reopening appeals and cost limit exception requests years after the prescribed 180-day filing deadline had passed.[2] Clearly, Plaintiff's notion

---

[2]One can see how, if Plaintiff's interpretation of 42 C.F.R. § 413.30(c) were adopted, fiscal intermediaries and the agency would be reluctant ever to reopen an NPR, as doing so could open up a variety of issues that should have been long settled.

that the RCL exception regulation is more concerned with accuracy than finality has no legal basis, and so must be rejected out-of-hand.

      C.     The Secretary Correctly Limited St. Anthony's Exception Relief According To The Limited Scope Of The Reopening And Revised NPRs.

St. Anthony's continues to confuse the relationship between the exception relief it sought and the revisions made as a result of the reopening and revised NPRs.  St. Anthony's notes that "[t]he hospital's atypical costs were established well before the issuance of either of the NPRs at issue here, and the *nature* of these costs simply was not addressed in any respect in either the original or revised NPR."  (Pl.'s Opp. at 15.)  But this very finality in the original NPRs, as to whether or not Plaintiff provided atypical services, is precisely the point.[3]  Plaintiff furnished its services during the fiscal years in question, and therefore had all the information it needed by the end of those fiscal years to seek an exception for atypical services.  The facts related to whether or not Plaintiff actually provided atypical services have not changed since then.  Yet Plaintiff failed to seek RCL exception relief, whether for atypical services or on any other basis, within 180 days of the original NPRs.  Accordingly, to the extent it seeks exception relief from the original cost limits based on the alleged provision of atypical services, it cannot do so based on the unrelated reopenings and revised NPRs.  Indeed, Plaintiff does not dispute

_____

[3]The record does not support Plaintiff's allegation that it provided atypical services.  In any event, the Secretary finally concluded that Plaintiff qualified for RCL exception relief only to the extent of "those incremental costs denied as a result of the application of the revised market basket index" through the reopenings and revised NPRs. (A.R. at 7.)

that, had the fiscal intermediary not reopened and issued revised NPRs, Plaintiff would not have been eligible for <u>any</u> exception relief.

Moreover, as detailed in Defendant's Memorandum at 9, the fiscal intermediary reopened and revised the NPRs solely in order to adjust the RCLs based upon a revised market basket index, not to address whether or not Plaintiff provided atypical services during the two fiscal periods at issue. But Plaintiff does not challenge any aspect of the RCL methodology, or the revised RCL per diem amount. Rather, Plaintiff has simply requested exceptions from the <u>application</u> of the RCLs as revised for the final market basket index. (<u>See</u> Def.'s Mem. at 36-37.) However, the revision of the market basket index through the reopenings had absolutely nothing to do with whether or not Plaintiff had earlier provided atypical services. It was thus entirely reasonable for the Secretary to limit exception relief to the incremental effects of adjusting the RCLs to account for the revised market basket index.

St. Anthony's allegation that the Secretary is distancing himself from cases applying the issue-specific reopening regulations to post-reopening appeals is meritless. Of course, the Secretary agrees with the decisions rendered in <u>HCA</u>, <u>French Hospital</u>, and <u>Anaheim</u> inasmuch as the courts affirmed the Secretary's issue-specific interpretation of the scope of appeals following a reopening and revised NPR. (Def.'s Mem. at 28-34.) Moreover, the Secretary further believes that, as the Ninth Circuit held in <u>Foothill</u>, the same issue-specific interpretation is reasonably applied to limit the scope of post-reopening requests for relief from cost limits. What the Secretary disagrees with is

11

Plaintiff's statement that "[t]he subject of the Hospital's exception request is precisely what was revisited and adjusted in the revised NPR - - the routine cost limits."  (Pl.'s Opp. at 17.)  To the contrary, the basis of Plaintiff's exception requests was not the routine cost limits, for Plaintiff has not challenged the calculation of the RCLs.  Rather, the sole basis for St. Anthony's cost limit exception requests was its alleged provision of atypical services.  (A.R. at 90-95, 172-76.)

> D.     The Secretary Properly Interpreted § 413.30(c) Through
>        The Adjudicatory Process.

St. Anthony's further argument, that the Secretary cannot apply his issue-specific interpretation here because he did not give the hospital advance notice, fails for two main reasons.  First, earlier judicial decisions in other cases provided constructive notice of the Secretary's issue-specific approach to reopening.  (Def's. Mem. at 39.)

