# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SAINT ANTHONY'S MEDICAL CENTER | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-CV-00260 (RMU) |
| | ) | |
| MICHAEL O. LEAVITT, Secretary, | ) | |
| U.S. Department of Health and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————————— | ) | |

## JOINT APPENDIX PURSUANT TO LOCAL RULE 7(n)

/s/ Dennis M. Barry
Dennis M. Barry
   DC Bar No. 375152
J. Harold Richards
   DC Bar No. 469524
Vinson & Elkins, L.L.P.
1455 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-1008
202.639.6791
202.879.8891 (fax)

Nancy C. LeGros
Texas Bar No. 00787892
Vinson & Elkins L.L.P.
2500 First City Tower
1001 Fannin
Houston, TX 77002-6760
713.758.3239

Counsel for the Plaintiff

February 8, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of February, 2008, I electronically filed the foregoing

Notice of Filing of Joint Appendix using the CM/ECF system, which will automatically send

email notification of such filing to the following attorney of record for the Defendant:

CHRISTOPHER BLAKE HARWOOD
U.S. Attorney's Office
555 Fourth Street, NW
Suite 4220
Washington, D.C. 20530-0001

                                            /s/ Dennis M. Barry
                                            Dennis M. Barry
                                               DC Bar No. 375152
                                            J. Harold Richards
                                               DC Bar No. 469524
                                            Vinson & Elkins, L.L.P.
                                            1455 Pennsylvania Avenue, N.W.
                                            Washington, D.C.  20004-1008
                                            202.639.6791
                                            202.879.8891 (fax)

                                            Nancy C. LeGros
                                            Texas Bar No. 00787892
                                            Vinson & Elkins L.L.P.
                                            2500 First City Tower
                                            1001 Fannin
                                            Houston, TX 77002-6760
                                            713.758.3239

                                            Counsel for the Plaintiff

February 8, 2008

**Joint Appendix for**
***Saint Anthony's Medical Center v. Leavitt***
**(1:07-cv-00260-RMU)**

| Document | Pages (original numbering from Administrative Record) |
|---|---|
| Administrator's Decision, dated November 22, 2006 | 1-8 |
| Notices that the Administrator will Review PRRB Decision No. 2006-D55, dated October 18, 2006 | 9-12 |
| PRRB Decision No. 2006-D55, dated September 26, 2006 | 19-25 |
| Provider's Revised Position Paper for Submission to the Provider Reimbursement Review Board, FY 1991, dated October 2, 2000 | 26-40 |
| Excerpt from Notice of Program Reimbursement for FY 1991, dated September 2, 1993 | 43-51 |
| Excerpt from Revised Notice of Program Reimbursement for FY 1991, dated October 31, 1996 | 53-88 |
| Request for Exception to SNF Routine Cost Limits for FY 1991, dated April 25, 1997 | 90-95 |
| Provider's Revised Position Paper for Submission to the Provider reimbursement Review Board, FY 1992, dated October 2, 2000 | 101-15 |
| Excerpt from Notice of Program Reimbursement for FY 1992, dated April 1, 1994 | 118-33 |
| Excerpt from Revised Notice of Program Reimbursement for FY 1992, dated October 31, 1996 | 135-39 |
| Notice of Reopening of Cost Reports from Fiscal Intermediary to Plaintiff, dated August 29, 1996 | 146 |
| Letter from Fiscal Intermediary to Plaintiff regarding Revised Final Settlements for FY 1991 and FY 1992, dated October 31, 1996 | 151-52 |
| FY 1992 Audit Adjustments, dated August 29, 1996 | 169-170 |
| Request for Exception to SNF Routine Cost Limits for FY 1992, dated April 23, 1997 | 172-77 |
| Letter from HCFA to Fiscal Intermediary, dated October 14, 1997 | 181-82 |

**Joint Appendix for**
***Saint Anthony's Medical Center v. Leavitt***
**(1:07-cv-00260-RMU)**

| Document | Pages (original numbering from Administrative Record) |
|---|---|
| Excerpt from Notice of Program Reimbursement for FY 1992, dated April 1, 1994 | 193-201 |
| Letter from HCFA to all Fiscal Intermediaries regarding Skilled Nursing Facility (SNF) Routine Service Cost Limits. | 205-08 |
| Notice of Reopening of Cost Reports, dated August 29, 1996 | 210 |
| Letter from Fiscal Intermediary to HCFA regarding Request for Exception from SNF Cost Limit for FY 1991 and FY 1992, dated May 21, 1997 | 222-23 |
| Letter from Fiscal Intermediary to Plaintiff regarding SNF Exception Request for FY 1991 and FY 1992, dated July 18, 1997 | 225 |
| Letter from HCFA to Fiscal Intermediary Responding to Plaintiff's RCL Exception Request, dated October 14, 1997 | 227-28 |
| Letter from Fiscal Intermediary to Plaintiff Regarding Exception Request, dated October 23, 1997 | 229 |
| Provider's Preliminary Position Paper for Submission to Medicare Fiscal Intermediary, FY 1992, dated November 2, 1998 | 247-57 |
| Joint List of Issues | 299-300 |
| Request for Provider Reimbursement Review Board Hearing on Skilled Nursing Facility Exception Request, dated December 15, 1997 | 332-36 |

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C3-01-20
Baltimore, Maryland 21244-1850
Telephone 410-786-3176 Facsimile 410-786-0043



CENTERS for MEDICARE & MEDICAID SERVICES

**Office of the Attorney Advisor**

_____

NOV 2 9 2006

**VIA CERTIFIED MAIL**

Mr. J. D. Epstein
Vinson & Elkins, LLP
2300 First City Tower
1001 Fannin Street
Houston, TX 77002-6760

Re: <u>Saint Anthony's Health Center - SNF</u>, PRRB Decision No. 2006-D55

Dear Mr. Epstein:

Enclosed is a copy of the Administrator's decision in the above case reversing the decision of the

Provider Reimbursement Review Board. This constitutes the final administrative decision of the

Secretary of the Health and Human Services. Pursuant to Section 1878(f) of the Social Security

Act and 42 CFR 405.1877, the Provider may obtain judicial review by filing a civil action within

60 days of receipt of this decision.

Sincerely yours,

Jacqueline R. Vaughn
Attorney Advisor

Enclosure

cc: Bernard M. Talbert, Esquire, Intermediary's Representative

1

# CENTERS FOR MEDICARE AND MEDICAID SERVICES

## *Decision of the Administrator*

| | |
|---|---|
| **In the case of:** | **Claim for:** |
| Saint Anthony's Health Center | Provider Cost Reimbursement Determination for Cost Reporting P eriod Ending: 12/31/91, 12/31/92 |
| Provider | |
| vs. | |
| Blue Cross Blue Shield Association/ AdminaStar Federal Illinois | Review of: PRRB Dec. No. 2006-D55 Dated: September 26, 2006 |
| Intermediary | |

This case is before the Administrator, Centers for Medicare & Medicaid Services (CMS), for review of the decision of the Provider Reimbursement Review Board (Board). The review is during the 60-day period in § 1878(f) (1) of the Social Security Act (Act), as amended (42 USC 1395oo (f)). The parties were notified of the Administrator's intention to review the Board's decision. Comments were received from the CMS' Center for Medicare Management (CMM) requesting reversal of the Board's decision. All comments were timely received. Accordingly, this case is now before the Administrator for final agency review.

## ISSUE AND BOARD'S DECISION

The issue is whether the full amount of Provider's exception requests to the skilled nursing facility (SNF) routine service cost limits under 42 C.F.R. §413.30(f) was properly denied because the Provider did not request the exceptions within 180 days of the original notices of program reimbursement (NPR).

The Board held that the Provider is entitled to consideration of the full amount of the exception request based on the appeal of its revised NPR. First, the Board stated that the Intermediary was unaware of CMS' position of limiting any relief from a revised NPR adjustment to the incremental increase in the amount the provider's costs

2

exceeded its revised cost limit. The Intermediary had recommended to CMS, the acceptance of more than the incremental increase in the adjustments on the revised NPRs.[1]   CMS' notice to all intermediaries concerning the adjustments to the RCLs authorizes adjustments to exceptions already granted and it addresses how new exception requests will be handled.[2]   That communication demonstrates that CMS anticipated that exception requests would be filed from revised NPRs yet there is no mention of a limit on any relief from a revised NPR adjustment to the incremental increase only.

The Board found no basis for CMS' limitation in the regulations at 42 C.F.R. §§405.413.30(c) and 405.1889.  42 C.F.R. §§405.413.30(c) states that the "provider's request for an exception must be made to its fiscal intermediary within 180 days of the date on the intermediary's notice of program reimbursement."  The Board noted that the regulation does not make a distinction between types of NPRs; therefore, a provider should be allowed to make an exception request for the full amount from any NPR in which the RCL is at issue.

The Board further stated that even when §405.1889 is applied, the appeal from the revised NPR was proper.  The Board found that this case is distinguishable from French Hospital Medical Center v. Shalala, 89 F.3d 1411 (9th Cir. 1996), in which a provider was not allowed to contest its cost limits from a revised NPR where the provider sought an exception from an adjustment for malpractice insurance costs. The court held the denial of the exception request was proper because "[n]either the RCL, nor components of the RCL, were at issue in the revised NPRs."  In this instance, the Intermediary did adjust the RCLs in the revised NPRs; thus, the Provider is entitled to make its exception requests from the revised NPRs.


## SUMMARY OF COMMENTS


CMM commented requesting that the Administrator reverse the Board's decision. CMM argued that a revised NPR does not give a provider new appeal rights for an issue that could have been appealed under the original NPR – where the provider did not exercise its appeal rights timely.  In accordance with existing regulations, where a revision is made on the amount of program reimbursement after such determination has been reopened, such revision is a separate and distinct determination.  CMM argued that the courts in several federal decisions hold that in the case of a reopening, only matters contained in the revised NPR can be appealed.  These cases state that

---

[1] Intermediary Exhibit 5.
[2] Intermediary Exhibit 3 at p.2.

the revised NPR does not revive appeal rights flowing from the original NPR if the provider failed to exercise those original appeal rights timely.

## DISCUSSION

The entire record, which was furnished by the Board, has been examined, including all correspondence, position papers, and exhibits. The Administrator has reviewed the Board's decision. All comments received timely are included in the record and have been considered.

Section 1861(v)(1)(A) of the Social Security Act establishes that Medicare pays for the reasonable cost of furnishing covered services to program beneficiaries, subject to certain limitations. This section of the Act also defines reasonable cost as "the cost actually incurred, excluding there from any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." The Act further authorizes the Secretary to promulgate regulations establishing the methods to be used and the items to be included in determining such costs. Consistent with the statute, the regulation at 42 C.F.R. §413.9 states that all payments to providers of services must be based on the reasonable cost of services covered under Medicare and related to the care of beneficiaries.

In response to rising costs, and realizing that the original structure of reasonable costs provided little incentive for providers to operate efficiently in delivering services, Congress authorized the Secretary to establish cost limits. Specifically, the Secretary has the authority to:

> [p]rovide for the establishment of limits on the direct or indirect overall incurred costs... based on estimates of the costs necessary in the efficient delivery of needed health services...

SNF cost limits are established based upon reported costs that are adjusted for actual or projected cost changes by applying the SNF market basket index. When the cost limits are calculated, the limits are based on an estimated market basket index that in turn are based upon forecasts of economic trends that may be retroactively adjusted to reflect the actual index. The market basket index is determined after the cost reporting period to which the limits apply is closed. The market basket index is used than to adjust the limits to reflect cost changes occurring between the time of the cost reporting periods represented in the cost limits data and the time when the limits are applied.

Recognizing that providers under some circumstances would incur costs in excess of the routine cost limit, the regulation at 42 C.F.R. §413.30 establishes the SNF routine service cost limits and provides for a SNF exception to the limits. The regulation at 42 C.F.R. § 413.30(f) states:

> Exceptions. Limits established under this section may be adjusted upward for a provider under the circumstances specified in paragraphs (f)(1) through (f)(8) of this section ... An adjustment is made only to the extent the costs are reasonable, attributable to the circumstances specified, separately identified by the provider, and verified by the intermediary.

In accordance with §413.30(c), the SNF must make its request for an exception to its fiscal intermediary within 180 days of the date on the intermediary's notice of program reimbursement or NPR.[3]  In pertinent part, the regulation states:

> [t]he provider's request must be made to its fiscal intermediary within 180 days of the date on the intermediary's notice of program reimbursement. The intermediary makes a recommendation on the provider's request to CMS [formerly HCFA], which makes the decision. CMS responses within 180 days from the date CMS received the request from the intermediary.  The intermediary notifies the provider of CMS' decision. The time required for CMS to review the request is considered good cause for the granting of an extension of time to apply for Board review as specified in 405.1841 of this chapter. CMS' decision is subject to review under subpart R of part 405 of this chapter.

Regarding the appeal of an exception request under subpart R, the regulation at 42 CFR 405.1801, et seq,, provides procedures for appealing final determinations consistent with section 1878 of the Act.   Generally, Section 1878(a) of the Social Security Act provides that any provider of services which has filed a required cost report within the time specified in regulation, may obtain a hearing with respect to such cost report by Board if, "such provider is dissatisfied with a final determination of its fiscal intermediary as to the amount of total program reimbursement due the provider"; the amount in controversy is $10,000 or more; and the provider files a

---

[3] At the close of its fiscal year, a provider must submit a cost report to its intermediary showing the costs it incurred during the fiscal year and the proportion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. The fiscal intermediary reviews the cost report, determines the total amount of Medicare reimbursement due the provider and issues the provider an NPR.

request for a hearing within 180 days after notice of the intermediary's final determination under paragraph (1)(a)(i)." The regulation at 42 CFR 405.1835 and 42 CFR §405.1841(a)(1) implements these statutory provisions.

However, the regulation at 42 C.F.R. §405.1885 also allows for a cost report to be reopened under certain limited circumstances on specific "matters at issue in such determination." The effects of reopening and revising an NPR are addressed at section 405.1889, which explains that, where a revision is made in a reimbursement determination after reopening, a provider's appeal rights are limited to the "separate and distinct determination" that results from the reopening to which the provisions of sections 405.1811, 405.1835, 405.1875 and 405.1877 are applicable. Thus, in the event that a specific reimbursement matter is reopened and revised, a provider's appeal rights are limited to the particular substantive matter that was revised, and do not extend to other substantive matter that were finalized in the initial NPR, but not subsequently reopened or revised. Thus, the appeal rights for such a revised determination is limited by regulation and does not flow from Section 1878 of the Act.

The regulation at 42 CFR 413.30 shows that an exception request and the appeal of such a request is intricately related to the NPR. While a provider may request an exception of the RCL within 180 days of its NPR, any appeal to the Board of the CMS determination on that request Board is through the appeal of the NPR. Therefore, a request for an exception made pursuant to a revised NPR will also be limited to the provisions of 42 CFR 405.1889 on appeal to the Board. To the extent that CMS allows an exception request to be made pursuant to a revised NPR, any relief will be limited to those costs affected by such a revision.

In this case, the Intermediary issued the Provider's original NPRs on September 2, 1993 for its fiscal year ended December 31, 1991 cost report and on April 1, 1994 for its FYE December 31, 1992 cost report. The Provider's routine costs exceeded the RCLs for both FYEs 1991 and 1992 and the Provider did not file exception requests with the Intermediary within 180 days of the original NPRs for either fiscal year as provided for under 42 C.F.R. 413.30(c).

The Intermediary issued notices of reopenings for FYEs 1991 and 1992 to update the SNF cost limits based on the market basket index. For both FYE 1991 and 1992 the change in the market basket index decreased the Provider's routine cost limit amount. As a total, the Provider's costs exceeded the cost limit under the original NPR plus the additional, incremental amount as a result of decreasing the cost limit, per the revised market basket, under the revised NPR.

The Provider filed exception requests for both FYE 1991 and 1992 within the 180 days of the revised NPRs as provided for under 42 C.F.R. 413.30(c). The Intermediary approved the exceptions for the incremental increase in the amount of costs that exceeded the RCL between the original NPRs and the revised NPRs. The Provider subsequently filed timely appeals requesting relief for the full amount in which its costs exceeded its cost limit for both FYEs 1991 and 1992 under both the original NPR and the revised NPR.

The Administrator finds that CMS properly determined that the Provider's requests for RCL exceptions made pursuant to the revised NPRs are limited by the provisions of 42 CFR 405.1889 to items and costs adjusted on those revised NPRs. Moreover, CMS properly determined that an adjustment for purposes of the application of the market basket pursuant to the revised NPRs did not open to challenge all costs originally denied under the RCL. Rather, CMS properly found that only those incremental costs denied as a result of the application of the revised market basket pursuant to the revised NPRs could be subject to relief. This policy is consistent with distinctive rights, only prescribed by regulation and not from the statute, which flow from a revised NPR.

As the regulation shows, an exception request is intricately related to the NPR. Likewise, an exception request made pursuant to a revised NPR is intricately related to those items and costs adjusted in the revised NPR. A revised NPR does not give a provider new appeal rights for costs that could have been appealed under the original NPR. Likewise, a provider's request for an exception made pursuant to a revised NPR is limited to those items and costs at issue in the revised NPR. Finally, the Board's review of any appeal of a determination on that exception request is also limited to those items and costs adjusted on the revised NPR as it is the revised NPR that forms the basis for Board jurisdiction.

In sum, the record shows that the Provider did not exercise its rights to request an exception within the required 180-day period of the original NPRs as set forth at 42 C.F.R. §413.30(c) for costs that exceeded the limits, but rather requested an exception from the revised NPRs issued as a result of the revised market basket. The Administrator finds that CMS' policy is consistent with the regulations at 42 C.F.R. §413.30(c) and 42 C.F.R. §405.1889 in prohibiting a SNF from receiving relief from costs that exceeded the RCL which were not affected by the revision of the NPR.

## **DECISION**

The decision of the Board is reversed in accordance with the foregoing opinion.


THIS CONSTITUTES THE FINAL ADMINISTRATIVE DECISION OF THE
SECRETARY OF HEALTH AND HUMAN SERVICES.


Date: _____    _____
                          Leslie V. Norwalk, Esq.
                          Acting Administrator
                          Centers for Medicare & Medicaid Services

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C3-01-20
Baltimore, Maryland 21244-1850
Phone 410-786-3176 Facsimiles 410-786-0043



**Office of the Attorney Advisor**

VIA FACSIMILE

OCT 1 8 2006

J.D. Epstein
Vinson & Elkins, LLP
First City Tower, 1001 Fannin Street, Suite 2300
Houston, TX 77002-6760

Re:   Saint Anthony's Health Center, PRRB Decision No. 2006-D55 (09/26/06) (FYE
      12/31/91 and 12/31/92)

Dear Mr. Epstein:

This is to notify you that our office has received comments from the Centers for
Medicare & Medicaid Services' (CMS's) Center for Medicare Management requesting
that the Administrator reverse the Provider Reimbursement Review Board's (Board's)
decision in the above reference case. Accordingly, the Administrator of CMS will review
the Board's decision concerning whether the Intermediary properly denied the Provider's
exception requests to the skilled nursing facility routine service cost limits. Involved will
be whether the Board's decision is in keeping with the pertinent laws, regulations, and
other criteria cited by the Board and by the parties in their comments.    The Board's
decision will be reviewed in light of prior decisions of the Administrator and relevant
court decisions.   Accordingly, this case will be before the Administrator within the next
few weeks to determine whether to reverse, affirm, modify or remand the Board's
decision.

The governing regulations published at 42 C.F.R. § 405.1875 explains the procedures in
conducting final agency review of decisions made by the Board.  You have a right to
submit comments within 15 days of your receipt of this letter.  **If y ou d o s ubmit
comments, we would appreciate your faxing them to this office at (410) 786-0043, in
order to ensure receipt of the comments by this office.**

9

An Administrator's decision must be rendered within 60 days after the Provider received the Board's decision.   I will promptly send you a copy of the decision after it is rendered.

Sincerely,

Jacqueline R. Vaughn
Attorney Advisor

cc:    Bernard M. Talbert, Esq., Intermediary's Representative
       Center for Medicare Management, CMS

10

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C3-01-20
Baltimore, Maryland 21244-1850
Phone 410-786-3176 Facsimiles 410-786-0043



**Office of the Attorney Advisor**
<u>VIA FACSIMILE</u>

Bernard M. Talbert                    OCT 1 8 2006
Blue Cross and Blue Shield Association
225 N. Michigan Avenue
Chicago, Il 60601-7680

Re:    <u>Saint Anthony's Health Center</u>, PRRB Decision No. 2006-D55 (09/26/06) (FYE
       12/31/91 and 12/31/92)

Dear Mr. Talbert:

This is to notify you that our office has received comments from the Centers for
Medicare & Medicaid Services' (CMS's) Center for Medicare Management requesting
that the Administrator reverse the Provider Reimbursement Review Board's (Board's)
decision in the above reference case. Accordingly, the Administrator of CMS will review
the Board's decision concerning whether the Intermediary properly denied the Provider's
exception requests to the skilled nursing facility routine service cost limits. Involved will
be whether the Board's decision is in keeping with the pertinent laws, regulations, and
other criteria cited by the Board and by the parties in their comments.   The Board's
decision will be reviewed in light of prior decisions of the Administrator and relevant
court decisions.   Accordingly, this case will be before the Administrator within the next
few weeks to determine whether to reverse, affirm, modify or remand the Board's
decision.

The governing regulations published at 42 C.F.R. § 405.1875 explains the procedures in
conducting final agency review of decisions made by the Board.  You have a right to
submit comments within 15 days of your receipt of this letter.  **If y ou d o s ubmit
comments, we would appreciate your faxing them to this office at (410) 786-0043, in
order to ensure receipt of the comments by this office.**

An Administrator's decision must be rendered within 60 days after the Provider received the Board's decision.   I will promptly send you a copy of the decision after it is rendered.

Sincerely,

Jacqueline R. Vaughn
Attorney Advisor

cc:    J.D. Epstein, Esq., Provider's Representative
       Center for Medicare Management, CMS

12

# PROVIDER REIMBURSEMENT REVIEW BOARD DECISION

ON THE RECORD
2006-D55

**PROVIDER -**
Saint Anthony's Health Center – SNF
Alton, Illinois

Provider No.:  14-5314

**vs.**

**INTERMEDIARY -**
BlueCross BlueShield Association/
AdminaStar Federal Illinois

**DATE OF HEARING -**
June 6, 2006

Cost Reporting Periods Ended -
December 31, 1991 and December 31, 1992

**CASE NOs.**   98-0580 and 98-0463

## INDEX

|  | Page No |
|---|---|
| Issue | 2 |
| Medicare Statutory and Regulatory Background | 2 |
| Statement of the Case and Procedural History | 3 |
| Parties' Contentions | 4 |
| Findings of Fact, Conclusions of Law and Discussion | 6 |
| Decision and Order | 7 |

19

ISSUE:

Whether the Provider's exception requests to the skilled nursing facility (SNF) routine service cost limits under 42 C.F.R. §413.30(f) was properly denied because the Provider did not request the exceptions within 180 days of the original notices of program reimbursement.

MEDICARE STATUTORY AND REGULATORY BACKGROUND:

This is a dispute over the amount of Medicare reimbursement due a provider of medical services.

The Medicare program was established to provide health insurance to the aged and disabled. 42 U.S.C. §§1395-1395cc. The Centers for Medicare and Medicaid Services (CMS), formerly the Health Care Financing Administration (HCFA),[1] is the operating component of the Department of Health and Human Services charged with administering the Medicare program. HCFA's payment and audit functions under the Medicare program are contracted out to insurance companies known as fiscal intermediaries. Fiscal intermediaries determine payment amounts due the providers under Medicare law and under interpretive guidelines published by CMS. See, 42 U.S.C. §1395h, 42 C.F.R. §§413.20(b) and 413.24(b).

At the close of its fiscal year, a provider must submit a cost report to the fiscal intermediary showing the costs it incurred during the fiscal year and the proportion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. The fiscal intermediary reviews the cost report, determines the total amount of Medicare reimbursement due the provider and issues the provider a Notice of Program Reimbursement (NPR). 42 C.F.R. §405.1803. A provider dissatisfied with the intermediary's final determination of total reimbursement may file an appeal with the Provider Reimbursement Review Board (Board) within 180 days of the issuance of the NPR. 42 U.S.C. §1395oo(a); 42 C.F.R. §405.1835.

At its inception, the Medicare Program reimbursed providers the "reasonable cost" of furnishing covered services to program beneficiaries pursuant to Section 1861 (v)(1)(A) of the Act. In response to rising costs, and realizing that the original structure provided little incentive for providers to operate efficiently in delivering services, Congress authorized the Secretary (under Section 223 of the Act of 1972) to:

> [p]rovide for the establishment of limits on the direct or indirect
> overall incurred costs . . . based on estimates of the costs necessary
> in the efficient delivery of needed health services . . .

---

[1] For events that took place before CMS changed its name, and to maintain consistency with the evidence, HCFA will be used.

Recognizing that providers under some circumstances would incur costs in excess of the routine cost limit, exceptions to the routine cost limit (RCL) were established in 42 C.F.R. §413.30(f), which states:

> (f) Exceptions.  Limits established under this section may be adjusted upward for a provider under the circumstances specified in paragraphs (f)(1) through (f)(8) of this section . . . An adjustment is made only to the extent the costs are reasonable, attributable to the circumstances specified, separately identified by the provider, and verified by the intermediary.

SNF cost limits are established based upon reported costs; however, those limits can later be adjusted for actual or projected cost changes by applying the SNF market basket index.  The market basket index is used to adjust the limits to reflect cost changes occurring between the time of the cost reporting periods represented in the data collection to the time when the limits are applied.  However, the market basket index itself cannot be determined until the cost reporting period to which the limits apply has already passed.  Therefore, when the cost limits are calculated, the limits are based on an estimated market basket index which is based upon forecasts of economic trends.  If these economic forecasts prove erroneous, the limits may be retroactively adjused to reflect the actual index.  Medicare's policy is to adjust the limit if the market basket index for a fiscal year differs from the estimated rate of change by at least 0.3 of one percentage point.

STATEMENT OF THE CASE AND PROCEDURAL HISTORY:

St. Anthony's Health Center (the Provider) is a hospital-based skilled nursing facility located in Alton, Illinois.  In 1992, the Provider's fiscal intermediary changed from Health Care Services Corporation to Administar Federal (both hereinafter referred to as the Intermediary).  The Intermediary issued the Provider's original Notices of Program Reimbursement (NPRs) on September 2, 1993 for its fiscal year ended (FYE) December 31, 1991 cost report and on April 1, 1994 for its FYE December 31, 1992 cost report.  In the original NPRs, the Provider exceeded the RCL for both FYEs 1991 and 1992.  The Provider did not file exception requests with the Intermediary within 180 days of the original NPRs for either fiscal year.

In 1996, HCFA determined that the estimated market basket index for fiscal years 1991 and 1992 exceeded actual market basket figures by more than 0.3 of one percentage point.  Pursuant to its rules,[2] HCFA instructed intermediaries to retroactively adjust cost limits to include the actual market basket index figures.[3]

On August 29, 1996, the Intermediary issued Notices of Reopening for the Provider's FYE 12/31/91 and 12/31/92 cost reports to update the Provider's SNF cost limits based

_____

[2]  See 56 Fed. Reg. 13317, 13319 (April 1, 1991).
[3]  HCFA Memorandum, May 1996.

Page 4                                                              CNs: 98-0580 and 98-0463

on the change in the market basket index. For FYE 12/31/91, the RCL was decreased by $3.41, and for FYE 12/31/92 the RCL was decreased by $6.26. The Provider filed exception requests with the Intermediary within 180 days of the revised NPRs, both dated 10/31/1996. The Intermediary notified the Provider that HCFA had denied its exception requests and stated "[i]t is HCFA's policy that is [sic] an exception is submitted after 180 days of the original NPR but within 180 days of a revised NPR, an exception may only be granted for the incremental increase in the amount that the provider's costs exceeds its revised cost limit."[4] The Intermediary's exception recommendations were revised and subsequently approved by HCFA on October 14, 1997 for the incremental increase in the amount of the routine cost limits between the original NPRs and the revised NPRs.[5] The Provider filed timely appeals with the Board and met the jurisdictional requirements of 42 C.F.R. §§405.1835-405.1841. The total amount of relief sought under the exception requests was $253,545 for FYE 1991 and $241,212 for FYE 1992.

The Provider was represented by Cindy H. Burnett, Esquire, of Vinson & Elkins L.L.P. The Intermediary was represented by Bernard M. Talbert, Esquire, of the Blue Cross Blue Shield Association.

PARTIES' CONTENTIONS:

Exception requests are governed by 42 C.F.R. § 413.30(c) which provides that a request for an exception to the SNF cost limits must be made to the intermediary within 180 days of the NPR. The Provider argues that because the regulation does not distinguish between an initial and revised NPR, its request was timely as to the full amount of its exception request.

The Provider acknowledges that the regulation at 42 C.F.R. § 413.30(c)has been interpreted as incorporating the restrictions of 42 C.F.R. §405.1889[6] which limits review of a revised NPR to only those issues specifically affected by the revised NPR. The Provider argues that these two sections should be viewed as separate because NPR appeals are filed with the Board but RCL exception requests are filed with the intermediary. This distinction was noted in Hurley Medical Center v. Blue Cross Blue Shield Association/Health Care Service Corporation, HCFA Adm. Dec. August 7, 1998, Medicare & Medicaid Guide (CCH) ¶80,058. In Hurley, the provider failed to make its TEFRA exception request to the intermediary in accordance with the regulations but mistakenly made the request to the Board and sent a copy to the intermediary. The Board concluded that the intermediary had adequate notice of an exception request, but the HCFA Administrator overturned the Board's decision because the request was not made to the intermediary as the regulation explicitly provided. The Provider asserts that application of the same literal interpretation in this case would allow a full exception request from any NPR since the regulation does not specify otherwise.

---

[4] Intermediary Exhibit 1-6.
[5] Exhibit I-7.
[6] See St. Joseph Medical Center v. Blue Cross Blue Shield Association/Blue Cross of California, PRRB Case No. 98-D27, January 29, 1998, Medicare & Medicaid Guide (CCH) ¶46,070.

The Provider also contends that, even if 42 C.F.R. §405.1889 applies, the instant cases are distinguishable because the revised NPRs specifically adjusted the SNF's RCLs and because the RCLs in the original NPRs were provisional. As a result, the RCLs were not finalized until the revised NPRs were issued. In support, the Provider refers us to French Hospital Medical Center v. Shalala, 89 F.3d 1411 (9th Cir. 1996). There, the court upheld the refusal to grant the exception request on the grounds that it was untimely filed because:

> [T]he intermediary reopened the hospital's cost report for the sole purpose of applying the RCL to malpractice insurance costs. Neither the RCL nor components of the RCL were at issue in the revised NPR. Furthermore, the revised NPR did not alter the RCL or any of its components. Only the RCL's application to malpractice insurance costs was at issue in the revised NPR.

Id. at 1420. The Provider asserts that the French Court decision clearly implies that a revision to the RCL itself or any of its components would reopen the RCL issue and allow the provider to request and receive an exception to its RCLs. The Provider also points out that the revised NPR was issued to effect the changes in the SNF market basket indices, which are components of the SNF RCLs.

In addition, the Provider asserts that the strictures on 42 C.F.R. §405.1889 should not apply because the policy considerations for exception requests are different than policy considerations applicable to appeals of cost adjustments. Exception requests involve limits that are applied to all costs incurred by a provider. Thus, an adjustment of allowable costs affects whether a provider wishes to seek an exception. In contrast, appeals of cost adjustments involve discrete categories of claimed costs. When an intermediary reopens the cost report to adjust discrete costs centers, there is no effect on the costs included in other discrete cost centers. As cost limits are dependent upon all reimbursement, any change in allowable costs does influence how the cost limit applies.

Finally, the Provider points out that during this time period, there were no guidelines issued on how to apply for an atypical cost exception, and RCLs were pending subject to finalization of the market basket index; therefore, providers could not be sure whether to make exception requests from the initial or revised NPRs. The method for contesting the RCL was not fully explained until the issuance of Transmittal No. 378 in July 1994.

The Intermediary responds that the Provider did not file requests for an exception to the SNF RCLs upon its original NPRs even though its costs exceeded the cost limits. Correcting the cost limits therefore did not convert the Provider from a position of being within the cost limits to a position of exceeding the cost limits. Consequently, the reopenings did not create any new rights to file exception requests. The reopenings merely corrected the amount of the cost limits and HCFA granted a partial exception for the additional amount applicable to that correction. As no requests were filed from the original NPRs, no relief is available as to the excess cost calculated under the original RCL limits.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND DISCUSSION:

The Board, after consideration of the Medicare law and guidelines, the parties' contentions, and evidence presented, finds and concludes that that the Provider is entitled to consideration of the full amount of the exception request based on the appeal of its revised NPR.

The first evidence in our record of HCFA's position to limit any relief from a revised NPR adjustment to the incremental increase in the amount that the provider's costs exceeds its revised cost limit is in the Intermediary's letter to the Provider dated July 18, 1977.[7]  Apparently, the Intermediary was previously unaware of HCFA's position because the Intermediary had recommended to HCFA acceptance of more than the incremental increase in the adjustments on the revised NPRs.[8]  HCFA's notice to all intermediaries concerning the adjustments to the RCLs authorizes adjustments to exceptions already granted and it addresses how new exception requests will be handled.[9]  That communication demonstrates that HCFA anticipated that exception requests would be filed from revised NPRs yet there is no mention of a limit on any relief from a revised NPR adjustment to the incremental increase only.

The Board has also carefully considered both 42 C.F.R. §§405.413.30(c) and 405.1889, and we do not find any basis for HCFA's limitation in either regulation.  42 C.F.R. §413.30(c) states that the "provider's request for an exception must be made to its fiscal intermediary within 180 days of the date on the intermediary's notice of program reimbursement."  The regulation does not make a distinction between types of NPRs; therefore, a provider should be allowed to make an exception request for the full amount from any NPR in which the RCL is at issue.

Even when §405.1889 is applied, we find the appeal from the revised NPR proper.  This case is distinguishable from French, supra, in which a provider was not allowed to contest its cost limits from a revised NPR where the provider sought an exception from an adjustment for malpractice insurance costs.  The court held the denial of the exception request was proper because "[n]either the RCL, nor components of the RCL, were at issue in the revised NPR."  Id. at 1420.  Here, the Intermediary did adjust the RCLs in the revised NPRs; therefore, the Provider is entitled to make its exception requests from the revised NPRs.

In summary, the Board finds the Provider may request an exception to the RCL from any NPR in which the Intermediary adjusts its RCL, and there is no basis to limit a provider's exception request made from a revised NPR.

---

[7] Provider Exhibit D.
[8] Intermediary Exhibit 5.
[9] Intermediary Exhibit 3 at p. 2.

Page 7                                                    CNs: 98-0580 and 98-0463

DECISION AND ORDER:

HCFA's partial denial of the Provider's SNF exception requests was improper.  The
matter is remanded to the fiscal intermediary to consider the Provider's full request for
relief from the RCLs.

Board Members Participating:

Suzanne Cochran, Esquire
Gary Blodgett, D.D.S.
Elaine Crews Powell, C.P.A.
Anjali Mulchandani-West
Yvette C. Hayes

FOR THE BOARD:

SEP 2 6 2006

Suzanne Cochran, Esquire
Chairperson

25

RECEIVED

OCT - 3 2000

PROVIDER REIMBURSEMENT
REVIEW BOARD

BEFORE THE PROVIDER REIMBURSEMENT REVIEW BOARD


SAINT ANTHONY'S HEALTH CENTER -- SNF

PROVIDER NO. 14-5314
PRRB CASE NO. 98-0580
FYE  DECEMBER 31, 1991


PROVIDER'S REVISED POSITION PAPER
FOR SUBMISSION TO
THE PROVIDER REIMBURSEMENT REVIEW BOARD


SUBMITTED BY:


Cindy H. Burnett
VINSON & ELKINS L.L.P.
1001 Fannin Street; Suite 2300
Houston, TX  77002-6760
(713) 758-4558


October 2, 2000


26

## TABLE OF CONTENTS

I.   Issue Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     2.1    Identification of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

            2.1-1   The Provider  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
            2.1-2   The Intermediary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     2.2    Medicare Reimbursement Controversy . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. Argument and Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     3.1    The Provider Is Not Limited To the Incremental Decrease
            In the Revised NPR, Because the Provider's Exception
            Request Was Timely Filed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

            3.1-1   42 C.F.R. § 405.1889 -- Appeals of Revised NPRs . . . . . . . . . . . . . . . 5
            3.1-2   42 C.F.R. § 413.30(c) - Exception Requests  to Cost Limits  . . . . . . . . 7

     3.2    In the Alternative, Because 42 C.F.R. § 413.30(c) Does Not
            Distinguish Between Initial and Revised NPRs, the Exception
            Request Should Be Accepted Regardless of Whether the Revised
            NPR Included the Specific Issues Being Appealed . . . . . . . . . . . . . . . . . . . . . 8

     3.3    HCFA's Failure to Issue Guidance on Exception Requests
            Until July 1994 Supports Ruling In Favor of the Provider . . . . . . . . . . . . . . 10

IV.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

i

27

## I.   Issue Presented

Whether the Intermediary's or the Health Care Financing Administration's ("HCFA") denial of the Provider's exception request to the SNF routine service cost limits under 42 C.F.R. § 413.30(f) was proper?