Second, it is settled that agency interpretations developed through case-by-case adjudication are entitled to substantial deference.  (Def.'s Mem. at 38-39.)  As the Supreme Court has made clear, the Secretary may interpret statutory and regulatory provisions through case-by-case adjudication instead of notice-and-comment rulemaking, and the resultant interpretation is subject to full deference.  Shalala v. Guernsey Mem'l Hosp., 514 U.S. 87, 96-97 (1995); accord, Alaska Dep't of Health & Social Servs. v. Ctrs. for Medicare & Medicaid Serv., 424 F.3d 931, 940 (9th Cir. 2005) ("The authority to elucidate the meaning of the [Medicaid] statute in this manner, via case-by-case adjudication, is well within the Secretary's mandate.").  See also Sec. Exch. Comm'n v.

Chenery, 332 U.S. 194, 203 (1947);  HCA Health Servs., 27 F.3d at 616-17 (deferring to Secretary's issue-specific interpretation of reopening regulations, developed through adjudication); Am. Mining Cong. v. Mine Safety & Health Admin., 995 F.2d 1106, 1111-12 (D.C. Cir. 1993) ("Where a statute or legislative rule has created a legal basis for enforcement, an agency can simply let its interpretation evolve ad hoc in the process of enforcement or other applications.").  As the D.C. Court of Appeals has observed, if agencies were required "to promulgate every regulatory or statutory interpretation arrived at in the course of adjudicating specific cases, agencies would be condemned to inactivity, since interpretation of the statutory and regulatory framework under which an agency must act is the sine qua non of reasoned agency action."  Orengo Caraballo v. Reich, 11 F.3d 186, 195 (D.C. Cir. 1993).  Consequently, St. Anthony's charge, that the Secretary's issue-specific interpretation fails on notice grounds, is completely contrary to well-established principles of agency interpretation through adjudication.

II.    THIS COURT LACKS JURISDICTION TO CONSIDER
       PLAINTIFF'S CHALLENGE TO THE 112 PERCENT POLICY.[4]

    A.    There Is No Subject Matter Jurisdiction Over The 112 Percent Policy
              Because There Is No Final Agency Decision On That Issue

St. Anthony's expends seven pages of Plaintiff's Opposition arguing that it "is

entitled to challenge the Secretary's denial of its full exception request" (Pl.'s Opp. at 4),

including the alleged application of the "112 percent policy" to its requests for RCL

exception relief.  (See Pl.'s Opp. at 4-10.)  Yet nowhere in all those pages does St.

Anthony's dispute its failure to appeal that issue below, and its consequent failure to

obtain a final agency decision on that issue.  Nor does St. Anthony's address the plethora

of case law holding that, with exceptions not pertinent here, the Medicare statute, 42

U.S.C. § 1395oo(f)(1), is the exclusive basis for subject matter jurisdiction over provider

reimbursement disputes, and that a provider must obtain a final agency decision on a

specific matter before the issue can be considered in federal district court.  (See Def.'s

Mem. at 17-21 and cases cited therein.)  Moreover, Plaintiff conceded in its Complaint

that there is no final agency decision on this issue.  (See Complaint For Judicial Review

---

       [4]As explained in Defendant's Memorandum at 13 n.5, the Secretary is not
addressing here the merits of the 112 percent policy issue except to the extent necessary
to address Plaintiff's jurisdictional arguments, because that issue is not properly before
this Court.  For some of the Secretary's more recent articulations of his position regarding
the merits of the 112 percent policy, see Defendant's Memorandum Of Points And
Authorities In Support Of Defendant's Cross-Motion For Summary Judgment And
Defendant's Reply Memorandum Of Points And Authorities In Support Of Defendant's
Cross-Motion For Summary Judgment filed on November 9, 2007, and December 14,
2007, respectively, in Montefiore Medical Center. v. Leavitt, No. 1:06-CV-01636-RMU
(D.D.C. Oct. 19, 2007).

Of Agency Action ("Complaint" or "Compl.") ¶ 36.)  Plaintiff thus has effectively

conceded that, due to its failure to exhaust administrative remedies regarding the 112

percent policy, this Court lacks subject matter jurisdiction over that particular issue.

B.    This Court Also Lacks Jurisdiction Because Plaintiff Does Not Have
       Standing.

St. Anthony's insists that it has standing to challenge the 112 percent policy both

because that policy was allegedly applied to the provider, (Pl.'s Opp. at 6-7), and because,

Plaintiff claims, future application of the policy is a certainty (Pl.'s Opp. at 7-9).  These

assertions are belied by the administrative record, and reflect a misunderstanding of the

role of provider reimbursement manual instructions and the nature of administrative

adjudication.[5]

St. Anthony's contends that the 112 percent policy actually was applied inasmuch

as the Secretary stated (in Defendant's Memorandum at 7) that PRM § 2534.5 "required"

certain actions, and therefore the Secretary "must have applied the Manual provision to

[St. Anthony's] request for exception relief," for "an agency is bound by its own rules."