## II.   Statement of the Facts

### 2.1     Identification of the Parties

#### 2.1-1   The Provider

The Provider is Saint Anthony's Health Center (the "Provider"), a hospital-based skilled nursing facility ("SNF") located in Alton, Illinois (Provider No. 14-5314).

#### 2.1-2   The Intermediary

AdminaStar Federal is the Intermediary.

### 2.2     Medicare Reimbursement Controversy

The Intermediary issued its first notice of program reimbursement ("NPR") for the Provider's fiscal year ending ("FYE") December 31, 1991, on September 2, 1993. (Provider's Exhibit A). On August 29, 1996, the Intermediary reopened the Provider's FYE 1991 cost report to revise the Provider's FYE 1991 cost limit. (Provider's Exhibit B). The Intermediary reopened the Provider's cost report to adjust the Provider's SNF routine cost limit. SNF cost limits are based upon reported costs, but are adjusted for actual or projected cost increases by applying the SNF market basket index. This market basket index is used to adjust the limits to reflect cost increases occurring

1

between the time of the cost reporting periods represented in the data collection to the time when the limits are applied. However, the market basket index itself cannot be determined until the cost reporting period to which the limits apply has already passed. Thus, when HCFA calculates cost limits it uses an estimated market basket index which is based upon forecasts of economic trends. If these economic forecasts prove erroneous, HCFA retroactively adjusts cost limits to reflect the actual index. Specifically, if the market basket index for a fiscal year differs from the estimated rate of change by at least 0.3 of one percentage point, HCFA will adjust the limits.

Thus, in FYE 1991, the Provider's cost limit was merely provisional because it was based on an estimate of the market basket index. In 1996, the limits were finalized when HCFA determined that the estimated market basket index for fiscal year 1991 had exceeded actual market basket figures by more than .3 of one percentage point. Pursuant to its rules on the market basket index, HCFA therefore instructed intermediaries to retroactively adjust cost limits to include the actual market basket index figures. *See* 56 Fed. Reg. 13317, 13319 (Apr. 1, 1991).

In the revised NPR, issued October 31, 1996, the Intermediary decreased the SNF cost limit to incorporate the actual market basket figures. (Provider's Exhibit B). The Intermediary calculated the Provider's routine cost limit ("RCL") per diem to be $134.75, a $3.41 decrease from the prior $138.16 per diem limit. Pursuant to 42 C.F.R. § 413.30(f), the Provider filed a timely request for an exception to the SNF routine cost limits on April 23, 1997. The Provider alleged and documented that the acuity level of its patient population was significantly higher than the applicable Peer Group.

2

As such, the Provider requested a per diem exception of $45.84, and a total exception amount of $253,545 (based on 5,533 Medicare days). *See* Provider's Exhibit C.

The Intermediary notified the Provider by letter dated July 18, 1997, that HCFA determined that the Provider was not entitled to the exception request. (Provider's Exhibit D). The Intermediary stated that "[i]t is HCFA's policy that is [sic] an exception is submitted after 180 days of the original NPR but within 180 days of the revised NPR, an exception may only be granted for the incremental increase in the amount that the provider's cost exceeds its revised cost limit." The Provider then obtained a HCFA letter dated October 14, 1997 indicating that the Provider was granted a partial exception, essentially that amount which was decreased in the revised NPR and timely addressed by the Provider's exception request. (Provider's Exhibit E) However, the Provider believes that it is entitled to the full amount of its exception request. Accordingly, the Provider timely appealed the Intermediary's denial of the entire exception request through its Request for Hearing filed December 15, 1997.

### III. Argument and Analysis

The Provider believes that it is entitled to the full amount of its exception request filed April 25, 1997. Section 413.30(f) of the Medicare regulations allows for a provider's SNF cost limit to be adjusted upward if the provider can document that, *inter alia*, its actual costs of items or services exceeds the applicable limit because the items or services are atypical in nature and scope compared to the items and services generally provided by similarly classified providers, and because of special

3

30

needs of the patients.   42 C.F.R. § 413.30(f)(1); *see also* Provider Reimbursement Manual ("Manual") § 2534.  The Provider filed a timely exception request seeking an exception of $45.84 to its per diem limit.  The Provider supported this exception with documentation which HCFA ultimately accepted in its granting of an exception for the incremental decrease between the per diem limit applied in the initial NPR for FYE 1991 and the revised NPR.  Thus, the credibility of the supporting documentation and appropriateness of the exception request is not at issue.  Rather, the issue is merely a procedural one which should not prevent the Provider from receiving the exception for which it qualifies and to which it is therefore entitled.

### 3.1    The Provider Is Not Limited To the Incremental Decrease In the Revised NPR, Because the Provider's Exception Request Was Timely Filed

The Provider's exception request is governed by 42 C.F.R. § 413.30.  This section provides that a provider that requests an exception to the SNF cost limits must make such request to its fiscal intermediary "within 180 days of the date on the intermediary's notice of program of reimbursement." 42 C.F.R. § 413.30(c) (1991).

Although Section 413.30(c) makes no distinction between initial or revised NPRs, the section has been interpreted by some tribunals as incorporating restrictions spelled out in 42 C.F.R. § 405.1889. *See, e.g., St. Joseph Medical Center*, PRRB Dec. No. 98-D27, Medicare & Medicaid

4

31

Guide (CCH) ¶ 46,070. Section 405.1889, in turn, limits review of a revised NPR to only those issues specifically affected by the revised NPR.[1]

Assuming that Section 413.30(c) includes the restrictions outlined in 42 C.F.R. § 405.1889 (which the Provider disputes, *see* Section 3.2 below), the Provider meets the jurisdictional requirements for bringing its case before the PRRB. First, the revised NPR issued in this case specifically included the issue the Provider now appeals -- the RCLs that applied to the Provider's SNF. Second, because the cost limit included in the initial NPR were only provisional, the provisions of Section 413.30(c) became effective as of the date of the revised NPR, triggering the right to request an exception from the cost limit imposed by HCFA.

### 3.1-1   42 C.F.R. § 405.1889 -- Appeals of Revised NPRs

First, the Provider may appeal its revised NPR under 42 C.F.R. § 405.1889, because the revised NPR included the very issue the Provider seeks to appeal -- its RCLs. Thus, the Provider's case is distinguishable from cases where a provider was not allowed to contest its cost limits on the basis of a revised NPR. For example, in *French Hospital Medical Center v. Shalala*, 89 F.3d 1411 (9th Cir. 1996), French Hospital sought an exception to its cost limit on the basis of a revised NPR

---

[1]Section 405.1889 reads:

> Where a revision is made in a determination or decision on the amount of program reimbursement after such determination or decision has been reopened as provided in Section 405.1885, such revision shall be considered a separate and distinct determination or decision to which the provisions of Sections 405.1811, 405.1835, 405.1875 and 405.1877 are applicable. (See Section 405.1801(c) for applicable effective dates.)

5

adjusting malpractice insurance costs.   The Ninth Circuit refused to grant the exception request,

stating it was untimely because:

> the intermediary reopened the hospital's cost report for the sole purpose of applying
> the RCL to malpractice insurance costs. *Neither the RCL, nor components of the*
> *RCL, were at issue in the revised NPR. Furthermore, the revised NPR did not alter*
> *the RCL or any of its components.* Only the RCL's application to malpractice
> insurance costs was at issue in the revised NPR.

*Id.* at 1420 (emphasis added).   The Court clearly implies that a revision to the RCL or any of its

components would reopen the RCL issue and allow the provider to request and receive an exception

to its RCLs.   This implication is further evidenced by the Court's statement that the PRRB may

review all matters the fiscal intermediary had reconsidered upon reopening the cost report, whether

or not it ultimately adjusted them in its revised NPR.   *Id.*   Clearly, the Ninth Circuit Court believes

that providers should be allowed to appeal from revised NPRs any issue reviewed or revised by the

intermediary pursuant to the reopening that led to the revised NPR.

Another Ninth Circuit case, *Anaheim Memorial Hospital v. Shalala*, 130 F.3d 845 (9th Cir.

1997), provides that there is a distinction between an application of the RCL and a reconsideration

of it.   In this case, the intermediary reopened the provider's cost report to adjust malpractice costs,

similar to the basis for the reopening in *French Hospital*.   Pursuant to this reopening and a revised

NPR, the provider appealed the method the intermediary used to calculate one of the components

used to calculate the RCLs.   Summarizing *French Hospital*, the Court stated that a reopening was

issue-specific, and the RCL was not the issue that was reopened in this case and accordingly, the

provider could not appeal the RCL issue from the revised NPR.   *Anaheim Memorial*, 130 F.3d at

846. *See also St. Joseph Medical Center*, PRRB Dec. No. 98-D27 Medicare & Medicaid Guide

(CCH) ¶ 46,070 (holding that a revised NPR issued to adjust labor and delivery costs did not provide

a basis for an exception request to the RCL because the RCL were not at issue in the revised NPR).

      This case is clearly distinguishable from *French Hospital, Anaheim Memorial,* and *St. Joseph*

*Medical Center,* since the components of the RCL *are* at issue. The SNF cost limits cannot be

determined without including the market basket index since the market basket index is one of the

components used to calculate the RCL. *See* 56 Fed. Reg. 13317 (Apr. 1, 1991) ("we will continue

to *base* cost limits on reported costs, adjusted for actual and projected cost increased by applying the

*SNF market basket index.*" (emphasis added)); *Anaheim Memorial Hosp. v. Shalala*, 130 F.3d at

847 ("The RCL is derived from a number of factors including: . . . (2) a market basket index of

goods and services purchased by hospitals"). Because the market basket index is one component

of the RCL, when HCFA finalized the FY 1991 market basket in 1996, it was revising the limits

applied to SNFs. A request for an exception to this limit could then be pursued through the normal

exception process outlined in 42 C.F.R. § 413.30(c). In contrast, in *French Hospital, Anaheim*

*Memorial* or *St. Joseph,* the Intermediary was not revising the *limits,* it was revising the costs to

which those limits applied. Because the Intermediary has placed the RCLs at issue in the revised

NPR, the Provider should be entitled to pursue its exception request to those RCLs.

### 3.1-2    42 C.F.R. § 413.30(c) - Exception Requests to Cost Limits

      Second, the Provider may appeal its revised NPR under 42 C.F.R. § 413.30(c), because it was

not until 1996 that the routine cost limits were finalized. As such the cost limits were truly not

"imposed" until the market basket index had been finalized and used to calculate the actual, not the estimated, limits. In 1993, when the Intermediary issued the Provider's initial NPR, the RCLs were based only upon estimated market basket figures. As such, these cost limits were provisional -- and could be adjusted in the event that actual market basket rates exceeded estimated amounts. In the Federal Register, HCFA explained:

> The market basket index also provides for adjustments in the limits if our forecasts of economic trends prove erroneous. For cost reporting periods on or after May 1, 1986, if the final rate of change in the market basket index for a year differs from the estimated rate of change by at least 0.3 of one percentage point, the limits will be adjusted. We will advise the Medicare intermediaries to use the actual rate to adjust each SNF's limit retroactively *at final settlement of the SNF's cost report*.

51 Fed. Reg. 11253, 11254 (April 1, 1986) (emphasis added). This language demonstrates that final settlement of the cost report does not occur until the actual rate has been calculated, and the SNF's limit adjusted, if necessary.

Because the market basket did exceed estimated figures, HCFA directed intermediaries to retroactively adjust cost limits for fiscal year 1991. These limits were finally adjusted in 1996, and therefore, the Provider did not receive notice of the actual RCL that would be imposed for FYE 1991 until October 31, 1996 when the revised NPR was issued. As a result, because the revised NPR included the actual RCL, the Provider timely and properly requested an exception to this RCL within 180 days of the revised NPR.

8

35

**3.2**    **In the Alternative, Because 42 C.F.R. § 413.30(c) Does Not Distinguish Between Initial and Revised NPRs, the Exception Request Should Be Accepted Regardless of Whether the Revised NPR Included the Specific Issues Being Appealed**

42 C.F.R. § 413.30(c) does not distinguish between initial and revised NPRs, stating only that exception requests be made within "180 days of the date on the intermediary's notice of program reimbursement." Although some courts have interpreted 42 C.F.R. § 413.30(c) as incorporating the restrictions of 42 C.F.R. § 405.1889, there are several reasons why these sections should be viewed as separate.

First, the regulations at 42 C.F.R. § 405.1889 govern appeals to NPRs that are made to the *Board.* In contrast, exception requests for RCLs are made to the fiscal intermediary, and not to the Board. 42 C.F.R. § 413.30(c). Indeed, the HCFA Administrator made this painfully clear in *Hurley Medical Center*, HCFA Adm'r Dec., Medicare & Medicaid Guide (CCH) ¶ 80,058 (Aug. 7, 1998). In that case, Hurley Medical Center failed to make its TEFRA exception request to the intermediary (in accordance with the regulations),[2] but mistakenly made the request to the PRRB, sending a carbon copy to the intermediary. The Board ruled in Hurley's favor, stating that the letter to the Board was adequate notice to the intermediary of the exception request and that requiring the request to be sent to the intermediary elevated form over substance. However, the HCFA Administrator overturned the Board's decision, stating:

> [T]he regulation clearly states that '[t]he hospital's request must be made to its fiscal intermediary no later than 180 days from the date on the intermediary's notice of

---

[2] 42 C.F.R. § 413.40(e) governs requests for TEFRA exceptions.

9

> program reimbursement. . . .' The record demonstrates that the Provider did not comply with the requirements stated at 42 C.F.R. § 413.40(e) because the Provider did not make a request to the Intermediary within the 180-day time frame.

*Id.* at 200,264.

Hurley stands for the principle that the Administrator will read the provisions under Section 413 of the regulations as distinct from those in Section 405 *et. seq.* when it behooves her to do so. Moreover, the opinion embraces literalist interpretations of regulations. The Board should follow the Administrator's example and apply a literal interpretation to the language of Section 413.30(c). Since the regulation uses only the phrase "notice of program reimbursement" and does not distinguish between initial and revised NPRs, a literal interpretation of the regulation would allow exception requests to be made to both initial *and* revised NPRs.

The Provider understands that this issue has been addressed in several cases. *See, e.g., Care Unit Hospital of Dallas/Forth Worth*, HCFA Adm'r Dec., Medicare & Medicaid Guide (CCH) ¶ 43,510 (May 5, 1995) (Section 413.40(e) should be read together with Section 405.1889); *Foothill Presbyterian Hosp. v. Shalala*, 152 F.3d 1132 (9th Cir. 1998), Medicare & Medicaid Guide (CCH) ¶ 300,028 (harmonizing Section 413.40(e) with Sections 405.1885(a) and 405.1889). However, these cases were issued prior to the HCFA Administrator's literalist interpretations announced in *Hurley*. Moreover, none of those cases discussed the procedural differences between exception requests, which are made to the intermediary, and appeals of the costs allowed in the final NPR, which are made to the Board. Thus, the Board can distinguish those cases, and rule as it previously did in *Foothill*, PRRB Dec. No. 95-D28, Medicare & Medicaid Guide (CCH) ¶ 43,228 and *Care*

*Unit*, PRRB Dec. No. 95-D26, Medicare & Medicaid Guide (CCH) ¶ 43,410, that a distinction between revised and final NPRs in the context of exception requests is not supported in the regulations.

Second, the strictures of Section 405.1889 should not apply because the policy considerations for exception requests are different from the policy considerations applicable to appeals of cost adjustments. Exception requests involve limits that are applied to *all* costs incurred by a provider. Thus, an adjustment of allowable costs affects whether a provider wishes to seek an exception. In contrast, appeals of *cost* adjustments involve discrete categories of claimed costs. When an intermediary reopens the cost report to adjust discrete cost centers, there is no effect on the costs included in other discrete cost centers. As cost limits are dependent upon all reimbursement, any change in allowable costs *does* influence how the cost limit applies.

**3.3    HCFA's Failure to Issue Guidance on Exception Requests Until July 1994 Supports Ruling In Favor of the Provider**

Finally, additional policy considerations should be made in this case, because prior to mid-1994, there was little guidance on how providers could make their exception requests. Even if providers wanted to make exception requests there was no mechanism for doing so. Prior to mid-1994, there were no provisions in either the Manual or the regulations explaining how a provider would apply for an exception on the basis of atypical costs. This deficiency was explicitly recognized in a report issued by the GAO, where the GAO stated:

> Initially, HCFA did not have detailed instructions for the exception request process. In July 1994, HCFA published Transmittal 378 to assist SNFs in preparing and submitting exception requests and defining intermediaries' responsibilities.

11

GAO, Approval Process for Certain Services May Result in Higher Medicare Costs, (GAO/HEHS-97-18) (Dec. 1996) at p. 51. Indeed, prior to 1994, the only Manual provision relating to atypical costs discussed adjustments which were based upon the "atypical costs resulting from the operation of an approved nursing school." Manual § 2527.1 (declared obsolete by Transmittal No. 378, July 1994).[3] There were no manual provisions on exception requests for atypical costs in general. Thus, providers received little to no guidance on when and how they should make their exception requests. The fact that limits were pending, subject to finalization of the market basket index, only added to this confusion. Because providers were given little guidance on making exception requests, and because requests were pending subject to changes in the market basket, providers could not be sure when exception requests should be made -- at the initial or the revised NPR. Thus, the Provider could not have been expected to anticipate the method for contesting an RCL that would later be explained in Transmittal No. 378.

---

[3] Interestingly, the Intermediary's draft position paper cites the Intermediary Manual § 2531 in its brief (Int. Br. Part III, Part A, paragraph 1), stating that the "Provider failed to file an exception request for the Skilled Nursing Facility (SNF) cost limit per diem within the 180 days requirements stated in HIM 15 Part 1 Section 2531.1A2." However, the Provider could not have used the directions included in Section 2531 when its original NPR was issued (on September 2, 1993) since Section 2531 was not published until July, 1994.

12

## IV. Conclusion

In conclusion, the Provider should be granted an exception to the SNF routine cost limits.

Respectfully submitted,

*Cindy Burnett*

Cindy H. Burnett
VINSON & ELKINS L.L.P.
2300 First City Tower
1001 Fannin
Houston, Texas  77002-6760
(713) 758-4558

Provider Representative

CH1252: SA1121/67000
Houston:342864.1

13

40

**Blue Cross Blue Shield** of Illinois



**Medicare**
SEP - 2 1993

Provider Reimbursement & Auditing
2151 West White Oaks Drive
Springfield, Illinois 62704
(217) 698-5200
(217) 698-8703 (FAX)

Mr. William E. Kessler
President
St. Anthony's Hospital
St. Anthony's Way
Alton, IL 62002

<u>Notice of Program Reimbursement</u>

Provider Numbers: 14-0052,14-5314
14-7113
Cost Report Period: 1/1/91-12/31/91

Dear Mr. Kessler:

Enclosed is your copy of the audited <u>Multiple-Facility Statement of Reimbursable Cost</u>.  Included in the Report are the following:

1.  Adjustment Reports
2.  Cost Reports as audited and revised
3.  Auditor's Certification and Notes pertinent to the Cost Reports
4.  Exit Conference Minutes including a summary of unresolved items
5.  Comparative Schedule of Total Medicare Settlement

This report should be retained in your permanent files along with similar types of required reports and returns.

As a result of our audit of the Multiple-Facility Statement of Reimbursable Cost for the above period, our findings are as follows:

| <u>Provider #14-0052</u> | <u>Claimed</u> | <u>Revised</u> |
|---|---|---|
| Total Allowable Cost | $<u>42,405,709</u> | $<u>42,464,503</u> |
| Total Medicare Reimbursable Cost | <u>14,011,674</u> | <u>14,028,925</u> |
| Total Medicare Net Settlement* | <u>579,774</u> | <u>612,645</u> |
| <u>Provider #14-5314</u> | <u>Claimed</u> | <u>Revised</u> |
| Total Allowable Cost | $<u>42,405,709</u> | $<u>42,464,503</u> |
| Total Medicare Reimbursable Cost | <u>1,583,076</u> | <u>1,527,387</u> |
| Total Medicare Net Settlement* | <u>(90,694)</u> | <u>(97,488)</u> |

*Due Provider/(Program)

GC 676C (Eff. 7/92)
OMB 0938-0212

Health Care Service Corporation, a Mutual Legal Reserve Company
(Blue Cross and Blue Shield of Illinois)

Provider #14-7113

| | | |
|---|---|---|
| Total Allowable Cost | $42,405,709 | $42,464,503 |
| Total Medicare Reimbursable Cost | 851,542 | 841,807 |
| Total Medicare Net Settlement | (96,862) | (107,740) |
| *Due Provider/(Program) | 392,218 | 407,417 |

In accordance with Public Law 97-248 interest will be assessed on the amount due HCFA unless full payment is made within 30 days from the date of this Notice.  Interest will be assessed for each 30 day period (or Less) that payment is delayed.  If you are unable to refund the entire amount at this time, advise this office immediately so that we may determine if you are eligible for a repayment schedule.  Interest on any repayment schedule would run from the date of this letter.  If an overpayment is repaid in installments or recouped by withholding from several payments due the provider -- (1) each payment will be applied first to accrued interest and (2) then to the principal.  With respect to repayment schedules, interest will be assessed at the higher of the private consumer rate (PCR) or the current value of funds (CVF) rate, per Medicare Regulation 42 Code of Federal Regulation, 405.376.  The interest rate applicable for this determination 13.625 per cent. This interest rate will remain unchanged for the entire repayment period.

This notice of amount of Medicare Program Reimbursement for the Fiscal Year indicated above is in conformance with Regulation Section 405.1803.  Please be advised that our determination is subject to revision during the three (3) year period following the date of this notice by the findings of an audit, where applicable.

This notice of program reimbursement is applicable to the current year's cost report determination.  The adjustments to this Cost Report, which produce a difference between the Intermediary's determination and your initial Cost Report, are explained in the Adjustment Report.  If you have any further questions concerning the nature of these adjustments or the reasons for them, please contact this office.

GC 676C (Eff. 7/92)
OMB 0938-0212                    -2-

44

### NOTICE OF AMOUNT OF MEDICARE PROGRAM REIMBURSEMENT
### APPEAL RIGHTS/FILING INSTRUCTIONS

This NPR is the intermediary's base determination for purposes of appeal rights. We encourage you to discuss with us any disagreement to adjustments effected by this NPR. However, if the dispute cannot be resolved to your satisfaction, you may file an appeal to our determination with either the Intermediary or the Provider Reimbursement Review Board (PRRB) depending on the amount in controversy. <u>Appeal requests must be in writing and be filed within 180 days from the date of this NPR.</u> Filing requirements are summarized below:

|  | Intermediary Appeals | PRRB Appeals |
|---|---|---|
| References: | 42 CFR 405.1809-405.1833 | 42 CFR 405.1835-405.1890 |
|  | HCFA Pub. 15-1 2910 - 2918 | HCFA Pub. 15-1 2920 - 2929 |

Amount in Controversy:

| Periods Ending Before 6/30/73 | $1,000 minimum | |
|---|---|---|
| Period Ending After 6/30/73 | | |
| Individual Providers | $1,000 - $10,000 | Over $10,000 |
| Groups (Common Issues) | No provision for group appeals of unrelated providers | $50,000 or more, in aggregate;no minimum for individual providers |
| Groups (Common Ownership) | $1,000 - $10,000 for individual Providers; less than $50,000 in aggregate | Same as above |

| Send Request to: | Intermediary Hearing Officer Reimbursement and Provider Appeals Department Blue Cross Blue Shield Assn. 676 North St. Clair Street Chicago, Illinois 60611 | Chairman Provider Reimbursement Review Board Room 104 Professional Bldg. 6660 Security Blvd. Baltimore, MD 21207 |
|---|---|---|
|  | Copy: Blue Cross Plan Appeals Rep. | Copy: Blue Cross Plan Appeals Rep. & PRRB Appeals Coordinator Blue Cross Blue Shield Assn. |

| For Information on Filing Call: | Joan Baker Blue Cross Blue Shield (312) 440-5836 | John Bader PRRB (301) 966-2053 |
|---|---|---|

GC 676   (REV. 7/92)                    3

45

The appeal requests for either an Intermediary or a PRRB appeal must include the following:

1) identification of items in dispute by adjustment number, amount, and description,

2) reasons for disagreement with the Intermediary's determination on these items, and

3) 1 copy of the NPR, or determination disputed and adjustment report (pertinent portion).

Intermediary appeal requests must include, in addition to the items listed above, an estimate of the reimbursement in controversy for each item appealed.

Finally in accordance with the provisions of Provider Reimbursement Manual, Part I Section 2425.1, subsequent cost reports must be filed excluding those nonallowable costs which have been removed from the Final Settlement pertaining to this Notice of Program Reimbursement unless those adjustments are being appealed in conformity with the conditions specified in Regulations No. 5, Subpart R, Sections 405.1801 FF.

Those items which are adjusted in this final settlement and have appeared in previous settlements for which no appeal has commenced are as follows:

AJE #  11    useful lives _____    (cost item)

AJE #  16    insurance liability expense _____    (cost item)

AJE #  22    additional billing revenues _____    (cost item)

AJE #  _____    _____    (cost item)

Without a timely appeal in process on the above adjustments, future inclusion of the above nonallowable costs could result in referral to the Office of Health Financing for consideration under the Civil Monetary Penalty Law provisions.

Sincerely,

Thomas M. Curtis
Manager
Provider Reimbursement & Auditing

Enclosure

GC 676C (Eff. 7/92)
OMB 0938-0212                    4

46

HEALTH CARE SERVICE CORPORATION
PROVIDER REIMBURSEMENT AND AUDITING DIVISION
CHICAGO, SPRINGFIELD, MT. VERNON, MOLINE, ILLINOIS

## MEDICARE STATEMENT OF FINAL SETTLEMENT OF REIMBURSABLE COSTS

✓ Audit _____ Review _____ Reopening(s) 1  2  3  4    _D. l. Roe_ 7/22/5
                                                      Signature

Provider Name: St. Anthony's Hospital

Provider Number: 14-0052

Cost Report Period Ending: 12-31-01

|  | Part A | Part B | Total |
|---|---|---|---|
| Final Settlement per Audit (OWED TO) or DUE FROM Provider | $ 65161 | $ ⟨677806⟩ | $ ⟨612,645⟩ |

Previous Settlement Transactions
PAID (RECEIVED)

| | Type | Trans. # | Date | | | |
|---|---|---|---|---|---|---|
| 1. | Initial | 4654 | 5/27/92 | ⟨161730⟩ | 366893 | 205163 |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | | | | | | |

Balance Due (Provider) Program    $ ⟨96569⟩    $ ⟨310913⟩    $ ⟨407482⟩

DB 151A Rev. 3/91

47

HEALTH CARE SERVICE CORPORATION
PROVIDER REIMBURSEMENT AND AUDITING DIVISION
CHICAGO, SPRINGFIELD, MT. VERNON, MOLINE, ILLINOIS

MEDICARE STATEMENT OF FINAL SETTLEMENT OF REIMBURSABLE COSTS

_✓_ Audit ____ Review ____ Reopening(s) 1 2 3 4 _____
                                                    Signature

Provider Name: _St. Anthony's SNF_____

Provider Number: _14-5214_____

Cost Report Period Ending: _12-31-01_____

|  | Part A | Part B | Total |
|---|---|---|---|
| Final Settlement per Audit (OWED TO) or DUE FROM Provider | $ 95118 | $ 2370 | $ 97488 - |

Previous Settlement Transactions
PAID (RECEIVED)

| | Type | Trans. # | Date | | | |
|---|---|---|---|---|---|---|
| 1. | Overpaymt | 4654 | 5-27-02 | ⟨88477⟩ | ⟨2217⟩ | ⟨90694⟩ |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | | | | | | |

Balance Due (Provider) Program  $ 6641  $ 153  $ 6794

DB 151A Rev. 3/91

48

HEALTH CARE SERVICE CORPORATION
PROVIDER REIMBURSEMENT AND AUDITING DIVISION
CHICAGO, SPRINGFIELD, MT. VERNON, MOLINE, ILLINOIS

MEDICARE STATEMENT OF FINAL SETTLEMENT OF REIMBURSABLE COSTS

✓ Audit _____ Review _____ Reopening(s) 1 2 3 4 _D. J. Rea_ 3/24/93
                                                    Signature

Provider Name: _St. Anthony's HHA_

Provider Number: _14-7113_

Cost Report Period Ending: _12-31-91_

|  | Part A | Part B | Total |
|---|---|---|---|
| Final Settlement per Audit (OWED TO) or DUE FROM Provider | $ 107,740. | $ -0- | $ 107,740. |

Previous Settlement Transactions
PAID (RECEIVED)

| | Type | Trans. # | Date | | | |
|---|---|---|---|---|---|---|
| 1. | Overpayment | 4654 | 5/27/92 | (96,862) | -0- | (96,862) |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | | | | | | |

| | Part A | Part B | Total |
|---|---|---|---|
| Balance Due (Provider) Program | $ 10,878 | $ -0- | $ 10,878 |

DB 151A Rev. 3/91

49



**Blue Cross**
**Blue Shield**
of Illinois

**Medicare**

Provider Reimbursement & Auditing
2151 West White Oaks Drive
Springfield, Illinois 62704

(217) 698-5200
(217) 698-8703 (FAX)

Form of Report on Audit of the Medicare Cost Report

PROVIDER NAME ____St. Anthony's Hospital_____
PROVIDER NUMBER ___14-0052_____
REPORTING PERIOD FROM ____01/01/91_____ TO _____12/31/91_____

We have audited the provider(s) Medicare cost report for the cost reporting
period stated above.

We conducted our audit in accordance with government auditing standards
(GAS). They require that we plan and perform the audit to obtain reasonable
assurance that the cost report settlement reflects payment amounts and
financial data in accordance with Medicare laws, regulations, and
instructions.

A less than full scope audit was made of this cost report in accordance with
HCFA's audit instructions. The examination was confined to the specific
areas selected for audit indicated on the attached listing.

Preparation of the cost report and compliance with Medicare laws,
regulations, and instructions is the responsibility of the provider(s)
management. As part of obtaining reasonable assurance whether the cost
report settlement reflects payment amounts and financial data in accordance
with Medicare laws, regulations, and instructions, we performed tests of
compliance with certain provisions of the Medicare laws, regulations, and
instructions.

We have concluded that it would be inefficient to evaluate the effectiveness
of internal control structure policies and procedures and, in accordance with
the GAS, that the audit can be conducted more efficiently by expanding
substantive audit tests, thus placing very little reliance on the internal
control structure.

The results of our tests indicate that, with respect of the items tested, the
provider(s) complied in all material respects. With respect to items not
tested, nothing came to our attention that caused us to believe that the
provider(s) has not complied in all material respects with these provisions.

The attached Medicare cost report has been adjusted for these items of
noncompliance in accordance with the attached adjustment report.

Health Care Service Corporation, a Mutual Legal Reserve Company
(Blue Cross and Blue Shield of Illinois)

This report is intended for the information of the provider(s) and HCFA. This restriction is not intended to limit the distribution of this report, which is a matter of public record, unless otherwise restricted by applicable law.


_____
Thomas M. Curtis
Manager
Provider Reimbursement and Auditing


SEP - 2 1993
_____
NPR Date


GC 695A
OMB 938-0212   Eff. 12/90                    (2)


51

# SAINT ANTHONY'S HEALTH CENTER
## Alton, IL 62002-0340
## Provider #14-0052/5314/7113

REVISED FINAL SETTLEMENT

FISCAL YEAR END 12/31/91

MEDICARE
Provider Reimbursement & Audit

Health Care Service Corporation, A Mutual Legal Reserve Company

2151 West White Oaks Drive
Springfield, Illinois 62704-6495

Telephone:   217/698-5200
Fax:            217/698-8703

OCT 3 1 1996

Mr. Michael L. Nelson
Senior VP of Finance
Saint Anthony's Health Center
Saint Anthony's Way
Alton, IL 62002

NOTICE OF PROGRAM REIMBURSEMENT

Revised Final Settlement Reopened Cost Report

RE:    Provider number:  140052, 145314, 147113
        Cost Report Period: 01/01/91 to 12/31/91

Enclosed is your copy of the Hospital Reopened Statement of Reimbursable Cost.
Included in the Report are the following:

1.    Adjustment Report only reflecting retroactive adjustment(s);
2.    Cost Report as reopened and revised;
3.    Comparative Schedule of Total Medicare Settlement.

This report should be retained in your permanent files along with similar types of required
reports and returns.

The results of our review have been summarized in the attached schedules.

In accordance with Public Law 97-248, interest will be assessed on the amount due
HCFA unless full payment is made within 30 days from the date of this Notice.   If you
are unable to refund the entire amount at this time, advise this office immediately so that
we may determine if you are eligible for a repayment schedule.  Interest on any
repayment schedule would run from the date of this letter.  If an overpayment is repaid in
installments or recouped by withholding from several payments due the provider -- 1)
each payment will be applied first to accrued interest and 2) then to the principal.  With
respect to repayment schedules, interest will be assessed at the higher of the private
consumer rate (PCR) or the current value of funds (CVF) rate, per Medicare regulation,
42 Code of Federal Regulation 405.376.   The applicable interest rate for this
determination is 13.375 percent.  This interest rate will remain unchanged for the entire
repayment period.

GC 676.2  REV 3/91  OMB 0938-0212    pg 1     **REVISED**
                                                          **FINAL  SETTLEMENT**

This notice of amount of Medicare Program Reimbursement for the Fiscal Year indicated above is in conformance with Regulation Section 405.1803. Please be advised that out determination is subject to revision during the three (3) year period following the date of this notice by the findings of an audit, where applicable. This notice of program reimbursement is applicable to the current year's cost report determination. The adjustments to this cost report, which produce a difference between the Intermediary's determination and your initial cost report, are explained in the Adjustment Report. If you have any further questions concerning the nature of these adjustments or the reasons for them, please contact this office.

GC 676.2  REV 3/91  OMB 0938-0212    pg 2    **REVISED**
**FINAL SETTLEMENT**

<u>NOTICE OF AMOUNT OF MEDICARE PROGRAM REIMBURSEMENT</u>
<u>APPEAL RIGHTS / FILING INSTRUCTIONS</u>

This NPR is the Intermediary's base determination for purposes of appeal rights.  We encourage you to discuss with us any disagreement to adjustments effected by this NPR.  However, if the dispute cannot be resolved to your satisfaction, you may file an appeal to our determination with either the Intermediary or the Provider Reimbursement Review Board (PRRB), depending on the amount in controversy.  *Appeal requests must be in writing and be filed within 180 days from the date of the NPR.*  Filing requirements are summarized below:

|  | Intermediary Appeals | PRRB Appeals |
|---|---|---|
| <u>References</u>: | 42 CFR  405.1809 -<br>405.1833 | 42 CFR  405.1835 -<br>405.1890 |
|  | HCFA Pub. 15-1<br>2910 - 2918 | HCFA Pub. 15-1<br>2920 - 2929 |
| <u>Amount in Controversy</u>: |  |  |
| Periods Ending Before 06/30/73 | $1,000 minimum |  |
| Periods Ending After 06/30/73 |  |  |
| Individual providers | $1,000 - $10,000 | over $10,000 |
| Groups<br>(Common Issues) | No provision for group appeals of unrelated providers | $50,000 or more, in aggregate; no minimum for individual providers |
| Groups<br>(Common Ownership) | $1,000 - $10,000 for individual providers; less than $50,000 in aggregate | same as above |
| <u>Send request to</u>: | Intermediary Hearing Officer<br>Medicare Operations/<br>Prime Contract<br>Blue Cross Blue Shield<br>Association<br>676 N. St. Clair Street<br>Chicago, IL  60611 | Chairman<br>Provider Reimbursement<br>Review Board<br>Room 104<br>Professional Bldg.<br>6660 Security Blvd.<br>Baltimore, MD  21207 |
|  | Copy:  Blue Cross Plan<br>Appeals Rep. | Copy: Wilson Leong<br>Medicare Operations/<br>Prime Contract<br>Blue Cross Blue Shield Assn. |
| <u>For info on filing</u>: | Joan Baker<br>Blue Cross Blue Shield<br>(312) 440-5836 | Steve Kirsh<br>PRRB<br>(410) 966-2040 |

**REVISED**
**FINAL SETTLEMENT**

GC 676.2  REV 3/91  OMB 0938-0212     pg 3

56

The appeal request for either an Intermediary or a PRRB appeal must include the following:

    1.    Identification of items in dispute by adjustment number, amount, and description;

    2.    Reasons for disagreement with the Intermediary's determination on these items; and

    3.    1 copy of the NPR, or determination disputed and adjustment report (pertinent portion).

Intermediary appeal requests must include, in addition to the items listed above, an estimate of the reimbursement in controversy for each item appealed.

The appeal rights described above pertain only to the adjustments reflected on the Adjustment Report issued as part of this Revised Notice of Program Reimbursement. This notice does not affect any appeal rights that may have arisen from any Notice of Program Reimbursement issued prior to the date of this Revised Notice of Program Reimbursement.