(Pl.'s Mem. at 6-7.)  The record shows, however, that the Secretary never did apply the

112 percent policy.  Instead, while the fiscal intermediary initially recommended partial

exception relief in accordance with the 112 percent policy, CMS rejected that

recommendation and the Secretary finally upheld CMS's determination.

_____

[5]Plaintiff implies that the Secretary has effectively conceded the second two
elements of standing - - causation and redressability.  (Pl.'s Opp. at 4.)  But causation and
redressability do not even figure in the standing analysis when, as here, there is no actual
or imminent injury.

The administrative record lays out the different RCL exception amounts that St. Anthony's requested; that the fiscal intermediary initially recommended; that CMS approved; and that the Secretary finally authorized.  St. Anthony's requested exception amounts of $45.84 per diem for FY 1991 and $44.83 per diem for FY 1992.  (A.R. at 95, 177.)  The fiscal intermediary initially recommended to CMS that partial exceptions be granted, in amounts based on application of the 112 percent policy.  (A.R. at 222-23 (recommending exceptions of $18.51 per diem for FY 1991 and $21.06 per diem for FY 1992).)  But CMS limited the partial exception relief to amounts equal to the decreases in the RCLs (i.e., due to the revised market basket), and thus the agency awarded exceptions of $3.41 for FY 1991 and $6.26 for FY 1992.  (A.R. at 181.)  Then, in the final agency decision, the Secretary affirmed the partial exception relief awarded by CMS.  (A.R. at 7.)  Because the partial exception relief authorized by the final agency decision was so much less than what would have been awarded by application of the 112 percent policy, the Secretary clearly did not apply the 112 percent policy to Plaintiff's 1991 and 1992 fiscal periods.[6]

Furthermore, Plaintiff did not challenge the 112 percent policy at any stage of the administrative proceedings, (see A.R. at 26-40, 101-15, 247-57), and that policy was not addressed in any of the decisions below (see A.R. at 181 (CMS's grant of partial

---

[6]Moreover, the same record evidence further shows that, if the Court were to affirm the Secretary's final decision, a successful challenge to the 112 percent policy (assuming jurisdiction were established) would be of no benefit to Plaintiff here.

exception relief), 16-25 (PRRB's interim decision), 2-8 (Secretary's final agency decision)).  Indeed, the only references in the administrative record to the 112 percent policy (or to PRM § 2534.5) are: (1) St. Anthony's requests that the fiscal intermediary not apply the 112 percent policy for the two fiscal years in question, (A.R. at 91, 173); and (2) the intermediary's initial recommendation to CMS that partial exceptions be granted in amounts based on application of the 112 percent policy (A.R. at 222-23).  But again, CMS rejected the intermediary's recommendation, (A.R. at 225, 181); instead, CMS awarded partial exceptions equal to the incremental per diem decreases in the RCLs as a result of the revision to the market basket index (A.R. at 88, 170).  In sum, the administrative record shows that the *only* limitation applied to St. Anthony's exception requests was that, since the requests were based on reopenings and revised NPRs, exception relief was limited in accordance with the specific matter actually reopened and adjusted in the revised NPRs.

Moreover, notwithstanding St. Anthony's many assertions to the contrary, (see Pl.'s Opp. at 6-9), the Secretary is not required to apply PRM § 2534.5, and has not done so "mechanically" in other cases.[7]  At most, the PRM provision is an interpretive rule, not a substantive rule, and thus does not have binding effect on either the PRRB or the Secretary.  The provision is merely a guideline as to how the Secretary might interpret the

---

[7]Contrary to Plaintiff's assertion at page 8 of Plaintiff's Opposition, nothing in the decisions rendered in <u>St. Francis Health Care Center v. Shalala</u>, 205 F.3d 937 (6th Cir. 2000), or <u>St. Luke's Methodist Hospital v. Thompson</u>, 315 F.3d 984 (8th Cir. 2003), indicates that the Secretary ever argued for "mechanical" application of the policy.

open-ended language of 42 C.F.R. § 413.30(c), which provides that the Secretary may

grant exceptions only for "reasonable" costs. See St. Francis, 205 F.3d at 947 ("Even

beyond the simple fact that PRMs are generally categorized as interpretive, the work done

by PRM § 2534.5 places it within the . . . definition of an interpretive rule."); St. Luke's,

315 F.3d at 986 (discussing PRM § 2534.5 and noting that "[t]he interpretive rules in [the

PRM] do not require notice and comment").[8]  See also Paragon Health Network, Inc. v.