Sincerely,

Thomas M. Curtis
Manager

GC 676.2 REV 3/91 OMB 0938-0212   pg 4    **REVISED**
**FINAL SETTLEMENT**

NOTICE OF PROGRAM REIMBURSEMENT - SETTLEMENT SUMMARY

PROVIDER NAME: SAINT ANTHONY'S HEALTH CENTER          PROVIDER NO: 14-0052                          FYE: 12/31/91

SCHEDULE FOR NPR PURPOSES COMPARING PREVIOUS INTERMEDIARY'S DETERMINATION TO THE CORRECTED INTERMEDIARY DETERMINATION AMOUNTS
HCFA-2552-89 - REOPENING SETTLEMENT

| COMPONENT | PART A | | | PART B | | | TOTAL | | |
| | PREVIOUS INTER- MEDIARY'S DETER- MINATION | CORRECTED INTER- MEDIARY'S DETER- MINATION | ADJUST- MENT | PREVIOUS INTER- MEDIARY'S DETER- MINATION | CORRECTED INTER- MEDIARY'S DETER- MINATION | ADJUST- MENT | PREVIOUS INTER- MEDIARY'S DETER- MINATION (PTS A+B) | CORRECTED INTER- MEDIARY'S DETER- MINATION (PTS A+B) | ADJUST- MENT (PTS A+B) |
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| HOSPITAL (PPS) | -59397 | -59397 | 0 | 677806 | 677806 | 0 | 618409 | 618409 | 0 |
| S.N.F. (COST-BASED) | -95118 | -113985 | -18867 | -2370 | -2370 | 0 | -97488 | -116355 | -18867 |
| HOSPITAL-BASED H.H.A. | -107740 | -107740 | 0 | 0 | 0 | 0 | -107740 | -107740 | 0 |
| TOTAL | -262255 | -281122 | -18867 | 675436 | 675436 | 0 | 413181 | 394314 | -18867 |
| PREVIOUS PAYMENTS | -250500 | -262255 | -11755 | 675589 | 675436 | -153 | 425089 | 413181 | -11908 |
| AMOUNT DUE PROVIDER/(PROGRAM) | -11755 | -18867 | -7112 | -153 | 0 | 153 | -11908 | -18867 | -6959 |

REVISED
FINAL SETTLEMENT

58

NOTICE OF PROGRAM REIMBURSEMENT - SETTLEMENT SUMMARY

HOSPITAL: SAINT ANTHONY'S HEALTH CENTER            PROVIDER NO: 14-0052            FYE: 12/31/91

SCHEDULE FOR NPR PURPOSES COMPARING PREVIOUS INTERMEDIARY'S DETERMINATION TO THE CORRECTED INTERMEDIARY DETERMINATION AMOUNTS
HCFA-2552-89 - REOPENING SETTLEMENT

| COMPONENT | PART A | | | PART B | | | TOTAL | | |
|---|---|---|---|---|---|---|---|---|---|
| | PREVIOUS INTERMEDIARY'S DETERMINATION | CORRECTED INTERMEDIARY'S DETERMINATION | ADJUSTMENT | PREVIOUS INTERMEDIARY'S DETERMINATION | CORRECTED INTERMEDIARY'S DETERMINATION | ADJUSTMENT | PREVIOUS INTERMEDIARY'S DETERMINATION (PTS A+B) | CORRECTED INTERMEDIARY'S DETERMINATION (PTS A+B) | ADJUSTMENT (PTS A+B) |
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| HOSPITAL (PPS) | -59397 | -59397 | 0 | 677806 | 677806 | 0 | 618409 | 618409 | 0 |
| TOTAL | -59397 | -59397 | 0 | 677806 | 677806 | 0 | 618409 | 618409 | 0 |
| PREVIOUS PAYMENTS | -65161 | -59397 | 5764 | 677806 | 677806 | 0 | 612645 | 618409 | 5764 |
| AMOUNT DUE PROVIDER/(PROGRAM) | 5764 | 0 | -5764 | 0 | 0 | 0 | 5764 | 0 | -5764 |

REVISED
FINAL SETTLEMENT

**Page No. 60 Omitted in Compilation**

**of the Administrative Record**

NOTICE OF PROGRAM REIMBURSEMENT - SETTLEMENT SUMMARY

HOSPITAL-BASED HHA: SAINT ANTHONY'S HHA                    PROVIDER NO: 14-7113                    FYE: 12/31/91

SCHEDULE FOR NPR PURPOSES COMPARING PREVIOUS INTERMEDIARY'S DETERMINATION TO THE CORRECTED INTERMEDIARY DETERMINATION AMOUNTS
                    HCFA-2552-89 - REOPENING SETTLEMENT

| COMPONENT | ------------- PART A ------------- | | | ---------- PART B ---------- | | | --------- TOTAL --------- | | |
|---|---|---|---|---|---|---|---|---|---|
| | PREVIOUS INTER-MEDIARY'S DETER-MINATION | CORRECTED INTER-MEDIARY'S DETER-MINATION | ADJUST-MENT | PREVIOUS INTER-MEDIARY'S DETER-MINATION | CORRECTED INTER-MEDIARY'S DETER-MINATION | ADJUST-MENT | PREVIOUS INTER-MEDIARY'S DETER-MINATION (PTS A+B) | CORRECTED INTER-MEDIARY'S DETER-MINATION (PTS A+B) | ADJUST-MENT (PTS A+B) |
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| HOSPITAL-BASED H.H.A. | -107740 | -107740 | 0 | 0 | 0 | 0 | -107740 | -107740 | 0 |
| TOTAL | -107740 | -107740 | 0 | 0 | 0 | 0 | -107740 | -107740 | 0 |
| PREVIOUS PAYMENTS | -96862 | -107740 | -10878 | 0 | 0 | 0 | -96862 | -107740 | -10878 |
| AMOUNT DUE PROVIDER/(PROGRAM) | -10878 | 0 | 10878 | 0 | 0 | 0 | -10878 | 0 | 10878 |

REVISED
FINAL SETTLEMENT

## MEDICARE
Provider Reimbursement & Audit

**Health Care Service Corporation, A Mutual Legal Reserve Company**

2151 West White Oaks Drive
Springfield, Illinois 62704-6495

Telephone:  217/698-5200
Fax:            217/698-8703

OCT 3 1 1996

Mr. Michael L. Nelson
Senior VP of Finance
Saint Anthony's Health Center
Saint Anthony's Way
Alton, IL 62002

RE:  Provider number: 140052,5314,7113

Dear Mr. Nelson:

Recently we sent you a notice that we were reopening the cost report(s) for Fiscal Year ended 12/31/91.

We are now attaching revised copies of your Medicare cost reports and supporting schedules for Fiscal Year ended 12/31/91

The revision incorporates the adjustment proposed during the SNF cost limit review of the Fiscal Year ending 12/31/91.  It is necessary to reopen the prior year cost report(s) separately in accordance with the provisions of Section 405.1885 and 405.1887, rather than to reflect the adjustments below-the-line in the current fiscal year being reviewed.

Please file the enclosed forms in the Medicare Final Settlement for Fiscal Year ended 12/31/91.

Sincerely,

Thomas M. Curtis
Manager

enclosure

GC 659B/1     REV  3/91     OMB  0938-0212

# REVISED
# FINAL SETTLEMENT

63

## Medicare

check if applicable

| | |
|---|---|
| x | HCFA 2552-92 Worksheets E, E-1, E-3, H-6, and H-7 |
| x | Notice of Program Reimbursement |
| x | Notice of Reopening  (GCM 667) |
| x | Adjustment Report |
| | Intermediary Notes   (GC  814D) |

GC  659/2     REV  3/91     OMB  0938-0212

# REVISED
# FINAL  SETTLEMENT

63

# MEDICARE
Provider Reimbursement & Audit

**Health Care Service Corporation. A Mutual Legal Reserve Company**

2151 West White Oaks Drive
Springfield, Illinois 62704-6495

Telephone:  217/698-5200
Fax:        217/698-8703

August 29, 1996

CERTIFIED

Mr. Michael L. Nelson
Senior Vice President
St. Anthony's Health Center
St. Anthony's Way
Alton, IL 62002

Dear Mr. Nelson:

## NOTICE OF REOPENING OF COST REPORTS

| Provider Number(s) | Year End | Date of Previous Notice of Program Reimbursement |
|---|---|---|
| 145314 | 12/31/91 | 09/02/93 |
| 145314 | 12/31/92 | 04/01/94 |
| 145314 | 12/31/94 | 03/29/96 |

Medicare Regulation 405.1885 provides that cost reports may be reopened by the Intermediary within three years of the date of the notice of the Intermediary or Board hearing decision, or the date of the notice of the Intermediary determination of final settlement.  In accordance with this Regulation, we have determined that your cost report will be reopened for the following reason(s):

> To update the SNF cost limit based on HCFA's memorandum dated May 1996.

We will advise you of the effect of this reopening as soon as we have made the necessary calculations.  We expect our final notice of redetermination will be made within 180 days.

If you are dissatisfied with the redetermination and wish to appeal, any request for an appeal must be made in writing within 180 days from the date of final notice of redetermination in accordance with Regulations 405.1811 and/or 405.1841.

Any questions in this regard should be directed to me at (217) 698-5200.

Sincerely,

*Thomas M. Curtis /pry*

Thomas M. Curtis
Manager

TMC:kf

GC 667 Rev. 3/91
OMB 0938-0212

REVISED
FINAL SETTLEMENT

HCFA-2552-89 FINAL SETTLEMENT

COMPONENT: HOSPITAL

COMPONENT PROVIDER NO: 14-0052

PROVIDER: SAINT ANTHONY'S HEALTH CENTER

FISCAL YEAR END: 12/31/91                PROVIDER NO.: 14-0052                LOCATION: _____                ___ ORIGINAL
                                                                                                                          _✓_ AMENDED    # 2

|  | INPATIENT-PART A | OUTPATIENT-PART B |
|---|---|---|
| 1. TOTAL PROGRAM LIABILITY | 12418678 | 1616011 |
| 2. INITIAL PAYMENTS | -12005359 | -938205 |
| 3. LUMP SUM PAYMENTS | -472716 | 0 |
| 4. TENTATIVE SETTLEMENTS | -5764 | -366893 |
|  | -96569 | -310913 |
|  | 161730 | 0 |
| 5. BALANCE DUE PROVIDER/(PROGRAM) | 0 | 0 |

POR CODE:   A ___ (AUDIT)
            B ___ (INITIAL)
            E ___ (COST REPORT OVERPAYMENT)
            F _✓_ (REOPENING)
            G ___ (REVIEW)

APPROVALS

PROVIDER AUDIT: _____    DATE: 10/7/96

PROVIDER AUDIT: _____    DATE: 6/30/96

CASH DISBURSEMENTS: _____    DATE: _____

REVISED
FINAL SETTLEMENT

65

HCFA-2552-89 FINAL SETTLEMENT

COMPONENT: SKILLED NURSING FACILITY

COMPONENT PROVIDER NO: 14-5314

PROVIDER: SAINT ANTHONY'S HEALTH CENTER

FISCAL YEAR END: 12/31/91          PROVIDER NO.: 14-0052          LOCATION:

ORIGINAL ___
AMENDED ✓  #  2

| | INPATIENT-PART A | OUTPATIENT-PART B |
|---|---|---|
| 1.  TOTAL PROGRAM LIABILITY | 1504760 | 3760 |
| 2.  INITIAL PAYMENTS | -1233933 | -6130 |
| 3.  LUMP SUM PAYMENTS | -384812 | 0 |
| 4.  TENTATIVE SETTLEMENTS | 88477 | 2217 |
| | 6641 | 153 |
| 5.  BALANCE DUE PROVIDER/(PROGRAM) | -18867 | 0 |

POR CODE:
A  __  (AUDIT)
B  __  (INITIAL)
E  ▷  (COST REPORT OVERPAYMENT)
F  __  (REOPENING)
G  __  (REVIEW)

APPROVALS

PROVIDER AUDIT: _____          DATE:  10/7/96

PROVIDER AUDIT: _____          DATE:  10/31/96

CASH DISBURSEMENTS: _____          DATE: _____

REVISED
FINAL SETTLEMENT

66

HCFA-2552-89 FINAL SETTLEMENT

COMPONENT: HOME HEALTH AGENCY 1

COMPONENT PROVIDER NO: 14-7113

PROVIDER: SAINT ANTHONY'S HEALTH CENTER

FISCAL YEAR END: 12/31/91          PROVIDER NO.: 14-0052          LOCATION: _____

____ ORIGINAL
__✓__ AMENDED  # 2

|  | INPATIENT-PART A | OUTPATIENT-PART B |
|---|---|---|
| 1. TOTAL PROGRAM LIABILITY | 841807 | 0 |
| 2. INITIAL PAYMENTS | -949547 | 0 |
| 3. LUMP SUM PAYMENTS | 0 | 0 |
| 4. TENTATIVE SETTLEMENTS | 96862 | 0 |
|  | 10878 | 0 |
| 5. BALANCE DUE PROVIDER/(PROGRAM) | 0 | 0 |

POR CODE:  A  ___  (AUDIT)
           B  ___  (INITIAL)
           E  ___  (COST REPORT OVERPAYMENT)
           F  _✓_  (REOPENING)
           G  ___  (REVIEW)

APPROVALS

PROVIDER AUDIT: _____     DATE: 10/7/96

PROVIDER AUDIT: _____     DATE: 10/31/96

CASH DISBURSEMENTS: _____     DATE: _____

REVISED
FINAL SETTLEMENT

67

HCFA-2552-89 FINAL SETTLEMENT

SUMMARY OF ALL PROVIDER COMPONENTS

PROVIDER: SAINT ANTHONY'S HEALTH CENTER

FISCAL YEAR END: 12/31/91

PROVIDER NO.: 14-0052

LOCATION:

ORIGINAL
AMENDED   # 2d

| | INPATIENT-PART A | OUTPATIENT-PART B | TOTAL |
|---|---|---|---|
| 1. TOTAL PROGRAM LIABILITY | 14765245 | 1619771 | 16385016 |
| 2. INITIAL PAYMENTS | -14188839 | -944335 | -15133174 |
| 3. LUMP SUM PAYMENTS | -857528 | 0 | -857528 |
| 4. TENTATIVE SETTLEMENT | 262255 | -675436 | -413181 |
| 5. BALANCE DUE PROVIDER/(PROGRAM) | -18867 | 0 | -18867 |

POR CODE:
A — (AUDIT)
B — (INITIAL)
E — (COST REPORT OVERPAYMENT)
F — (REOPENING)
G — (REVIEW)

APPROVALS

PROVIDER AUDIT: _____  DATE: 10/7/96

PROVIDER AUDIT: _____  DATE: 10/29/96

CASH DISBURSEMENTS: _____  DATE: _____

REVISED
FINAL SETTLEMENT

68

MEDICARE

Health Care Service Corporation, A Mutual Legal Reserve Company

233 North Michigan Avenue
Chicago, Illinois 60601-5655

---

October 31, 1996

REVISED FINAL SETTLEMENTS

CERTIFIED

Mr. Michael L. Nelson
Senior VP of Finance
Saint Anthony's Health Center
Saint Anthony's Way
Alton, IL 62002-0340

Provider Number: 140052/5314/7113
Fiscal Year End: 12/31/91 & 92
Amount Due: $52,552*
Current Effective
Annual Interest Rate: 13.375%

FIRST REQUEST

Dear Mr. Nelson:

We are requesting payment of the above stated amount, which represents an overpayment as detailed on the attached form DB151A (Medicare Statement of Final Settlement of Reimbursable Cost).

If you do not respond within fifteen (15) days, your interim payments could be reduced by a minimum of twenty percent (20%) in order to effect recoupment of the overpayment. Pursuant to §1866(b(2)(A) and (C)) of Title XVIII, continued failure to respond, could result in termination of your Medicare agreement.

In accordance with Public Law 97-248, interest will be assessed on the amount due HCFA, unless full payment is made within (30) days from the date of the NPR (**October 31, 1996**). Interest will be assessed for each thirty (30) day period that payment is delayed. Periods of less than 30 days will be treated as a full 30 day period. If you are unable to refund the entire amount at this time, advise this office immediately so that we may determine if you are eligible for a repayment schedule. (You may wish to refer to our Medicare Communications Report #303, which addresses Extended Repayment requirements.) Any repayment schedule would run from the date of this letter. If an overpayment is repaid in installments or recouped by withholding from several payments due the provider -- each payment will be applied first to the accrued interest and then to the principal. With respect to repayment schedules, interest will be assessed at the rate noted above.

69

Page 2

The "date of submittal" will be the postmark date. If sent via another medium or a postage meter is used, it is then the date received in the contractor's mail box/office. Please forward your check to Health Care Service Corporation, Attention: Cash Receipts Dept., 3rd Floor, 233 North Michigan Avenue, Chicago, Illinois 60601.

If we can assist you further in the resolution of this matter, please advise. We expect to hear from you shortly.

Sincerely,

Stephen M. Railsback
Credit and Collection Coordinator
(312) 938-6689

SMR/sw

Enclosure

AR-005
Revised 7/92

*AMOUNT DUE PROVIDER/(PROGRAM):

F/Y/E 12/31/91:

| | | |
|---|---|---|
| 14-0052/7113 | $ | 0 |
| 14-5314 | | $18,867 |
| '91 TOTAL | | $18,867 |

F/Y/E 12/31/92:

| | | |
|---|---|---|
| 14-0052/7113 | $ | 0 |
| 14-5314 | | $33,685 |
| '92 TOTAL | | $33,685 |

NET TOTAL OF
'91 & '92 REOPENINGS        $52,552

70

PROVIDER NO. 14-0052   SAINT ANTHONY'S HEALTH CENTER
PERIOD FROM 01/01/91 TO 12/31/91

KPMG PEAT MARWICK COMPU-MAX MICRO SYSTEM       VERSION: 95.05
IN LIEU OF FORM HCFA-2552-89 (12/89)                    09/10/96

WORKSHEET S

HOSPITAL AND HEALTH CARE COST REPORT
CERTIFICATION AND SETTLEMENT SUMMARY

INTERMEDIARY USE ONLY          DATE RECEIVED: 04-01-92
XX AUDITED   ___ DESK REVIEWED  INTERMEDIARY NO. 00121

PART I - CERTIFICATION

INTENTIONAL MISREPRESENTATION OR FALSIFICATION OF ANY INFORMATION CONTAINED IN THIS COST REPORT MAY BE PUNISHABLE BY FINE AND/OR IMPRISONMENT UNDER FEDERAL LAW

CERTIFICATION BY OFFICER OR ADMINISTRATOR OF PROVIDER(S)

I HEREBY CERTIFY THAT I HAVE READ THE ABOVE STATEMENT AND THAT I HAVE EXAMINED THE ACCOMPANYING COST REPORT AND THE BALANCE SHEET AND STATEMENT OF REVENUE AND EXPENSES PREPARED BY SAINT ANTHONY'S HEALTH CENTER (14-0052) (PROVIDER NAME(S) AND NUMBER(S)) FOR THE COST REPORT PERIOD BEGINNING 01-01-91 AND ENDING 12-31-91, AND THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF, IT IS A TRUE, CORRECT, AND COMPLETE STATEMENT PREPARED FROM THE BOOKS AND RECORDS OF THE PROVIDER IN ACCORDANCE WITH APPLICABLE INSTRUCTIONS, EXCEPT AS NOTED.

(SIGNED)   (SIGNATURE ON FILE)
           OFFICER OR ADMINISTRATOR OF PROVIDER(S)

TITLE

DATE

PART II - SETTLEMENT SUMMARY

| | TITLE V | TITLE XVIII | TITLE XIX | |
|---|---|---|---|---|
| | A 2 1 | B 3 | 4 | |
| 1 HOSPITAL | -59397 | 677806 | 1539028 | 1 |
| 2 SUBPROVIDER I | | | | 2 |
| 3 SUBPROVIDER II | | | | 3 |
| 4 SWING BED - SNF | | | | 4 |
| 5 SWING BED - NF | | | | 5 |
| 6 SKILLED NURSING FACILITY | -113985 | | | 6 |
| 7 NURSING FACILITY | | -2370 | | 7 |
| 8 HOME HEALTH AGENCY | -107740 | | | 8 |
| 9 COMPREHENSIVE OUTPATIENT REHABILITATION FACILITY (CORF) | | | | 9 |
| 10 TOTAL | -281122 | 675436 | 1539028 | 10 |

THE ABOVE AMOUNTS REPRESENT DUE TO OR DUE FROM THE APPLICABLE PROGRAM FOR THE ELEMENT OF THE COMPLEX INDICATED.

REVISED
FINAL SETTLEMENT

71

PROVIDER NO. 14-0052   SAINT ANTHONY'S HEALTH CENTER
PERIOD FROM 01/01/91 TO 12/31/91

KPMG PEAT MARWICK COMPU-MAX MICRO SYSTEM
IN LIEU OF FORM HCFA-2552-89 (12/89)

VERSION: 95.05
09/10/96

WORKSHEET D-1
PART 1

COMPUTATION OF INPATIENT OPERATING COST

— TITLE V-INPT            XX TITLE XVIII-PART A            — TITLE XIX-INPT

PART I - ALL PROVIDER COMPONENTS

| INPATIENT DAYS | HOSPITAL (PPS) (14-0052) | SUB I | SUB II | SUB III | SUB IV | S.N.F. (OTHER) (14-5314) | |
|---|---|---|---|---|---|---|---|
| | 1 | 1 | 1 | 1 | 1 | 1 | |
| 1  INPATIENT DAYS (INCL PRIVATE ROOM DAYS AND SWING-BED DAYS, EXCLUDING NEWBORN) | 37227 | | | | | 6290 | 1 |
| 2  INPATIENT DAYS (INCLUDING PRIVATE ROOM DAYS, EXCLUDING SWING BED AND NEWBORN DAYS) | 37227 | | | | | 6290 | 2 |
| 3  PRIVATE ROOM DAYS (EXCLUDING SWING-BED PRIVATE ROOM DAYS) | 13737 | | | | | | 3 |
| 4  SEMI-PRIVATE ROOM DAYS (EXCL SWING-BED PRIVATE ROOM DAYS) | 23490 | | | | | | 4 |
| 5  SWING-BED SNF-TYPE INPATIENT DAYS (INCLUDING PRIVATE ROOM DAYS) THROUGH DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | 6290 | 5 |
| 6  SWING-BED SNF-TYPE INPATIENT DAYS (INCLUDING PRIVATE ROOM DAYS) AFTER DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | 6 |
| 6A  SWING-BED SNF-TYPE INPATIENT DAYS FROM 10/1/90 THRU 12/31/90 | | | | | | | 6A |
| 7  SWING-BED NF-TYPE INPATIENT DAYS (INCL PRIVATE ROOM DAYS) THROUGH DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | 7 |
| 8  SWING-BED NF-TYPE INPATIENT DAYS (INCL PRIVATE ROOM DAYS) AFTER DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | 8 |
| 8A  SWING-BED NF-TYPE INPAT DAYS (INCL PRIVATE ROOM DAYS) FROM 10/1/90 THROUGH 12/31/90 | | | | | | | 8A |
| 9  INPATIENT DAYS INCLUDING PRIVATE ROOM DAYS APPLICABLE TO THE PROGRAM (EXCLUDING SWING-BED AND NEWBORN DAYS) | 18160 | | | | | 5533 | 9 |
| 10  SWING-BED SNF-TYPE INPATIENT DAYS APPLICABLE TO THE PROGRAM (INCLUDING PRIVATE ROOM DAYS) THROUGH DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | 10 |
| 11  SWING-BED SNF-TYPE INPATIENT DAYS APPLICABLE TO THE PROGRAM (INCLUDING PRIVATE ROOM DAYS) AFTER DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | 11 |
| 11A  SWING-BED SNF-TYPE INPATIENT DAYS APPLICABLE TO THE PROGRAM (INCLUDING PRIVATE ROOM DAYS) FROM 10/1/90 THRU 12/31/90 | | | | | | | 11A |
| 12  SWING-BED NF-TYPE INPAT DAYS APPLICABLE TO THE PGH (INCLUDING PRIVATE ROOM DAYS) THROUGH DECEMBER 31 OF THE COST REPORTING PERIOD - TITLES V AND XIX ONLY | | | | | | | 12 |
| 13  SWING-BED NF-TYPE INPAT DAYS APPLICABLE TO THE PGH (INCLUDING PRIVATE ROOM DAYS) AFTER DECEMBER 31 OF THE COST REPORTING PERIOD - TITLES V AND XIX ONLY | | | | | | | 13 |
| 13A  SWING-BED NF-TYPE INPAT DAYS APPLICABLE TO THE PROGRAM (INCL PRIVATE ROOM DAYS) FROM 10/1/90 THRU 12/31/90 OF THE COST REPORTING PERIOD - TITLES V AND XIX ONLY | | | | | | | 13A |
| 14  MEDICALLY NECESSARY PRIVATE ROOM DAYS APPLICABLE TO THE PROGRAM (EXCLUDING SWING-BED DAYS) | 7179 | | | | | | 14 |
| 15  TOTAL NURSERY DAYS | 1676 | | | | | | 15 |
| 16  PROGRAM NURSERY DAYS (TITLES V AND XIX ONLY) | | | | | | | 16 |

72

PROVIDER NO. 14-0052  SAINT ANTHONY'S HEALTH CENTER          KPMG PEAT MARWICK COMPU-MAX MICRO SYSTEM          VERSION: 95.05
PERIOD FROM 01/01/91 TO 12/31/91                             IN LIEU OF FORM HCFA-2552-89 (12/89)                     09/10/96

COMPUTATION OF INPATIENT OPERATING COST                                                              WORKSHEET D-1
                                                                                                     PART I (CONT)

— TITLE V-INPT          XX TITLE XVIII-PART A          — TITLE XIX-INPT

PART I - ALL PROVIDER COMPONENTS

| | HOSPITAL (PPS) (14-0052) 1 | SUB I 1 | SUB II 1 | SUB III 1 | SUB IV 1 | S.N.F. (OTHER) (14-5314) 1 | |
|---|---|---|---|---|---|---|---|
| **SWING-BED ADJUSTMENT** | | | | | | | |
| 17 RATE FOR SWING-BED SNF SERVICES APPLICABLE TO SERVICES THROUGH DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | 17 |
| 18 RATE FOR SWING-BED SNF SERVICES APPLICABLE TO SERVICES AFTER DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | 18 |
| 18A RATE FOR SWING-BED SNF SERVICES APPLICABLE TO SERVICES FROM 10/1/90 THRU 12/31/90 OF THE COST REPORTING PERIOD | | | | | | | 18A |
| 19 RATE FOR SWING-BED NF SERVICES APPLICABLE TO SERVICES THROUGH DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | 19 |
| 20 RATE FOR SWING-BED NF SERVICES APPLICABLE TO SERVICES AFTER DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | 20 |
| 20A RATE FOR SWING-BED NF SERVICES APPLICABLE TO SERVICES FROM 10/1/90 THRU 12/31/90 OF THE COST REPORTING PERIOD | | | | | | | 20A |
| 21 TOTAL GENERAL INPATIENT ROUTINE SERVICE COST | 1187838 | | | | | 1347991 | 21 |
| 22 SWING-BED COST APPLICABLE TO SNF-TYPE SERVICES THROUGH DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | 22 |
| 23 SWING-BED COST APPLICABLE TO SNF-TYPE SERVICES AFTER DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | 23 |
| 23A SWING-BED COST APPLICABLE TO SNF-TYPE SERVICES FROM 10/1/90 THRU 12/31/90 OF THE COST REPORTING PERIOD | | | | | | | 23A |
| 24 SWING-BED COST APPLICABLE TO NF-TYPE SERVICES THROUGH DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | 24 |
| 25 SWING-BED COST APPLICABLE TO NF-TYPE SERVICES AFTER DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | 25 |
| 25A SWING-BED COST APPLICABLE TO NF-TYPE SERVICES FROM 10/1/90 THRU 12/31/90 OF THE COST REPORTING PERIOD | | | | | | | 25A |
| 26 TOTAL SWING-BED COST | | | | | | | 26 |
| 27 GENERAL INPATIENT ROUTINE SERVICE COST NET OF SWING-BED COST | 1187838 | | | | | 1347991 | 27 |
| **PRIVATE ROOM DIFFERENTIAL ADJUSTMENT** | | | | | | | |
| 28 GENERAL INPATIENT ROUTINE SERVICE CHARGES (EXCLUDING SWING-BED CHARGES) | 14214116 | | | | | 1597660 | 28 |
| 29 PRIVATE ROOM CHARGES (EXCLUDING SWING-BED CHARGES) | 4864317 | | | | | | 29 |
| 30 SEMI-PRIVATE ROOM CHARGES (EXCLUDING SWING-BED CHARGES) | 9340799 | | | | | 1597660 | 30 |
| 31 GENERAL INPATIENT ROUTINE SERVICE COST/CHARGE RATIO | .835672 | | | | | .843728 | 31 |
| 32 AVERAGE PRIVATE ROOM PER DIEM CHARGE | 354.10 | | | | | | 32 |
| 33 AVERAGE SEMI-PRIVATE ROOM PER DIEM CHARGE | 398.03 | | | | | 254.00 | 33 |
| 34 AVERAGE PER DIEM PRIVATE ROOM CHARGE DIFFERENTIAL | | | | | | | 34 |
| 35 AVERAGE PER DIEM PRIVATE ROOM COST DIFFERENTIAL | | | | | | | 35 |
| 36 PRIVATE ROOM COST DIFFERENTIAL ADJUSTMENT | | | | | | | 36 |
| 37 GENERAL INPATIENT ROUTINE SERVICE COST NET OF SWING-BED COST AND PRIVATE ROOM COST DIFFERENTIAL | 1187838 | | | | | 1347991 | 37 |

73

PROVIDER NO. 14-0052    SAINT ANTHONY'S HEALTH CENTER
PERIOD FROM 01/01/91 TO 12/31/91

KPMG PEAT MARWICK COMPU-MAX MICRO SYSTEM
IN LIEU OF FORM HCFA-2552-89 (12/89)

VERSION: 95.05
09/10/96

COMPUTATION OF INPATIENT OPERATING COST

WORKSHEET D-1
PART II

— TITLE V-INPT    XX TITLE XVIII-PART A    — TITLE XIX-INPT

PART II - HOSPITAL AND SUBPROVIDERS ONLY

| | HOSPITAL (PPS) (14-0052) 1 | SUB I 1 | SUB II 1 | SUB III 1 | SUB IV 1 | |
|---|---|---|---|---|---|---|
| PROGRAM INPATIENT OPERATING COST BEFORE PASS THROUGH COST ADJUSTMENTS | | | | | | |
| ADJUSTED GENERAL INPATIENT ROUTINE SERVICE COST PER DIEM | 319.08 | | | | | 38 |
| PROGRAM GENERAL INPATIENT ROUTINE SERVICE COST | 5794493 | | | | | 39 |
| MEDICALLY NECESSARY PRIVATE ROOM COST APPLICABLE TO THE PGM | | | | | | 40 |
| TOTAL PROGRAM GENERAL INPATIENT ROUTINE SERVICE COST | 5794493 | | | | | 41 |

| | TOTAL I/P COST A | TOTAL I/P DAYS B | AVERAGE PER DIEM C | PROGRAM DAYS D | PROGRAM COST E | |
|---|---|---|---|---|---|---|
| NURSERY(TITLES V AND XIX ONLY) | | | | | | 42 |
| INTENSIVE CARE TYPE INPATIENT HOSPITAL UNITS | | | | | | |
| INTENSIVE CARE UNIT | 1348897 | 1722 | 783.33 | 1200 | 939996 | 43 |
| CORONARY CARE UNIT | | | | | | 44 |

| | HOSPITAL (PPS) (14-0052) 1 | SUB I 1 | SUB II 1 | SUB III 1 | SUB IV 1 | |
|---|---|---|---|---|---|---|
| PROGRAM INPATIENT ANCILLARY SERVICE COST | 6555805 | | | | | 48 |
| PROGRAM MALPRACTICE INSURANCE COSTS FROM WKST. D-8 | - | | | | | 49 |
| TOTAL PROGRAM INPATIENT COSTS | 11290294 | | | | | 50 |
| PASS THROUGH COST ADJUSTMENTS | | | | | | |
| PASS THROUGH COSTS APPLICABLE TO PROGRAM INPATIENT ROUTINE SERVICES | 920259 | | | | | 51 |
| PASS THROUGH COSTS APPLICABLE TO PROGRAM INPATIENT ANCILLARY SERVICES | 484648 | | | | | 52 |
| TOTAL PROGRAM EXCLUDABLE COST | 1404907 | | | | | 53 |
| TOTAL PROGRAM INPATIENT OPERATING COST EXCLUDING CAPITAL RELATED, NONPHYSICIAN ANESTHETIST AND MEDICAL EDUCATION COSTS | 11885387 | | | | | 54 |

'74

PROVIDER NO. 14-0052    SAINT ANTHONY'S HEALTH CENTER
PERIOD FROM 01/01/91 TO 12/31/91

KPMG PEAT MARWICK COMPU-MAX MICRO SYSTEM
IN LIEU OF FORM HCFA-2552-89 (12/89)

VERSION: 95.05
09/10/96

COMPUTATION OF INPATIENT OPERATING COST

WORKSHEET D-1
PART II (CONT)
AND PART III

— TITLE V-INPT        XX TITLE XVIII-PART A        — TITLE XIX-INPT

PART II - HOSPITAL AND SUBPROVIDERS ONLY

| | HOSPITAL (PPS) (14-0052) | SUB I | SUB II | SUB III | SUB IV | |
|---|---|---|---|---|---|---|
| | 1 | 1 | 1 | 1 | 1 | |
| **TARGET AMOUNT AND LIMITATION COMPUTATION** | | | | | | |
| 55 PROGRAM DISCHARGES | | | | | | 55 |
| 56 TARGET AMOUNT PER DISCHARGE | | | | | | 56 |
| 57 TARGET AMOUNT | | | | | | 57 |
| 58 DIFFERENCE BETWEEN ADJUSTED INPATIENT OPERATING COST AND TARGET AMOUNT | | | | | | 58 |
| 59 INCENTIVE PAYMENT | | | | | | 59 |
| 60 ALLOWABLE INPATIENT COST PLUS INCENTIVE PAYMENT | | | | | | 60 |
| **PROGRAM INPATIENT ROUTINE SWING BED COST** | | | | | | |
| 61 PROGRAM SWING-BED SNF INPATIENT ROUTINE COSTS THROUGH DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | 61 |
| 62 PROGRAM SWING-BED SNF INPATIENT ROUTINE COSTS AFTER DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | 62 |
| 62A PROGRAM SWING-BED SNF INPATIENT ROUTINE COSTS FROM 10/1/90 THRU 12/31/90 OF THE COST REPORTING PERIOD | | | | | | 62A |
| 63 TOTAL PROGRAM SWING-BED SNF INPATIENT ROUTINE COSTS | | | | | | 63 |
| 64 PROGRAM SWING-BED NF INPATIENT ROUTINE COSTS THROUGH DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | 64 |
| 65 PROGRAM SWING-BED NF INPATIENT ROUTINE COSTS AFTER DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | 65 |
| 65A PROGRAM SWING-BED NF INPATIENT ROUTINE COSTS FROM 10/1/90 THRU 12/31/90 OF THE COST REPORTING PERIOD | | | | | | 65A |
| 66 TOTAL PROGRAM SWING-BED NF INPATIENT ROUTINE COSTS | | | | | | 66 |

PROVIDER NO. 14-0052   SAINT ANTHONY'S HEALTH CENTER      KPMG PEAT MARWICK COMPU-MAX MICRO SYSTEM      VERSION: 95.05
PERIOD FROM 01/01/91 TO 12/31/91                          IN LIEU OF FORM HCFA-2552-89 (12/89)               09/10/96

COMPUTATION OF INPATIENT OPERATING COST                                               WORKSHEET D-1
                                                                                      PARTS III & IV

| | — TITLE V-INPT | XX TITLE XVIII-PART A | — TITLE XIX-INPT | |
|---|---|---|---|---|

PART III - SKILLED NURSING FACILITY AND NURSING FACILITY ONLY

| | S.N.F. (OTHER) (14-5314) | |
|---|---|---|
| 67 SKILLED NURSING FACILITY/NURSING FACILITY ROUTINE SERVICE COST | 134799l | 67 |
| 68 ADJUSTED GENERAL INPATIENT ROUTINE SERVICE COST PER DIEM | 214.31 | 68 |
| 69 PROGRAM ROUTINE SERVICE COST | 1185777 | 69 |
| 70 MEDICALLY NECESSARY PRIVATE ROOM COST APPLICABLE TO PROGRAM | | 70 |
| 71 TOTAL PROGRAM GENERAL INPATIENT ROUTINE SERVICE COSTS | 1185777 | 71 |
| 72 CAPITAL RELATED COST ALLOCATED TO INPATIENT ROUTINE SERV COSTS | 128997 | 72 |
| 73 PER DIEM CAPITAL RELATED COSTS | 20.51 | 73 |
| 74 PROGRAM CAPITAL RELATED COSTS | 113482 | 74 |
| 75 INPATIENT ROUTINE SERVICE COST | 1072295 | 75 |
| 76 AGGREGATE CHARGES TO BENEFICIARIES FOR EXCESS COSTS | | 76 |
| 77 TOTAL PROGRAM ROUTINE SERVICE COSTS FOR COMPARISON TO THE COST LIMITATION | 1072295 | 77 |
| 78 INPATIENT ROUTINE SERVICE COST PER DIEM LIMITATION | 134.75 | 78 |
| 79 INPATIENT ROUTINE SERVICE COST LIMITATION | 745572 | 79 |
| 80 REASONABLE INPATIENT ROUTINE SERVICE COSTS | 859054 | 80 |
| 81 PROGRAM INPATIENT ANCILLARY SERVICES | 762132 | 81 |
| 82 PROGRAM MALPRACTICE INSURANCE COSTS | | 82 |
| 83 UTILIZATION REVIEW--PHYSICIAN COMPENSATION | 1591 | 83 |
| 84 TOTAL PROGRAM INPATIENT OPERATING COSTS | 1622777 | 84 |