Thompson, 251 F.3d 1141, 1147 (7th Cir. 2001) ("The PRM, while a useful guide to

interpreting the Medicare statute and regulations, is not strictly binding on the

Secretary."); Providence Health System-Washington v. Thompson, 353 F.3d 661, 667 (9th

Cir. 2003) ("[T]he PRM provides interpretative advice; it does not constitute legally

binding authority."); 42 C.F.R. §405.1867 (Board "must comply with" statutes and

regulations but need only "afford great weight" to interpretative rules and general

statements of policy).

        Finally, the 112 percent policy does not even threaten Plaintiff with any "imminent

injury."  On the one hand, if this Court were to affirm the Secretary's final decision on

Plaintiff's RCL exception requests, the 112 percent policy would never be applied to

those requests.  On the other hand, even if this Court were to reverse the partial exception

---

        [8]Nor did the court in Mercy Medical Skilled Nursing Facility v. Thompson, 2004
WL 3541332 (D.D.C. May 14, 2004), hold that the Secretary was bound by the PRM
provision.  It concluded (erroneously in the Secretary's view) in this unpublished opinion
that the Secretary should have engaged in notice-and-comment rulemaking not because of
any alleged binding nature of the rule, but because the PRM provision was inconsistent
with what the court viewed as the Secretary's longstanding practice.  Id. at *3.

relief authorized by the Secretary's final decision and remand the matter to the agency for further proceedings, a number of things could happen. The fiscal intermediary, the only actor in this case that actually is bound by PRM § 2534.5, would presumably apply the 112 percent policy. Assuming the intermediary did so and Plaintiff then appealed to the PRRB, St. Anthony's would have the opportunity to present argument challenging the 112 percent policy.[9] In the event of an appeal on remand, the Board may or may not apply the PRM provision. See 42 C.F.R. § 405.1869. Plaintiff itself acknowledges that the Board has declined to apply the 112 percent policy in the past. (See Pl.'s Opp. at 8 (asserting that the Secretary has "consistently overrul[ed] his own Board" in applying the PRM provision).) If the Administrator of CMS were to review the PRRB's decision, the Administrator might simply let the Board's decision stand. See 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1875. The Administrator instead might apply the 112 percent policy and conclude that St. Anthony's is not entitled to exception relief beyond that allowed under that policy. Alternatively, this could be the case that convinces the Secretary to modify the 112 percent policy, abrogate it altogether, or depart from the policy here for specific programmatic reasons. See Illinois Council, 529 U.S. at 13 (noting that the "channeling" requirement affords the Secretary "greater opportunity to apply, interpret, or revise . . . without possibly premature interference"). In sum, the potential effect of the

---

[9]The record before this Court contains no such argument, because St. Anthony's chose not to challenge the 112 percent policy during the administrative proceedings.

112 percent policy, in the event of a reversal of the Secretary's final decision and a remand to the agency, is by no means certain.[10]

Besides the record evidence showing that the 112 percent policy was not applied previously, then, Plaintiff also has failed to meet its burden of showing that application of that policy is "certainly impending" or that St. Anthony's is "immediately in danger of sustaining some direct injury as [a] result of the challenged conduct."  McConnell v. Fed. Election Comm., 540 U.S. 93, 226 (2003) (quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990) and Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)).  Thus, the "alleged injury in fact is too remote temporally to satisfy Article III standing."  Id.

---

[10]The advantages of requiring a party to establish standing are thus closely related to the advantages of requiring a party to exhaust administrative remedies.  As the Ninth Circuit has recognized, "[r]equiring a party to have actually confronted the policy he now challenges in court has several prudential and practical advantages.  To begin with, it establishes the existence of a well-defined controversy between the parties."  Madsen v. Boise State Univ., 976 F.2d 1219, 1221 (9th Cir. 1992).  It also "serves the salutary objective of ensuring that only those individuals who cannot resolve their disputes without judicial intervention wind up in court."  Id.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Defendant's Memorandum, this Court should grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

January 28, 2008                    Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR
United States Attorney
D.C. Bar No. 498610


_____/s/_____
CHRISTOPHER B. HARWOOD
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530


_____/s/_____
SUSAN MAXSON LYONS
D.C. Bar No. 434249
Attorney
U.S. Department of Health and
    Human Services
Office of the General Counsel
Room 5309 Cohen Building
330 Independence Ave., S.W.
Washington, D.C. 20201

Counsel for Defendant