PART IV - COMPUTATION OF OBSERVATION BED COST

| | | |
|---|---|---|
| 85 TOTAL OBSERVATION BEDS | 833 | 85 |
| 86 ADJUSTED GENERAL INPATIENT ROUTINE COST PER DIEM FROM LINE 38 | 319.08 | 86 |
| 87 OBSERVATION BED COST | 265794 | 87 |

COMPUTATION OF OBSERVATION BED PASS THROUGH COST

| | FROM WORKSHEET D PT I, LINE 25 COL A | ROUTINE COST FROM LINE 37 B | COLUMN A DIVIDED BY COLUMN B C | TOTAL OBSERVATION BED COST FROM LINE 87 D | OBSERVATION BED PASS-THROUGH COST COL C TIMES COL D E | |
|---|---|---|---|---|---|---|
| 88 CAPITAL RELATED COST | 2046302 | 11878338 | .172272 | 265794 | 45789 | 88 |
| 89 NON PHYSICIAN ANESTHETIST | 4 | 11878338 | | 265794 | | 89 |
| 90 MEDICAL EDUCATION | 5 | 11878338 | | 265794 | | 90 |

76

PROVIDER NO. 14-0052    SAINT ANTHONY'S HEALTH CENTER
PERIOD FROM 01/01/91 TO 12/31/91

KPMG PEAT MARWICK COMPU-MAX MICRO SYSTEM
IN LIEU OF FORM HCFA-2552-89 (12/89)

VERSION: 95.05
09/10/96

WORKSHEET D-1
PART I

COMPUTATION OF INPATIENT OPERATING COST

— TITLE V-INPT    — TITLE XVIII-PART A    XX TITLE XIX-INPT

PART I - ALL PROVIDER COMPONENTS

INPATIENT DAYS

| | HOSPITAL (OTHER) (14-0052) | SUB I | SUB II | SUB III | SUB IV | S.N.F. (OTHER) (14-5314) | N.F. | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 1 | 1 | 1 | 1 | 1 | 1 | |
| INPATIENT DAYS (INCL PRIVATE ROOM DAYS AND SWING-BED DAYS, EXCLUDING NEWBORN) | 37227 | | | | | 6290 | | 1 |
| INPATIENT DAYS (INCLUDING PRIVATE ROOM DAYS, EXCLUDING SWING BED AND NEWBORN DAYS) | 37227 | | | | | 6290 | | 2 |
| PRIVATE ROOM DAYS (EXCLUDING SWING-BED PRIVATE ROOM DAYS) | 13737 | | | | | | | 3 |
| SEMI-PRIVATE ROOM DAYS (EXCL SWING-BED PRIVATE ROOM DAYS) | 23490 | | | | | 6290 | | 4 |
| SWING-BED SNF-TYPE INPATIENT DAYS (INCLUDING PRIVATE ROOM DAYS) THROUGH DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | | 5 |
| SWING-BED SNF-TYPE INPATIENT DAYS (INCLUDING PRIVATE ROOM DAYS) AFTER DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | | 6 |
| SWING-BED SNF-TYPE INPATIENT DAYS FROM 10/1/90 THRU 12/31/90 | | | | | | | | 6A |
| SWING-BED NF-TYPE INPATIENT DAYS (INCL PRIVATE ROOM DAYS) THROUGH DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | | 7 |
| SWING-BED NF-TYPE INPATIENT DAYS (INCL PRIVATE ROOM DAYS) AFTER DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | | 8 |
| SWING-BED NF-TYPE INPAT DAYS (INCL PRIVATE ROOM DAYS) FROM 10/1/90 THROUGH 12/31/90 | | | | | | | | 8A |
| INPATIENT DAYS INCLUDING PRIVATE ROOM DAYS APPLICABLE TO THE PROGRAM (EXCLUDING SWING-BED AND NEWBORN DAYS) | 8635 | | | | | | | 9 |
| SWING-BED SNF-TYPE INPATIENT DAYS APPLICABLE TO THE PROGRAM (INCLUDING PRIVATE ROOM DAYS) THROUGH DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | | 10 |
| SWING-BED SNF-TYPE INPATIENT DAYS APPLICABLE TO THE PROGRAM (INCLUDING PRIVATE ROOM DAYS) AFTER DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | | 11 |
| SWING-BED SNF-TYPE INPATIENT DAYS APPLICABLE TO THE PROGRAM (INCLUDING PRIVATE ROOM DAYS) FROM 10/1/90 THRU 12/31/90 | | | | | | | | 11A |
| SWING-BED NF-TYPE INPAT DAYS APPLICABLE TO THE PGM (INCLUDING PRIVATE ROOM DAYS) THROUGH DECEMBER 31 OF THE COST REPORTING PERIOD - TITLES V AND XIX ONLY | | | | | | | | 12 |
| SWING-BED NF-TYPE INPAT DAYS APPLICABLE TO THE PGM (INCLUDING PRIVATE ROOM DAYS) AFTER DECEMBER 31 OF THE COST REPORTING PERIOD - TITLES V AND XIX ONLY | | | | | | | | 13 |
| SWING-BED NF-TYPE INPAT DAYS APPLICABLE TO THE PROGRAM (INCL PRIVATE ROOM DAYS) FROM 10/1/90 THRU 12/31/90 OF THE COST REPORTING PERIOD - TITLES V AND XIX ONLY | | | | | | | | 13A |
| MEDICALLY NECESSARY PRIVATE ROOM DAYS APPLICABLE TO THE PROGRAM (EXCLUDING SWING-BED DAYS) | 5109 | | | | | | | 14 |
| TOTAL NURSERY DAYS | 1676 | | | | | | | 15 |
| PROGRAM NURSERY DAYS (TITLES V AND XIX ONLY) | 10 | | | | | | | 16 |

PROVIDER NO. 14-0052   SAINT ANTHONY'S HEALTH CENTER
PERIOD FROM 01/01/91 TO 12/31/91

KPMG PEAT MARWICK COMPU-MAX MICRO SYSTEM
IN LIEU OF FORM HCFA-2552-89 (12/89)

VERSION: 95.05
09/10/96

COMPUTATION OF INPATIENT OPERATING COST

WORKSHEET D-1
PART I (CONT)

— TITLE V-INPT      — TITLE XVIII-PART A      XX TITLE XIX-INPT

PART I - ALL PROVIDER COMPONENTS

| | HOSPITAL (OTHER) (14-0052) | SUB I | SUB II | SUB III | SUB IV | S.N.F. (OTHER) (14-5314) | N.F. | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 1 | 1 | 1 | 1 | 1 | 1 | |
| SWING-BED ADJUSTMENT | | | | | | | | |
| 17 RATE FOR SWING-BED SNF SERVICES APPLICABLE TO SERVICES THROUGH DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | | 17 |
| 18 RATE FOR SWING-BED SNF SERVICES APPLICABLE TO SERVICES AFTER DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | | 18 |
| 18A RATE FOR SWING-BED SNF SERVICES APPLICABLE TO SERVICES FROM 10/1/90 THRU 12/31/90 OF THE COST REPORTING PERIOD | | | | | | | | 18A |
| 19 RATE FOR SWING-BED NF SERVICES APPLICABLE TO SERVICES THROUGH DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | | 19 |
| 20 RATE FOR SWING-BED NF SERVICES APPLICABLE TO SERVICES AFTER DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | | 20 |
| 20A RATE FOR SWING-BED NF SERVICES APPLICABLE TO SERVICES FROM 10/1/90 THRU 12/31/90 OF THE COST REPORTING PERIOD | | | | | | | | 20A |
| 21 TOTAL GENERAL INPATIENT ROUTINE SERVICE COST | 11874211 | | | | | 1347991 | | 21 |
| 22 SWING-BED COST APPLICABLE TO SNF-TYPE SERVICES THROUGH DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | | 22 |
| 23 SWING-BED COST APPLICABLE TO SNF-TYPE SERVICES AFTER DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | | 23 |
| 23A SWING-BED COST APPLICABLE TO SNF-TYPE SERVICES FROM 10/1/90 THRU 12/31/90 OF THE COST REPORTING PERIOD | | | | | | | | 23A |
| 24 SWING-BED COST APPLICABLE TO NF-TYPE SERVICES THROUGH DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | | 24 |
| 25 SWING-BED COST APPLICABLE TO NF-TYPE SERVICES AFTER DECEMBER 31 OF THE COST REPORTING PERIOD | | | | | | | | 25 |
| 25A SWING-BED COST APPLICABLE TO NF-TYPE SERVICES FROM 10/1/90 THRU 12/31/90 OF THE COST REPORTING PERIOD | | | | | | | | 25A |
| 26 TOTAL SWING-BED COST | | | | | | | | 26 |
| 27 GENERAL INPATIENT ROUTINE SERVICE COST NET OF SWING-BED COST | 11874211 | | | | | 1347991 | | 27 |
| PRIVATE ROOM DIFFERENTIAL ADJUSTMENT | | | | | | | | |
| 28 GENERAL INPATIENT ROUTINE SERVICE CHARGES (EXCLUDING SWING-BED CHARGES) | 14214116 | | | | | 1597660 | | 28 |
| 29 PRIVATE ROOM CHARGES (EXCLUDING SWING-BED CHARGES) | 4864317 | | | | | | | 29 |
| 30 SEMI-PRIVATE ROOM CHARGES (EXCLUDING SWING-BED CHARGES) | 9349799 | | | | | 1597660 | | 30 |
| 31 AVERAGE INPATIENT ROUTINE SERVICE COST/CHARGE RATIO | .835382 | | | | | .843728 | | 31 |
| 32 AVERAGE PRIVATE ROOM PER DIEM CHARGE | 354.10 | | | | | | | 32 |
| 33 AVERAGE SEMI-PRIVATE ROOM PER DIEM CHARGE | 398.03 | | | | | 254.00 | | 33 |
| 34 AVERAGE PER DIEM PRIVATE ROOM CHARGE DIFFERENTIAL | | | | | | | | 34 |
| 35 AVERAGE PER DIEM PRIVATE ROOM COST DIFFERENTIAL | | | | | | | | 35 |
| 36 PRIVATE ROOM COST DIFFERENTIAL ADJUSTMENT | | | | | | | | 36 |
| 37 GENERAL INPATIENT ROUTINE SERVICE COST NET OF SWING-BED COST AND PRIVATE ROOM COST DIFFERENTIAL | 11874211 | | | | | 1347991 | | 37 |

PROVIDER NO. 14-0052   SAINT ANTHONY'S HEALTH CENTER
PERIOD FROM 01/01/91 TO 12/31/91

KPMG PEAT MARWICK COMPU-MAX MICRO SYSTEM
IN LIEU OF FORM HCFA-2552-89 (12/89)

VERSION: 95.05
09/10/96

WORKSHEET D-1
PART II

COMPUTATION OF INPATIENT OPERATING COST

PART II - HOSPITAL AND SUBPROVIDERS ONLY

|  | TITLE V-INPT | TITLE XVIII-PART A | | | | XX TITLE XIX-INPT | | | |
|---|---|---|---|---|---|---|---|---|---|
|  |  | HOSPITAL (OTHER) (14-0052) | SUB I | SUB II | SUB III | SUB IV | | | |
| | PROGRAM INPATIENT OPERATING COST BEFORE PASS THROUGH COST ADJUSTMENTS | 1 | 1 | 1 | 1 | 1 | | | |
| 38 | ADJUSTED GENERAL INPATIENT ROUTINE SERVICE COST PER DIEM | 318.97 | | | | | | | 38 |
| 39 | PROGRAM GENERAL INPATIENT ROUTINE SERVICE COST | 2754306 | | | | | | | 39 |
| 40 | MEDICALLY NECESSARY PRIVATE ROOM COST APPLICABLE TO THE PGM | | | | | | | | 40 |
| 41 | TOTAL PROGRAM GENERAL INPATIENT ROUTINE SERVICE COST | 2754306 | | | | | | | 41 |

|  | TOTAL I/P COST A | TOTAL I/P DAYS B | AVERAGE PER DIEM C | PROGRAM DAYS D | PROGRAM COST E | |
|---|---|---|---|---|---|---|
|  | SUB I | SUB II | SUB III | SUB IV | | |
|  | 1 | 1 | 1 | 1 | | |
| 42 | NURSERY (TITLES V AND XIX ONLY) | 216617 | 1676 | 129.25 | 10 | 1293 | 42 |
|  | INTENSIVE CARE TYPE INPATIENT HOSPITAL UNITS | | | | | | |
| 43 | INTENSIVE CARE UNIT | 1345815 | 1722 | 781.54 | 129 | 100819 | 43 |
| 44 | CORONARY CARE UNIT | | | | | | 44 |

|  | HOSPITAL (OTHER) (14-0052) | SUB I | SUB II | SUB III | SUB IV | |
|---|---|---|---|---|---|---|
|  | 1 | 1 | 1 | 1 | 1 | |
| 48 | PROGRAM INPATIENT ANCILLARY SERVICE COST | 1697855 | | | | | 48 |
| 49 | PROGRAM MALPRACTICE INSURANCE COSTS FROM WKST. D-8 | - | | | | | 49 |
| 50 | TOTAL PROGRAM INPATIENT COSTS | 4554273 | | | | | 50 |
| | PASS THROUGH COST ADJUSTMENTS | | | | | | |
| 51 | PASS THROUGH COSTS APPLICABLE TO PROGRAM INPATIENT ROUTINE SERVICES | | | | | | 51 |
| 52 | PASS THROUGH COSTS APPLICABLE TO PROGRAM INPATIENT ANCILLARY SERVICES | | | | | | 52 |
| 53 | TOTAL PROGRAM EXCLUDABLE COST | | | | | | 53 |
| 54 | TOTAL PROGRAM INPATIENT OPERATING COST EXCLUDING CAPITAL RELATED, NONPHYSICIAN ANESTHETIST AND MEDICAL EDUCATION COSTS | 4554273 | | | | | 54 |

'79

PROVIDER NO. 14-0052    SAINT ANTHONY'S HEALTH CENTER                    KPMG PEAT MARWICK COMPU-MAX MICRO SYSTEM        VERSION: 95.05
PERIOD FROM 01/01/91 TO 12/31/91                                        IN LIEU OF FORM HCFA-2552-89 (12/89)              09/10/96

                                    COMPUTATION OF INPATIENT OPERATING COST                                    WORKSHEET D-1
                                                                                                              PART II (CONT)
                                                                                                              AND PART III

        ___ TITLE V-INPT          ___ TITLE XVIII-PART A        __XX__ TITLE XIX-INPT

PART II - HOSPITAL AND SUBPROVIDERS ONLY        HOSPITAL   SUB I      SUB II    SUB III    SUB IV
                                                (OTHER)
                                                (14-0052)
                                                    1        1           1         1         1

        TARGET AMOUNT AND LIMITATION COMPUTATION
55  PROGRAM DISCHARGES                                                                                              55
56  TARGET AMOUNT PER DISCHARGE                                                                                     56
57  TARGET AMOUNT                                                                                                   57
58  DIFFERENCE BETWEEN ADJUSTED INPATIENT OPERATING COST AND                                                        58
    TARGET AMOUNT
59  INCENTIVE PAYMENT                                                                                               59
60  ALLOWABLE INPATIENT COST PLUS INCENTIVE PAYMENT                                                                 60

        PROGRAM INPATIENT ROUTINE SWING BED COST

61  PROGRAM SWING-BED SNF INPATIENT ROUTINE COSTS THROUGH                                                           61
    DECEMBER 31 OF THE COST REPORTING PERIOD
62  PROGRAM SWING-BED SNF INPATIENT ROUTINE COSTS AFTER                                                             62
    DECEMBER 31 OF THE COST REPORTING PERIOD
62A PROGRAM SWING-BED SNF INPATIENT ROUTINE COSTS FROM                                                              62A
    10/1/90 THRU 12/31/90 OF THE COST REPORTING PERIOD
63  TOTAL PROGRAM SWING-BED SNF INPATIENT ROUTINE COSTS                                                             63
64  PROGRAM SWING-BED NF INPATIENT ROUTINE COSTS THROUGH                                                            64
    DECEMBER 31 OF THE COST REPORTING PERIOD
65  PROGRAM SWING-BED NF INPATIENT ROUTINE COSTS AFTER                                                              65
    DECEMBER 31 OF THE COST REPORTING PERIOD
65A PROGRAM SWING-BED NF INPATIENT ROUTINE COSTS FROM                                                               65A
    10/1/90 THRU 12/31/90 OF THE COST REPORTING PERIOD
66  TOTAL PROGRAM SWING-BED NF INPATIENT ROUTINE COSTS                                                              66

80

PROVIDER NO. 14-0052   SAINT ANTHONY'S HEALTH CENTER
PERIOD FROM 01/01/91 TO 12/31/91

KPMG PEAT MARWICK COMPU-MAX MICRO SYSTEM
IN LIEU OF FORM HCFA-2552-89 (12/89)

VERSION: 95.05
09/10/96

WORKSHEET D-1
PARTS III & IV

COMPUTATION OF INPATIENT OPERATING COST

___ TITLE V-INPT        ___ TITLE XVIII-PART A        XX TITLE XIX-INPT

PART III - SKILLED NURSING FACILITY AND NURSING FACILITY ONLY

| | S.N.F. (OTHER) (14-5314) | N.F. | |
|---|---|---|---|
| | 1 | 1 | |
| 67 SKILLED NURSING FACILITY/NURSING FACILITY ROUTINE SERVICE COST | 134/991 | | 67 |
| 68 ADJUSTED GENERAL INPATIENT ROUTINE SERVICE COST PER DIEM | 214.31 | | 68 |
| 69 PROGRAM ROUTINE SERVICE COST | | | 69 |
| 70 MEDICALLY NECESSARY PRIVATE ROOM COST APPLICABLE TO PROGRAM | | | 70 |
| 71 TOTAL PROGRAM GENERAL INPATIENT ROUTINE SERVICE COSTS | | | 71 |
| 72 CAPITAL RELATED COST ALLOCATED TO INPATIENT ROUTINE SERV COSTS | 128997 | | 72 |
| 73 PER DIEM CAPITAL RELATED COSTS | 20.51 | | 73 |
| 74 PROGRAM CAPITAL RELATED COSTS | | | 74 |
| 75 INPATIENT ROUTINE SERVICE COST | | | 75 |
| 76 AGGREGATE CHARGES TO BENEFICIARIES FOR EXCESS COSTS | | | 76 |
| 77 TOTAL PROGRAM ROUTINE SERVICE COSTS FOR COMPARISON TO THE COST LIMITATION | | | 77 |
| 78 INPATIENT ROUTINE SERVICE COST PER DIEM LIMITATION | | | 78 |
| 79 INPATIENT ROUTINE SERVICE COST LIMITATION | | | 79 |
| 80 REASONABLE INPATIENT ROUTINE SERVICE COSTS | | | 80 |
| 81 PROGRAM INPATIENT ANCILLARY SERVICES | | | 81 |
| 82 PROGRAM MALPRACTICE INSURANCE COSTS | | | 82 |
| 83 UTILIZATION REVIEW--PHYSICIAN COMPENSATION | | | 83 |
| 84 TOTAL PROGRAM INPATIENT OPERATING COSTS | | | 84 |

81

REVISED
FINAL SETTLEMENT

PROVIDER NO. 14-0052   SAINT ANTHONY'S HEALTH CENTER
PERIOD FROM 01/01/91 TO 12/31/91

KPMG PEAT MARWICK COMPU-MAX MICRO SYSTEM
IN LIEU OF FORM HCFA-2552-89 (12/89)

VERSION: 95.05
09/10/96

WORKSHEET E-1

ANALYSIS OF PAYMENTS TO PROVIDERS FOR SERVICES RENDERED

HOSPITAL(14-0052)

| DESCRIPTION | INPATIENT PART A MO/DAY/YR 1 | AMOUNT 2 | PART B MO/DAY/YR 3 | AMOUNT 4 | |
|---|---|---|---|---|---|
| 1 TOTAL INTERIM PAYMENTS PAID TO PROVIDER | | 12005359 | | 938205 | 1 |
| 2 INTERIM PAYMENTS PAYABLE ON INDIVIDUAL BILLS, EITHER SUBMITTED OR TO BE SUB- MITTED TO THE INTERMEDIARY FOR SERVICES RENDERED IN THE COST REPORTING PERIOD. IF NONE, WRITE "NONE", OR ENTER A ZERO. | | NONE | | NONE | 2 |
| 3 LIST SEPARATELY EACH RETROACTIVE LUMP SUM ADJUSTMENT AMOUNT BASED ON SUBSEQUENT REVISION OF THE INTERIM RATE FOR THE COST REPORTING PERIOD. ALSO SHOW DATE OF EACH PAYMENT. IF NONE, WRITE "NONE", OR ENTER A ZERO. PROGRAM TO PROVIDER A | 2/26/91 | 80522 | | | 3A |
| B | 8/09/91 | 484511 | | NONE | 3B |
| C | | | | | 3C |
| D | | | | | 3D |
| E | | | | | 3E |
| F | 2/28/92 | 92317 | | NONE | 3F |
| PROVIDER TO PROGRAM H | | | | | 3H |
| I | | | | | 3I |
| J | | | | | 3J |
| SUBTOTAL K | | 472716 | | | 3X |
| 4 TOTAL INTERIM PAYMENTS | | 12478075 | | 938205 | 4 |
| TO BE COMPLETED BY INTERMEDIARY | | | | | |
| 5 LIST SEPARATELY EACH TENTATIVE SETTLEMENT PAYMENT AFTER DESK REVIEW. ALSO SHOW DATE OF EACH PAYMENT. IF NONE, WRITE "NONE", OR ENTER A ZERO. PROGRAM TO PROVIDER A | 6/07/94 | 5764 | 5/27/92 | 366893 | 5A |
| B | 9/02/93 | 96569 | 9/02/93 | 310913 | 5B |
| C | | | | | 5C |
| PROVIDER TO PROGRAM D | 5/27/92 | 161730 | | NONE | 5D |
| E | | | | | 5E |
| F | | | | | 5F |
| SUBTOTAL G | | -59597 | | 677806 | 5G |
| 6 DETERMINED NET SETTLE- MENT AMOUNT (BALANCE DUE) BASED ON THE COST REPORT PROGRAM TO PROVIDER A | NONE | | NONE | | 6A |
| PROVIDER TO PROGRAM B | | | | | 6B |
| 7 TOTAL MEDICARE PROGRAM LIABILITY | | 12416078 | | 1616011 | 7 |

NAME OF INTERMEDIARY   INTERMEDIARY NUMBER   SIGNATURE OF AUTHORIZED PERSON   DATE (MO/DAY/YR)

HEALTH CARE SERVICE CORPORATION   00121

PROVIDER NO. 14-0052   SAINT ANTHONY'S HEALTH CENTER
PERIOD FROM 01/01/91 TO 12/31/91

KPMG PEAT MARWICK COMPU-MAX MICRO SYSTEM
IN LIEU OF FORM HCFA-2552-B9 (12/89)

VERSION: 95.05
09/10/96

WORKSHEET E-1

ANALYSIS OF PAYMENTS TO PROVIDERS FOR SERVICES RENDERED
SKILLED NURSING FACILITY(14-5314)

| DESCRIPTION | INPATIENT PART A MO/DAY/YR 1 | AMOUNT 2 | PART B MO/DAY/YR 3 | AMOUNT 4 | |
|---|---|---|---|---|---|
| 1 TOTAL INTERIM PAYMENTS PAID TO PROVIDER | | 1233933 | | 6130 | 1 / 2 |
| 2 INTERIM PAYMENTS PAYABLE ON INDIVIDUAL BILLS, EITHER SUBMITTED OR TO BE SUBMITTED TO THE INTERMEDIARY FOR SERVICES RENDERED IN THE COST REPORTING PERIOD. IF NONE, WRITE "NONE", OR ENTER A ZERO. | | NONE | | NONE | |
| 3 LIST SEPARATELY EACH RETROACTIVE LUMP SUM ADJUSTMENT AMOUNT BASED ON SUBSEQUENT REVISION OF THE INTERIM RATE FOR THE COST REPORTING PERIOD. ALSO SHOW DATE OF EACH PAYMENT. IF NONE, WRITE "NONE", OR ENTER A ZERO     PROGRAM A / TO B / PROVIDER C / D / E / F / PROVIDER G / TO H / PROGRAM I / J | 3/09/92 | 384812 | | NONE | 3A 3B 3C 3D 3E 3F 3G 3H 3I 3J |
| SUBTOTAL K | | 384812 | | | 3K |
| 4 TOTAL INTERIM PAYMENTS | | 1618745 | | 6130 | 4 |
| TO BE COMPLETED BY INTERMEDIARY | | | | | |
| 5 LIST SEPARATELY EACH TENTATIVE-SETTLEMENT PAYMENT AFTER DESK REVIEW. ALSO SHOW DATE OF EACH PAYMENT. IF NONE, WRITE "NONE", OR ENTER A ZERO.     PROGRAM A / TO B / PROVIDER C | | NONE | | NONE | 5A 5B 5C |
|   PROVIDER D / TO E / PROGRAM F | 5/27/92 | 88477 | 5/27/92 | 2217 | 5D 5E 5F |
|   | 9/02/93 | 6641 | 9/02/93 | 153 | |
| SUBTOTAL G | | -95118 | | -2370 | 5G |
| 6 DETERMINED NET SETTLEMENT AMOUNT (BALANCE DUE) BASED ON THE COST REPORT     PROGRAM TO PROVIDER A / PROVIDER TO PROGRAM B | | -18867 | | | 6A 6B |
| 7 TOTAL MEDICARE PROGRAM LIABILITY | | 1504760 | | 3760 | 7 |

NAME OF INTERMEDIARY          INTERMEDIARY NUMBER          SIGNATURE OF AUTHORIZED PERSON          DATE (MO/DAY/YR)

HEALTH CARE SERVICE CORPORATION          00121          _[signature]_          10/28/96

REVISED
FINAL SETTLEMENT

83

PROVIDER NO. 14-0052    SAINT ANTHONY'S HEALTH CENTER
PERIOD FROM 01/01/91 TO 12/31/91

KPMG PEAT MARWICK COMPU-MAX MICRO SYSTEM
IN LIEU OF FORM HCFA-2552-89-E-3 (12/89)

VERSION: 95.05
09/10/96

SUPPLEMENTAL
WORKSHEET E-3
PART II

CALCULATION OF REIMBURSEMENT SETTLEMENT

PART II - MEDICARE, PART A SERVICES - COST REIMBURSEMENT

| | HOSPITAL SUB I | SUB II | SUB III | SUB IV | S.N.F. (14-5314) | |
|---|---|---|---|---|---|---|
| 1 INPATIENT SERVICES | | | | | 1622777 | 1 |
| 2 ORGAN ACQUISITION | | | | | | 2 |
| 3 COST OF TEACHING PHYSICIANS | | | | | | 3 |
| 4 SUBTOTAL | | | | | 1622777 | 4 |
| 5 PRIMARY PAYOR PAYMENTS | | | | | 52 | 5 |
| 6 DIFFERENTIAL IN CHARGES BETWEEN SEMIPRIVATE ACCOMMODATIONS AND LESS THAN SEMIPRIVATE | | | | | | 6 |
| 7 ACCOMMODATIONS SUBTOTAL | | | | | 1622725 | 7 |
| 8 COMPUTATION OF LESSER OF COST OR CHARGES RETURN ON EQUITY CAPITAL | | | | | | 8 |
| 9 TOTAL REASONABLE COST | | | | | 1622777 | 9 |
| 10 REASONABLE CHARGES ROUTINE SERVICE CHARGES | | | | | 1404112 | 10 |
| 11 ANCILLARY SERVICE CHARGES | | | | | 1613603 | 11 |
| 12 ORGAN ACQUISITION CHARGES, NET OF REVENUE | | | | | | 12 |
| 13 TEACHING PHYSICIANS | | | | | | 13 |
| 14 | | | | | | 14 |
| 15 DIFFERENTIAL IN CHARGES BETWEEN SEMIPRIVATE ACCOMMODATIONS AND LESS THAN SEMIPRIVATE | | | | | | 15 |
| 16 ACCOMMODATIONS TOTAL REASONABLE CHARGES | | | | | 3017715 | 16 |
| 17 CUSTOMARY CHARGES AGGREGATE AMOUNT ACTUALLY COLLECTED FROM PATIENT LIABLE FOR PAYMENT FOR SERVICES ON A CHARGE BASIS | | | | | | 17 |
| 18 AMOUNT THAT WOULD HAVE BEEN REALIZED FROM PATIENTS LIABLE FOR PAYMENT FOR SERVICES ON A CHARGE BASIS HAD SUCH PAYMENT BEEN MADE IN ACCORDANCE WITH 42 CFR 413.13(E) | | | | | | 18 |
| 19 RATIO OF LINE 17 TO LINE 18 | | | | | 3017715 | 19 |
| 20 TOTAL CUSTOMARY CHARGES | | | | | 1394938 | 20 |
| 21 EXCESS OF CUSTOMARY CHARGES OVER REASONABLE COST | | | | | | 21 |
| 22 EXCESS OF REASONABLE COST OVER CUSTOMARY CHARGES | | | | | | 22 |

84

PROVIDER NO. 14-0052   SAINT ANTHONY'S HEALTH CENTER
PERIOD FROM 01/01/91 TO 12/31/91

KPMG PEAT MARn...K COMPU-MAX MICRO SYSTEM        VERSION: 95.05
IN LIEU OF FORM HCFA-2552-89-E-3 (12/89)         09/10/96

SUPPLEMENTAL
WORKSHEET E-3
PART II

CALCULATION OF REIMBURSEMENT SETTLEMENT

PART II - MEDICARE, PART A SERVICES - COST REIMBURSEMENT

| | HOSPITAL | SUB I | SUB II | SUB III | SUB IV | S.N.F. (14-5314) | |
|---|---|---|---|---|---|---|---|
| COMPUTATION OF REIMBURSEMENT SETTLEMENT | | | | | | | |
| 23A DIRECT GRADUATE MEDICAL EDUCATION PAYMENTS | | | | | | | 23A |
| 23B COST OF COVERED SERVICES | | | | | | 1622725 | 23B |
| 24 DEDUCTIBLES | | | | | | | 24 |
| 25 EXCESS REASONABLE COST | | | | | | | 25 |
| 26 SUBTOTAL | | | | | | 1622725 | 26 |
| 27 COINSURANCE | | | | | | 119163 | 27 |
| 28 SUBTOTAL | | | | | | 1503562 | 28 |
| 29 REIMBURSABLE BAD DEBTS | | | | | | | 29 |
| 30 SUBTOTAL | | | | | | 1503562 | 30 |
| 31 RECOVERY OF UNREIMBURSED COST UNDER COST LIMITS | | | | | | | 31 |
| 32 RECOVERY OF UNREIMBURSED COST UNDER THE LESSER O REASONABLE COSTS OR CUSTOMARY CHARGES | | | | | | | 32 |
| 33 UNREFUNDED CHARGES TO BENEFICIARIES FOR EXCESS COSTS ERRONEOUSLY COLLECTED BASED ON CORRECTION OF A COST LIMIT | | | | | | | 33 |
| 34 RECOVERY OF EXCESS DEPRECIATION RESULTING FROM PROVIDER TERMINATION OR A DECREASE IN PROGRAM UTILIZATION | | | | | | | 34 |
| 34A OTHER ADJUSTMENTS | | | | | | | 34A |
| 35 AMOUNTS APPLICABLE TO PRIOR COST REPORTING PERIODS RESULTING FROM DISPOSITION OF DEPRECIABLE ASSETS | | | | | | 1198 | 35 |
| 36A SUBTOTAL | | | | | | 1504760 | 36A |
| 36B SEQUESTRATION ADJUSTMENT | | | | | | | 36B |
| 36C AMOUNT DUE AFTER SEQUESTRATION | | | | | | 1504760 | 36C |
| 37 INTERIM PAYMENTS | | | | | | 1618745 | 37 |
| 38 BALANCE DUE PROVIDER/PROGRAM | | | | | | -113985 | 38 |
| 39 PROTESTED AMOUNTS (NONALLOWABLE COST REPORT ITEMS) IN ACCORDANCE WITH HCFA PUB 15-11, SECTION 115.2 | | | | | | | 39 |
| 40 BALANCE DUE PROVIDER/PROGRAM | | | | | | -113985 | 40 |

85

KPMG PEAT MARWICK COMPU-MAX MICRO SYSTEM
IN LIEU OF FORM HCFA-2552-89-H (12/89)

VERSION: 95.05
09/10/96

SUPPLEMENTAL
WORKSHEET H-7

PROVIDER NO. 14-0052   SAINT ANTHONY'S HEALTH CENTER
PERIOD FROM 01/01/91 TO 12/31/91

ANALYSIS OF PAYMENTS TO PROVIDER-BASED HHA'S
FOR SERVICES RENDERED TO PROGRAM BENEFICIARIES

HHA NO : 14-7113

| DESCRIPTION | PART A MO/DAY/YR | PART A AMOUNT | PART B MO/DAY/YR | PART B AMOUNT | |
|---|---|---|---|---|---|
| TOTAL INTERIM PAYMENTS PAID TO PROVIDER | | 949547 | | | 1 |
| INTERIM PAYMENTS PAYABLE ON INDIVIDUAL BILLS EITHER SUBMITTED OR TO BE SUBMITTED TO THE INTERMEDIARY, FOR SERVICES RENDERED IN THE COST REPORTING PERIOD. IF NONE, WRITE "NONE." | | NONE | | NONE | 2 |
| LIST SEPARATELY EACH RETROACTIVE LUMP SUM ADJUSTMENT AMOUNT BASED ON SUBSEQUENT REVISION OF THE INTERIM RATE FOR THE COST REPORTING PERIOD. ALSO SHOW DATE OF EACH PAYMENT. IF NONE, WRITE "NONE."   PROGRAM A | | | | | 3A |
| TO B | | | | | 3B |
| PROVIDER C | | | | | 3C |
| D | | | | | 3D |
| E | | NONE | | NONE | 3E |
| PROVIDER F | | | | | 3F |
| G | | | | | 3G |
| TO H | | | | | 3H |
| I | | | | | 3I |
| PROGRAM J | | | | | 3J |
| SUBTOTAL K | | NONE | | NONE | 3K |
| TOTAL INTERIM PAYMENTS | | 949547 | | | 4 |
| TO BE COMPLETED BY INTERMEDIARY | | | | | |
| LIST SEPARATELY EACH TENTATIVE SETTLEMENT PAYMENT AFTER DESK REVIEW. ALSO SHOW DATE OF   PROGRAM A | | | | | 5A |
| TO B | | | | | 5B |
| PROVIDER C | | | | | 5C |
| PROVIDER D | 5/27/92 | 96862 | | | 5D |
| E | 9/02/93 | 10878 | | | 5E |
| PROGRAM F | | | | | 5F |
| SUBTOTAL G | | -107740 | | | 5G |
| DETERMINE NET SETTLE-MENT AMOUNT (BALANCE DUE) BASED   PROGRAM TO PROVIDER A | | None | | None | 6A |
| ON THE COST REPORT   PROVIDER TO PROGRAM B | | | | | 6B |
| TOTAL MEDICARE PROGRAM LIABILITY | | 841807 | | | 7 |

OF INTERMEDIARY

BLUE CROSS CARE SERVICE CORPORATION        INTERMEDIARY NUMBER   00121

SIGNATURE OF AUTHORIZED PERSON        DATE (MO/DAY/YR)

REVISED
FINAL SETTLEMENT

86

# Health Care Service Corporation
Chicago, Springfield, Mt. Vernon, Moline, Illinois
East Lansing, Detroit, Michigan

| Page | Of |
|------|-----|
| 1 | 2 |

## Medicare

I have reviewed the following audit adjustments No. _____1_____ through No. ___4___ and agree with the adjustments both in principle and amount.  These adjustments will be incorporated into our revised statement of reimbursable cost for the period indicated.


OFFICER: _____
                               (SIGNATURE)

TITLE: _____

DATE: _____


Provider Name: St. Anthony's Health Center/SNF/HHA

Provider Number(s): 14-0052/5314/7113

Cost Reporting Period Ended: 12/31/91
Intermediary 00121 IL
              00123 MI

[ ]    Audited
[ ]    Settled Without Audit
[ x ]  Reopening

EXPLANATION OF ADJUSTMENTS

| HCFA Form | W/S | Pt | Ln | Col | Adj. No. | GENERAL ADJUSTMENTS | AS REPORTED | INC/ (DEC) | AS ADJUSTED |
|-----------|-----|----|----|----|----------|---------------------|-------------|-----------|-------------|
| | where necessary | | | | 1 | To complete all cost reporting forms in conformity with current requirements. (HIRM 1 - Section 413.24) | | Various | |
| | where necessary | | | | 2 | To correct all math and flow through errors arising on revision, if any. (HIRM 1 - Section 413.24) | | Various | |

GC 834/1 Rev. 7/95

REVISED
FINAL SETTLEMENT

87

# Health Care Service Corporation
Chicago, Springfield, Mt. Vernon, Moline, Illinois
East Lansing, Detroit, Michigan

| Page | Of |
|------|----|
| 2 | 2 |

## Medicare

W/P REF.

Provider Name: St. Anthony's Health Center /SNF/HHA

Provider Number(s): 14-0052/5314/7113

Cost Reporting Period Ended: 12/31/91

Intermediary 00121 IL
00123 MI

[  ] Audited
[  ] Settled Without Audit
[ x ] Reopening

### EXPLANATION OF ADJUSTMENTS

| HCFA Form | W/S | Pt | Ln | Col | Adj. No. | SETTLEMENT DATA | AS REPORTED | INC/ (DEC) | AS ADJUSTED | W/S |
|-----------|-----|----|----|----|----|-----------------|-------------|-----------|-------------|-----|
| | | | | | 3 | To adjust the SNF cost limit based on HCFA's instructions | | | | |
| | | | | | | dated May 1996. | | | | |
| | | | | | | | | | | |
| 2552 | D-1 | III | 78 | 1 | | Inpatient Routine Service Cost Per Diem Limitation | 138.16 | (3.41) | 134.75 | |
| | | | | | | 42 CFR 413.20 | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | 4 | To move previous settlements on worksheet E-1. | | | | |
| | | | | | | | | | | |
| 2552 | E-1 | various | | | | Date | | | 6/7/94 | |
| | | 5A | 2 | | | Hospital - Part A | -0- | 5764 | 5764 | |
| | | 5E | 2 | | | SNF - Pt A (9/2/93) | -0- | 6641 | 6641 | 9/2/93 |
| | | 5E | 4 | | | - Pt B (9/2/93) | -0- | 153 | 153 | |
| H-1 | | 5E | 2 | | | HHA - Pt A (9/2/93) | -0- | 10878 | 10878 | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | 42 CFR 413.20 | | | | |
| | | | | | | | | | | |

REVISED
FINAL SETTLEMENT

GC 834/2 Rev. 7/95

AUG 11'97 11:38 FR VE LLP HOU 34W 2346   713 758 2346 TO HEALTH IND         P.09

Received Aug 11 10:57AM (06:24) on  line (10) for 'JE1042'      WORKSRV3 printed JE133EEF1B44CD4 on Aug 11 10:04AM * Pg 9/14
        09-11-1997 09:55AM    FROM  SCH-ACCTG              TO        917136155042   P.09

SAINT ANTHONYS HOSPITAL                    COPY

SAINT CLARES HOSPITAL



SAINT
ANTHONY'S
HEALTH CENTER

Saint Anthony's Way, P.O. Box 340, Alton, IL 62002-0340
618/465-2571

April 25, 1997

Mr. Thomas Curtis
Audit Manager
Health Care Service Corporation
Medicare Fiscal Intermediary
2151 West White Oaks Drive
Springfield, IL 62704

RE:    Saint Anthony's Health Center – SNF
       Provider Number 14-5314
       SNF Exception Request
       Cost Report Period Ended December 31, 1991
       NPR Date: October 31, 1996

Dear Mr. Curtis:

In accordance with the provisions of 42 CFR 413.30(f) we are requesting an Exception to
SNF Routine Cost Limits for the cost report period referenced above. The request
documentation was prepared at our request by C. J. Schlosser & Company, L.L.C.

If you have questions regarding the request or require additional documentation, please
contact Terry Dooling at C. J. Schlosser's Alton, Illinois office.

We appreciate your cooperation in processing our request.

Sincerely,

Michael L. Nelson
Senior Vice President of Finance

/tag

Enclosures

*To serve God is to serve His people.*

AUG 11'97 11:38 FR UE L P HOU 34W 2346  713 758 2346 TO HEALTH IND       P.10

eceived Aug 11 10:57AM (06:24) on    time (10) for 'JE1042'    UORKSRVS printed JE133EEF1044004 on Aug 11 10:04AM * Pg 10/14
       08-11-1997 09:56AM    FROM  SCH-ACCTG          TO          917136155842    P.10



## C. J. SCHLOSSER
## & COMPANY, L.L.C.
CERTIFIED PUBLIC ACCOUNTANTS

J. Terry Dooling
David L. Kamler
Jack A. Yeager
R.J. Tolliver

April 24, 1997


Mr. Tom Curtis
Audit Manager
Health Care Service Corporation
Medicare Fiscal Intermediary
2151 White Oaks Drive
Springfield, Illinois  62704


Re:  Saint Anthony's Health Center-SNF
     Provider No. 14-5314
     SNF Exception Request
     Cost Report Period Ended December 31, 1991
     NPR Date October 31, 1996

Dear Tom:

This Request For Exception to SNF Routine Cost Limits is being filed on behalf
of the above referenced Provider in accordance with the provisions of 42 CFR
413.30(f), and the guidelines contained in the Provider Reimbursement Manual
HIM-15, Section 2534.

However, based on PRRB Hearing Decision No. 97-D38, dated March 24, 1997, (St.
Francis Health Care Center (Green Spring, Ohio) v. Community Mutual Insurance
Company), we have calculated the requested exception amounts based upon the
difference between the Provider's actual per diem costs and the actual routine
cost limit related to the cost report period, rather than the difference
between actual cost and 112% of the Peer Group mean cost per diems. The affect
of this calculation is to increase the per diem exception requested by $25.91
per patient day over the exception calculated in comparison to 112% of mean
cost. We have attached a copy of the text of the PRRB decision as Exhibit 17.

This is a final request relative to the cost report year referenced above.

Based on our calculations, as presented in Exhibit numbers 1 through 8, the
amount of the Atypical Cost Exception claimed is $45.84 per patient day.

233 East Center Drive          One Westbury Square
P.O. Box 416                   Building D
Alton, Illinois 62002          St. Charles, Missouri 63301
618/465-7717   St. Louis: 314/355-2536   314/723-7611   St. Louis: 314/947-1008
Fax: 618/465-7710              Fax: 314/947-4558

Member AICPA Division for CPA Firms-Private Companies Practice Section

AUG 11'97 11:38 FR VE I'P HOU 34W 2346   713 758 2346 TO HEALTH IND      P.11

received Aug 11 10:57AM (06:24) on   line [10] for 'JE1042'            WORKSRV3 printed JE133EEF1B44CD4 on Aug 11 10:04AM * Pg 11/14
         08-11-1997 09:56AM   FROM  SCH ACCTG                          TO          9171361553042    P.11

Page 2

The basis for the request is that the acuity level of the Provider's patient population is significantly higher than the applicable Peer Group.  Specific discussion related to each cost center for which an exception is requested is presented below.

We believe the enclosed attachments provide the documentation described in HIM-15, Section 2534, and they are organized as follows:

| EXHIBIT NO. | CONTENTS |
|---|---|
| 1 | Calculation of Provider's Actual Per Diem Costs |
| 2 | Calculation of Provider's Adjusted Mean Limit at 112% of Mean Cost |
| 3 | Peer Group Comparison Based on Actual Routine Cost Limit |
| 4 | Nursing Hours Per Patient Day |
| 5 | Calculated Per Diem Exceptions |
| 6 | Summary of Per Diem Exceptions - Atypical Services |
| 7 | Requested Per Diem Exception for Atypical Costs |
| 8 | Calculation of A & G Unit Cost Multiplier |
| 9 | Comparison of Cost Report Expenses |
| 10 | Schedule of Direct Costs |
| 11 | Schedule of Productive and Nonproductive Nursing Salaries and Hours |
| 12 | Listing of 1991 Discharges - Chronological Order |
| 13 | Listing of 1991 Discharges with Discharge Disposition |
| 14 | A.D.L. Sample |
| 15 | Cost Report, Form HCFA 2552-92, December 31, 1991 |
| 16 | Cost Report, Form HCFA 2552-92, December 31, 1990 |
| 17 | P.R.R.B. Decision Number 97-D38 |

The following are the bases upon which cost center exceptions are requested:

A. NURSING SALARY COST

The Provider is requesting an exception amounting to $22.84 per patient day based on a higher than average acuity level of patients cared for in the Skilled Nursing Facility (SNF).

The Provider's medical record information system contained 345 patient discharges for the SNF for calendar year 1991.  We have included a listing of those discharges in chronological order as Exhibit 12.

We have also included a listing of the patient population sorted by discharge disposition for each patient as Exhibit 13.

AUG 11'97 11:39 FR VE LI P HOU 34W 2346   713 758 2346 TO HEALTH IND   P.12

Received Aug 11 10:57AM (06:24) on line (10) for 'JE1042'   WORKSRV3 printed JE133EEF1B44CD4 on Aug 11 10:04AM * Pg 12/14
08-11-1997 09:57AM   FROM SCH-ACCTG   TO   9171361558542   P.12

## Page 3

From the total population of 345 patients (Exhibit 12), we selected a 10% numeric sample. For each patient in the sample we requested nursing personnel in the SNF to review patient medical records and to detail nursing requirements related to assistance with Activities of Daily Living (A.D.L.s) as well as any other patient conditions which required intensive nursing service. The sample selection and A.D.L. summary are included as Exhibit 14. The sample data reflects a patient population which is highly dependent on intensive nursing care.

As shown in Exhibit 3, during the period for which this exception is being requested, the Provider's average length of stay was 18.23 days compared to 132.34 days for the Peer Group. During the same period the Provider's average ancillary cost per diem was $137.74 compared to the Peer Group average of $62.73. Both of these statistics indicate a significantly higher level of acuity and intensity of service compared to the Peer Group.

The calculation of the Nursing Salary component of the exception request is included in Exhibit 6.

### B. EMPLOYEE HEALTH AND WELFARE

The Provider is requesting an exception amounting to $3.66 per patient day based on atypical direct nursing salary costs. The calculation of this exception amount is included in Exhibit 5.

### C. ADMINISTRATIVE AND GENERAL

The Provider is requesting an exception amounting to $4.81 per patient day based on atypical direct nursing salary costs. The calculation of this exception amount is included in Exhibit 5.

### D. LAUNDRY

The Provider is requesting an exception amounting to $0.89 per patient day based on a high proportion of incontinent patients. The information contained in the A.D.L. sample (Exhibit 14) indicates that 40.0% of the SNF patients were incontinent. The exception amount requested is the excess of the Provider's per diem cost over the Peer Group per diem cost.

### E. HOUSEKEEPING

The Provider is requesting an exception amounting to $6.81 per patient day, based on a significantly lower than average length of stay of 18.23 days compared to 132.34 days for the Peer Group. In addition, the A.D.L. sample (Exhibit 14) indicated that 40.0% of the SNF patients were incontinent. The exception amount requested is the excess of the Provider's per diem cost over the Peer Group per diem cost.

AUG 11'97 11:40 FR VE L P HOU 34W 2346   713 758 2346 TO HF LTH IND       P.13

ceived Aug 11 10:57AM (06:24) on   line [10] for 'JE1042'        WORKSRV3 printed JE133EEF1B44CD4 on Aug 11 10:04AM * Pg 13/14
08-11-1997 09:57AM   FROM SCH-ACCTG                             TO        917136155042   P.13

Page 4

F. NURSING ADMINISTRATION

The Provider is requesting an exception amounting to $2.98 per patient day based on atypical nursing costs. The calculation of this exception amount is included in Exhibit 5.

G. SOCIAL SERVICE

The Provider is requesting an exception amounting to $3.86 per patient day based on a demonstrated lower than average length of stay and higher than average Medicare utilization. The Provider's average length of stay was 18.23 days with 87.97% Medicare utilization compared to 132.34 days and 52.39% Medicare utilization for the Peer Group. The exception amount requested is the excess of the Provider's per diem cost over the Peer Group per diem cost.

We appreciate your attention to this request, and trust that the foregoing and enclosed information will provide you with the information necessary to evaluate the request. Please address any questions or additional documentation requirements to me at our Alton office and I will coordinate as necessary with Saint Anthony's Health Center.

Yours very truly,

C.J. SCHLOSSER & COMPANY, L.L.C.

J. Terry Dooling, Partner

JTD/jr

Encl.

94

AUG 11'97 11:40 FR UE LLP HOU 34W 2346  713 758 2346 TO HEALTH IND    P.14

received Aug 11 10:57AM (06:24) on  line [10] for 'JE1042'        WORKSRV3 printed JE133EEF1044C04 on Aug 11 10:04AM * Pg 14/14
          08-11-1997 09:58AM    FROM  SGT-ACCTG              TO        917136155842   P.14

SAINT ANTHONY'S HEALTH CENTER                    EXHIBIT 7
PROVIDER NUMBER: 14-5314
SNF EXCEPTION REQUEST
FYE: 12/31/91

**REQUESTED PER DIEM EXCEPTION FOR ATYPICAL COSTS**

WORKSHEET D-1 LINE 76: INPATIENT ROUTINE COSTS        $1,072,295

MEDICARE DAYS                                              5,533

ROUTINE SERVICE COST PER DIEM                           $193.80

ROUTINE SERVICE COST PER DIEM LIMIT                     $134.75

(1) ACTUAL COSTS IN EXCESS OF COST LIMIT                 $59.05


(2) CALCULATED ADJUSTMENT - ATYPICAL COSTS               $45.84
            (EXHIBIT 6)

(3) DIFFERENCE BETWEEN MEAN COSTS & ACTUAL COSTS         $59.05
            (EXHIBIT 3)


REQUESTED PER DIEM EXCEPTION:                           $45.84
Lessor of (1), (2), or (3)

TOTAL EXCEPTION REQUESTED:

                    Medicare Days                        5,533
                    Exception per diem                  $45.84

                    EXCEPTION AMOUNT                   $253,645.

                                                    $110,273  27% >
                                                              mean

TOTAL P.14

95

RECEIVED

OCT - 3 2000

PROVIDER REIMBURSEMENT
REVIEW BOARD

# BEFORE THE PROVIDER REIMBURSEMENT REVIEW BOARD

## SAINT ANTHONY'S HEALTH CENTER -- SNF

### PROVIDER NO. 14-5314
### PRRB CASE NO. 98-0463
### FYE  DECEMBER 31, 1992

### PROVIDER'S REVISED POSITION PAPER
### FOR SUBMISSION TO
### THE PROVIDER REIMBURSEMENT REVIEW BOARD

SUBMITTED BY:

Cindy H. Burnett
VINSON & ELKINS L.L.P.
1001 Fannin Street; Suite 2300
Houston, TX  77002-6760
(713) 758-4558

October 2, 2000

101

# TABLE OF CONTENTS

I.   Issue Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     2.1     Identification of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
             2.1-1   The Provider . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
             2.1-2   The Intermediary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     2.2     Medicare Reimbursement Controversy . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. Argument and Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     3.1     The Provider Is Not Limited To the Incremental Decrease In the Revised NPR,
             Because the Provider's Exception Request Was Timely Filed . . . . . . . . . . . . 4
             3.1-1   42 C.F.R. § 405.1889 -- Appeals of Revised NPRs . . . . . . . . . . . . . . 5
             3.1-2   42 C.F.R. § 413.30(c) - Exception Requests to Cost Limits . . . . . . . . 7
     3.2     In the Alternative, Because 42 C.F.R. § 413.30(c) Does Not Distinguish Between
             Initial and Revised NPRs, the Exception Request Should Be Accepted
             Regardless of Whether the Revised NPR Included the Specific Issues Being
             Appealed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     3.3     HCFA's Failure to Issue Guidance on Exception Requests Until July 1994
             Supports Ruling In Favor of the Provider . . . . . . . . . . . . . . . . . . . . . . . . 11

IV.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## I.    Issue Presented

Whether the Intermediary's or the Health Care Financing Administration's ("HCFA") denial of the Provider's exception request to the SNF routine service cost limits under 42 C.F.R. § 413.30(f) was proper?

## II.    Statement of the Facts

### 2.1    Identification of the Parties

#### 2.1-1    The Provider

The Provider is Saint Anthony's Health Center (the "Provider"), a hospital-based skilled nursing facility ("SNF") located in Alton, Illinois (Provider No. 14-5314).

#### 2.1-2    The Intermediary

AdminaStar Federal is the Intermediary.

### 2.2    Medicare Reimbursement Controversy

The Intermediary issued its first notice of program reimbursement ("NPR") for the Provider's fiscal year ending ("FYE") December 31, 1992, on April 11, 1994.  (Provider's Exhibit A).  On August 29, 1996, the Intermediary reopened the Provider's FYE 1992 cost report to revise the Provider's FYE 1992 cost limit.  (Provider's Exhibit B).  The Intermediary reopened the Provider's cost report to adjust the Provider's SNF routine cost limit.  SNF cost limits are based upon reported costs, but are adjusted for actual or projected cost increases by applying the SNF market basket index.  This market basket index is used to adjust the limits to reflect cost increases occurring

1

between the time of the cost reporting periods represented in the data collection to the time when the limits are applied. However, the market basket index itself cannot be determined until the cost reporting period to which the limits apply has already passed. Thus, when HCFA calculates cost limits it uses an estimated market basket index which is based upon forecasts of economic trends. If these economic forecasts prove erroneous, HCFA retroactively adjusts cost limits to reflect the actual index. Specifically, if the market basket index for a fiscal year differs from the estimated rate of change by at least 0.3 of one percentage point, HCFA will adjust the limits.

Thus, in FYE 1992, the Provider's cost limit was merely provisional because it was based on an estimate of the market basket index. In 1996, the limits were finalized when HCFA determined that the estimated market basket index for fiscal year 1992 had exceeded actual market basket figures by more than .3 of one percentage point. Pursuant to its rules on the market basket index, HCFA therefore instructed intermediaries to retroactively adjust cost limits to include the actual market basket index figures. *See* 56 Fed. Reg. 13317, 13319 (Apr. 1 1991).

In the revised NPR, issued October 31, 1996, the Intermediary decreased the SNF cost limit to incorporate the actual market basket figures. (Provider's Exhibit B). The Intermediary calculated the Provider's routine cost limit ("RCL") per diem to be $139.80, a $6.26 decrease from the prior $146.06 per diem limit. Pursuant to 42 C.F.R. § 413.30(f), the Provider filed a timely request for an exception to the SNF routine cost limits on April 23, 1997. The Provider alleged and documented that the acuity level of its patient population was significantly higher than the applicable Peer Group.

2

As such, the Provider requested a per diem exception of $44.83, and a total exception amount of $241,212 (based on 5,381 Medicare days). *See* Provider's Exhibit C.

The Intermediary notified the Provider by letter dated July 18, 1997, that HCFA determined that the Provider was not entitled to the exception request. (Provider's Exhibit D). The Intermediary stated that "[i]t is HCFA's policy that is [sic] an exception is submitted after 180 days of the original NPR but within 180 days of the revised NPR, an exception may only be granted for the incremental increase in the amount that the provider's cost exceeds its revised cost limit." The Provider then obtained a HCFA letter dated October 14, 1997 indicating that the Provider was granted a partial exception, essentially that amount which was decreased in the revised NPR and timely addressed by the Provider's exception request. (Provider's Exhibit E) However, the Provider believes that it is entitled to the full amount of its exception request. Accordingly, the Provider timely appealed the Intermediary's denial of the entire exception request through its Request for Hearing filed December 15, 1997.

### III. Argument and Analysis

The Provider believes that it is entitled to the full amount of its exception request filed April 25, 1997. Section 413.30(f) of the Medicare regulations allows for a provider's SNF cost limit to be adjusted upward if the provider can document that, *inter alia*, its actual costs of items or services exceeds the applicable limit because the items or services are atypical in nature and scope compared to the items and services generally provided by similarly classified providers, and because of special

needs of the patients.   42 C.F.R. § 413.30(f)(1); *see also* Provider Reimbursement Manual ("Manual") § 2534.  The Provider filed a timely exception request seeking an exception of $44.83 to its per diem limit.  The Provider supported this exception with documentation which HCFA ultimately accepted in its granting of an exception for the incremental decrease between the per diem limit applied in the initial NPR for FYE 1992 and the revised NPR.  Thus, the credibility of the supporting documentation and appropriateness of the exception request is not at issue.  Rather, the issue is merely a procedural one which should not prevent the Provider from receiving the exception for which it qualifies and to which it is therefore entitled.

### 3.1   The Provider Is Not Limited To the Incremental Decrease In the Revised NPR, Because the Provider's Exception Request Was Timely Filed

The Provider's exception request is governed by 42 C.F.R. § 413.30.  This section provides that a provider that requests an exception to the SNF cost limits must make such request to its fiscal intermediary "within 180 days of the date on the intermediary's notice of program of reimbursement." 42 C.F.R. § 413.30(c) (1992).

Although Section 413.30(c) makes no distinction between initial or revised NPRs, the section has been interpreted by some tribunals as incorporating restrictions spelled out in 42 C.F.R. § 405.1889. *See, e.g., St. Joseph Medical Center*, PRRB Dec. No. 98-D27, Medicare & Medicaid

4

Guide (CCH) ¶ 46,070. Section 405.1889, in turn, limits review of a revised NPR to only those issues specifically affected by the revised NPR.[1]

Assuming that Section 413.30(c) includes the restrictions outlined in 42 C.F.R. § 405.1889 (which the Provider disputes, *see* Section 3.2 below), the Provider meets the jurisdictional requirements for bringing its case before the PRRB. First, the revised NPR issued in this case specifically included the issue the Provider now appeals -- the RCLs that applied to the Provider's SNF. Second, because the cost limit included in the initial NPR were only provisional, the provisions of Section 413.30(c) became effective as of the date of the revised NPR, triggering the right to request an exception from the cost limit imposed by HCFA.

### 3.1-1    42 C.F.R. § 405.1889 -- Appeals of Revised NPRs

First, the Provider may appeal its revised NPR under 42 C.F.R. § 405.1889, because the revised NPR included the very issue the Provider seeks to appeal -- its RCLs. Thus, the Provider's case is distinguishable from cases where a provider was not allowed to contest its cost limits on the basis of a revised NPR. For example, in *French Hospital Medical Center v. Shalala*, 89 F.3d 1411 (9th Cir. 1996), French Hospital sought an exception to its cost limit on the basis of a revised NPR

---

[1]Section 405.1889 reads:

> Where a revision is made in a determination or decision on the amount of program reimbursement after such determination or decision has been reopened as provided in Section 405.1885, such revision shall be considered a separate and distinct determination or decision to which the provisions of Sections 405.1811, 405.1835, 405.1875 and 405.1877 are applicable. (See Section 405.1801(c) for applicable effective dates.)

5

adjusting malpractice insurance costs.   The Ninth Circuit refused to grant the exception request, stating it was untimely because:

> the intermediary reopened the hospital's cost report for the sole purpose of applying the RCL to malpractice insurance costs. *Neither the RCL, nor components of the RCL, were at issue in the revised NPR.   Furthermore, the revised NPR did not alter the RCL or any of its components.* Only the RCL's application to malpractice insurance costs was at issue in the revised NPR.

*Id.* at 1420 (emphasis added).  The Court clearly implies that a revision to the RCL or any of its components would reopen the RCL issue and allow the provider to request and receive an exception to its RCLs. This implication is further evidenced by the Court's statement that the PRRB may review all matters the fiscal intermediary had reconsidered upon reopening the cost report, whether or not it ultimately adjusted them in its revised NPR. *Id.* Clearly, the Ninth Circuit Court believes that providers should be allowed to appeal from revised NPRs any issue reviewed or revised by the intermediary pursuant to the reopening that led to the revised NPR.

Another Ninth Circuit case, *Anaheim Memorial Hospital v. Shalala*, 130 F.3d 845 (9th Cir. 1997), provides that there is a distinction between an application of the RCL and a reconsideration of it. In this case, the intermediary reopened the provider's cost report to adjust malpractice costs, similar to the basis for the reopening in *French Hospital*. Pursuant to this reopening and a revised NPR, the provider appealed the method the intermediary used to calculate one of the components used to calculate the RCLs. Summarizing *French Hospital*, the Court stated that a reopening was issue-specific, and the RCL was not the issue that was reopened in this case and accordingly, the provider could not appeal the RCL issue from the revised NPR. *Anaheim Memorial*, 130 F.3d at

6

846. *See also St. Joseph Medical Center*, PRRB Dec. No. 98-D27 Medicare & Medicaid Guide (CCH) ¶ 46,070 (holding that a revised NPR issued to adjust labor and delivery costs did not provide a basis for an exception request to the RCL because the RCL were not at issue in the revised NPR).

This case is clearly distinguishable from *French Hospital, Anaheim Memorial,* and *St. Joseph Medical Center*, since the components of the RCL *are* at issue. The SNF cost limits cannot be determined without including the market basket index since the market basket index is one of the components used to calculate the RCL. *See* 56 Fed. Reg. 13317 (Apr. 1, 1991) ("we will continue to *base* cost limits on reported costs, adjusted for actual and projected cost increased by applying the *SNF market basket index.*" (emphasis added)); *Anaheim Memorial Hosp. v. Shalala*, 130 F.3d at 847 ("The RCL is derived from a number of factors including: . . . (2) a market basket index of goods and services purchased by hospitals"). Because the market basket index is one component of the RCL, when HCFA finalized the FYE 1992 market basket in 1996, it was revising the limits applied to SNFs. A request for an exception to this limit could then be pursued through the normal exception process outlined in 42 C.F.R. § 413.30(c). In contrast, in *French Hospital, Anaheim Memorial* or *St. Joseph*, the Intermediary was not revising the *limits*, it was revising the costs to which those limits applied. Because the Intermediary has placed the RCLs at issue in the revised NPR, the Provider should be entitled to pursue its exception request to those RCLs.

### 3.1-2   42 C.F.R. § 413.30(c) - Exception Requests to Cost Limits

Second, the Provider may appeal its revised NPR under 42 C.F.R. § 413.30(c), because it was not until 1996 that the routine cost limits were finalized. As such the cost limits were truly not

"imposed" until the market basket index had been finalized and used to calculate the actual, not the estimated, limits. In 1994, when the Intermediary issued the Provider's initial NPR, the RCLs were based only upon estimated market basket figures. As such, these cost limits were provisional -- and could be adjusted in the event that actual market basket rates exceeded estimated amounts. In the Federal Register, HCFA explained:

> The market basket index also provides for adjustments in the limits if our forecasts of economic trends prove erroneous. For cost reporting periods on or after May 1, 1986, if the final rate of change in the market basket index for a year differs from the estimated rate of change by at least 0.3 of one percentage point, the limits will be adjusted. We will advise the Medicare intermediaries to use the actual rate to adjust each SNF's limit retroactively *at final settlement of the SNF's cost report*.

51 Fed. Reg. 11253, 11254 (April 1, 1986) (emphasis added). This language demonstrates that final settlement of the cost report does not occur until the actual rate has been calculated, and the SNF's limit adjusted, if necessary.

Because the market basket did exceed estimated figures, HCFA directed intermediaries to retroactively adjust cost limits for fiscal year 1992. These limits were finally adjusted in 1996, and therefore, the Provider did not receive notice of the actual RCL that would be imposed for FYE 1992 until October 31, 1996 when the revised NPR was issued. As a result, because the revised NPR included the actual RCL, the Provider timely and properly requested an exception to this RCL within 180 days of the revised NPR.

8

**3.2     In the Alternative, Because 42 C.F.R. § 413.30(c) Does Not Distinguish Between Initial and Revised NPRs, the Exception Request Should Be Accepted Regardless of Whether the Revised NPR Included the Specific Issues Being Appealed**

42 C.F.R. § 413.30(c) does not distinguish between initial and revised NPRs, stating only that exception requests be made within "180 days of the date on the intermediary's notice of program reimbursement." Although some courts have interpreted 42 C.F.R. § 413.30(c) as incorporating the restrictions of 42 C.F.R. § 405.1889, there are several reasons why these sections should be viewed as separate.

First, the regulations at 42 C.F.R. § 405.1889 govern appeals to NPRs that are made to the *Board.* In contrast, exception requests for RCLs are made to the fiscal intermediary, and not to the Board. 42 C.F.R. § 413.30(c). Indeed, the HCFA Administrator made this painfully clear in *Hurley Medical Center*, HCFA Adm'r Dec., Medicare & Medicaid Guide (CCH) ¶ 80,058 (Aug. 7, 1998). In that case, Hurley Medical Center failed to make its TEFRA exception request to the intermediary (in accordance with the regulations),[2] but mistakenly made the request to the PRRB, sending a carbon copy to the intermediary. The Board ruled in Hurley's favor, stating that the letter to the Board was adequate notice to the intermediary of the exception request and that requiring the request to be sent to the intermediary elevated form over substance. However, the HCFA Administrator overturned the Board's decision, stating:

> [T]he regulation clearly states that '[t]he hospital's request must be made to its fiscal
> intermediary no later than 180 days from the date on the intermediary's notice of

---

[2] 42 C.F.R. § 413.40(e) governs requests for TEFRA exceptions.

9

program reimbursement. . . .' The record demonstrates that the Provider did not comply with the requirements stated at 42 C.F.R. § 413.40(e) because the Provider did not make a request to the Intermediary within the 180-day time frame.

*Id.* at 200,264.

*Hurley* stands for the principle that the Administrator will read the provisions under Section 413 of the regulations as distinct from those in Section 405 *et. seq.* when it behooves her to do so. Moreover, the opinion embraces literalist interpretations of regulations. The Board should follow the Administrator's example and apply a literal interpretation to the language of Section 413.30(c). Since the regulation uses only the phrase "notice of program reimbursement" and does not distinguish between initial and revised NPRs, a literal interpretation of the regulation would allow exception requests to be made to both initial *and* revised NPRs.

The Provider understands that this issue has been addressed in several cases. *See, e.g., Care Unit Hospital of Dallas/Forth Worth*, HCFA Adm'r Dec., Medicare & Medicaid Guide (CCH) ¶ 43,510 (May 5, 1995) (Section 413.40(e) should be read together with Section 405.1889); *Foothill Presbyterian Hosp. v. Shalala*, 152 F.3d 1132 (9th Cir. 1998), Medicare & Medicaid Guide (CCH) ¶ 300,028 (harmonizing Section 413.40(e) with Sections 405.1885(a) and 405.1889). However, these cases were issued prior to the HCFA Administrator's literalist interpretations announced in *Hurley*. Moreover, none of those cases discussed the procedural differences between exception requests, which are made to the intermediary, and appeals of the costs allowed in the final NPR, which are made to the Board. Thus, the Board can distinguish those cases, and rule as it previously did in *Foothill*, PRRB Dec. No. 95-D28, Medicare & Medicaid Guide (CCH) ¶ 43,228 and *Care*

*Unit*, PRRB Dec. No. 95-D26, Medicare & Medicaid Guide (CCH) ¶ 43,410, that a distinction between revised and final NPRs in the context of exception requests is not supported in the regulations.

Second, the strictures of Section 405.1889 should not apply because the policy considerations for exception requests are different from the policy considerations applicable to appeals of cost adjustments. Exception requests involve limits that are applied to *all* costs incurred by a provider. Thus, an adjustment of allowable costs affects whether a provider wishes to seek an exception. In contrast, appeals of *cost* adjustments involve discrete categories of claimed costs. When an intermediary reopens the cost report to adjust discrete cost centers, there is no effect on the costs included in other discrete cost centers. As cost limits are dependent upon all reimbursement, any change in allowable costs *does* influence how the cost limit applies.

### 3.3    HCFA's Failure to Issue Guidance on Exception Requests Until July 1994 Supports Ruling In Favor of the Provider

Finally, additional policy considerations should be made in this case, because prior to mid-1994, there was little guidance on how providers could make their exception requests. Even if providers wanted to make exception requests there was no mechanism for doing so. Prior to mid-1994, there were no provisions in either the Manual or the regulations explaining how a provider would apply for an exception on the basis of atypical costs. This deficiency was explicitly recognized in a report issued by the GAO, where the GAO stated:

> Initially, HCFA did not have detailed instructions for the exception request process. In July 1994, HCFA published Transmittal 378 to assist SNFs in preparing and submitting exception requests and defining intermediaries' responsibilities.

11

GAO, <u>Approval Process for Certain Services May Result in Higher Medicare Costs</u>, (GAO/HEHS-97-18) (Dec. 1996) at p. 51. Indeed, prior to 1994, the only Manual provision relating to atypical costs discussed adjustments which were based upon the "atypical costs resulting from the operation of an approved nursing school." Manual § 2527.1 (declared obsolete by Transmittal No. 378, July 1994).[3] There were no manual provisions on exception requests for atypical costs in general. Thus, providers received little to no guidance on when and how they should make their exception requests. The fact that limits were pending, subject to finalization of the market basket index, only added to this confusion. Because providers were given little guidance on making exception requests, and because requests were pending subject to changes in the market basket, providers could not be sure when exception requests should be made -- at the initial or the revised NPR. Thus, the Provider could not have been expected to anticipate the method for contesting an RCL that would later be explained in Transmittal No. 378.

---

[3] Interestingly, the Intermediary's draft position paper cites the Intermediary Manual § 2531 in its brief (Int. Br. Part III, Part A, paragraph 1), stating that the "Provider failed to file an exception request for the Skilled Nursing Facility (SNF) cost limit per diem within the 180 days requirements stated in HIM 15 Part I Section 2531.1A2." However, the Provider could not have used the directions included in Section 2531 when its original NPR was issued (on April 11, 1994) since Section 2531 was not published until July, 1994.

## IV. Conclusion

In conclusion, the Provider should be granted an exception to the SNF routine cost limits.

Respectfully submitted,

Cindy H. Burnett
VINSON & ELKINS L.L.P.
2300 First City Tower
1001 Fannin
Houston, Texas  77002-6760
(713) 758-4558

Provider Representative

CH1252: SAI121/67000
Houston:339142.1

115



Blue Cross
Blue Shield
of Illinois



**Medicare**

Provider Reimbursement & Auditing
2151 West White Oaks Drive
Springfield, Illinois 62704
(217) 698-5200
(217) 698-8703 (FAX)

Mr. Michael Nelson
Senior Vice President of Finance
St. Anthony's Hospital/SNF/HHA
St. Anthony's Way
Alton, IL 62002

CORRECTED

Notice of Program Reimbursement

Provider Numbers: 14-0052, 14-5314
14-7113
Cost Report Period: 1/1/92-12/31/92

Dear Mr. Nelson:

Enclosed is your copy of the Hospital Multiple-Facility Statement of Reimbursable Cost. Included in the Report are the following:

1. Adjustment Reports
2. Cost Reports as reviewed and revised
3. Auditor's Certification and Notes pertinent to the Cost Reports
4. Exit Conference Minutes including a summary of unresolved items
5. Comparative Schedule of Total Medicare Settlement

This report should be retained in your permanent files along with similar types of required reports and returns.

As a result of our review of the Multiple-Facility Statement of Reimbursable Cost for the above period, our findings are as follows:

| Provider #14-0052 | Claimed | Revised |
|---|---|---|
| Total Allowable Cost | $48,007,082 | $47,271,117 |
| Total Medicare Reimbursable Cost | 15,267,205 | 15,571,495 |
| Total Medicare Net Settlement* | (445,797) | (267,448) |
| Provider #14-5314 | Claimed | Revised |
| Total Allowable Cost | $48,007,082 | $47,271,117 |
| Total Medicare Reimbursable Cost | 1,640,194 | 1,493,297 |
| Total Medicare Net Settlement* | 113,063 | (27,439) |

*Due Provider/(Program)

GC 676C (Eff. 7/92)
OMB 0938-0212

Health Care Service Corporation, a Mutual Legal Reserve Company
(Blue Cross and Blue Shield of Illinois)

Provider #14-7113

| | | |
|---|---|---|
| Total Allowable Cost | $48,007,082 | $47,271,117 |
| Total Medicare Reimbursable Cost | 1,111,152 | 1,102,010 |
| Total Medicare Net Settlement* | (243,978) | (136,925) |

*Due Provider/(Program)

In accordance with Public Law 97-248 interest will be assessed on the amount due HCFA unless full payment is made within 30 days from the date of this Notice. Interest will be assessed for each 30 day period (or Less) that payment is delayed. If you are unable to refund the entire amount at this time, advise this office immediately so that we may determine if you are eligible for a repayment schedule. Interest on any repayment schedule would run from the date of this letter. If an overpayment is repaid in installments or recouped by withholding from several payments due the provider -- (1) each payment will be applied first to accrued interest and (2) then to the principal. With respect to repayment schedules, interest will be assessed at the higher of the private consumer rate (PCR) or the current value of funds (CVF) rate, per Medicare Regulation 42 Code of Federal Regulation, 405.376. The interest rate applicable for this determination 13.25 percent. This interest rate will remain unchanged for the entire repayment period.

This notice of amount of Medicare Program Reimbursement for the Fiscal Year indicated above is in conformance with Regulation Section 405.1803. Please be advised that our determination is subject to revision during the three (3) year period following the date of this notice by the findings of an audit, where applicable.

This notice of program reimbursement is applicable to the current year's cost report determination. The adjustments to this Cost Report, which produce a difference between the Intermediary's determination and your initial Cost Report, are explained in the Adjustment Report. If you have any further questions concerning the nature of these adjustments or the reasons for them, please contact this office.

GC 676C (Eff. 7/92)
OMB 0938-0212                    -2-

119

NOTICE OF AMOUNT OF MEDICARE PROGRAM REIMBURSEMENT
APPEAL RIGHTS/FILING INSTRUCTIONS

This NPR is the intermediary's base determination for purposes of appeal rights. We encourage you to discuss with us any disagreement to adjustments effected by this NPR. However, if the dispute cannot be resolved to your satisfaction, you may file an appeal to our determination with either the Intermediary or the Provider Reimbursement Review Board (PRRB) depending on the amount in controversy. Appeal requests must be in writing and be filed within 180 days from the date of this NPR. Filing requirements are summarized below:

|  | Intermediary Appeals | PRRB Appeals |
|---|---|---|
| References: | 42 CFR 405.1809-<br>405.1833 | 42 CFR 405.1835-<br>405.1890 |
|  | HCFA Pub. 15-1<br>2910 - 2918 | HCFA Pub. 15-1<br>2920 - 2929 |

Amount in Controversy:

Periods Ending Before 6/30/73   $1,000 minimum

Period Ending After 6/30/73

| Individual Providers | $1,000 - $10,000 | Over $10,000 |
|---|---|---|
| Groups (Common Issues) | No provision for group appeals of unrelated providers | $50,000 or more, in aggregate;no mini- mum for individual providers |
| Groups (Common Ownership) | $1,000 - $10,000 for individual Providers; less than $50,000 in aggregate | Same as above |

| Send Request to: | Intermediary Hearing Officer Reimbursement and Provider Appeals Department Blue Cross Blue Shield Assn. 676 North St. Clair Street Chicago, Illinois 60611 | Chairman Provider Reimburse- ment Review Board Room 104 Professional Bldg. 6660 Security Blvd. Baltimore, MD 21207 |
|---|---|---|
|  | Copy: Blue Cross Plan Appeals Rep. | Copy: Blue Cross Plan Appeals Rep. & PRRB Appeals Coordinator Blue Cross Blue Shield Assn. |

| For Information on Filing Call: | Joan Baker Blue Cross Blue Shield (312) 440-5836 | John Bader PRRB (301) 966-2053 |
|---|---|---|

GC 676  (REV. 7/92)                                3

The appeal requests for either an Intermediary or a PRRB appeal must include the following:

1) identification of items in dispute by adjustment number, amount, and description,

2) reasons for disagreement with the Intermediary's determination on these items, and

3) 1 copy of the NPR, or determination disputed and adjustment report (pertinent portion).

Intermediary appeal requests must include, in addition to the items listed above, an estimate of the reimbursement in controversy for each item appealed.

Finally in accordance with the provisions of Provider Reimbursement Manual, Part I Section 2425.1, subsequent cost reports must be filed excluding those nonallowable costs which have been removed from the Final Settlement pertaining to this Notice of Program Reimbursement unless those adjustments are being appealed in conformity with the conditions specified in Regulations No. 5, Subpart R, Sections 405.1801 FF.

Those items which are adjusted in this final settlement and have appeared in previous settlements for which no appeal has commenced are as follows:

AJE #   6          RCE Amounts                          (cost item)

AJE # _____    _____    (cost item)

AJE # _____    _____    (cost item)

AJE # _____    _____    (cost item)

Without a timely appeal in process on the above adjustments, future inclusion of the above nonallowable costs could result in referral to the Office of Health Financing for consideration under the Civil Monetary Penalty Law provisions.

Sincerely,

Thomas M. Curtis
Manager
Provider Reimbursement & Auditing

Enclosure

GC 676C (Eff. 7/92)
OMB 0938-0212                          4

121

**Blue Cross**
**Blue Shield**
of Illinois



·Medicare

Provider Reimbursement & Auditing
2151 West White Oaks Drive
Springfield, Illinois 62704

(217) 698-5200
(217) 698-8703 (FAX)

AUG 0 1 1994

Mr. Michael Nelson
Senior Vice President of Finance
St. Anthony's Hospital/SNF/HHA
St. Anthony's Way
Alton, IL 62002

<u>Notice of Program Reimbursement</u>

Provider Numbers: 14-0052, 14-5314
14-7113
Cost Report Period: 1/1/92-12/31/92

Dear Mr. Nelson:

Enclosed is your copy of the Hospital <u>Multiple-Facility Statement</u>
<u>of Reimbursable Cost</u>. Included in the Report are the following:

1. Adjustment Reports
2. Cost Reports as reviewed and revised
3. Auditor's Certification and Notes pertinent to the Cost
   Reports
4. Exit Conference Minutes including a summary of unresolved
   items
5. Comparative Schedule of Total Medicare Settlement

This report should be retained in your permanent files along with
similar types of required reports and returns.

As a result of our review of the Multiple-Facility Statement of
Reimbursable Cost for the above period, our findings are as
follows:

| <u>Provider #14-0052</u> | <u>Claimed</u> | <u>Revised</u> |
|---|---|---|
| Total Allowable Cost | $48,007,082 | $47,271,117 |
| Total Medicare Reimbursable Cost | 15,267,205 | 15,571,495 |
| Total Medicare Net Settlement* | 445,797 | (267,448) |
| <u>Provider #14-5314</u> | <u>Claimed</u> | <u>Revised</u> |
| Total Allowable Cost | $48,007,082 | $47,271,117 |
| Total Medicare Reimbursable Cost | 1,640,194 | 1,493,297 |
| Total Medicare Net Settlement* | 113,063 | (27,439) |

*Due Provider/(Program)

GC 676C (Eff. 7/92)
OMB 0938-0212

Health Care Service Corporation, a Mutual Legal Reserve Company
(Blue Cross and Blue Shield of Illinois)

122

Provider #14-7113

| | | |
|---|---|---|
| Total Allowable Cost | $48,007,082 | $47,271,117 |
| Total Medicare Reimbursable Cost | 1,111,152 | 1,102,010 |
| Total Medicare Net Settlement* | (243,978) | (136,925) |

*Due Provider/(Program)

In accordance with Public Law 97-248 interest will be assessed on the amount due HCFA unless full payment is made within 30 days from the date of this Notice. Interest will be assessed for each 30 day period (or Less) that payment is delayed. If you are unable to refund the entire amount at this time, advise this office immediately so that we may determine if you are eligible for a repayment schedule. Interest on any repayment schedule would run from the date of this letter. If an overpayment is repaid in installments or recouped by withholding from several payments due the provider -- (1) each payment will be applied first to accrued interest and (2) then to the principal. With respect to repayment schedules, interest will be assessed at the higher of the private consumer rate (PCR) or the current value of funds (CVF) rate, per Medicare Regulation 42 Code of Federal Regulation, 405.376. The interest rate applicable for this determination 13.25 percent. This interest rate will remain unchanged for the entire repayment period.

This notice of amount of Medicare Program Reimbursement for the Fiscal Year indicated above is in conformance with Regulation Section 405.1803. Please be advised that our determination is subject to revision during the three (3) year period following the date of this notice by the findings of an audit, where applicable.

This notice of program reimbursement is applicable to the current year's cost report determination. The adjustments to this Cost Report, which produce a difference between the Intermediary's determination and your initial Cost Report, are explained in the Adjustment Report. If you have any further questions concerning the nature of these adjustments or the reasons for them, please contact this office.

GC 676C (Eff. 7/92)
OMB 0938-0212                    -2-

123

NOTICE OF AMOUNT OF MEDICARE PROGRAM REIMBURSEMENT
APPEAL RIGHTS/FILING INSTRUCTIONS

This NPR is the intermediary's base determination for purposes of appeal rights. We encourage you to discuss with us any disagreement to adjustments effected by this NPR. However, if the dispute cannot be resolved to your satisfaction, you may file an appeal to our determination with either the Intermediary or the Provider Reimbursement Review Board (PRRB) depending on the amount in controversy. Appeal requests must be in writing and be filed within 180 days from the date of this NPR. Filing requirements are summarized below:

|  | Intermediary Appeals | PRRB Appeals |
|---|---|---|
| References: | 42 CFR 405.1809- 405.1833 | 42 CFR 405.1835- 405.1890 |
|  | HCFA Pub. 15-1 2910 - 2918 | HCFA Pub. 15-1 2920 - 2929 |

Amount in Controversy:

Periods Ending Before 6/30/73    $1,000 minimum

Period Ending After 6/30/73

| | Intermediary Appeals | PRRB Appeals |
|---|---|---|
| Individual Providers | $1,000 - $10,000 | Over $10,000 |
| Groups (Common Issues) | No provision for group appeals of unrelated providers | $50,000 or more, in aggregate;no mini-mum for individual providers |
| Groups (Common Ownership) | $1,000 - $10,000 for individual Providers; less than $50,000 in aggregate | Same as above |

| Send Request to: | Intermediary Hearing Officer Reimbursement and Provider Appeals Department Blue Cross Blue Shield Assn. 676 North St. Clair Street Chicago, Illinois 60611 | Chairman Provider Reimburse-ment Review Board Room 104 Professional Bldg. 6660 Security Blvd. Baltimore, MD 21207 |
|---|---|---|
| | Copy: Blue Cross Plan Appeals Rep. | Copy: Blue Cross Plan Appeals Rep. & PRRB Appeals Coordinator Blue Cross Blue Shield Assn. |

| For Information on Filing Call: | Joan Baker Blue Cross Blue Shield (312) 440-5836 | John Bader PRRB (301) 966-2053 |
|---|---|---|

GC 676  (REV. 7/92)                    3

124

The appeal requests for either an Intermediary or a PRRB appeal must include the following:

1) identification of items in dispute by adjustment number, amount, and description,

2) reasons for disagreement with the Intermediary's determination on these items, and

3) 1 copy of the NPR, or determination disputed and adjustment report (pertinent portion).

Intermediary appeal requests must include, in addition to the items listed above, an estimate of the reimbursement in controversy for each item appealed.

Finally in accordance with the provisions of Provider Reimbursement Manual, Part I Section 2425.1, subsequent cost reports must be filed excluding those nonallowable costs which have been removed from the Final Settlement pertaining to this Notice of Program Reimbursement unless those adjustments are being appealed in conformity with the conditions specified in Regulations No. 5, Subpart R, Sections 405.1801 FF.

Those items which are adjusted in this final settlement and have appeared in previous settlements for which no appeal has commenced are as follows:

AJE # __6__     _____RCE Amounts_____     (cost item)

AJE # _____     _____     (cost item)

AJE # _____     _____     (cost item)

AJE # _____     _____     (cost item)

Without a timely appeal in process on the above adjustments, future inclusion of the above nonallowable costs could result in referral to the Office of Health Financing for consideration under the Civil Monetary Penalty Law provisions.

Sincerely,

Thomas M. Curtis
Manager
Provider Reimbursement & Auditing

Enclosure

GC 676C (Eff. 7/92)
OMB 0938-0212                    4

125



**Blue Cross**
**Blue Shield**
of Illinois

**Medicare**

Provider Reimbursement & Auditing
2151 West White Oaks Drive
Springfield, Illinois 62704

(217) 698-5200
(217) 698-8703 (FAX)

APR 0 1 1994

Mr. Michael Nelson
Vice President of Finance
St. Anthony's Hospital/SNF/HHA
St. Anthony's Way
Alton, IL 62002

Re:  Provider #14-0052

Dear Mr. Nelson:

During our review it for the period 01/01/91 to 12/31/91 pension
expense was disallowed because they were determined by our auditors
to be non-allowable items.  When we reviewed your cost report for
the period 01/01/92 to 12/31/92 we found the pension    expenses
shown as allowable costs which were disallowed in the prior period:

    Hospital Based Physician RCE limits.

During our last meeting, we advised you pension expense were not
allowable and the reason for the disallowance.  Your further
insistence on including this non-allowable costs in future cost
reports could result in the referral of this situation to the U.S.
Attorney for consideration of criminal and/or civil prosecution.
Should you have any questions, please contact me.

Sincerely,

Thomas M. Curtis
Manager
Provider Reimbursement & Auditing

TMC:kf

GC 683 11/89
OMB 0938-02121

```
************** -COMM.JOURNAL- ********************* DATE 04-04-1994 ****** TIME 11:15AM ** P.1


     MODE = TRANSMISSION                    START=04-04 11:10AM     END=04-04 11:14AM

     NO.    COM   SPEED NO   STATION NAME/      PAGES
                             TELEPHONE NO.

     001    OK    ☎          912176988703       002

                                                -SCH-ACCTG              -

************************************( FAX-200   V2.17)* -     618 463 5643- ***********
```

127

HEALTH CARE SERVICE CORPORATION
PROVIDER REIMBURSEMENT AND AUDITING DIVISION
CHICAGO, SPRINGFIELD, MOLINE, MT. VERNON, ILLINOIS

Provider No.(s) ___14-0052, 14-5314, 14-7113___

Provider Name ____St. Anthony's Hospital/SNF/HHA____

_____Alton, IL 62002_____

Cost Report for Period Ended ____12/31/92____

128

<u>MEDICARE</u>
HEALTH CARE SERVICE CORPORATION
PROVIDER REIMBURSEMENT AND AUDITING DIVISION
Chicago, Springfield, Mt. Vernon, Moline, Illinois

Provider Number:    <u>14-0052</u>        Period Ended:    <u>12/31/92</u>
                    <u>14-5314</u>
                    <u>14-7113</u>

Provider Name:        <u>St. Anthony's Hospital/SNF/HHA</u>

PROVIDER STATEMENT OF REIMBURSABLE COST - PROVIDER COPY

TABLE OF CONTENTS

A.  Revised Final Settlement

B.  Intermediary Report of Provider Reimbursement

    - Notice of Program Reimbursement
    - Medicare Statement of Final Settlement of Reimbursable Cost
      (DB-151A)
    - Comparative Schedules of Total Medicare Settlement
    - Exit Conference Minutes

C.  Cost Report Schedules and Auditor's Certification

D.  Adjustment Report

GC 700.9C Eff. 3/91



**Blue Cross**
**Blue Shield**
of Illinois

**Medicare**

Provider Reimbursement & Auditing
2151 West White Oaks Drive
Springfield, Illinois 62704
(217) 698-5200
(217) 698-8703 (FAX)

## Form of Report on No-Audit of the Medicare Cost Statement

PROVIDER NAME ___St. Anthony's Hospital/SNF/HHA___
PROVIDER NUMBER ___14-0052, 14-5314, 14-7113___
REPORTING PERIOD FROM ___01/01/92___ TO ___12/31/92___

We have reviewed the provider(s) Medicare cost report for the cost
reporting period stated above.

Preparation of the cost report and compliance with Medicare laws,
regulations, and instructions is the responsibility of the
provider(s) management.

We have performed a review of the cost report. The attached
Medicare cost report has been adjusted, where required, for items
of noncompliance discovered during our review, which are listed in
the attached adjustment report.

This report is intended for the information of the provider(s) and
HCFA. This restriction is not intended to limit distribution of
this report, which is a matter of public record, unless otherwise
restricted by applicable law.

Thomas M. Curtis
Manager
Provider Reimbursement & Auditing

APR 0 1 1994
_____
NPR Date

GC 697 Eff. 12/90
OMB 0938-0212

Health Care Service Corporation, a Mutual Legal Reserve Company
(Blue Cross and Blue Shield of Illinois)

130

HEALTH CARE SERVICE CORPORATION
PROVIDER REIMBURSEMENT AND AUDITING DIVISION
CHICAGO, SPRINGFIELD, MT. VERNON, MOLINE, ILLINOIS

<u>MEDICARE STATEMENT OF FINAL SETTLEMENT OF REIMBURSABLE COSTS</u>

_____ Audit  _X_ Review  _____ Reopening(s) 1  2  3  4 _____ /Signature

Provider Name: _St. Anthony's Hospital_

Provider Number: _14-0052_

Cost Report Period Ending: _12/31/92_

|  | Part A | Part B | Total |
|---|---|---|---|
| Final Settlement per Audit (OWED TO) or DUE FROM Provider | $ 39587 | $ 22786 | $ 267448 |

Previous Settlement Transactions
PAID (RECEIVED)

| | Type | Trans. # | Date | | | |
|---|---|---|---|---|---|---|
| 1. | Initial | 2142 | 4/8/93 | (193264) | (252533) | (445797) |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | | | | | | |

Balance Due (Provider) Program  $ (153677)  $ (24672)  $ (178349)

DB 151A Rev. 3/91

HEALTH CARE SERVICE CORPORATION
PROVIDER REIMBURSEMENT AND AUDITING DIVISION
CHICAGO, SPRINGFIELD, MT. VERNON, MOLINE, ILLINOIS

MEDICARE STATEMENT OF FINAL SETTLEMENT OF REIMBURSABLE COSTS

_____ Audit   X  Review _____ Reopening(s) 1  2  3  4 _____
/Signature

Provider Name: _St. Anthony's Hosp. - SNF_

Provider Number: ____14 - 5314____

Cost Report Period Ending: ____12/31/92____

| | Part A | Part B | Total |
|---|---|---|---|
| Final Settlement per Audit (OWED TO) or DUE FROM Provider | $ 27789 | $ (350) | $ 27439 |

Previous Settlement Transactions
PAID (RECEIVED)

| | Type | Trans. # | Date | | | |
|---|---|---|---|---|---|---|
| 1. | Initial | 2144 | 4/8/93 | 113063 | — | 113063 |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | | | | | | |

Balance Due (Provider) Program  $ 140852   $ (350)   $ 140502

DB 151A Rev. 3/91

132

HEALTH CARE SERVICE CORPORATION
PROVIDER REIMBURSEMENT AND AUDITING DIVISION
CHICAGO, SPRINGFIELD, MT. VERNON, MOLINE, ILLINOIS

MEDICARE STATEMENT OF FINAL SETTLEMENT OF REIMBURSABLE COSTS

_____ Audit __X__ Review _____ Reopening(s) 1  2  3  4 _____
                                                            Signature

Provider Name: _ ST. Anthony's Hosp. – HHA _____

Provider Number: ___ 14 – 7113 _____

Cost Report Period Ending: ___ 12/31/92 _____

|                                                    | Part A | Part B | Total |
|----------------------------------------------------|--------|--------|-------|
| Final Settlement per Audit (OWED TO) or DUE FROM Provider | $ 134047 | $ 2878 | $ 136925 |

Previous Settlement Transactions
PAID (RECEIVED)

| | Type | Trans. # | Date | | | |
|---|------|----------|------|---|---|---|
| 1. | Initial | 2143. | 4/8/93 | (244033) | 55 | (243978) |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | | | | | | |

| | Part A | Part B | Total |
|---|--------|--------|-------|
| Balance Due (Provider) Program | $ (109986) | $ 2933 | $ (107053) |

DB 151A Rev. 3/91

133

# SAINT ANTHONY'S HEALTH CENTER
## Alton, IL 62002-0340
## Provider #14-0052/5314/7113

### REVISED FINAL SETTLEMENT

FISCAL YEAR END 12/31/92

MEDICARE
Provider Reimbursement & Audit

Health Care Service Corporation, A Mutual Legal Reserve Company

2151 West White Oaks Drive
Springfield, Illinois 62704-6495

Telephone:   217/698-5200
Fax:              217/698-8703

Mr. Michael L. Nelson
Senior VP of Finance
Saint Anthony's Health Center
Saint Anthony's Way
Alton, IL 62002

NOTICE OF PROGRAM REIMBURSEMENT

Revised Final Settlement Reopened Cost Report

RE:    Provider number:  140052, 145314, 147113
        Cost Report Period: 01/01/92 to 12/31/92

Enclosed is your copy of the Hospital Reopened Statement of Reimbursable Cost.
Included in the Report are the following:

1.    Adjustment Report only reflecting retroactive adjustment(s);
2.    Cost Report as reopened and revised;
3.    Comparative Schedule of Total Medicare Settlement.

This report should be retained in your permanent files along with similar types of required
reports and returns.

The results of our review have been summarized in the attached schedules.

In accordance with Public Law 97-248, interest will be assessed on the amount due
HCFA unless full payment is made within 30 days from the date of this Notice.   If you
are unable to refund the entire amount at this time, advise this office immediately so that
we may determine if you are eligible for a repayment schedule. Interest on any
repayment schedule would run from the date of this letter. If an overpayment is repaid in
installments or recouped by withholding from several payments due the provider -- 1)
each payment will be applied first to accrued interest and 2) then to the principal. With
respect to repayment schedules, interest will be assessed at the higher of the private
consumer rate (PCR) or the current value of funds (CVF) rate, per Medicare regulation,
42 Code of Federal Regulation 405.376.   The applicable interest rate for this
determination is 13.375 percent.  This interest rate will remain unchanged for the entire
repayment period.

GC 676.2  REV 3/91  OMB 0938-0212    pg 1      REVISED
                                                                        FINAL SETTLEMENT

136

This notice of amount of Medicare Program Reimbursement for the Fiscal Year indicated above is in conformance with Regulation Section 405.1803. Please be advised that out determination is subject to revision during the three (3) year period following the date of this notice by the findings of an audit, where applicable. This notice of program reimbursement is applicable to the current year's cost report determination. The adjustments to this cost report, which produce a difference between the Intermediary's determination and your initial cost report, are explained in the Adjustment Report. If you have any further questions concerning the nature of these adjustments or the reasons for them, please contact this office.

GC 676.2 REV 3/91 OMB 0938-0212    pg 2    **REVISED FINAL SETTLEMENT**

137

NOTICE OF AMOUN . OF MEDICARE PROGRAM RE . URSEMENT
APPEAL RIGHTS / FILING INSTRUCTIONS

This NPR is the Intermediary's base determination for purposes of appeal rights. We encourage you
) discuss with us any disagreement to adjustments effected by this NPR. However, if the dispute
cannot be resolved to your satisfaction, you may file an appeal to our determination with either the
Intermediary or the Provider Reimbursement Review Board (PRRB), depending on the amount in
controversy. *Appeal requests must be in writing and be filed within 180 days from the date of the
NPR.* Filing requirements are summarized below:

|  | Intermediary Appeals | PRRB Appeals |
|---|---|---|
| References: | 42 CFR 405.1809 - 405.1833 | 42 CFR 405.1835 - 405.1890 |
|  | HCFA Pub. 15-1 2910 - 2918 | HCFA Pub. 15-1 2920 - 2929 |
| Amount in Controversy: |  |  |
| Periods Ending Before 06/30/73 | $1,000 minimum |  |
| Periods Ending After 06/30/73 |  |  |
| Individual providers | $1,000 - $10,000 | over $10,000 |
| Groups (Common Issues) | No provision for group appeals of unrelated providers | $50,000 or more, in aggregate; no minimum for individual providers |
| Groups (Common Ownership) | $1,000 - $10,000 for individual providers; less than $50,000 in aggregate | same as above |
| Send request to: | Intermediary Hearing Officer Medicare Operations/ Prime Contract Blue Cross Blue Shield Association 676 N. St. Clair Street Chicago, IL 60611 | Chairman Provider Reimbursement Review Board Room 104 Professional Bldg. 6660 Security Blvd. Baltimore, MD 21207 |
|  | Copy: Blue Cross Plan Appeals Rep. | Copy: Wilson Leong Medicare Operations/ Prime Contract Blue Cross Blue Shield Assn. |
| For info on filing: | Joan Baker Blue Cross Blue Shield (312) 440-5836 | Steve Kirsh PRRB (410) 966-2040 |

REVISED
FINAL SETTLEMENT

GC 676.2  REV 3/91  OMB 0938-0212      pg 3

138

The appeal request for either an Intermediary or a PRRB appeal must include the following:

1. Identification of items in dispute by adjustment number, amount, and description;

2. Reasons for disagreement with the Intermediary's determination on these items; and

3. 1 copy of the NPR, or determination disputed and adjustment report (pertinent portion).

Intermediary appeal requests must include, in addition to the items listed above, an estimate of the reimbursement in controversy for each item appealed.

The appeal rights described above pertain only to the adjustments reflected on the Adjustment Report issued as part of this Revised Notice of Program Reimbursement. This notice does not affect any appeal rights that may have arisen from any Notice of Program Reimbursement issued prior to the date of this Revised Notice of Program Reimbursement.

Sincerely,

Thomas M. Curtis
Manager

MEDICARE
Provider Reimbursement & Audit

Health Care Service Corporation. A Mutual Legal Reserve Company

2151 West White Oaks Drive
Springfield. Illinois 62704-6495

Telephone:    217/698-5200
Fax:             217/698-8703

August 29, 1996

CERTIFIED

Mr. Michael L. Nelson
Senior Vice President
St. Anthony's Health Center
St. Anthony's Way
Alton, IL 62002

Dear Mr. Nelson:

### NOTICE OF REOPENING OF COST REPORTS

| Provider Number(s) | Year End | Date of Previous Notice of Program Reimbursement |
|---|---|---|
| 145314 | 12/31/91 | 09/02/93 |
| 145314 | 12/31/92 | 04/01/94 |
| 145314 | 12/31/94 | 03/29/96 |

Medicare Regulation 405.1885 provides that cost reports may be reopened by the Intermediary within three years of the date of the notice of the Intermediary or Board hearing decision, or the date of the notice of the Intermediary determination of final settlement. In accordance with this Regulation, we have determined that your cost report will be reopened for the following reason(s):

To update the SNF cost limit based on HCFA's memorandum dated May 1996.

We will advise you of the effect of this reopening as soon as we have made the necessary calculations. We expect our final notice of redetermination will be made within 180 days.

If you are dissatisfied with the redetermination and wish to appeal, any request for an appeal must be made in writing within 180 days from the date of final notice of redetermination in accordance with Regulations 405.1811 and/or 405.1841.

Any questions in this regard should be directed to me at (217) 698-5200.

Sincerely,

*Thomas M. Curtis /pm*

Thomas M. Curtis
Manager

TMC:kf

GC 667 Rev. 3/91
OMB 0938-0212

REVISED
FINAL SETTLEMENT

MEDICARE

Health Care Service Corporation, A Mutual Leg. .eserve Company

233 North Michigan Avenue
Chicago, Illinois 60601-5635

October 31, 1996

REVISED FINAL SETTLEMENTS

CERTIFIED

Mr. Michael L. Nelson
Senior VP of Finance
Saint Anthony's Health Center
Saint Anthony's Way
Alton, IL 62002-0340

Provider Number: 140052/5314/7113
Fiscal Year End: 12/31/91 & 92
Amount Due: $52,552*
Current Effective
Annual Interest Rate: 13.375%

FIRST REQUEST

Dear Mr. Nelson:

We are requesting payment of the above stated amount, which represents an overpayment as detailed on the attached form DB151A (Medicare Statement of Final Settlement of Reimbursable Cost).

If you do not respond within fifteen (15) days, your interim payments could be reduced by a minimum of twenty percent (20%) in order to effect recoupment of the overpayment. Pursuant to §1866(b)(2)(A) and (C)) of Title XVIII, continued failure to respond, could result in termination of your Medicare agreement.

In accordance with Public Law 97-248, interest will be assessed on the amount due HCFA, unless full payment is made within (30) days from the date of the NPR (October 31, 1996). Interest will be assessed for each thirty (30) day period that payment is delayed. Periods of less than 30 days will be treated as a full 30 day period. If you are unable to refund the entire amount at this time, advise this office immediately so that we may determine if you are eligible for a repayment schedule. (You may wish to refer to our Medicare Communications Report #303, which addresses Extended Repayment requirements.) Any repayment schedule would run from the date of this letter. If an overpayment is repaid in installments or recouped by withholding from several payments due the provider -- each payment will be applied first to the accrued interest and then to the principal. With respect to repayment schedules, interest will be assessed at the rate noted above.

Page 2

The "date of submittal" will be the postmark date. If sent via another medium or a postage meter is used, it is then the date received in the contractor's mail box/office. Please forward your check to Health Care Service Corporation, Attention: Cash Receipts Dept., 3rd Floor, 233 North Michigan Avenue, Chicago, Illinois 60601.

If we can assist you further in the resolution of this matter, please advise. We expect to hear from you shortly.

Sincerely,

Stephen M. Railsback
Credit and Collection Coordinator
(312) 938-6689

SMR/sw

Enclosure

AR-005
Revised 7/92

*AMOUNT DUE PROVIDER/(PROGRAM):

| F/Y/E 12/31/91: | | |
|---|---|---|
| 14-0052/7113 | $ | O |
| 14-5314 | | $18,867 |
| '91 TOTAL | | $18,867 |

| F/Y/E 12/31/92: | | |
|---|---|---|
| 14-0052/7113 | $ | O |
| 14-5314 | | $33,685 |
| '92 TOTAL | | $33,685 |

| NET TOTAL OF | | |
|---|---|---|
| '91 & '92 REOPENINGS | | $52,552 |

# Health Care Service Corporation

Chicago, Springfield, Mt. Vernon, Moline, Illinois
East Lansing, Detroit, Michigan

| Page | Of |
|------|----|
| 1 | 2 |

## Medicare

I have reviewed the following audit adjustments No. _____1_____ through No. ___4___ and agree with the adjustments both in principle and amount. These adjustments will be incorporated into our revised statement of reimbursable cost for the period indicated.

OFFICER: _____
                                    (SIGNATURE)

TITLE: _____

DATE: _____08/29/96_____

Provider Name: St. Anthony's Health Center/SNF/HHA

Provider Number(s): 14-0052/5314/7113

Cost Reporting Period Ended: 12/31/92

Intermediary 00121 IL
            00123 MI

[  ] Audited
[  ] Settled Without Audit
[ x ] Reopening

EXPLANATION OF ADJUSTMENTS

| Report Reference | | | | | | GENERAL ADJUSTMENTS | AS REPORTED | INC/ (DEC) | AS ADJUSTED |
|---|---|---|---|---|---|---|---|---|---|
| HCFA Form | W/S | Pt | Ln | Col | Adj. No. | | | | |
| where necessary | | | | | 1 | To complete all cost reporting forms in conformity with current requirements. (HIRM 1 - Section 413.24) | | Various | |
| where necessary | | | | | 2 | To correct all math and flow through errors arising on revision, if any. (HIRM 1 - Section 413.24) | | Various | |

GC 834/1 Rev. 7/95

REVISED
FINAL SETTLEMENT

169

# Health Care Service Corporation
Chicago, Springfield, Mt. Vernon, Moline, Illinois
East Lansing, Detroit, Michigan

## Medicare

| | |
|---|---|
| Page | Of |
| 2 | 2 |

W/P REF.

Provider Name: St. Anthony's Health Center /SNF/HHA

Provider Number(s): 14-0052 / 5314 / 7113

Cost Reporting Period Ended: 12/31/92

Intermediary 00121 IL
00123 MI

[ ] Audited
[ ] Settled Without Audit
[ x ] Reopening

### EXPLANATION OF ADJUSTMENTS

| HCFA Form | \ Report Reference \ W/S | Pt | Ln | Col | Adj. No. | SETTLEMENT DATA | AS REPORTED | INC/ (DEC) | AS ADJUSTED | W/S |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 3 | To adjust the SNF cost limit based on HCFA's instructions | | | | |
| | | | | | | dated May 1996. | | | | |
| | | | | | | | | | | |
| 2552 | D-1 | III | 77 | 1 | | Inpatient Routine Service Cost Per Diem Limitation | 146.06 | ⟨6.26⟩ | 139.80 | |
| | | | | | | 42 CFR 413.20 | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | 4 | To move previous settlements on worksheet E-1. | | | | |
| | | | | | | | | | | |
| 2552 | E-1 | Various | | | | Date | | | 9/8/95 | |
| | | | 502 | 2 | | Hospital – Pt A | -0- | 13226 | 13226 | |
| | | | 5.51 | 4 | | Hospital – Pt B | -0- | 176 | 176 | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | 42 CFR 413.20 | | | | |
| | | | | | | | | | | |

REVISED
FINAL SETTLEMENT

GC 334/2 Rev. 7/95

AUG 11'97 11:35 FR VE LLF    34W 2346  713 758 2346 TO HE      IND      P.03

Received Aug 11 10:57AM (06:24) on  line (10) for 'JE1042'    WORKSRV3 printed JE133EEF1844CD4 on Aug 11 10:04AM * Pg 3/14
         08-11-1997 09:53AM    FROM  SCH-ACCTG             TO         9171361550042      P.03

COPY

SAINT ANTHONY'S HOSPITAL

SAINT CLARES HOSPITAL



SAINT
ANTHONY'S
HEALTH CENTER

*Saint Anthony's Way, P.O. Box 340, Alton, IL 62002-4340*
*618/463-5771*

April 25, 1997

Mr. Thomas Curtis
Audit Manager
Health Care Service Corporation
Medicare Fiscal Intermediary
2151 West White Oaks Drive
Springfield, IL 62704

RE:    Saint Anthony's Health Center – SNF
       Provider Number 14-5314
       SNF Exception Request
       Cost Report Period Ended December 31, 1992
       NPR Date: October 31, 1996

Dear Mr. Curtis:

In accordance with the provisions of 42 CFR 413.30(f) we are requesting an Exception to
SNF Routine Cost Limits for the cost report period referenced above. The request
documentation was prepared at our request by C. J. Schlosser & Company, L.L.C.

If you have questions regarding the request or require additional documentation, please
contact Terry Dooling at C. J. Schlosser's Alton, Illinois office.

We appreciate your cooperation in processing our request.

Sincerely,

Michael L. Nelson
Senior Vice President of Finance

/tag

Enclosures

*To serve God is to serve His people.*

172

AUG 11'97 11:35 FR UE LLF    34W 2346  713 758 2346 TO HE    IND    P.04

Received Aug 11 10:57AM (06:24) on    line (1U, for 'JE1042'    WORKSRV3 printed JE13..cF1844GD4 on Aug 11 10:04AM * Pg 4/14
08-11-1997 09:53AM    FROM SOH-ACCTG    TO    9171361558S42    P.04



# C. J. SCHLOSSER & COMPANY, L.L.C.
## CERTIFIED PUBLIC ACCOUNTANTS

J. Terry Dooling
David L. Karaker
Jack A. Yeager
R.J. Tolliver

April 23, 1997

Mr. Tom Curtis
Audit Manager
Health Care Service Corporation
Medicare Fiscal Intermediary
2151 White Oaks Drive
Springfield, Illinois  62704

Re:  Saint Anthony's Health Center-SNF
     Provider No. 14-5314
     SNF Exception Request
     Cost Report Period Ended December 31, 1992
     NPR Date October 31, 1996

Dear Tom:

This Request For Exception to SNF Routine Cost Limits is being filed on behalf
of the above referenced Provider in accordance with the provisions of 42 CFR
413.30(f), and the guidelines contained in the Provider Reimbursement Manual
HIM-15, Section 2534.

However, based on PRRB Hearing Decision No. 97-D38, dated March 24, 1997, (St.
Francis Health Care Center (Green Spring, Ohio) v. Community Mutual Insurance
Company), we have calculated the requested exception amounts based upon the
difference between the Provider's actual per diem costs and the actual routine
cost limit related to the cost report period, rather than the difference
between actual cost and 112% of the Peer Group mean cost per diems. The effect
of this calculation is to increase the per diem exception requested by $26.88
per patient day over the exception calculated in comparison to 112% of mean
cost. We have attached a copy of the text of the PRRB decision as Exhibit 17.

This is a final request relative to the cost report year referenced above.

Based on our calculations, as presented in Exhibit numbers 1 through 8, the
amount of the Atypical Cost Exception claimed is $44.83 per patient day.

213 East Center Drive
P.O. Box 416
Alton, Illinois 62002
618/465-7717   St. Louis 314/335-2586
Fax: 618/465-7710

One Westbury Square
Building D
St. Charles, Missouri 63301
314/723-7611   St. Louis 314/947-1008
Fax: 314/947-4558

*Member AICPA Division for CPA Firms-Private Companies Practice Section*

173

Received Aug 11 10:57AM (06:24) on  line [10] for 'JE1042'    WORKSRV3 printed JE133EEF1B44CD4 on Aug 11 10:04AM * Pg 5/14
08-11-1997 09:53AM    FROM SCH-ACCTG    TO    9171361558042    P.05

Page 2

The basis for the request is that the acuity level of the Provider's patient population is significantly higher than the applicable Peer Group. Specific discussion related to each cost center for which an exception is requested is presented below.

We believe the enclosed attachments provide the documentation described in HIM-15, Section 2534, and they are organized as follows:

| EXHIBIT NO. | CONTENTS |
|---|---|
| 1 | Calculation of Provider's Actual Per Diem Costs |
| 2 | Calculation of Provider's Adjusted Mean Limit at 112% of Mean Cost |
| 3 | Peer Group Comparison Based on Actual Routine Cost Limit |
| 4 | Nursing Hours Per Patient Day |
| 5 | Calculated Per Diem Exceptions |
| 6 | Summary of Per Diem Exceptions - Atypical Services |
| 7 | Requested Per Diem Exception for Atypical Costs |
| 8 | Calculation of A & G Unit Cost Multiplier |
| 9 | Comparison of Cost Report Expenses |
| 10 | Schedule of Direct Costs |
| 11 | Schedule of Productive and Nonproductive Nursing Salaries and Hours |
| 12 | Listing of 1992 Discharges - Chronological Order |
| 13 | Listing of 1992 Discharges with Discharge Disposition |
| 14 | A.D.L. Sample |
| 15 | Cost Report, Form HCFA 2552-92, December 31, 1992 |
| 16 | Cost Report, Form HCFA 2552-92, December 31, 1991 |
| 17 | P.R.R.B. Decision Number 97-D38 |

The following are the bases upon which cost center exceptions are requested:

A. NURSING SALARY COST

The Provider is requesting an exception amounting to $24.92 per patient day based on a higher than average acuity level of patients cared for in the Skilled Nursing Facility (SNF).

The Provider's medical record information system contained 298 patient discharges for the SNF for calendar year 1992. We have included a listing of those discharges in chronological order as Exhibit 12.

We have also included a listing of the patient population sorted by discharge disposition for each patient as Exhibit 13.

AUG 11'97 11:36 FR UE L'P    J 34W 2346  713 758 2346 TO HF    IND    P.06

Received Aug 11 10:57AM (06:24) on   line [10] for 'JE1042'        UORKSRV3 printed JE133EEF1844CD4 on Aug 11 10:04AM * Pg 6/14
       09-11-1997 09:54AM  FROM  SCH-ACCTG                                     TO         9171361558842  P.06

## Page 3

From the total population of 298 patients (Exhibit 12), we selected a 10% numeric sample. For each patient in the sample we requested nursing personnel in the SNF to review patient medical records and to detail nursing requirements related to assistance with Activities of Daily Living (A.D.L.s) as well as any other patient conditions which required intensive nursing service. The sample selection and A.D.L. summary are included in Exhibit 14. The sample data reflects a patient population which is highly dependent on intensive nursing care.

As shown in Exhibit 3, during the period for which this exception is being requested, the Provider's average length of stay was 19.67 days compared to 132.34 days for the Peer Group. During the same period the Provider's average ancillary cost per diem was $132.90 compared to the Peer Group average of $62.73. Both of these statistics indicate a significantly higher level of acuity and intensity of service compared to the Peer Group.

The calculation of the Nursing Salary component of the exception request is included in Exhibit 6.

B. **EMPLOYEE HEALTH AND WELFARE**

The Provider is requesting an exception amounting to $4.21 per patient day based on atypical direct nursing salary costs. The calculation of this exception amount is included in Exhibit 5.

C. **ADMINISTRATIVE AND GENERAL**

The Provider is requesting an exception amounting to $5.64 per patient day based on atypical direct nursing salary costs. The calculation of this exception amount is included in Exhibit 5.

D. **LAUNDRY**

The Provider is requesting an exception amounting to $1.11 per patient day based on a high proportion of incontinent patients. The information contained in the A.D.L. sample (Exhibit 14) indicates that 46.6% of the SNF patients were incontinent. The exception amount requested is the excess of the Provider's per diem cost over the Peer Group per diem cost.

E. **HOUSEKEEPING**

The Provider is requesting an exception amounting to $0.40 per patient day, based on a significantly lower than average length of stay of 19.67 days compared to 132.34 days for the Peer Group. In addition, the A.D.L. sample (Exhibit 14) indicated that 46.6% of the SNF patients were incontinent. The exception amount requested is the excess of the Provider's per diem cost over the Peer Group per diem cost.

AUG 11'97 11:37 FR UE LLP    J 34W 2346  713 758 2346 TO HE      IND      P.07

Received Aug 11 10:57AM (06:24) on  Line [10] for 'JE1042'    WORKSRV3 printed JE133EEF1844D4 on Aug 11 10:04AM * Pg 7/14
          08-11-1997 09:54AM   FROM  SCH-ACCTG                   TO       917136155842   P.07

Page 4

F.  CAFETERIA

The Provider is requesting an exception amounting to $0.98 per patient day based on atypical direct nursing costs. The calculation of this exception amount is included in Exhibit 5.

G.  NURSING ADMINISTRATION

The Provider is requesting an exception amounting to $3.86 per patient day, based on atypical nursing costs.  The calculation of this exception amount is included in Exhibit 5.

H.  MEDICAL RECORDS

The Provider is requesting an exception amounting to $0.09 per patient day based on a demonstrated lower than average length of stay and higher than average Medicare utilization.  The Provider's average length of stay was 19.67 days with 92.09% Medicare utilization compared to 132.34 days and 52.39% Medicare utilization for the Peer Group.  The exception amount requested is the excess of the Provider's per diem cost over the Peer Group per diem cost.

I.  SOCIAL SERVICE

The Provider is requesting an exception amounting to $4.13 per patient day based on a demonstrated lower than average length of stay and higher than average Medicare utilization.  The Provider's average length of stay was 19.67 days with 92.09% Medicare utilization compared to 132.34 days and 52.39% Medicare utilization for the Peer Group.  The exception amount requested is the excess of the Provider's per diem cost over the Peer Group per diem cost.

We appreciate your attention to this request, and trust that the foregoing and enclosed information will provide you with the information necessary to evaluate the request.  Please address any questions or additional documentation requirements to me at our Alton office and I will coordinate as necessary with Saint Anthony's Health Center.

Yours very truly,

C.J. SCHLOSSER & COMPANY, L.L.C.

J. Terry Dooling, Partner
JTD/jr
Encl.

176

AUG 11'97 11:37 FR VE LLP    J 34W 2346    713 758 2346 TO HE    IND    P.08

Received Aug 11 10:57AM (06:24) on    Line [10] for 'JE1042'        UCCKSERV3 printed JE133EEF1844CD4 on Aug 11 10:04AM  Pg 8/14
                 08-11-1997 09:55AM    FROM  SCH-ACCTG          TO            9171361555842    P.08

SAINT ANTHONY'S HEALTH CENTER                          EXHIBIT 7
PROVIDER NUMBER: 14-5314
SNF EXCEPTION REQUEST
FYE: 12/31/92

## REQUESTED PER DIEM EXCEPTION FOR ATYPICAL COSTS

WORKSHEET D-1 LINE 76: INPATIENT ROUTINE COSTS         $1,112,899

MEDICARE DAYS                                             5,381

ROUTINE SERVICE COST PER DIEM                           $206.82

ROUTINE SERVICE COST PER DIEM LIMIT                     $139.80

(1)  ACTUAL COSTS IN EXCESS OF COST LIMIT                $67.02

(2)  CALCULATED ADJUSTMENT – ATYPICAL COSTS              $44.83
            (EXHIBIT 6)

(3)  DIFFERENCE BETWEEN MEAN COSTS & ACTUAL COSTS        $60.31
            (EXHIBIT 3)


REQUESTED PER DIEM EXCEPTION:                            $44.83
Lessor of (1), (2), or (3)

TOTAL EXCEPTION REQUESTED:

        Medicare Days                                    5,381
        Exception per diem                              $44.83

        EXCEPTION AMOUNT                                $241,212

                                            # 96,589    12% >
                                                        accru

1.77



DEPARTMENT OF HEALTH & HUMAN SERVICES                     Health Care Financing Administration

Refer to: FAR-051                                          7500 SECURITY BOULEVARD
                                                           BALTIMORE MD 21244-1850

OCT 1 4 1997

RECEIVED

OCT 2 0 1997

PROVIDER REIMBURSEMENT
AND AUDIT

Mr. Jack Chrencik
Manager
Audit & Reimbursement
Health Care Service Corporation
2151 West White Oaks Drive
Springfield, IL  62704-6495

Dear Mr. Chrencik:

This is in response to the request of St. Anthony's SNF
(SA-SNF), Provider Number 14-5314, for an exception to the
inpatient general routine service cost limits for the cost
reporting periods ended December 31, 1991 (1991) and December
31, 1992 (1992). The SA-SNF is requesting an exception under
42 CFR 413.30(f)(1) for atypical services in accordance with
HCFA Pub. 15-1, Section 2530 (Transmittal No. 378, published
July 1994).

We reviewed the documentation you submitted and we agree
with your recommendation that SA-SNF be granted an exception
of $3.41 per day for 1991 and $6.26 per day for 1992.

In accordance with Transmittal No. 378, this exception may be
applied to subsequent cost reporting periods where
circumstances and reasons for granting an exception have not
changed. Therefore, using the methodology and procedures
outlined in section 2530, you are authorized to grant interim
exceptions and adjust interim payments for subsequent cost
reporting periods.

In addition, please note that any exception amounts (interim
or final) for cost reporting periods starting on or after
October 1, 1993 and before October 1, 1995 are subject to
limitation by the provisions set forth in the Federal
Register, dated January 6, 1994 (59 FR 762). These provisions
relate to the freeze on SNF routine cost limits mandated by
the Omnibus Budget Reconciliation Act of 1993.

181

If you have any questions regarding this letter, please contact William Robinson at (410) 786-4593. If the provider or its representatives have any questions they should contact your office.

Sincerely,

*William Robinson*
for

Thomas E. Hoyer
Director
Chronic Care Purchasing
   Policy Group
Center for Health Plans & Providers

182



**Blue Cross**
**Blue Shield**
of Illinois

## Medicare

APR 0 1 1994

Mr. Michael Nelson
Senior Vice President of Finance
St. Anthony's Hospital/SNF/HHA
St. Anthony's Way
Alton, IL 62002

Provider Reimburseme
2151 West White Oaks
Springfield, Illinois 627(

(217) 698-5200
(217) 698-8703 (FAX)

Notice o

Provider

Cost Repo



Dear Mr. Nelson:

Enclosed is your copy of the Hospital M
of Reimbursable Cost.  Included in the

1. Adjustment Reports
2. Cost Reports as reviewed and r
3. Auditor's Certification and No
   Reports
4. Exit Conference Minutes includi
   items
5. Comparative Schedule of Total

This report should be retained in your
similar types of required reports and returns.

As a result of our review of the Multiple-Facility Statement of
Reimbursable Cost for the above period, our findings are as
follows:

| Provider #14-0052 | Claimed | Revised |
|---|---|---|
| Total Allowable Cost | $48,007,082 | $47,271,117 |
| Total Medicare Reimbursable Cost | 15,267,205 | 15,571,495 |
| Total Medicare Net Settlement* | (445,797) | (267,448) |
| Provider #14-5314 | Claimed | Revised |
| Total Allowable Cost | $48,007,082 | $47,271,117 |
| Total Medicare Reimbursable Cost | 1,640,194 | 1,493,297 |
| Total Medicare Net Settlement* | 113,063 | (27,439) |

*Due Provider/(Program)

GC 676C (Eff. 7/92)
OMB 0938-0212

Health Care Service Corporation, a Mutual Legal Reserve Company
(Blue Cross and Blue Shield of Illinois)

Provider #14-7113

| | | |
|---|---|---|
| Total Allowable Cost | $48,007,082 | $47,271,117 |
| Total Medicare Reimbursable Cost | 1,111,152 | 1,102,010 |
| Total Medicare Net Settlement* | (243,978) | (136,925) |

*Due Provider/(Program)

In accordance with Public Law 97-248 interest will be assessed on the amount due HCFA unless full payment is made within 30 days from the date of this Notice. Interest will be assessed for each 30 day period (or Less) that payment is delayed. If you are unable to refund the entire amount at this time, advise this office immediately so that we may determine if you are eligible for a repayment schedule. Interest on any repayment schedule would run from the date of this letter. If an overpayment is repaid in installments or recouped by withholding from several payments due the provider -- (1) each payment will be applied first to accrued interest and (2) then to the principal. With respect to repayment schedules, interest will be assessed at the higher of the private consumer rate (PCR) or the current value of funds (CVF) rate, per Medicare Regulation 42 Code of Federal Regulation, 405.376. The interest rate applicable for this determination 13.25 percent. This interest rate will remain unchanged for the entire repayment period.

This notice of amount of Medicare Program Reimbursement for the Fiscal Year indicated above is in conformance with Regulation Section 405.1803. Please be advised that our determination is subject to revision during the three (3) year period following the date of this notice by the findings of an audit, where applicable.

This notice of program reimbursement is applicable to the current year's cost report determination. The adjustments to this Cost Report, which produce a difference between the Intermediary's determination and your initial Cost Report, are explained in the Adjustment Report. If you have any further questions concerning the nature of these adjustments or the reasons for them, please contact this office.

GC 676C (Eff. 7/92)
OMB 0938-0212              -2-

## NOTICE OF AMOUNT OF MEDICARE PROGRAM REIMBURSEMENT
### APPEAL RIGHTS/FILING INSTRUCTIONS

This NPR is the intermediary's base determination for purposes of appeal rights.  We encourage you to discuss with us any disagreement to adjustments effected by this NPR.  However, if the dispute cannot be resolved to your satisfaction, you may file an appeal to our determination with either the Intermediary or the Provider Reimbursement Review Board (PRRB) depending on the amount in controversy.  <u>Appeal requests must be in writing and be filed within 180 days from the date of this NPR.</u>  Filing requirements are summarized below:

|  | Intermediary Appeals | PRRB Appeals |
|---|---|---|
| References: | 42 CFR 405.1809-405.1833 | 42 CFR 405.1835-405.1890 |
|  | HCFA Pub. 15-1 2910 - 2918 | HCFA Pub. 15-1 2920 - 2929 |

Amount in Controversy:

| | | |
|---|---|---|
| Periods Ending Before 6/30/73 | $1,000 minimum | |
| Period Ending After 6/30/73 | | |
| Individual Providers | $1,000 - $10,000 | Over $10,000 |
| Groups (Common Issues) | No provision for group appeals of unrelated providers | $50,000 or more, in aggregate; no minimum for individual providers |
| Groups (Common Ownership) | $1,000 - $10,000 for individual Providers; less than $50,000 in aggregate | Same as above |

| Send Request to: | Intermediary Hearing Officer Reimbursement and Provider Appeals Department - Blue Cross Blue Shield Assn. 676 North St. Clair Street Chicago, Illinois 60611 | Chairman Provider Reimbursement Review Board Room 104 Professional Bldg. 6660 Security Blvd. Baltimore, MD 21207 |
|---|---|---|
|  | Copy:  Blue Cross Plan Appeals Rep. | Copy:  Blue Cross Plan Appeals Rep. & PRRB Appeals Coordinator Blue Cross Blue Shield Assn. |

| For Information on Filing Call: | Joan Baker Blue Cross Blue Shield (312) 440-5836 | John Bader PRRB (301) 966-2053 |
|---|---|---|

BC 676   (REV. 7/92)                        3

195

The appeal requests for either an Intermediary or a PRRB appeal must include the following:

1) identification of items in dispute by adjustment number, amount, and description,

2) reasons for disagreement with the Intermediary's determination on these items, and

3) 1 copy of the NPR, or determination disputed and adjustment report (pertinent portion).

Intermediary appeal requests must include, in addition to the items listed above, an estimate of the reimbursement in controversy for each item appealed.

Finally in accordance with the provisions of Provider Reimbursement Manual, Part I Section 2425.1, subsequent cost reports must be filed excluding those nonallowable costs which have been removed from the Final Settlement pertaining to this Notice of Program Reimbursement unless those adjustments are being appealed in conformity with the conditions specified in Regulations No. 5, Subpart R, Sections 405.1801 FF.

Those items which are adjusted in this final settlement and have appeared in previous settlements for which no appeal has commenced are as follows:

AJE # __6__ _____RCE Amounts_____ (cost item)

AJE # _____ _____ (cost item)

AJE # _____ _____ (cost item)

AJE # _____ _____ (cost item)

Without a timely appeal in process on the above adjustments, future inclusion of the above nonallowable costs could result in referral to the Office of Health Financing for consideration under the Civil Monetary Penalty Law provisions.

Sincerely,

Thomas M. Curtis
Manager
Provider Reimbursement & Auditing

Enclosure

C 676C (Eff. 7/92)
OMB 0938-0212                    4

196

F...ER NO. 14-0052  SAINT ANTHONY'S HEALTH CENTER          ..PEAT MARWICK COMPU-MAX MICRO SYSTEM    VERSION: 93.07
PER...D FROM 01/01/92 TO 12/31/92                        IN LIEU OF FORM HCFA-2552-92 (11/92)        02/11/94 12:16:47

WORKSHEET S
PARTS I & II

HOSPITAL AND HEALTH CARE COMPLEX COST REPORT          INTERMEDIARY USE ONLY              DATE RECEIVED: 04/02/93
CERTIFICATION AND SETTLEMENT SUMMARY            ___ AUDITED   XX DESK REVIEWED     INTERMEDIARY NUMBER: 00121
                                                         __

PART I - CERTIFICATION

INTENTIONAL MISREPRESENTATION OR FALSIFICATION OF ANY INFORMATION CONTAINED IN THIS COST
REPORT MAY BE PUNISHABLE BY FINE AND/OR IMPRISONMENT UNDER FEDERAL LAW

CERTIFICATION BY OFFICER OR ADMINISTRATOR OF PROVIDER(S)

I HEREBY CERTIFY THAT I HAVE READ THE ABOVE STATEMENT AND THAT I HAVE EXAMINED THE ACCOMPANYING COST REPORT
AND THE BALANCE SHEET AND STATEMENT OF REVENUE AND EXPENSES PREPARED BY SAINT ANTHONY'S HEALTH CENTER (14-0052)
(PROVIDER NAME(S) AND NUMBER(S)) FOR THE COST REPORT PERIOD BEGINNING 01/01/92 AND ENDING 12/31/92, AND THAT TO THE BEST OF
MY KNOWLEDGE AND BELIEF, IT IS A TRUE, CORRECT, AND COMPLETE STATEMENT PREPARED FROM THE BOOKS AND RECORDS OF THE PROVIDER
IN ACCORDANCE WITH APPLICABLE INSTRUCTIONS, EXCEPT AS NOTED.

(SIGNED) _____
(SIGNATURE ON FILE)
OFFICER OR ADMINISTRATOR OF PROVIDER(S)

TITLE _____

DATE _____

PART II - SETTLEMENT SUMMARY

| | TITLE V | TITLE XVIII | | TITLE XIX | |
|---|---|---|---|---|---|
| | | PART A | PART B | | |
| | 1 | 2 | 3 | 4 | |
| 1 HOSPITAL | | -39587 | -227861 | 2459423 | 1 |
| 2 SUBPROVIDER I | | | | | 2 |
| 3 SWING BED - SNF | | | | | 3 |
| 4 SWING BED - NF | | | | | 4 |
| 5 SKILLED NURSING FACILITY | | -27789 | 350 | | 5 |
| 6 OTHER NURSING FACILITY | | -134047 | -2878 | | 6 |
| 7 HOME HEALTH AGENCY | | | | | 7 |
| 8 COMPREHENSIVE OUTPATIENT | | | | | 8 |
| REHABILITATION FACILITY (CORF) | | | | | |
| 9 TOTAL | | -201423 | -230389 | 2459423 | 9 |

THE ABOVE AMOUNTS REPRESENT "DUE TO" OR "DUE FROM" THE APPLICABLE PROGRAM FOR THE ELEMENT OF THE ABOVE COMPLEX INDICATED.

197

VER NO. 14-0052    SAINT ANTHONY'S HEALTH CENTER                          PEAT MARWICK COMPU-MAX MICRO SYSTEM      VERSION: 93.07
PE.....D FROM 01/01/92 TO 12/31/92        IN LIEU OF FORM HCFA-2552-92 (11/92)                              02/11/94 12:16:47

                                        COMPUTATION OF INPATIENT OPERATING COST                                    WORKSHEET D-1
                                                                                                                   PARTS III & IV

                        — TITLE V-INPT          XX TITLE XVIII-PART A        — TITLE XIX-INPT

PART III - SKILLED NURSING FACILITY AND OTHER NURSING FACILITY ONLY

                                                                                  SNF 1                    SNF II
                                                                                  (OTHER)
                                                                                  (14-5314)
                                                                                      1                        1

66  SKILLED NURSING FACILITY/OTHER NURSING FACILITY ROUTINE SERVICE COST              1324030                            66
67  ADJUSTED GENERAL INPATIENT ROUTINE SERVICE COST PER DIEM                           226.60                            67
68  PROGRAM ROUTINE SERVICE COST                                                      1219335                            68
69  MEDICALLY NECESSARY PRIVATE ROOM COST APPLICABLE TO PROGRAM                                                          69
70  TOTAL PROGRAM GENERAL INPATIENT ROUTINE SERVICE COSTS                             1219335                            70
71  CAPITAL RELATED COST ALLOCATED TO INPATIENT ROUTINE SERV COSTS                     115600                            71
72  PER DIEM CAPITAL RELATED COSTS                                                       19.78                           72
73  PROGRAM CAPITAL RELATED COSTS                                                      106436                            73
74  INPATIENT ROUTINE SERVICE COST                                                    1112899                            74
75  AGGREGATE CHARGES TO BENEFICIARIES FOR EXCESS COSTS                                                                  75
76  TOTAL PROGRAM ROUTINE SERVICE COSTS FOR COMPARISON TO THE COST LIMITATION         1112899                            76
77  INPATIENT ROUTINE SERVICE COST PER DIEM LIMITATION                                 146.06                            77
78  INPATIENT ROUTINE SERVICE COST LIMITATION                                          785949                            78
79  REASONABLE INPATIENT ROUTINE SERVICE COSTS                                         892385                            79
80  PROGRAM INPATIENT ANCILLARY SERVICES                                               715133                            80
81  UTILIZATION REVIEW—PHYSICIAN COMPENSATION                                            1691                            81
82  TOTAL PROGRAM INPATIENT OPERATING COSTS                                           1609209                            82

PART IV - COMPUTATION OF OBSERVATION BED COST

83  TOTAL OBSERVATION BEDS                                                                721                            83
84  ADJUSTED GENERAL INPATIENT ROUTINE COST PER DIEM FROM LINE 38                      341.30                            84
85  OBSERVATION BED COST                                                               246077                            85

        COMPUTATION OF OBSERVATION BED PASS THROUGH COST

                                                                                                        TOTAL
                                                            ROUTINE      COLUMN 1                    OBSERVATION      OBSERVATION BED
                                                              COST      DIVIDED BY                    BED COST        PASS-THROUGH COST
                                             COST         (FROM LINE 37) COLUMN 2                   (FROM LINE 85)    COL 3 TIMES COL 4
                                               1               2            3                            4                 5

86  OLD CAPITAL-RELATED COST                1929309        13131448      .146923                      246077              36154             86
87  NEW CAPITAL-RELATED COST                 241625        13131448      .018400                      246077               4528             87
88  NON PHYSICIAN ANESTHETIST                              13131448                                   246077                                88
89  MEDICAL EDUCATION                                      13131448                                   246077                                89

JER NO. 14-0052   SAINT ANTHONY'S HEALTH CENTER          PEAT MARWICK COMPU-MAX MICRO SYSTEM      VERSION: 93.07
P... D FROM 01/01/92 TO 12/31/92          IN LIEU OF FORM HCFA-2552-92 (11/92)                    02/11/94  12:16:47

ANALYSIS OF PAYMENTS TO PROVIDERS FOR SERVICES RENDERED
SKILLED NURSING FACILITY I (14-5314)                                                        WORKSHEET E-1

| DESCRIPTION | INPATIENT PART A | | PART B | | |
|---|---|---|---|---|---|
| | MO/DAY/YR 1 | AMOUNT 2 | MO/DAY/YR 3 | AMOUNT 4 | |
| 1 TOTAL INTERIM PAYMENTS PAID TO PROVIDER | | 1392736 | | | 1 |
| 2 INTERIM PAYMENTS PAYABLE ON INDIVIDUAL BILLS, EITHER SUBMITTED OR TO BE SUB- MITTED TO THE INTERMEDIARY FOR SERVICES RENDERED IN THE COST REPORTING PERIOD. IF NONE, WRITE "NONE", OR ENTER A ZERO. | | NONE | | NONE | 2 |
| 3 LIST SEPARATELY EACH RETROACTIVE LUMP SUM ADJUSTMENT AMOUNT BASED ON SUBSEQUENT REVISION OF THE INTERIM RATE FOR THE COST REPORTING PERIOD. ALSO SHOW DATE OF EACH PAYMENT. IF NONE, WRITE "NONE", OR ENTER A ZERO.   PROGRAM .01 TO .02 PROVIDER .03 .04 .05   PROVIDER .50 TO .51 PROGRAM .52 .53 .54 | 12/31/92 | 128000 | | NONE | 3.01 3.02 3.03 3.04 3.05 3.50 3.51 3.52 3.53 3.54 |
| SUBTOTAL .99 | | 128000 | | | 3.99 |
| 4 TOTAL INTERIM PAYMENTS | | 1520736 | | | 4 |
| TO BE COMPLETED BY INTERMEDIARY | | | | | |
| 5 LIST SEPARATELY EACH TENTATIVE SETTLEMENT PAYMENT AFTER DESK REVIEW. ALSO SHOW DATE OF EACH PAYMENT. IF NONE, WRITE "NONE", OR ENTER A ZERO.   PROGRAM .01 TP .02 PROVIDER .03   PROVIDER .50 TO .51 PROGRAM .52 | 4/08/93 | 113063 NONE | | NONE NONE | 5.01 5.02 5.03 5.50 5.51 5.52 |
| SUBTOTAL .99 | | 113063 | | | 5.99 |
| 6 DETERMINED NET SETTLE- MENT AMOUNT (BALANCE DUE) BASED ON THE COST REPORT.   PROGRAM TO PROVIDER .01 PROVIDER TO PROGRAM .02 | | -140852 | | 350 | 6.01 6.02 |
| 7 TOTAL MEDICARE PROGRAM LIABILITY | | 1492947 | | 350 | 7 |

NAME OF INTERMEDIARY          INTERMEDIARY NUMBER          SIGNATURE OF AUTHORIZED PERSON          DATE (MO/DAY/YR)
HEALTHCARE SERVICE CORPORATION          0012          [signature]          3/21/94

199

P   ER NO. 14-0052   SAINT ANTHONY'S HEALTH CENTER                    PEAT MARWICK COMPU-MAX MICRO SYSTEM        VERSION: 93.07
PL  J FROM 01/01/92 TO 12/31/92          IN LIEU OF FORM HCFA-2552-92-E-3 (11/92)                   02/11/94 12:16:47

                                                                                                    SUPPLEMENTAL
                                                                                                    WORKSHEET E-3
CALCULATION OF REIMBURSEMENT SETTLEMENT                                                                PART II

PART II - MEDICARE, PART A SERVICES - COST REIMBURSEMENT

| | HOSPITAL | SUB I | SUB II | SUB III | SUB IV | SNF I (14-5314) | SNF II |
|---|---|---|---|---|---|---|---|
| 1  INPATIENT SERVICES | | | | | | 1609209 | 1 |
| 2  ORGAN ACQUISITION | | | | | | | 2 |
| 3  COST OF TEACHING PHYSICIANS | | | | | | | 3 |
| 4  SUBTOTAL | | | | | | 1609209 | 4 |
| 5  PRIMARY PAYOR PAYMENTS | | | | | | | 5 |
| 6  DIFFERENTIAL IN CHARGES BETWEEN SEMIPRIVATE ACCOMMODATIONS AND LESS THAN SEMIPRIVATE ACCOMMODATIONS | | | | | | | 6 |
| 7  SUBTOTAL | | | | | | 1609209 | 7 |
| | | | | | | | |
| 8  COMPUTATION OF LESSER OF COST OR CHARGES RETURN ON EQUITY CAPITAL | | | | | | | 8 |
| 9  TOTAL REASONABLE COST | | | | | | 1609209 | 9 |
| | | | | | | | |
| 10 REASONABLE CHARGES ROUTINE SERVICE CHARGES | | | | | | 1378853 | 10 |
| 11 ANCILLARY SERVICE CHARGES | | | | | | 2048722 | 11 |
| 12 ORGAN ACQUISITION CHARGES, NET OF REVENUE | | | | | | | 12 |
| 13 TEACHING PHYSICIANS | | | | | | | 13 |
| 14 DIFFERENTIAL IN CHARGES BETWEEN SEMIPRIVATE ACCOMMODATIONS AND LESS THAN SEMIPRIVATE ACCOMMODATIONS | | | | | | | 14 |
| 15 TOTAL REASONABLE CHARGES | | | | | | 3427575 | 15 |
| 16 AGGREGATE AMOUNT ACTUALLY COLLECTED FROM PATIENT LIABLE FOR PAYMENT FOR SERVICES ON A CHARGE BASIS | | | | | | | 16 |
| 17 CUSTOMARY CHARGES AMOUNT THAT WOULD HAVE BEEN REALIZED FROM PATIENTS LIABLE FOR PAYMENT FOR SERVICES ON A CHARGE BASIS HAD SUCH PAYMENT BEEN MADE IN ACCORDANCE WITH 42 CFR 413.13(E) | | | | | | | 17 |
| 18 RATIO OF LINE 16 TO LINE 17 | | | | | | | 18 |
| 19 TOTAL CUSTOMARY CHARGES | | | | | | 3427575 | 19 |
| 20 EXCESS OF CUSTOMARY CHARGES OVER REASONABLE COST | | | | | | 1818366 | 20 |
| 21 EXCESS OF REASONABLE COST OVER CUSTOMARY CHARGES | | | | | | | 21 |

P.  ER NO. 14-0052   SAINT ANTHONY'S HEALTH CENTER                KPMG PEAT MARWICK COMPU-MAX MICRO SYSTEM       VERSION: 93.07
PERIOD FROM 01/01/92 TO 12/31/92                      IN LIEU OF FORM HCFA-2552-92-E-3 (11/92)           02/11/94  12:16:47

SUPPLEMENTAL
WORKSHEET E-3
PART II

CALCULATION OF REIMBURSEMENT SETTLEMENT

PART II - MEDICARE, PART A SERVICES - COST REIMBURSEMENT

| | HOSPITAL | SUB I | SUB II | SUB III | SUB IV | SNF I (14-5314) | SNF II | |
|---|---|---|---|---|---|---|---|---|
| COMPUTATION OF REIMBURSEMENT SETTLEMENT | | | | | | | | |
| 22 DIRECT GRADUATE MEDICAL EDUCATION PAYMENTS | | | | | | | | 22 |
| 23 COST OF COVERED SERVICES | | | | | | 1609209 | | 23 |
| 24 DEDUCTIBLES | | | | | | | | 24 |
| 25 EXCESS REASONABLE COST | | | | | | | | 25 |
| 26 SUBTOTAL | | | | | | 1609209 | | 26 |
| 27 COINSURANCE | | | | | | 116262 | | 27 |
| 28 SUBTOTAL | | | | | | 1492947 | | 28 |
| 29 REIMBURSABLE BAD DEBTS (EXCLUDE BAD DEBTS FOR PROFESSIONAL SERVICES) | | | | | | | | 29 |
| 30 SUBTOTAL | | | | | | 1492947 | | 30 |
| 31 RECOVERY OF UNREIMBURSED COST UNDER THE LESSER OF REASONABLE COSTS OR CUSTOMARY CHARGES | | | | | | | | 31 |
| 32 UNREFUNDED CHARGES TO BENEFICIARIES FOR EXCESS COSTS ERRONEOUSLY COLLECTED BASED ON CORRECTION OF A COST LIMIT | | | | | | | | 32 |
| 33 RECOVERY OF EXCESS DEPRECIATION RESULTING FROM PROVIDER TERMINATION OR A DECREASE IN PROGRAM UTILIZATION | | | | | | | | 33 |
| 34 OTHER ADJUSTMENTS | | | | | | | | 34 |
| 35 AMOUNTS APPLICABLE TO PRIOR COST REPORTING PERIODS RESULTING FROM DISPOSITION OF DEPRECIABLE ASSETS | | | | | | | | 35 |
| 36 SUBTOTAL | | | | | | 1492947 | | 36 |
| 37 SEQUESTRATION ADJUSTMENT | | | | | | | | 37 |
| 38 AMOUNT DUE AFTER SEQUESTRATION | | | | | | 1492947 | | 38 |
| 39 INTERIM PAYMENTS | | | | | | 1520736 | | 39 |
| 40 BALANCE DUE PROVIDER/PROGRAM | | | | | | -27789 | | 40 |
| 41 PROTESTED AMOUNTS (NONALLOWABLE COST REPORT ITEMS) IN ACCORDANCE WITH HCFA PUB 15-11, SECTION 115.2 | | | | | | | | 41 |
| 42 BALANCE DUE PROVIDER/PROGRAM | | | | | | -27789 | | 42 |

201



Region V

PROVIDER REIMBURSEMENT & AUDIT                    Health

Care Financing

**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Administration

Refer to:  FOB-PS9                                                    105

West Adams Street

15th

Floor

Chicago, Illinois  60603-6201

IDENTICAL LETTER TO ALL FISCAL INTERMEDIARIES

Subject: Skilled Nursing Facility (SNF) Routine Service Cost Limits

The purpose of this letter is to advise you of 1) revisions to the previously
published skilled nursing facility (SNF) cost limits that were effective October 1,
1989 (FY 1990) and October 1, 1992 (FY 1993), and 2) the update to the cost
limits effective October 1, 1995 (FY 1996).  **Certain actions described below
must be taken to implement these changes.**

**REVISED FY 1990 and FY 1993 COST LIMITS**

The revisions to the previously published cost limits are the result of substantial
differences between the projected rates of increase in the SNF market basket and
the final rates of increase.  The projected rates of increase were published in the
Federal Register notices promulgating the cost limits effective for cost reporting
periods beginning on or after FY 1990 (56 FR 13317; April 1, 1991) and FY
1992 (57 FR 46177; October 7, 1992).  The Federal Register notices provided for
adjustments to the cost limits if a projected rate of increase differs from the final
rate by more than .3 of one percentage point.  If this difference occurs, we stated,
in the notices, that the Medicare intermediaries would be advised to retroactively
adjust the cost limit of each SNF that may be affected to reflect the final rate of
increase.

Using the latest SNF market basket data available, we have determined that the
projected rates of increase did differ from the final rates for the FY 1990 and FY
1993 cost limits by more than .3 of one percentage point.  The following chart
compares the projected rates of increase published in the Federal Register to the

205

final rates.

FY 1990 Cost Limits:

|      | PROJECTED | FINAL |
|------|-----------|-------|
| 1989 | 6.13      | 6.50  |
| 1990 | 6.98      | 6.30  |
| 1991 | 6.76      | 4.40  |
| 1992 | 5.75      | 3.80  |

FY 1993 Cost Limits:

|      | PROJECTED | FINAL |
|------|-----------|-------|
| 1991 | 4.3       | 4.4   |
| 1992 | 4.6       | 3.8   |
| 1993 | 5.2       | 3.7   |
| 1994 | 5.2       | 3.4   |

Page 2

Accordingly, as shown on Exhibits A-89, B-89, C-92, and D-92, we have revised the FY 1990 and FY 1993 cost limits and the associated cost reporting year adjustment factors. You have the authority to adjust exception amounts granted under section 413.30(f) of the regulations to reflect these changes by using the same methodology described in HCFA's response to the exception request. New exception requests, based on these changes, must be filed in accordance with the provisions of Section 2530 of the Provider Reimbursement Manual (HCFA Pub. 15-1). Requests that necessitate final approval from HCFA under Section 2530 should be submitted to:

>Mr. James Kenton
>Director
>Division of Skilled Nursing Care
>Health Care Financing Administration
>7500 Security Boulevard
>Mail Stop C4-11-06
>Baltimore, Maryland 21244-1850

These revised limits and factors may necessitate reopening previously settled cost reports. We understand that the regulations regarding administrative finality may prevent intermediaries from implementing these changes for certain SNFs for certain cost reporting periods. However, for cost reports that may be reopened under 42 CFR 405.1885, notices of reopenings must be issued in order to implement the revised cost limits. Therefore, it is important that the intermediaries review the earlier settlements first to ensure that warranted adjustments are not precluded by the virtue of the 3-year limitation provision. Revised final settlements for SNFs affected by these changes should be

**accomplished as soon as possible; however, all revised settlements should be implemented by December 31, 1996.**

**IMPORTANT:**
**Prospectively determined payment rates computed for low Medicare volume SNFs for cost reporting periods beginning before October 1, 1995 and cost limits computed for cost reporting periods beginning on or after October 1, 1993 and before October 1, 1995 will not be affected by these changes.**

**UPDATED COST LIMITS for FY 1996**
The current law froze the FY 1993 SNF cost limits for FY 1994 and FY 1995 and mandated that an update to the cost limits be provided for cost reporting periods beginning in FY 1996. The two year cost limit freeze resulted in a savings to the Medicare program. The proposed FY 1996 reconciliation legislation contained a provision to preserve those savings by inflating the FY 1993 cost limits to cost reporting periods beginning in FY 1996, except that inflation for FY 1994 and FY 1995 would not be recognized. Because of the delay in passage of FY 1996 legislation, intermediaries have been inflating the FY 1993 cost limits to FY 1996 using the methodology described under Table IV of the October 7, 1992 Federal Register notice (57 FR 46188). This methodology continually provides updated cost limits using monthly inflation factors. These instructions confirm the use of this methodology to provide an update to the cost limits for cost reporting periods beginning in FY 1996. However, the revised FY 1993 cost limits shown on Exhibit C-92 and the cost report adjustment factors on Exhibit E-95 must now be used to compute the cost limits for cost reporting periods beginning in FY1996. This update methodology

Page 3

will remain in effect indefinitely until a new schedule of cost limits or other provision is issued. In addition, for cost limit purposes, the cost report adjustment factors are subject to change based on later inflation data reflecting a final rate that differs from the projected rate by more than .3 of one percentage point.

**UPDATED RATES for LOW MEDICARE VOLUME SNFs for FY 1996**
Under the regulations at 42 CFR 413.300 (issued on July 21, 1995 at 60 FR 37594), a provider may qualify, as a low Medicare volume SNF, and elect to be paid a prospectively determined payment rate. The rates effective for FY 1993 were published in Section 2828 of the Provider Reimbursement Manual (HCFA Pub. 15-1). These FY 1993 rates were frozen for FY 1994 and FY 1995. A provision in the proposed FY 1996 reconciliation legislation regarding FY 1996 rates contained language similar to the cost limit provision described above. Again, because of the delay in passage of FY 1996 legislation, intermediaries have been inflating the FY 1993 rates to FY 1996 using the cost limit inflation

207

methodology described under Table IV of the October 7, 1992 <u>Federal Register</u> notice (57 FR 46188). These instructions contain revised FY 1993 rates on Exhibits F-95 and G-95 based on the latest inflation data. In addition, the same revised cost report adjustment factors shown on Exhibit E-95 are to be applied to the revised rates. <u>**BEFORE APPLYING THESE REVISED RATES PLEASE READ THE FOLLOWING -**</u>

<u>**IMPORTANT:**</u>
**The providers affected by the revised rates are limited since the philosophy behind this provision is that the provider will have knowledge of its payment rate prior to the beginning of the affected cost reporting period. Once the election is approved by the intermediary and the applicable cost reporting period begins, the authority does not exist to make retroactive changes to the rate. Accordingly, prospectively determined payment rates for low Medicare volume SNFs for cost reporting periods beginning on or after October 1, 1995 issued prior to your receipt of this letter <u>cannot</u> be revised retroactively. A provider making its request or with a request under consideration to be paid under this provision after your receipt of this letter must be notified immediately of the revisions contained herein. Please allow the provider an adequate amount of time to determine if it still wishes to paid under this provision using the revised rates. Under 413.308(b), the intermediary must notify the SNF of its determination within 10 working days after it receives all the data necessary to make the determination. In addition, adjustments to the cost report adjustment factors based on later inflation data will not affect prospectively determined payment rates under 413.314(d).**

If you have further questions concerning this matter, please contact your payment section representative.

Sincerely

/S/
Robert Daly, Acting Chief
Financial Operations Branch
Division of Medicare

## MEDICARE
Provider Reimbursement & Audit

**Health Care Service Corporation, A Mutual Legal Reserve Company**

2151 West White Oaks Drive
Springfield, Illinois 62704-6495

| | |
|---|---|
| Telephone: | 217/698-5200 |
| Fax: | 217/698-8703 |

August 29, 1996

                                              CERTIFIED

Mr. Michael L. Nelson
Senior Vice President
St. Anthony's Health Center
St. Anthony's Way
Alton, IL 62002

Dear Mr. Nelson:

### NOTICE OF REOPENING OF COST REPORTS

| Provider Number(s) | Year End | Date of Previous Notice of Program Reimbursement |
|---|---|---|
| 145314 | 12/31/91 | 09/02/93 |
| 145314 | 12/31/92 | 04/01/94 |
| 145314 | 12/31/94 | 03/29/96 |

Medicare Regulation 405.1885 provides that cost reports may be reopened by the Intermediary within three years of the date of the notice of the Intermediary or Board hearing decision, or the date of the notice of the Intermediary determination of final settlement. In accordance with this Regulation, we have determined that your cost report will be reopened for the following reason(s):

> To update the SNF cost limit based on HCFA's memorandum dated May 1996.

We will advise you of the effect of this reopening as soon as we have made the necessary calculations. We expect our final notice of redetermination will be made within 180 days.

If you are dissatisfied with the redetermination and wish to appeal, any request for an appeal must be made in writing within 180 days from the date of final notice of redetermination in accordance with Regulations 405.1811 and/or 405.1841.

Any questions in this regard should be directed to me at (217) 698-5200.

Sincerely,

*Thomas M. Curtis/pay*

Thomas M. Curtis
Manager

TMC:kf

GC 667 Rev. 3/91
OMB 0938-0212

240

MEDICARE

Provider Reimbursement & Audit

**Health Care Service Corporation. A Mutual Legal Reserve Company**

2151 West White Oaks Drive
Springfield. Illinois 62704-6495 .

Telephone:   217/698-5200
Fax:            217/698-8703

May 21, 1997

Mr. James K. Kenton
Director
Division of Skilled Nursing Care
Health Care Financing Administration
Mail Stop C4-11-07
7500 Security Boulevard
Baltimore, MD 21244

**RE: Request for Exception from SNF Cost Limit**
      **St. Anthony's Hospital SNF**
      **Provider #: 14-5314**
      **Year Ended: 12-31-91 & 12-31-92**

Dear Mr. Kenton:

St. Anthony's Hospital SNF (SASNF) has requested an exception from the routine cost limit for the fiscal year ended December 31, 1991 and December 31, 1992. The provider believes that an exception is warranted under the provisions of 42 CFR 413.30(f)(1)-Atypical services. A copy of the provider's written request and supporting documentation was received by the intermediary on April 28, 1997 and is labeled as Exhibit I.

The provider's cost report for the fiscal year ended December 31, 1991 was received by the intermediary on April 1, 1992. A final notice of program reimbursement was issued by the intermediary on September 2, 1993. The cost report was reopened by the intermediary on June 10, 1994 and October 31, 1996. The latest reopening is to revise the routine SNF cost limit per HCFA's memorandum dated May 23, 1996. The provider's request was filed timely. A copy of the cost report is included and labeled as Exhibit 15 on Exhibit I.

The provider's cost report for the fiscal year ended December 31, 1992 was received by the intermediary on April 2, 1993 A final notice of program reimbursement was issued by the intermediary on April 1, 1994. The cost report was reopened by the intermediary on October 4, 1995 and October 31, 1996. The latest reopening is to revise the routine SNF cost limit per HCFA's memorandum dated May 23, 1996. The provider's request was filed timely. A copy of the cost report is included and labeled as Exhibit 16 on Exhibit I.

SASNF is a hospital based skilled nursing unit of St. Anthony's Hospital, provider number 14-0052. SASNF was certified to participate in the Medicare program effective November 1, 1975. A copy of the routine cost limit computation for SASNF is included as Exhibit II.

The provider believes that its patients are atypical when compared to other similarly classified hospital-based skilled nursing units and free standing long term care facilities. SASNF is requesting this exception based on :

1) High Medicare utilization and low average length of stay;

2) High-level patient dependencies on services provided by RNs and LPNs;

3) High-level patient dependencies with activities of daily living;

4) High case-mix of patients admitted to the SNF; and

5) High level of ancillary services provided.

When comparing itself to other similarly classified hospital-based skilled nursing facilities, the provider relies on HCFA's data base used to develop the October 1, 1992 cost limit. The information included in the provider's supporting documentation demonstrates that SASNF cost exceeds the SNF routine cost limit. Please note that the provider has requested exception amounts based upon the difference between the provider's actual per diem costs and the actual routine cost limit related to the cost report period, rather than the difference between actual cost and 112% of the Peer Group mean cost per diem based on PRRB Hearing Decision No. 97-D38, dated March 24, 1997.

The intermediary has reviewed the provider's documentation and has computed the exception amounts according to the guidelines contained in the HIM15 Part I, section 2534. The intermediary has used 112% of the Peer Group mean cost in the computation. A copy of the intermediary's computation is included and labeled as Exhibit III and IV.

## CONCLUSION AND RECOMMENDATION

Based on the data submitted by the provider, SASNF appears to have a shorter length-of-stay, higher acuity of illness, higher nursing hours per patient day, greater Medicare utilization and higher ancillary cost per day when compared to other urban SNFs. The intermediary recommends that the provider be granted an exception amount of $18.51 per day for fiscal year 1991 and $21.06 per day for fiscal year 1992, respectively.

If you have any questions or require any additional information, please feel free to call Sue Liu at 217-698-5200.

Sincerely,

_Sue C. Liu for:_

Jack Chrencik

Manager

cc: Barbara Hoff, HCFA

   Sue Liu, HCSC

   Cost File

223

# MEDICARE

Provider Reimbursement & Audit

July 18, 1997

Health Care Service Corporation, A Mutual ...al Reserve Company

2151 West White Oaks Drive     Telephone:   217/698-5200
Springfield, Illinois 62704-6495     Fax:        217/698-8703

Mr. Michael L. Nelson
Senior VP of Finance
St. Anthony's Health Center
Saint Anthony's Way
Alton, IL 62002

**RE: Skilled Nursing Facility Exception Request**
      **Provider #: 14-5314**
      **Fiscal Year Ended: 12-31-91 and 12-31-92**

Dear Mr. Nelson:

This letter is to inform you that the Health Care Financing Administration (HCFA) has completed their review of your skilled nursing facility cost limit exception request for the above referenced fiscal years.

Based on the reply form HCFA, we are denying your request for the above referenced fiscal years. It is HCFA's policy that is an exception is submitted after 180 days of the original NPR but within 180 days of a revised NPR, an exception may only be granted for the incremental increase in the amount that the provider's cost exceeds its revised cost limit. If the revised NPR reduces the cost per day, no exception is available.

You may resubmit the exception request with the corrected documentation within 45 days of this notification. Otherwise, this decision is final.

As with other reimbursement determinations, you are entitled to a formal appeal under 42 CFR 405.1801ff. You have 180 days from the date of this notification to pursue your appeal rights.

If you have any questions regarding this letter, please feel free to contact me at the above number.

Sincerely,

Sue C. Liu

Supervising Senior Auditor

225

**DEPARTMENT OF HEALTH & HUMAN SERVICES**          Health Care Financing Administration

Refer to: FAR-051                                    7500 SECURITY BOULEVARD
                                                     BALTIMORE MD 21244-1850

OCT 1 4 1997

RECEIVED
OCT 2 0 1997
PROVIDER REIMBURSEMENT
AND AUDIT

Mr. Jack Chrencik
Manager
Audit & Reimbursement
Health Care Service Corporation
2151 West White Oaks Drive
Springfield, IL  62704-6495

Dear Mr. Chrencik:

This is in response to the request of St. Anthony's SNF
(SA-SNF), Provider Number 14-5314, for an exception to the
inpatient general routine service cost limits for the cost
reporting periods ended December 31, 1991 (1991) and December
31, 1992 (1992). The SA-SNF is requesting an exception under
42 CFR 413.30(f)(1) for atypical services in accordance with
HCFA Pub. 15-1, Section 2530 (Transmittal No. 378, published
July 1994).

We reviewed the documentation you submitted and we agree
with your recommendation that SA-SNF be granted an exception
of $3.41 per day for 1991 and $6.26 per day for 1992.

In accordance with Transmittal No. 378, this exception may be
applied to subsequent cost reporting periods where
circumstances and reasons for granting an exception have not
changed. Therefore, using the methodology and procedures
outlined in section 2530, you are authorized to grant interim
exceptions and adjust interim payments for subsequent cost
reporting periods.

In addition, please note that any exception amounts (interim
or final) for cost reporting periods starting on or after
October 1, 1993 and before October 1, 1995 are subject to
limitation by the provisions set forth in the Federal
Register, dated January 6, 1994 (59 FR 762). These provisions
relate to the freeze on SNF routine cost limits mandated by
the Omnibus Budget Reconciliation Act of 1993.

227

If you have any questions regarding this letter, please contact William Robinson at (410) 786-4593. If the provider or its representatives have any questions they should contact your office.

Sincerely,

William Robinson

Thomas E. Hoyer
Director
Chronic Care Purchasing
  Policy Group
Center for Health Plans & Providers

228

# MEDICARE

Provider Reimbursement & Audit

**Health Care Service Corporation, A Mutual     1 Reserve Company**

2151 West White Oaks Drive
Springfield, Illinois 62704-6495

Telephone:     217/698-5200
Fax:              217/698-8703

October 23, 1997

Mr. Michael L. Nelson
Senior Vice President of Finance
St. Anthony's Health Center
St. Anthony's Way
P.O. Box 340
Alton, IL 62002-0340

RE: Provider Number 14-5314
    SNF Exception Request
    FYE 12/31/91 & 12/31/92

Dear Mr. Nelson:

This is in response to the request for an exception to the SNF Routine Cost Limits for the cost report periods referenced above.

HCFA has approved the exception under 42 CFR 413.30(f)(1) for atypical services in accordance with HCFA Pub. 15-1, Section 2530. The exception amounts are $3.41 per day for 12/31/91 and $6.26 per day for 12/31/92.

We will be processing the reopening within the next 180 days. If you have any questions, please call me at (217) 698-5200.

Sincerely,

Doug Limper

Doug Limper
Acting Supervising Senior Auditor

cc: Cost Correspondence

229

**BEFORE THE PROVIDER REIMBURSEMENT REVIEW BOARD**


**SAINT ANTHONY'S HEALTH CENTER -- SNF**

**PROVIDER NO. 14-5314**
**PRRB CASE NO. 98-0463**
**FYE DECEMBER 31, 1992**


**PROVIDER'S PRELIMINARY POSITION PAPER**
**FOR SUBMISSION TO**
**MEDICARE FISCAL INTERMEDIARY**


**SUBMITTED BY:**


**Judith M. Rosenberg**
**VINSON & ELKINS L.L.P.**
**1455 Pennsylvania Avenue, N.W.**
**Washington, D.C.  20004-1008**
**(202) 639-6794**

**November 2, 1998**


6.1\::ODMA\SOFTSOL\311\VEWAS01\45579\0
11/02/98:9:59am

## I.    Issue Presented

Whether the Intermediary's or the Health Care Financing Administration's ("HCFA") denial of the Provider's exception request to the SNF routine service cost limits under 42 C.F.R. § 413.30(f) was proper?

## II.    Statement of the Facts

### 2.1    Identification of the Parties

#### 2.1-1    The Provider

The Provider is Saint Anthony's Health Center ("the Provider"), a hospital-based skilled nursing facility ("SNF") located in Alton, Illinois (Provider No. 14-5314).

#### 2.1-2    The Intermediary

Health Care Services Corporation is the Intermediary.

### 2.2    Medicare Reimbursement Controversy

The Intermediary issued its first notice of program reimbursement ("NPR") for the Provider's fiscal year ending ("FYE") December 31, 1992, on April 11, 1994. (Exhibit A, NPR). On August 29, 1996, the Intermediary reopened the Provider's FYE 1992 cost report to revise the Provider's FYE 1992 cost limit. (Exhibit B). The Intermediary's revision occurred because of the manner by which routine cost limits for SNFs are calculated. SNF cost limits are based upon reported costs, but are adjusted for actual or projected cost increases by applying the SNF market basket index. This market basket index is used to adjust the limits to reflect cost increases occurring between the time of the cost reporting periods represented in the data collection to the time when the limits are applied. However, the market basket index itself cannot be determined until the cost reporting period to which the limits apply has already passed. Thus, when HCFA calculates cost limits it uses an

estimated market basket index which is based upon forecasts of economic trends. If these economic forecasts prove erroneous, HCFA retroactively adjusts cost limits to reflect the actual index. Specifically, if the market basket index for a fiscal year differs from the estimated rate of change by at least 0.3 of one percentage point, HCFA will adjust the limits.

Thus, in FYE 1992, the Provider's cost limit was merely provisional because it was based on an estimate of the market basket index. In 1996, the limits were finalized when HCFA determined that the estimated market basket index for fiscal year 1992 had exceeded actual market basket figures. Pursuant to its rules on the market basket index, HCFA therefore instructed intermediaries to retroactively adjust cost limits to include the actual market basket index figures. See 56 Fed. Reg. 13317, 13319 (Apr. 1 1991).

In the revised NPR, issued October 31, 1996, the Intermediary decreased the SNF cost limit to incorporate the actual market basket figures. (Exhibit B). The Intermediary calculated the Provider's routine cost limit ("RCL") per diem to be $139.80, a $6.26 decrease from the prior $146.06 per diem limit. Pursuant to 42 C.F.R. § 413.30(f), the Provider filed a timely request for an exception to the SNF routine cost limits on April 23, 1997. The Provider alleged and documented that the acuity level of its patient population was significantly higher than the applicable Peer Group. As such, the Provider requested a per diem exception of $44.83, and a total exception amount of $241,212 (based on 5,381 Medicare days). See Exhibit C.

The Intermediary notified the Provider by letter dated July 18, 1997, that HCFA determined that the Provider was not entitled to the exception request. (Exhibit D). The Intermediary stated that "[i]t is HCFA's policy that is [sic] an exception is submitted after 180 days of the original NPR but within 180 days of the revised NPR, an exception may only be granted for the incremental increase

- 2 -

in the amount that the provider's cost exceeds its revised cost limit." The Provider then obtained a HCFA letter dated October 14, 1997 indicating that the Provider was granted a partial exception, essentially that amount which was decreased in the revised NPR and timely addressed by the Provider's exception request. (Exhibit E) However, the Provider argues that it is entitled to the full amount of its exception request. The Provider timely appealed the Intermediary's denial of the entire exception request through its Request for Hearing filed December 15, 1997.

## III.    Argument and Analysis

It is the Provider's position that it is entitled to the full amount of its exception request filed April 25, 1997. Section 413.30(f) of the Medicare regulations allows for a provider's SNF cost limit to be adjusted upward if the provider can document that, inter alia, its actual costs of items or services exceeds the applicable limit because the items or services are atypical in nature and scope compared to the items and services generally provided by similarly classified providers, and because of special needs of the patients. 42 C.F.R. § 413.30(f)(1); see also Provider Reimbursement Manual § 2534. The Provider filed a timely exception request seeking an exception of $44.83 to its per diem limit. The Provider supported this exception with documentation ultimately accepted by HCFA in its granting an exception for the incremental decrease between the per diem limit applied in the initial NPR for FYE 1992 and the revised NPR. Thus, the credibility of the supporting documentation and appropriateness of the exception request is not at issue. Rather, the issue is merely a procedural one that should not be an impediment to the Provider's receiving the exception request to which it is entitled.

- 3 -

### 3.1    The Provider Is Not Limited To the Incremental Decrease In the Revised NPR, Because the Provider's Exception Request Was Timely Filed

The Provider's exception request is governed by 42 C.F.R. § 413.30.  This section provides that a provider that requests an exception to the SNF cost limits must make such request to its fiscal intermediary "within 180 days of the date on the intermediary's notice of program of reimbursement." 42 C.F.R. § 413.30(c) (1992).

Although § 413.30(c) makes no distinction between initial or revised NPRs, the section has been interpreted by some tribunals as incorporating restrictions spelled out in 42 C.F.R. § 405.1889. See e.g., St. Joseph Medical Center, PRRB Dec. No. 98-D27, Medicare & Medicaid Guide (CCH) ¶ 46,070.  Section 405.1889, in turn, limits review of a revised NPR to only those issues specifically included within the revised NPR.[1]

Assuming that § 413.30(c) includes the restrictions of 42 C.F.R. § 405.1889 (which the Provider disputes see § 3.2 below), the Provider meets the jurisdictional requirements for bringing its case before the PRRB.  First, the revised NPR issued in this case specifically included the issue Provider now appeals -- the RCLs that applied to Provider's skilled nursing facility.  Second, because the cost limits included in the initial NPR were only provisional, the provisions of § 413.30(c)

---

[1]Section § 405.1889 reads:

> Where a revision is made in a determination or decision on the amount of program reimbursement after such determination or decision has been reopened as provided in § 405.1885, such revision shall be considered a separate and distinct determination or decision to which the provisions of §§ 405.1811, 405.1835, 405.1875 and 405.1877 are applicable. (See § 405.1801(c) for applicable effective dates.)

became effective as of the date of the revised NPR, triggering the right to request an exception from the cost limits imposed by HCFA.

### A.    42 C.F.R. § 405.1889 -- Appeals of Revised NPRs

First, the Provider may appeal its revised NPR under 42 C.F.R. § 405.1889, because the revised NPR included the very issue the Provider seeks to appeal -- its RCLs. Thus, Provider's case is distinguishable from cases holding that a provider could not contest its cost limit on the basis of a revised NPR. For example, in <u>French Hospital Medical Center v. Shalala</u>, 89 F.3d 1411 (9th Cir. 1996), French Hospital sought an exception to its cost limits on the basis of a revised NPR adjusting malpractice insurance costs. The Ninth Circuit denied the exception request as untimely because:

> the intermediary reopened the hospital's cost report for the sole purpose of applying the RCL to malpractice insurance costs. *Neither the RCL, nor components of the RCL, were at issue in the revised NPR. Furthermore, the revised NPR did not alter the RCL or any of its components.* Only the RCL's application to malpractice insurance costs was at issue in the revised NPR.

<u>Id.</u> at 1420 (emphasis added). <u>See also</u> <u>St. Joseph Medical Center</u>, PRRB Dec. No. 98-D27, Medicare & Medicaid Guide (CCH) ¶ 46,070 (holding that a revised NPR issued to adjust labor and delivery costs did not provide a basis for an exception request to the RCL).

This case is clearly distinguishable from <u>French Hospital</u> and <u>St. Joseph Medical Center</u>, since the components of the RCL *are* at issue. The market basket calculation is one component of the RCL calculation, as the SNF cost limits cannot be determined without including the market basket index. <u>See</u> 56 Fed. Reg. 13317 (Apr. 1, 1991) ("we will continue to *base* cost limits on reported costs, adjusted for actual and projected cost increased by applying the *SNF market basket index*." (emphasis added)); <u>Anaheim Memorial Hosp. v. Shalala</u>, 130 F.3d 845, 847 (9th Cir. 1997) ("The RCL is derived from a number of factors including: . . . (2) a market basket index of goods

- 5 -

and services purchased by hospitals"). Because the market basket index is one component of the RCL, when HCFA finalized the FY 1992 market basket in 1996, it was revising the limits applied to SNFs. This limit could then be appealed through the normal exception process explained in 42 C.F.R. § 413.30(c). In contrast, in <u>French Hospital</u> or <u>St. Joseph</u>, the Intermediary was not revising the *limits*, it was revising the costs to which those limits applied. Because the Intermediary via its revised NPR has placed the RCLs at issue, the Provider should now be able to apply its exception request to those RCLs.

B.    42 C.F.R. § 413.30(c) - Exception Requests to Cost Limits

Second, the Provider may appeal its revised NPR under 42 C.F.R. 413.30(c), because it was not until 1996 that the routine cost limits were finalized. As such the cost limits were not truly "imposed," until the market basket index had been finalized and incorporated into the limits. In 1994, when the Intermediary issued the Provider's initial NPR, the RCLs were based only upon estimated market basket figures. As such, these cost limits were provisional -- and could be adjusted in the event that actual market basket rates exceeded estimated amounts. In the Federal Register, HCFA explained:

> The market basket index also provides for adjustments in the limits if our forecasts of economic trends prove erroneous. If the final rate of change in the market basket index for a year differs from the estimated rate of change by at least 0.3 of one percentage point, we will adjust the limits. We will advise the Medicare intermediaries to use the actual rate to adjust each SNF's limit retroactively.

56 Fed. Reg. 13317, 13320 (Apr. 1, 1991).

Because the market basket did exceed estimated figures, HCFA directed intermediaries to retroactively adjust cost limits from fiscal year 1992. These limits were finally adjusted in 1996, and therefore, the Provider did not receive notice of the actual RCL that would be imposed for FYE

- 6 -

1992 until October 31, 1996 when the revised NPR was issued. And, because the revised NPR included the actual RCL, the Provider timely requested an exception to this RCL within 180 days of the revised NPR.

> **3.2    In the Alternative, Because 42 C.F.R. § 413.30(c) Does Not Distinguish Between Initial and Revised NPRs, the Exception Request Should Be Accepted Regardless of Whether the Revised NPR Included the Specific Issues Being Appealed**

42 C.F.R. § 413.30(c) does not distinguish between initial and revised NPRs, stating only that exception requests be made within "180 days of the date on the intermediary's notice of program reimbursement." Although some courts have interpreted 42 C.F.R. § 413.30(c) as incorporating the restrictions of 42 C.F.R. § 405.1889, there are several reasons why these sections should be viewed as separate.

First, the regulations at 42 C.F.R. § 405.1889 govern appeals to NPRs that are made to the *Board*. In contrast, exception requests for RCLs are made to the fiscal intermediary, and not to the Board. 42 C.F.R. § 413.30(c). Indeed, the HCFA Administrator made this painfully clear in the recent case, Hurley Medical Center, HCFA Adm'r Dec., Medicare & Medicaid Guide (CCH) ¶ 80,058 (Aug. 7, 1998). In that case, Hurley Medical Center failed to make its TEFRA exception request to the intermediary (in accordance with the regulations),[2] but mistakenly made the request to the PRRB, sending a carbon copy to the intermediary. The Board ruled in Hurley's favor, stating that the letter to the Board was adequate notice to the intermediary of the exception request, and requiring the  request to be sent to the intermediary elevates form over substance. However, the HCFA Administrator overturned, stating:

---

[2]42 C.F.R. § 413.40(e) governs requests for TEFRA exceptions.

[T]he regulation clearly states that "[t]he hospital's request must be made to its fiscal intermediary no later than 180 days from the date on the intermediary's notice of program reimbursement. . . . " The record demonstrates that the Provider did not comply with the requirements stated at 42 C.F.R. 413.40(e) because the Provider did not make a request to the Intermediary within the 180-day time frame.

Id. at 200,264.

Hurley stands for the principle that the Administrator will read the provisions under section 413 of the regulations as distinct from those in section 405 et. seq. when it behooves her to do so. Moreover, the opinion embraces literalist interpretations of regulations.  The Board should follow the Administrator's example and apply a literal interpretation to the language of § 413.30(e).  Since the regulation uses only the phrase "notice of program reimbursement" and does not distinguish between initial and revised NPRs, a literal interpretation of the regulation would allow exception requests to be made to both initial *and* revised NPRs.

The Provider understands that this issue has been addressed in several cases. See e.g., Care Unit Hospital of Dallas/Forth Worth, HCFA Adm'r Dec., Medicare & Medicaid Guide (CCH) ¶ 43,510 (May 5, 1995) (§ 413.40(e) should be read together with § 405.1889); Foothill Presbyterian Hosp. v. Shalala, 152 F.3d 1132 (9th Cir. 1998), Medicare & Medicaid Guide (CCH) ¶ 300,028 (harmonizing § 413.40(e) with §§ 405.1885(a) and 405.1889).  However, these cases were issued prior to the HCFA Administrator's literalist interpretations announced in Hurley.  Moreover, none of those cases discussed the procedural differences between exception requests, which are made to the intermediary, and appeals of the costs allowed in the final NPR, which are made to the Board.  Thus, the Board can distinguish those cases, and rule as it previously did in Foothill, PRRB Dec. No. 95-D28, Medicare & Medicaid Guide (CCH) ¶ 43,228 and Care Unit, PRRB Dec. No. 95-D26,

- 8 -

Medicare & Medicaid Guide (CCH) ¶ 43,410, that a distinction between revised and final NPRs in the context of exception requests is not supported in the regulations.

Second, the strictures of § 405.1889 should not apply because the policy considerations for exception requests are different from the policy considerations applicable to appeals of cost adjustments. Exception requests involve limits that are applied to *all* costs incurred by a provider. Thus, an adjustment of allowable costs affects whether a provider wishes to seek an exception. In contrast, appeals of *cost* adjustments involve discrete categories of claimed costs. When an intermediary reopens the cost report to adjust discrete cost centers, there is no effect on the costs included in other discrete cost centers. As cost limits are dependent upon all reimbursement, any change in allowable costs *does* influence how the cost limit applies.

### 3.3    HCFA's Failure to Issue Guidance on Exception Requests Until July 1994 Supports Ruling In Favor of the Provider

Finally, additional policy considerations should be made in this case, because prior to 1994, there was little guidance on how providers could make their exception requests. Even if providers wanted to make exception requests there was no mechanism for doing so. Prior to 1994, there were no provisions in either the Manual or the regulations explaining how a provider would apply for an exception on the basis of atypical costs. This deficiency was explicitly recognized in a report issued by the GAO, where the GAO stated:

> Initially, HCFA did not have detailed instructions for the exception request process. In July 1994, HCFA published Transmittal 378 to assist SNFs in preparing and submitting exception requests and defining intermediaries' responsibilities.

GAO, Approval Process for Certain Services May Result in Higher Medicare Costs, (GAO/HEHS-97-18) (Dec. 1996) at p. 51. Indeed, prior to 1994, the only manual provision relating to atypical

- 9 -

256

costs discussed adjustments which were based upon the "atypical costs resulting from the operation of an approved nursing school."  Provider Reimbursement Manual § 2527.1 (declared obsolete by Transmittal No. 378, July 1994).    There were no manual provisions on exception requests for atypical costs in general.    Thus, providers received little to no guidance on when and how they should make their exception requests.  The fact that limits were pending, subject to finalization of the market basket index, only added to this confusion.  Because providers were given little guidance on making exception requests, and because requests were pending subject to changes in the market basket, providers could not be sure when exception requests should be made -- at the initial or the revised NPR.  Thus, the Provider could not have been expected to anticipate the method for contesting an RCL that would later be explained in Transmittal No. 378.

**IV.    Conclusion**

In conclusion, the Provider should be granted an exception to the SNF routine cost limits.

Respectfully submitted,

_____
Judith M. Rosenberg
Vinson & Elkins L.L.P.
1455 Pennsylvania Avenue, NW
Washington, DC  20004-1008

- 10 -

257

BEFORE THE
PROVIDER REIMBURSEMENT REVIEW BOARD

| | |
|---|---|
| Saint Anthony's Health Center, | ) |
| | ) |
| Provider, | ) |
| | ) |
| v. | ) |
| | ) |
| Health Care Service Corporation, | ) |
| | ) |
| Intermediary. | ) |
| | ) |

**RECEIVED**

APR 29 1998

Provider Reimbursement
Review Board

Provider No. 14-5314
PRRB Case No. 98-0580
FYE 12/31/91

LIST OF ISSUES

The parties, Saint Anthony's Health Center ("Provider") and Health Care Service Corporation ("Intermediary"), hereby file their List of Issues pursuant to the request by the Provider Reimbursement Review Board ("Board").

Jurisdiction

The parties hereby agree to the following:

1.    The Provider, Provider No. 14-5314, was notified by Intermediary letter dated July 18, 1997, that the Health Care Financing Administration ("HCFA") determined that the Provider was ineligible for an exception to the SNF routine service cost limits. By Freedom of Information Act request, the Provider received HCFA's letter dated October 14, 1997, denying the Provider's request for an exception to the SNF routine service cost limits under 42 C.F.R. § 413.30(f). Both letters are attached as Exhibit A. The Provider filed its appeal with the Board on December 15, 1997, which was within the 180 days of the date of the Intermediary's Notice of Denial of Exception Request, as required by 42 C.F.R. § 405.1841(a)(1).

2.    The total amount in controversy exceeds the $10,000 threshold requirement for Board jurisdiction.

3.    No impediments exist for Board jurisdiction as to the issue under appeal.

299

Substantive Issue for Appeal

1.    Whether the Intermediary's/HCFA's denial of the Provider's request for an exception
      to the SNF routine service cost limits under 42 C.F.R. § 413.30(f) was proper?

Both parties consider this statement of the issue to be preliminary and non-binding.

Respectfully submitted,

Carin J. Sigel
Mary E. Edmondson
Representative for the Provider
Vinson & Elkins
1455 Pennsylvania Ave., N.W.
Washington, D.C. 20004-1008

Dan Royer
Manager
Health Care Service Corporation
2151 West White Oaks Drive
Springfield, Illinois 62504-6495

March 4, 1998

_____, 1998

300

88-0463
(RH)
12-29-97

# Vinson&Elkins
### ATTORNEYS AT LAW

**ORIGINAL**

VINSON & ELKINS L.L.P.
THE WILLARD OFFICE BUILDING
1455 PENNSYLVANIA AVE., N.W.

**WASHINGTON, D.C. 20004-1008**

TELEPHONE (202) 639-6500
FAX (202) 639-6604

WRITER'S TELEPHONE
(202) 639-6793

December 15, 1997

RECEIVED
DEC 18 1997

**VIA FEDERAL EXPRESS**

Mr. Irvin W. Kues
Provider Reimbursement Review Board
7500 Security Boulevard
Mail Stop C1-09-13
Baltimore, MD  21244-1850

      Re:    Saint Anthony's Health Center -- Skilled Nursing Facility
               Provider No. 14-5314
               FYEs 12/31/91 and 12/31/92
               Exception to SNF Routine Cost Limits

Dear Mr. Kues:

    Enclosed is an original of the Provider's Request for Hearing on Exception to SNF Routine Cost Limits for fiscal years ending December 31, 1991 and December 31, 1992.

    Please date stamp the enclosed extra copy of this letter and return it to me in the enclosed, self-addressed envelope.

                      Sincerely,

                      Carin J. Sigel

Enclosures
cc w/encl.:
    Ms. Sue C. Liu (by Certified mail)
    Ms. Noncy Dooling (by First Class mail)

I:\HEA\ME1210\SAI121\67000\CORR 36744

HOUSTON    DALLAS    WASHINGTON, D.C.    AUSTIN    MOSCOW    LONDON    SINGAPORE

332

**ORIGINAL**

REQUEST FOR PROVIDER REIMBURSEMENT REVIEW BOARD
HEARING ON SKILLED NURSING FACILITY EXCEPTION REQUEST

TO:
Irvin W. Kues
Provider Reimbursement
  Review Board
7500 Security Boulevard
Mail Stop C1-09-13
Baltimore, Maryland  21244-1850

Date:  December 15, 1997
Provider:      Saint Anthony's Health Center --
                    Skilled Nursing Facility
                 Saint Anthony's Way
                 P.O. Box 340
                 Alton, Illinois  62002

Provider No.:  14-5314
Intermediary:  Health Care Service Corporation,
                    Springfield, Illinois

Notice of Denial of Request
  for Exception to SNF Routine Cost Limits

| Notice Date | Fiscal Years |
|---|---|
| 7/18/97 | 12/31/91 |
| | 12/31/92 |

I.      Identification of Parties and Cost Reporting Periods in Dispute

        Saint Anthony's Health Center ("Provider"), Provider No. 14-5314, a skilled nursing facility
("SNF"), located in Alton, Illinois, requests a hearing before the Provider Reimbursement Review
Board with respect to Medicare reimbursement payable to the Provider for the cost reporting periods
ending December 31, 1991 and December 31, 1992.

        The Provider's fiscal intermediary is Health Care Service Corporation of Springfield, Illinois
("Intermediary").

II.     The Medicare Reimbursement Controversy

        The Provider was notified by the Intermediary in a letter dated July 18, 1996 (Exhibit A), that
the Health Care Financing Administration ("HCFA") determined that the Provider was ineligible for
an exception to the SNF routine service cost limits.  The Intermediary letter explained that the
exception request denial, based on the revised notice of program reimbursement ("NPR"), was only
for the incremental increase in the amount that the Provider's cost exceeds its revised cost limit.

        Because the Provider believes it is eligible for an exception to the routine cost limit based
on the revised NPR, and in order to preserve its appeal rights, the Provider files this request for
hearing in accordance with 42 C.F.R. § 405.1841.  The amount in controversy exceeds $10,000.

III.    The Provider's Position

The Provider believes that it is entitled to an exception to the SNF routine cost limits, affecting its fiscal years ending December 31, 1991 and December 31, 1992. The Provider's request is based on 42 C.F.R. § 413.30(f) which allows adjustment to the Provider's routine cost limits when one of the circumstances provided in the regulation is met. The basis for the Provider's request for exception is that the acuity level of the Provider's patient population is significantly higher than in comparable providers, as described in 42 C.F.R. § 413.30(f)(5) and thus the Provider qualifies for an exception to the SNF routine cost limits. Therefore, the Provider believes it is eligible and entitled to the exception to the SNF routine cost limits for the Provider's fiscal years ending December 31, 1991 and December 31, 1992.

After prehearing discovery and at such time as is designated by the Board, the Provider will submit a position paper in support of its position.

IV.    Provider's Representative

The Provider has appointed the following attorneys at the law firm of Vinson & Elkins L.L.P. (Registered Limited Liability Partnership) to act as the Provider's representative with respect to this appeal, including the filing of this hearing request with the Board:

> Carin J. Sigel
> Mary E. Edmondson
> Vinson & Elkins L.L.P.
> 1455 Pennsylvania Avenue, N.W.
> Washington, D.C. 20004-1008

Accordingly, please direct all future notices or other communications to the attention of Carin J. Sigel or other specified attorneys of the above firm unless or until directed otherwise.

SAINT ANTHONY'S HEALTH CENTER -- SNF

By: _____

> Carin J. Sigel
> Mary E. Edmondson
> Vinson & Elkins L.L.P.
> 1455 Pennsylvania Avenue, N.W.
> Washington, D.C. 20004-1008

> Representative for the Provider

DATE:        December 15, 1997

334

**MEDICARE**

Provider Reimbursement & Audit

July 18, 1997

Health Care Service Corporation, A Mutual Legal Reserve Company

2151 West White Oaks Drive
Springfield, Illinois 62704-6495

Telephone:    217/698-$200
Fax:            217/698-8708

Mr. Michael L. Nelson
Senior VP of Finance
St. Anthony's Health Center
Saint Anthony's Way
Alton, IL 62002

RE: Skilled Nursing Facility Exception Request
        Provider #: 14-5314
        Fiscal Year Ended: 12-31-91 and 12-31-92

Dear Mr. Nelson:

This letter is to inform you that the Health Care Financing Administration (HCFA) has
completed their review of your skilled nursing facility cost limit exception request for the above
referenced fiscal years.

Based on the reply form HCFA, we are denying your request for the above referenced fiscal
years. It is HCFA's policy that is an exception is submitted after 180 days of the original NPR
but within 180 days of a revised NPR, an exception may only be granted for the incremental
increase in the amount that the provider's cost exceeds its revised cost limit. If the revised NPR
reduces the cost per day, no exception is available.

You may resubmit the exception request with the corrected documentation within 45 days of this
notification. Otherwise, this decision is final.

As with other reimbursement determinations, you are entitled to a formal appeal under 42 CFR
405.1801ff. You have 180 days from the date of this notification to pursue your appeal rights.

If you have any questions regarding this letter, please feel free to contact me at the above
number.

Sincerely,

Sue C. Liu

Supervising Senior Auditor

325

CERTIFICATE OF SERVICE

I, Mary E. Edmondson, do hereby certify that a true and correct copy of the foregoing Request for a Provider Reimbursement Review Board Hearing was served this 15th day of December, 1997, by certified mail, postage prepaid, upon the following party:

> Sue C. Liu
> Supervising Senior Auditor
> Health Care Service Corporation
> 2151 West White Oaks Drive
> Springfield, Illinois  62704-6495

Mary E. Edmondson

I:\HEA\ME1210\SAI121\67000\PLD FYS 91, 92   36745

336